

07-CV-05374-M

FILED ___ ENTERED
LODGED ___ RECEIVED

Received From
SEATTLE

JUL 2 6 2007  LF

| JUL 3 0 2007

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

STORMANS, INCORPORATED doing business
as RALPH'S THRIFTWAY; RHONDA
MESLER, MARGO THELEN

    Plaintiffs,

vs.

MARY SELECKY, Acting Secretary of the
Washington State Department of Health;
LAURIE JINKINS, Assistant Secretary of
Washington Health Systems Quality Assurance,
et. al,

    Defendants.

**Oral Argument Requested**

MOTION FOR PRELIMINARY
INJUNCTION

Civil Action No. C07-5374

**NOTE ON MOTION CALENDAR:
August 10 , 2007**

## I. INTRODUCTION

Even though the "morning-after" pill is widely available throughout Washington State,

the Washington Board of Pharmacy (Board) recently passed regulations that prohibit

pharmacies and pharmacists from refusing to dispense the drug for moral or religious reasons.

Codified as WAC 246-863-095 and WAC 246-869-010 (the Rules), these regulations became

effective today, July 26, 2006.

During the Board's rule-making process, the Washington Human Rights Commission

publicly threatened that pharmacies and pharmacists, who refuse to stock or dispense Plan B

MOTION FOR PRELIMINARY INJUNCTION- 1

ELLIS, LI & MCKINSTRY PLLC
Attorneys at Law
Two Union Square
601 Union Street, Suite 4900
Seattle, WA 98101-3906
206•682•0565 Fax: 206•625•1052

1 due to their religious convictions, engage in sex discrimination and violate RCW 49.60. The
2 Commission suggested that pharmacists and pharmacies risk their licenses, and the Board even
3 risks liability itself, if it permits any right of conscience.

4       Plaintiffs, pharmacy-owner, Stormans, Inc. d/b/a Ralph's Thriftway, and pharmacists,
5 Rhonda Mesler and Margo Thelen, believe that life begins when an egg is fertilized. The
6 morning-after pill also known as "Plan B" can prevent implantation of a fertilized egg. As
7 health-care providers and Christians, Plaintiffs' deeply-held religious beliefs prevent them
8 from participating in the destruction of human life by selling Plan B.

9       But that is exactly what the Washington Board of Pharmacy and Human Rights
10 Commission demand that Plaintiffs do. The Board has concluded the investigation against
11 Ralph's for its refusal to stock the drug and has referred the matter to legal counsel. Now that
12 the Rules are in effect, Ralph's expects the Board to file disciplinary charges against it any day.

13       The Rules and Commission also require the plaintiff pharmacists to choose between
14 their livelihood and their religious faith. Mesler believes her employment will be terminated
15 very soon. Thelen was forced to leave her job and has no guarantees that her new employer
16 will continue to allow her to decline to dispense Plan B. The Rules and the Commission's
17 threatened enforcement mean these women may be forced to leave their professions because
18 they will not dispense one drug out of over 7,000 on the market.

19       Plaintiffs ask this Court to enjoin the defendants, State of Washington officials, from
20 enforcing the regulations that so clearly violate their religious and moral beliefs and are
21 contrary to federal law. Plaintiffs seek to enjoin the enforcement of 1) WAC 246-863-095 and
22 WAC 246-869-010, and 2) RCW 49.60, Washington's Law Against Discrimination, with
23

MOTION FOR PRELIMINARY INJUNCTION- 2

ELLIS, LI & MCKINSTRY PLLC
Attorneys at Law
Two Union Square
601 Union Street, Suite 4900
Seattle, WA 98101-3906
206•682•0565 Fax 206•625•1052

1 regard to the refusal by Plaintiffs to stock and dispense Plan B on religious and moral grounds.

2 The irreparable harm they will experience warrants a preliminary injunction.

## II. FACTUAL BACKGROUND

### A. The Small Demand for Plan B is Met by Pharmacies that Stock Plan B.

5 Approximately 1,370 licensed pharmacies serve the public in Washington State. The

6 public can also obtain Plan B through physicians' offices, certain government health centers,

7 hospital emergency rooms, Planned Parenthood and even through the Internet. (Declaration of

8 Kristen K. Waggoner, Waggoner Decl.). The results of a survey conducted by the Board during

9 the rule-making process that resulted in the Rules, indicate that 72% of respondents had less

10 than 25 requests for Plan B per year, or two or less per month.[1] Nearly 13% responded that

11 their pharmacies had between 26 and 50 requests per year, or at most four per month.

12 (Waggoner Decl., Survey Results, Exhibit A).

13 Seventy-seven percent of respondents reported they already stocked Plan B and 21%

14 that responded indicated they did not stock because of the lack of demand. Only two responded

15 that they did not stock because of no demand and for religious reasons. Id. In the five-year

16 period ending May 2007, the Board received a *single* complaint regarding a refusal to fill Plan

17 B based on religious or moral grounds on April 13, 2006. (Waggoner Decl. Exhibit B).

### B. The Board Starts the Rule Making Process.

19 Despite the modest demand, the widespread availability and single complaint regarding

20 Plan B, in April 2006 the Board began the rule-making process to consider a new regulation

21 regarding the right to refuse to stock and dispense Plan B for moral and religious

22

---

23 [1] The survey did not offer the choice of a smaller number than 25. Approximately 40% of all pharmacies participated in the survey.

MOTION FOR PRELIMINARY INJUNCTION- 3

ELLIS, LI & MCKINSTRY PLLC
Attorneys at Law
Two Union Square
601 Union Street, Suite 4900
Seattle, WA 98101-3906
206•682•0565 Fax 206•625•1052

considerations. This decision was preceded by a March 10, 2006 presentation to the Board by Planned Parenthood (PP) and the Northwest Women's Law Center (NWLC), organizations which publicly oppose the right to refuse to dispense Plan B on religious and moral grounds, urging the Board to adopt a rule requiring pharmacies and pharmacists to stock and dispense Plan B regardless of their religious beliefs.

On June 1, 2006, the Board met and reviewed "Washington laws related to conscience clauses and discrimination." (Waggoner Decl., Board Minutes and Proposed Rule, Exhibit C). The Board rejected the position taken by the PP and NWLC. Instead, it voted unanimously to accept a new draft rule, which affirmed the right of conscience. (Waggoner Decl., Exhibit C). The Washington State Pharmacy Association (WSPA) supported this rule (Original Rule). (Waggoner Decl., WSPA Presentation, Position Statement and Talking Points, Exhibit D).

### C. Governor Gregoire Intervenes in Support of a Rule to Forbid Refusal to Stock and Dispense on Religious and Moral Grounds.

That same day, June 1, 2006, Governor Christine Gregoire wrote a letter to the Board. She said she "strongly oppose[d] the draft pharmacist refusal rules recommended by the Washington State Board of Pharmacy.... I have stated my position in two letters, dated January 18[th] and May 31[st] of this year, emphasizing that no one should be denied appropriate prescription drugs based on the personal, religious, or moral objection of individual pharmacists." (Waggoner Decl., Letter from Governor, Exhibit E. See also Exhibit F).

At a press conference later that week, Governor Gregoire said the Board "had made a mistake" and that she would "help them get the right answer." To that end, she threatened publicly that she would consider the removal of Board members who supported the right of conscience. (Waggoner Decl., June 3 and June 6, 2006 Press Reports, Exhibit F).

MOTION FOR PRELIMINARY INJUNCTION- 4

ELLIS, LI & MCKINSTRY PLLC
Attorneys at Law
Two Union Square
601 Union Street, Suite 4900
Seattle, WA 98101-3906
206-682-0565 Fax: 206-625-1052

On August 28, 2006, the Governor sent a fourth letter to the Board. She proposed an alternative rule that eliminated the right of conscience for pharmacies and pharmacists who work as the only pharmacist on duty at their pharmacies. (Governor's Proposal) (Waggoner Decl., Letter from Governor, Exhibit G).

Three days later, the Board voted to "reconsider" its protection of the right of conscience, the first step to abandoning its Original Rule. On April 12, 2007, the Board voted unanimously in favor of adopting the substantive provisions of the Governor's Proposal. *See* WAC 246-863-095 and WAC 246-869-010. (Waggoner Decl., New Rules, Exhibit H).

### D. Effect of Regulations Adopted by the Board.

According to the Board, "the rules were sparked by complaints that some pharmacists and pharmacies refused to fill prescriptions for ...morning after birth control pills or Plan B drugs." The Board contends that WAC 246-863-095, and WAC 246-869-150, require a pharmacy to ensure Plan B is dispensed and that a pharmacy must stock Plan B if requested by a patient. (Waggoner Decl., Department of Health News Release, Exhibit I).

The Board has explained that the Rules prohibit a pharmacy from deciding not to stock Plan B for moral or religious reasons. (Waggoner Decl., Exhibit I and Final Small Business Economic Impact Statement and Significant Analysis for Rule, Exhibit K). It follows that the Board prohibits a pharmacy that stocks Plan B from accommodating a pharmacist with a moral or religious objection unless the pharmacy can provide a second pharmacist, without such objection, to timely dispense Plan B. *Id.*

The Rules also prohibit a pharmacy and pharmacist from discriminating "against a patient or their agent in a manner prohibited by state or federal laws." During the Board's consideration of the Rules, the Washington Human Rights Commission, the state agency

MOTION FOR PRELIMINARY INJUNCTION- 5

ELLIS, LI & McKINSTRY PLLC
Attorneys at Law
Two Union Square
601 Union Street, Suite 4900
Seattle, WA 98101-3906
206•682•0565 Fax: 206•625•1052

1  charged with the rule-making and enforcement of RCW 49.60, Washington's Laws Against

2  Discrimination ("WLAD"), provided the Board with written and oral testimony.  In the

3  Executive Director's April 17, 2007 letter to the Board, the Executive Director equated refusal

4  to stock and dispense Plan B on religious grounds with violation of the WLAD:

> It is illegal and bad public policy to permit pharmacists to deny services to women
> based on the individual pharmacist's religious or moral beliefs. We have examined the
> issue from federal and state law perspectives, from the public interest, and from
> possible defenses and compromises that could be raised and made. On no ground
> would refusal to fill a lawful prescription for emergency contraception be appropriate.
> Medical decisions must be made between a woman and her physician - not by the
> pharmacy owner or pharmacist. The Board should establish a policy requiring that
> pharmacists in the State of Washington to fill all lawful prescriptions, or be denied the
> right to practice pharmacy.

10  (Waggoner Decl., Human Rights Commission Letter, Exhibit J).  The Executive Director

11  further stated in his letter that a pharmacist with a religious objection to filling Plan B engages

12  in sex discrimination in violation of RCW 49.60 even if another pharmacist at the pharmacy

13  fills the prescription.  *Id.*  The Executive Director also stated that the pharmacist exposes

14  herself and her employer to liability if she refuses to fill the prescription.  *Id.*

15  As to pharmacies, the Executive Director stated that failure to stock Plan B, even where the

16  demand is low, is a violation of RCW 49.60 when the predominant reason the pharmacy does

17  not stock is religious.  *Id.*  For good measure, he even threatened the Board itself: "Our

18  interpretation of this statute is that granting pharmacists the ability to deny lawful prescriptions

19  to women would constitute illegal discrimination on the basis of sex... and could expose the

20  Board of Pharmacy to liability for writing regulations that are knowingly discriminatory." *Id.*

21  **E. The Board's Investigation of Ralph's Thriftway.**

22  In May 2006, as the Board was deliberating over the conscience right issue, Kevin

23  Stormans, part owner of Ralph's, received an anonymous call asking whether the store carried

MOTION FOR PRELIMINARY INJUNCTION- 6

ELLIS, LI & MCKINSTRY PLLC
Attorneys at Law
Two Union Square
601 Union Street, Suite 4900
Seattle, WA 98101-3906
206•682•0565 Fax: 206•625•1052

1 | Plan B. (Declaration of Kevin Stormans, "Stormans Decl."). At the time, Stormans did not
2 | know whether Ralph's carried Plan B nor did he know much about the drug. A pharmacy
3 | employee told Stormans that Ralph's did not carry Plan B because patients had not requested
4 | it. Stormans told the caller that the store did not carry the product. (Stormans Decl.).

5 | Shortly thereafter, Stormans began receiving phone calls and emails from unidentified
6 | individuals complaining that Ralph's should stock Plan B. (Stormans Decl.). These inquiries
7 | prompted Ralph's owners to research Plan B and its effects. Based on data from the United
8 | States Food and Drug Administration and other sources, Stormans concluded that even if
9 | customers should request Plan B, Ralph's could not sell it based on religious and moral
10 | grounds. (Stormans Decl.).

11 | Stormans learned that Plan B can stop the implantation of a fertilized egg or embryo.
12 | Stormans believes that Scripture and science support the conclusion that life begins with
13 | fertilization. Stormans' religious beliefs prevent him from selling a drug that intentionally
14 | terminates innocent human life. (Stormans Decl.).

15 | After Ralph's made its position known, activist Janet Blanding organized a boycott and
16 | picketing of Ralph's. (Stormans Decl.) Blanding told a local newspaper that she presented a
17 | Plan B prescription to Ralph's on July 20, 2006 and Ralph's would not fill the prescription.
18 | (Stormans Decl., Press Report, Exhibit A). Other activists presented Ralph's with Plan B
19 | prescriptions. *Id.*

20 | As with other drugs that are not in stock, Ralph's provided the activists with a list of
21 | nearby pharmacies where they could purchase the drug. There are 33 pharmacies within 5
22 | miles of Ralph's that stock and dispense Plan B. (Stormans Decl.). Blanding and her fellow
23 | activists filed complaints with the Board against Ralph's. (Stormans Decl., Exhibit A).

MOTION FOR PRELIMINARY INJUNCTION- 7

ELLIS, LI & MCKINSTRY PLLC
Attorneys at Law
Two Union Square
601 Union Street, Suite 4900
Seattle, WA 98101-3906
206•682•0565 Fax: 206•625•1052

1    The Board initiated an investigation of Ralph's pharmacist. The investigator

2    questioned Kevin Stormans about the store's position. Stormans provided a written statement

3    to the investigator on October 13, 2006. In late 2006, the Board notified Stormans and the

4    pharmacist that it had closed the investigation and would not discipline Ralph's pharmacist, but

5    shortly thereafter, in January 2007, the Board initiated a new investigation against Ralph's.

6    (Stormans Decl.). The investigation is concluded and the Board has referred the matter to its

7    legal counsel for final review. (Stormans Decl.).

8    **F. The Impact of the Regulations on the Pharmacist Plaintiffs.**

9    Plaintiff Rhonda Mesler is a licensed pharmacist employed in Washington State. Mesler

10   has practiced in Washington State throughout her 17-year career and currently serves as a

11   pharmacy manager. (Declaration of Rhonda Mesler) (Mesler Decl.). From childhood, Mesler

12   wanted to serve as a health-care provider. Her family has spent thousands of dollars to obtain

13   her Bachelor of Pharmacy degree. Mesler finds great fulfillment in advising and counseling her

14   patients regarding appropriate medications and their use. *Id.*

15   As a Christian committed to her faith, one of Mesler's core beliefs is that God creates

16   human life when an egg is fertilized. Plan B can prevent implantation of a fertilized egg and

17   acts as an abortifacient. Mesler's religious beliefs prevent her from dispensing a drug that

18   destroys human life. *Id.*

19   Upon her hire, Mesler informed her current employer that she could not dispense Plan B for

20   religious and moral reasons. Mesler is the only pharmacist on duty during her shift. With her

21   employer's permission, she has referred the few patients seeking Plan B to nearby pharmacies.

22   Her employer has told her that it cannot hire a second pharmacist to dispense Plan B. Mesler

23   expects to be fired from her position after the Rules become effective. *Id.*

ELLIS, LI & MCKINSTRY PLLC
Attorneys at Law
Two Union Square
601 Union Street, Suite 4900
Seattle, WA 98101-3906
206•682•0565 Fax 206•625•1052

1     Plaintiff Margo Thelen has served as a licensed pharmacist for 35 years. Thelen and her

2 family have had to rely heavily on Thelen's income and benefits. Until June 2007, Thelen

3 served as a staff pharmacist in a Washington retail pharmacy. Upon her hire, Thelen informed

4 her employer that her deeply-held religious beliefs prevented her from dispensing Plan B. Like

5 Stormans and Mesler, Thelen understands that Plan B can prevent implantation of a fertilized

6 egg. Thelen's religious faith teaches that although the physical structure of the new life is not

7 yet complete, God has nonetheless created human life with a soul once fertilization occurs. As

8 a health-care provider and a Christian, Thelen believes it would be immoral to dispense a drug

9 that terminates that life. *Id.*

10     During her employment, no more than four customers requested that Thelen fill a Plan B

11 prescription. With the approval of her employer, Thelen referred those four customers to

12 nearby pharmacies. (Thelen Decl.). When Thelen learned that the Board of Pharmacy passed

13 the new regulations, she contacted the Board to make sure she understood them. A

14 representative of the Board told Thelen that the new regulations required her store to dispense

15 Plan B upon a patient's request. (Thelen Decl., Exhibit A). Thelen's employer informed her

16 that it could not hire another pharmacist to work with her or to remain on call. Thelen was

17 forced to leave her employment. *Id.*

18     Thelen was unable to find a pharmacy position within her local community. She had to

19 accept a job with a much longer commute, less income, and work hours that keep her away

20 from home until nearly 10:00 p.m. on many work nights. *Id.* For the time being, Thelen's new

21 employer has agreed to try to accommodate her religious convictions, but this accommodation

22 is not guaranteed. If Thelen's supervisor changes his mind or her work circumstances change,

23

ELLIS, LI & McKINSTRY PLLC
Attorneys at Law
Two Union Square
601 Union Street, Suite 4900
Seattle, WA 98101-3906
206•682•0565 Fax: 206•625•1052

1    she could lose her position because of her religious objection. The new regulations would also

2    continue to substantially limit her future work opportunities. *Id.*

3    ### III.    ARGUMENT

4    **A. Standard for Preliminary Injunction**

> The standard for granting a preliminary injunction balances the plaintiff's likelihood
> of success against the relative hardship to the parties. To obtain a preliminary
> injunction, a party must demonstrate either: (1) a likelihood of success on the merits
> and the possibility of irreparable injury; or (2) that serious questions going to the
> merits were raised and the balance of hardships tips sharply in its favor.... These two
> alternatives represent 'extremes of a single continuum,' rather than two separate
> tests ... Thus, the greater the relative hardship to [the party seeking the preliminary
> injunction,] the less probability of success must be shown. (citation omitted).

*Clear Channel Outdoor Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003).

"[T]he fact that a case raises serious First Amendment questions compels a finding that

there exists the potential for irreparable injury, or that at the very least the balance of hardships

tips sharply in [favor of the party alleging First Amendment injury]." *Sammartano v. First

Judicial Dist. Ct.*, 303 F.3d 959, 973 (9th Cir.2002). In the First Amendment context, all that

is necessary to establish irreparable injury to support an injunction is a colorable First

Amendment claim. *Warsoldier v. Woodford*, 418 F.3d 989, 1001 (9th Cir. 2005).

**B. There is a High Probability Plaintiffs Will Prevail on the Merits.**

**1. Free Exercise Clause.**

Defendants' actions place a substantial burden on the Plaintiffs religious exercise.

Plaintiffs believe that human life begins with the fertilization of an egg, which becomes is a

fertilized embryo. Plan B prevents implantation of the fertilized embryo on a woman's uterus,

terminating the pregnancy and destroying a human life. Plaintiffs believe that only God, the

author of that life, may end it. Plaintiffs exercise their religious beliefs by refusing to stock and

ELLIS, LI & McKINSTRY PLLC
Attorneys at Law
Two Union Square
601 Union Street, Suite 4900
Seattle, WA 98101-3906
206•682•0565 Fax: 206•625•1052

1 distribute Plan B. The Rules and WLAD place a substantial burden on the exercise of

2 plaintiffs' religious beliefs by imposing sanctions, including the loss of their licenses, and thus

3 the loss of their livelihoods, if they refuse to distribute and dispense Plan B.

4 The Rules and the WLAD are not neutral or of general application. "[I]f the object of a

5 law is to infringe upon or restrict practices because of their religious motivation, the law is not

6 neutral (citation omitted) and it is invalid unless it is justified by a compelling interest and is

7 narrowly tailored to advance that interest." *Church of Lukumi Babalu Aye, Inc., v. City of*

8 *Hialeah*, 508 U.S. 520, 533, (1993).

9 Facial neutrality in the law's text does not end the inquiry. "Official action that targets

10 religious conduct for distinctive treatment cannot be shielded by mere compliance with the

11 requirement of facial neutrality. The Free Exercise Clause protects against governmental

12 hostility which is masked, as well as overt." *Id.* at 534. Courts look to the record of

13 enactment, and the effect of a law in its real operation, to determine its objective. *Id.* at 535.

14 The rule-making history of the Rules reveals that the Rules were enacted to eliminate

15 health care providers' rights of conscience based on religious or moral considerations. Despite

16 the wide availability of Plan B, and only a single patient complaint, the Board initiated the

17 rule-making process a month after Planned Parenthood and other activist groups urged the

18 Board to force health care providers to stock and distribute Plan B. "The rules were sparked by

19 complaints that some pharmacists and pharmacies refused to fill prescriptions for emergency

20 contraceptives—also known as morning after birth control pills or Plan B." (Waggoner Decl.,

21 Exhibit I).

22 The *sine qua non* development in the rule-making process, crystallizing the object of

23 the Rules, was the Governor's extraordinary intervention. The day the Board unanimously

MOTION FOR PRELIMINARY INJUNCTION- 11

ELLIS, LI & MCKINSTRY PLLC
Attorneys at Law
Two Union Square
601 Union Street, Suite 4900
Seattle, WA 98101-3906
206-682-0565 Fax: 206-625-1052

1  decided to include a conscience right, June 1, 2006, Governor Gregoire wrote the Board: I
2  "strongly oppose[d] the draft pharmacist refusal rules recommended by the Washington State
3  Board of Pharmacy.... I have stated my position in two letters ... emphasizing that no one
4  should be denied appropriate prescription drugs based on the personal, religious, or moral
5  objection of individual pharmacists." Later that week she threatened to remove members of
6  the Board who opposed her. On August 28, 2006, the Governor sent a final letter to the Board,
7  demanding an alternative rule that eliminated a right of conscience for pharmacies and
8  pharmacists. Three days later the Board abandoned its original draft to adopt the substance of
9  the Governor's proposal. The record of enactment shows that the "the object of [the] law [was]
10  ... to restrict practices because of their religious motivation." *Lukumi,* 508 U.S. at 503.

11      There is no dispute regarding the "real effect of the law in its operation." The right of
12  conscience, explicitly protected in the initial draft before the Governor intervened, is
13  noticeably absent from the Rules. Religious beliefs of pharmacy owners and pharmacists are
14  no longer a proper basis for refusing to stock and or distribute Plan B. The legal effect of the
15  Rules show the Board's objective is to restrict health providers' religious practice.

16      As to the WSHRC's threatened enforcement of RCW 49.60 against pharmacies that do
17  not stock Plan B on religious grounds, it too is subject to strict scrutiny. A law granting an
18  exemption that undermines the law's purpose is underinclusive and not a neutral law of general
19  applicability. *Lukumi,* 508 U.S. at 543. Laws are under inclusive if they prohibit some
20  conduct while allowing other similar conduct. *Id.* RCW 49.60, for example, exempts
21  religious or sectarian institutions (RCW 49.60.040 (10)), and thus pharmacies in a Catholic
22  hospital, for example, may refuse to stock Plan B thereby undermining the interest of the anti-
23  discrimination laws claimed by WSHRC. The WSHRC's interpretation of RCW 49.60 and its

MOTION FOR PRELIMINARY INJUNCTION- 12

ELLIS, LI & McKINSTRY PLLC
Attorneys at Law
Two Union Square
601 Union Street, Suite 4900
Seattle, WA 98101-3906
206•682•0565 Fax: 206•625•1052

1  enforcement position is therefore subject to strict scrutiny.  The Rules and RCW 49.60 are not
2  neutral or of general application.

3      Defendants cannot carry their burden of showing the Rules and WLAD advance a
4  compelling interest and are narrowly tailored to effectuate that interest.  "A law burdening
5  religious practice that is not neutral or not of general application must undergo the most
6  rigorous of scrutiny.  To satisfy the commands of the First Amendment, a law restrictive of
7  religious practice must advance 'interests of the highest order' and must be narrowly tailored in
8  pursuit of those interests." *Id. at* 546; *Wisconsin v. Yoder*, 406 U.S. 205, 215 (1972). . "A law
9  that targets religious conduct for distinctive treatment or advances legitimate governmental
10  interests only against conduct with a religious motivation will survive strict scrutiny only in
11  rare cases." *Lukumi*, 508 U.S. at 546.  The government carries the burden of demonstrating an
12  interest of the highest order and that it has written the law in the narrowest of means to achieve
13  that interest.

14      The Board lacks – a legitimate – let alone compelling, interest in forcing health care
15  providers to violate their religious beliefs by distributing Plan B.  The stated interest is to "to
16  improve state-wide access and reduce barriers for patients seeking" FDA approved drugs and
17  devices.  (Waggoner Decl., Final SBEIS, Exhibit K).  As discussed above, the Rules seek to
18  advance these goals by requiring pharmacies to stock Plan B and to employ at least one
19  pharmacist who will dispense it.

20      According to the Board's own survey of licensed pharmacies, the modest demand for
21  Plan B is being met.  Seventy-two percent of respondents had less than 25 requests for Plan B
22  *per year,* 13% had between just 26 and 50 requests per year.  Fully 98% of respondents
23  reported they already stocked Plan B or would stock it if warranted by customer demand.  Only

ELLIS, LI & MCKINSTRY PLLC
Attorneys at Law
Two Union Square
601 Union Street, Suite 4900
Seattle, WA 98101-3906
206•682•0565 Fax 206•625•1052

1  two respondents indicated they had religious objections to stocking the drug. Not surprisingly,

2  the Board did not receive any complaints about lack of access to Plan B before it began its

3  rule-making process. Under these circumstances, "improving state-wide access" is hardly an

4  "interest of the highest order."

5      Even if *arguendo,* access to Plan B was a compelling interest the Rules are not

6  narrowly tailored to achieve that interest. A glaring gap in the Board's record is the lack of

7  support for the conclusion that eliminating the conscience right was the only way to "improve

8  state-wide access" to Plan B. Ralph's is located within five miles of 33 pharmacies that stock

9  and dispense Plan B. Ralph's policy is to provide customers with a list of area pharmacies that

10  carry drugs they do not. Thelen and Mesler likewise refer patients to nearby pharmacies for

11  drugs not stocked by their respective pharmacies. Requiring pharmacies and pharmacists to

12  simply refer customers to alternative pharmacies in their area would advance the interests of

13  the Rules without suppressing pharmacy owners' and pharmacists' religious beliefs. Instead

14  the Board drafted a rule with the broadest possible language, forcing pharmacies and

15  pharmacist to carry and dispense Plan B regardless of their religious and moral objections to a

16  drug that unnaturally terminates a woman's pregnancy.

17      Perhaps more troubling than choosing the most intrusive method of advancing their

18  claimed interest, when an alternative existed that would not burden religious freedom, the

19  Board placed a substantial burden on religious exercise without a serious investigation as to

20  whether conscientious objectors were in fact responsible for preventing women from obtaining

21  Plan B. To this day, the Board does not know which communities, if any, are served by a

22  single pharmacy that does not offer Plan B because of religious reasons as opposed to lack of

23  demand. The survey conducted by the Board does not identify the name or location of the

MOTION FOR PRELIMINARY INJUNCTION- 14

ELLIS, LI & McKINSTRY PLLC
Attorneys at Law
Two Union Square
601 Union Street, Suite 4900
Seattle, WA 98101-3906
206•682•0565 Fax: 206•625•1052

1 respondents. Rather, it appears the Board relied on anecdotal evidence—chiefly the
2 complaints of activists against Ralph's.[2] (Waggoner Decl., Exhibit B.) The Board simply
3 assumed pharmacies and pharmacists exercising their religious beliefs might create a
4 significant barrier to patients timely obtaining Plan B. The First Amendment requires more
5 than an assumption before countenancing a substantial burden on religious freedom on the
6 grounds it is the least restrictive means. *Sherbert v. Verner,* 374 U.S. 398, 407, (1963).

7    Defendants seek to force Plaintiffs to violate their deeply held religious beliefs, without
8 a legitimate or compelling interest by forcing them to stock and dispense a drug that is readily
9 available elsewhere. This violation of the Plaintiffs' rights will result in irreparable harm, in
10 the potential lose of their professional licenses, jobs, income to support their family, or in a
11 severe violation of religious beliefs, with no real benefit to the state's interest in providing
12 access to Plan B. The potential harm to the Plaintiff far outweighs any inconvenience to
13 customers seeking Plan B. Plaintiffs' have raised a colorable, and probably successful, Free
14 Exercise claim, which is sufficient to satisfy the element of irreparable harm. *Warsoldier v.*
15 *Woodford,* 418 F.3d 989, 1001 (9th Cir. 2005).

16    **2.    Equal Protection Violation.**

17    The Washington Legislature recognizes the unalienable right enjoyed by all individuals
18 in the state: "every individual possesses a fundamental right to exercise their religious beliefs
19 and conscience." RCW 48.43.065(1) and RCW 70.47.160(1).[3] These particular statutes

20

21
[2] The Board's record of all complaints it received over a five year period ending in May 2007 shows that all but
22 the April 13, 2006 complaint were by activists against Ralph's or pharmacies nearby Ralph's, cases 10577-10592, 10657-10663 and 10680-10713 received from July 31, 2006 to November 3, 2006.
[3] "(1) The legislature recognizes that every individual possesses a fundamental right to exercise their religious
23 beliefs and conscience. The legislature further recognizes that in developing public policy, conflicting religious and moral beliefs must be respected....

MOTION FOR PRELIMINARY INJUNCTION- 15

ELLIS, LI & MCKINSTRY PLLC
Attorneys at Law
Two Union Square
601 Union Street, Suite 4900
Seattle, WA 98101-3906
206•682•0565 Fax. 206•625•1052

1 reiterate that right and explain how the right is to be preserved for health care providers

2 furnishing services to enrollees in the state's basic health care insurance plan while establishing

3 a mechanism that makes the plan's services accessible to all enrollees. That mechanism

4 includes disclosure of the religious objection and the names of other providers offering the

5 same health care services. RCW 48.43.065(2)(b). The Rules purport to deny this fundamental

6 right of conscience to pharmacists and pharmacy owners, in essence, creating a second class of

7 health care providers stripped of the right to freedom of religious belief and conscience.[4]

8      The Equal Protection Clause is violated when a law treats similarly situation persons

9 differently when there is no rational basis for drawing such a distinction or in the case of

10 impinging a fundamental right or a suspect class, if the classification does not promote a

11 compelling governmental interest and is not narrowly tailored to effectuate the purpose of the

12 law. Religious belief, as the statutes recognize, is a fundamental right. Strict scrutiny analysis

13 is required. *Droz v. Commissioner of IRS,* 48 F.3d 1120 (9th Cir. 1994). (For equal protection

14 purposes, heightened scrutiny is applicable to a statute that applies selectively to religious

15 activity if the plaintiff can show that the basis for the distinction was religious, not secular.)

16      The Board has passed a regulation that excludes pharmacies and pharmacists from the

17 protections enjoyed by other health care providers. This new regulation requires disparate

18 treatment between similarly situated health care providers. The Board has the burden of

19

20 (2)(a)   No individual health care provider, religiously sponsored health carrier, or health care facility may be required by law or contract in any circumstances to participate in the provision of or payment for a specific service if they object to doing so for reason of conscience or religion. No person may be discriminated against in

21 employment or professional privileges because of such objection

[4] Defendants may claim the fundamental right of conscience referred to in RCW 48.43.065(1) and RCW

22 70.47.160(1) applies narrowly to health care providers participating in the basic health care plan. This construction would read "fundamental right" out of these statutes. But even if such a construction could be successfully defended, it would deny the conscience right to pharmacists and pharmacy owners furnishing drugs to enrollees

23 while protecting all other health care providers participating in the plan who refuse to provide services on religious grounds, including the doctor who refuses to write a Plan B prescription.

MOTION FOR PRELIMINARY INJUNCTION- 16

ELLIS, LI & McKINSTRY PLLC
Attorneys at Law
Two Union Square
601 Union Street, Suite 4900
Seattle, WA 98101-3906
206•682•0565 Fax 206•625•1052

advancing a compelling interest for excluding pharmacies and pharmacists while protecting other providers. *Green v. City of Tucson*, 340 F.3d 891, 896 (9th Cir. 2003).

As discussed in the previous section regarding Defendants' Free Exercise violation, Defendants cannot advance a compelling interest served by the Rules and in the least restrictive manner. Defendants claim the interest advanced by the rule is "to improve state-wide access and reduce barriers for patients seeking Plan B." And yet health care providers who, for example, perform such vital services as tuberculosis vaccinations, chemotherapy treatments, and deliveries enjoy a right of conscience. Indeed, the fundament right of conscience reiterated by the above statute*s exempts doctors from writing Plan B prescriptions on religious grounds.* If the Legislature has excused health care providers on the basis of religious belief from furnishing these vital services, and doctors from prescribing Plan B, than it is doubtful the defendants will be able to carry their burden of demonstrating that increasing the availability of Plan B is a compelling state interest. And as discussed in the previous section, burdening plaintiffs' religious freedom is not the least restrictive means for advancing this interest.

A separate, but related inequality of the Rules is the disparate treatment of solo-pharmacists. Though all pharmacists are similarly situated – receiving similar training and education and qualify in the same way for a license – the Rules treat them differently. A pharmacist refusing to distribute Plan B who works in a setting where a non-refusing pharmacist is also on duty has a conscience right—he is permitted to decline and have the other pharmacist fill the order. But a solo-pharmacist, like Mesler, must fill Plan B orders and violate her conscience. Thus, in effect, the Rules allow disparate treatment based on the decisions of employers or differing business models. A rule that withholds a fundamental right

ELLIS, LI & McKINSTRY PLLC
Attorneys at Law
Two Union Square
601 Union Street, Suite 4900
Seattle, WA 98101-3906
206•682•0565 Fax 206•625•1052

1 from one group and extends it to another, similarly situated group on such arbitrary grounds
2 does not satisfy strict scrutiny analysis. If the Defendants can permit the refusing pharmacist
3 to refer the Plan B request to another pharmacist at his work site, they could have permitted the
4 solo-pharmacist to refer the patient with a Plan B prescription to a pharmacist in a nearby
5 pharmacy. Defendants will not be able to satisfy strict scrutiny analysis.

6       Similarly, the selective enforcement of the WSHRC to enforce the anti-discrimination
7 laws against pharmacies and pharmacists violates the Equal Protection Clause. The WSHRC
8 maintains conscience rights are illegal when exercised by pharmacists in violation of RCW
9 49.60. (Ex. J, Waggoner Decl.) And yet it is unlikely the WSHRC has enforced the anti-
10 discrimination laws against doctors who refuse on conscience grounds to write a prescription
11 for Plan B to a patient enrolled in insurance plans.[5] Nor has the WSHRC challenged the
12 validity of the statutes protecting health care providers treating enrollees.

13       The WSHRC may not, therefore, treat disparately pharmacists' religious beliefs on the
14 one hand and permit doctors' religious beliefs on the other without showing a compelling
15 governmental interest and that the least restrictive means are employed to advance that interest.
16 As argued above, there is no compelling state interest advanced by forcing health care
17 providers to distribute a drug already available in the market in violation of their religious
18 beliefs, especially when the Board's interest can be furthered by simply requiring pharmacists
19 to refer customers to nearby pharmacies without impairing plaintiffs' religious freedom.[6]

20

21

---

[5] Nor has the WSHRC publicly threatened doctors and other health care providers who refuse to perform abortions or offer other forms of birth control.
[6] Significantly, after reiterating the fundamental right of conscience, RCW 48.43.065(1) and RCW 70.47.160(1) provide a least restrictive mechanism for protecting enrollee access to services when a health care provider refuses to perform a service on religious grounds. The enrollee is provided with a list of other health care providers who offer the same service. RCW 48.43.065(2)(b)(ii).

MOTION FOR PRELIMINARY INJUNCTION- 18

ELLIS, LI & MCKINSTRY PLLC
Attorneys at Law
Two Union Square
601 Union Street, Suite 4900
Seattle, WA 98101-3906
206•682•0565 Fax 206•625•1052

### 3. Procedural Due Process Claim.

Plaintiffs qualified for and received licenses to practice pharmacy and to dispense pharmaceuticals. Their licenses, occupations and business constitute property and liberty interests protected by the Due Process Clause of the Fourteenth Amendment. That property and liberty interest encompasses "a fundamental right to exercise their religious beliefs and conscience" as recognized in RCW 48.43.065(1) and RCW 70.47.160(1). Consequently, the Rules impair plaintiffs' liberty and property interests without due process of law.

"Liberty interests protected by the Fourteenth Amendment may arise from two sources-the Due Process Clause itself and the laws of the States." *Hewitt v. Helms*, 459 U.S. 460, 466 (1983); *see also Toussaint v. McCarthy*, 801 F.2d 1080, 1089 (9th Cir. 1986), *cert. denied*, 481 U.S. 1069 (1987). "A state may create a constitutionally protected liberty interest by establishing regulatory measures that impose substantive limitations on the exercise of official discretion." *Baumann v. Arizona Dept. of Corrections*, 754 F.2d 841, 844 (9th Cir.1985). When a person's license to pursue a calling or profession is taken away or interfered with by the state in a substantial fashion, a plaintiff may demonstrate a due process violation. *Swinehart v. McAndrews*, 221 F. Supp. 2d 552 (E.D.Pa. 2002.); *D'Ambra v. City of Providence*, 21 F. Supp. 2d 106 (D.R.I. 1998) (An individual has a property right, for purposes of due process or the takings clause, in a license that a government official denies upon a ground other than one that comes within the scope of the official's authority.)

Plaintiffs' interests in their respective licenses are significant. Ralph's Thriftway depends on business generated by the pharmacy. Plaintiffs, Mesler and Thelen, have practiced as pharmacists nearly their entire work life. They have no other profession. Without their licenses, Plaintiffs will suffer significant financial losses and the loss of very fulfilling careers.

ELLIS, LI & MCKINSTRY PLLC
Attorneys at Law
Two Union Square
601 Union Street, Suite 4900
Seattle, WA 98101-3906
206•682•0565 Fax: 206•625•1052

1  Defendants exceeded their authority and arbitrarily interfered with plaintiffs' licenses and

2  livelihood by enacting and seeking to enforce the Rules which contradict the "fundamental

3  right" of conscience conferred by statute on Plaintiffs as licenses.

4  **C. Supremacy Clause Violation.**

5  Under 42 U.S.C. 2000e-7, any state law "which purports to require or permit the doing

6  of any act which would be an unlawful employment practice under this subchapter" is

7  presumptively invalid and unenforceable under the Supremacy Clause of Article VI of the U.S.

8  Constitution. The Civil Rights Act of 1964, 42 U.S.C. 2000e-2 prohibits employers from

9  discriminating against any employee with respect to religion. The Rules and the Human Rights

10  Commission's publicly stated enforcement position require Washington employers such as

11  Stormans to take adverse employment action against the plaintiff pharmacists based on their

12  religious beliefs and practices, "an unlawful employment practice" under Title VII, 42 U.S.C.

13  2000e-7 and Article VI of the United States Constitution.

14  This is because the Rules require pharmacies to employ at least one pharmacist at all

15  times to dispense Plan B. For many, if not most, pharmacies it is not economically feasible to

16  employ two pharmacists: the pharmacist whose conscience prevents her from dispensing Plan

17  B and a second pharmacist who will dispense Plan B. Plaintiff Mesler is a solo-pharmacist and

18  her employer has indicated that it cannot afford to employ two pharmacists and so she fears that

19  her employer will terminate her. (Mesler Decl.).

20  The May 17, 2006 letter of the Executive Director of the Washington State Human

21  Rights Commission is posted on its official website[7] as a warning to pharmacist employers.

22  (Waggoner Decl., Exhibit J).The WSHRC declares that any pharmacist who refuses to dispense

23

ELLIS, LI & McKINSTRY PLLC
Attorneys at Law
Two Union Square
601 Union Street, Suite 4900
Seattle, WA 98101-3906
206•682•0565 Fax: 206•625•1052

1 Plan B on religious grounds, even if a second pharmacist is on duty who will dispense the drug,

2 is an act that exposes herself and her employer to an enforcement action under RCW 49.60.

> 3 It is also WSHRC's position that allowing a practice of "refuse and refer" as a means of
> addressing this issue [religious objections to filling Plan B orders], allows and perpetuates
> 4 discriminatory behavior.... Our interpretation of this statute [RCW 49.60.010] is that
> granting pharmacists the ability to deny lawful prescriptions to women would constitute
> 5 illegal discrimination on the basis of sex under the Washington Law Against
> Discrimination, would expose pharmacists to significant legal liability for such
> 6 discriminatory, and hence, illegal acts, would similarly expose stores and corporations,
> under whose purview pharmacists operate, under the law of agency, and could expose the
> 7 Board of Pharmacy to liability for writing regulations that are knowingly discriminatory

8 (Waggoner Decl., Exhibit J). Moreover, the Executive Director explains (incorrectly) to

9 employers that they are relieved from the accommodation requirement of Title VII and may

10 take an adverse employment action against a pharmacist who refuses to fill based on sincerely

11 held religious beliefs. However, employers can accommodate pharmacists' religious beliefs

12 without undue hardship by permitting them to refer Plan B requests to nearby pharmacies, or

13 "refuse and refer." But the WSHRC expressly rejects this accommodation and characterizes it

14 as an illegal act that it claims places the employer in jeopardy of violating RCW 49.60. The

15 Rules and the WSHRC's rejection to "refuse and refer" violate the Supremacy Clause.

16 **D. Without Court Intervention Plaintiffs Will Sustain Irreparable Harm.**

17 Having shown the likelihood of success on the merits, including "a colorable First

18 Amendment" claim, plaintiffs' showing of relative harm need only be minimal based on the

19 Ninth Circuit single continuum test.

20 First, Plaintiffs' colorable First Amendment claim satisfies the irreparable harm

21 element. "In the Ninth Circuit, a party seeking preliminary injunctive relief in a First

22 Amendment context can establish irreparable injury sufficient to merit the grant of relief by

23

---

[7] http://www.hum.wa.gov/Women's%20Issues/Index.html

MOTION FOR PRELIMINARY INJUNCTION- 21

ELLIS, LI & McKINSTRY PLLC
Attorneys at Law
Two Union Square
601 Union Street, Suite 4900
Seattle, WA 98101-3906
206•682•0565 Fax: 206•625•1052

1 demonstrating the existence of a colorable First Amendment claim." *Warsoldier v. Woodford*,
2 418 F.3d 989, 1001 (9th Cir. 2005).

3 Second, permitting the defendants to enforce the Rules and RCW 49.60 against
4 pharmacists and pharmacies that object on religious grounds subjects them to the burdensome
5 choice of either exposing themselves to disciplinary action, the loss of their livelihoods, plus
6 penalties and legal fees under the WLAD, if they stand firm and do not violate their religious
7 beliefs on the one hand or capitulate and violate their religious beliefs on the other. *See*
8 *Vietnamese Buddhism Study Temple v. City of Garden Grove*, 460 F. Supp. 2d 1165, 1173
9 (C.D.Cal. 2006). (City enjoined from enforcing zoning ordinance against temple because
10 enforcement order subjected them to "burdensome choice" between misdemeanor liability and
11 discontinuing worship services.)

12 Third, the balance of relative hardships sharply tips in favor of pharmacies and
13 pharmacists with religious objections. Defendants cannot show any harm if the preliminary
14 injunction should issue. The Board's own survey supports the conclusion that the modest
15 demand for Plan B can be filled by the 98% of respondents who stock it or would if the
16 demand warranted it. Plaintiffs have also demonstrated the wide availability of the drug in
17 their communities.

18 By contrast, the harm to plaintiffs is significant. They must choose between exposing
19 themselves to the loss of their licenses, livelihoods and an anti-discrimination enforcement
20 action and violating their consciences. At least 15% of Ralph's business is from the pharmacy
21 itself. (Stormans Decl.). A substantially higher portion of Ralph's business comes from the
22 customers the pharmacy customers who also purchase groceries in the store. *Id.* Mesler
23 depends on her income and benefits to support her husband, a private school teacher, and her

MOTION FOR PRELIMINARY INJUNCTION- 22

ELLIS, LI & MCKINSTRY PLLC
Attorneys at Law
Two Union Square
601 Union Street, Suite 4900
Seattle, WA 98101-3906
206•682•0565 Fax: 206•625•1052

1 │ three children, one of whom must reside in a special needs home. Thelen relies heavily on her

2 │ income and employment benefits to support her family.

3 │ When contesting the constitutionality of a statute, "it is not necessary that [the plaintiff]

4 │ first expose himself to actual arrest or prosecution to be entitled to challenge [the] statute that

5 │ he claims deters the exercise of his constitutional rights." *Babbitt v. United Farm Workers*

6 │ *Nat'l Union,* 442 U.S. 289, 298 (1979) (citation omitted). "When the plaintiff has alleged an

7 │ intention to engage in a course of conduct arguably affected with a constitutional interest, but

8 │ proscribed by a statute, and there exists a credible threat of prosecution thereunder,' he 'should

9 │ not be required to await and undergo a criminal prosecution as the sole means of seeking

10 │ relief." *Id.* (citing *Doe v. Bolton,* 410 U.S. 179, 188 (1973)). *See Canatella v. State of*

11 │ *California,* 304 F.3d 843, 852 (9th Cir. 2002) ("We are not so quick to render Canatella [an

12 │ attorney] a "hapless plaintiff between the Scylla of intentionally flouting ... [the] law and the

13 │ Charybdis of forgoing what he believes to be constitutionally protected activity in order to

14 │ avoid becoming enmeshed in a [bar disciplinary] proceeding"). The Board has completed its

15 │ investigation against Ralph's and the store now expects charges to be filed. Plaintiff Mesler

16 │ expects to be terminated from her employment soon. Plaintiff Thelen has no guarantee that her

17 │ new position, with less income and more difficult work hours, will continue to permit her

18 │ conscientious objection.

19 │ Only by enjoining the enforcement of the Rules and the WLAD, can the Plaintiffs avoid

20 │ being forced to intentionally flout the law or foregoe constitutionally protected activity. "The

21 │ loss of First Amendment freedoms, for even minimal periods of time, unquestionably

22 │ constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373 (1976). To summarize,

23 │

MOTION FOR PRELIMINARY INJUNCTION- 23

ELLIS, LI & MCKINSTRY PLLC
Attorneys at Law
Two Union Square
601 Union Street, Suite 4900
Seattle, WA 98101-3906
206•682•0565 Fax: 206•625•1052

1   plaintiffs have shown both the likelihood of success on the merits and that the balance of

2   hardships tips in their favor. A preliminary injunction should issue.

3   **E. A Bond is Not Warranted**

4   The court has wide latitude to set an amount that will minimize the burden on a party

5   where there is a strong likelihood of prevailing on the merits or the defendant cannot

6   demonstrate damages arising from a wrongful injunction. In such cases, a court need not

7   require a bond at all. *Gorbach v. Reno*, 219 F.3d 1087, 1092 (9th Cir. 2000).

8   **V. CONCLUSION**

9   For the foregoing reasons, plaintiffs respectfully request an order enjoining defendants

10   from enforcing the Rules and the WLAD against them pending trial and any appeals.

11   DATED this 26th day of July, 2007.

12   Respectfully submitted,

13

14   Steve O'Ban, WSBA No. 17265
Kristen K. Waggoner, WSBA No. 27790

15   Ellis, Li & McKinstry PLLC
Two Union Square

16   601 Union Street, Suite 4900
Seattle, WA 98101-3906

17   (206) 682-0565
Attorneys for Plaintiffs

18

19

20

21

22

23

ELLIS, LI & McKINSTRY PLLC
Attorneys at Law
Two Union Square
601 Union Street, Suite 4900
Seattle, WA 98101-3906
206•682•0565 Fax 206•625•1052