The Honorable Ronald B. Leighton

IN THE UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| STORMANS, INCORPORATED doing business as RALPH'S THRIFTWAY; RHONDA MESLER, MARGO THELEN,<br><br>　　　　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>MARY SELECKY, Acting Secretary of the Washington State Department of Health; LAURIE JINKINS, Assistant Secretary of Washington Health Systems Quality Assurance; GEORGE ROE, SUSAN TIEL BOYER, DAN CONNOLLY, GARY HARRIS, VANDANA SLATTER, REBECCA HILLE, ROSEMARIE DUFFY, Members of the Washington Board of Pharmacy; KATHY BAROS FRIEDT, ELLIS CASSON, DEBORAH SIOUS CANO-LEE, JERRY HEBERT, SHAWN MURINKO, Commissioners for the Washington Human Rights Commission; MARC BRENMAN, Executive Director of the Washington Human Rights Commission,<br><br>　　　　　　　　　　　Defendants. | Case No. C07-5374-RBL<br><br>**MOTION TO INTERVENE**<br><br>**NOTE ON MOTION CALENDAR:<br>August 31, 2007**<br><br>**Oral Argument Requested** |

MOTION TO INTERVENE: C07-5374-RBL

Pursuant to Fed. R. Civ. P. 24(a), Judith Billings, Rhiannon Andreini, Jeffrey Schouten, Molly Harmon, Catherine Rosman, Emily Schmidt, and Tami Garrard (together, "Proposed Intervenors") jointly move for leave to intervene as of right as defendants in this action. In the alternative, Proposed Intervenors request permission to intervene under Fed. R. Civ. P. 24(b). Defendants Selecky, Jinkins, and Board of Pharmacy have indicated that they support this request for intervention.

Each of the Proposed Intervenors is a Washington resident with an interest that is threatened by this lawsuit—ensuring timely access to lawfully prescribed medications or medications with restricted access. Ms. Andreini, Ms. Harmon, Ms. Rosman, Ms. Schmidt, and Ms. Garrard are women of child-bearing age who are concerned about ensuring that they have access to emergency and other contraception. Ms. Billings and Dr. Schouten are both HIV positive, and have an interest in ensuring timely access to the life-saving medications necessary to manage their illnesses. In addition to his personal interest in access to HIV medications, as an HIV health care provider, Dr. Schouten is concerned about his patients' timely access to life-saving drugs.

The regulations at issue in this action protect the interests of the Proposed Intervenors and other Washington residents like them. By setting forth the responsibilities of pharmacies and pharmacists regarding the dispensation of medication, the regulations ensure that patients have timely access to lawfully prescribed and medications with restricted access. If Plaintiffs succeed in this action and the regulations are invalidated, the Proposed Intervenors' ability to ensure that they can access the medication they need will be greatly impaired. Because the Proposed Intervenors have unique, particularized interests, they will not be adequately represented by the current parties. For the reasons set forth below, the motion to intervene should be granted.

## I. FACTS

### A. Background Facts Relating To The Pharmacy and Pharmacist Rules.

Effective July 26, 2007, the Washington State Board of Pharmacy amended regulations setting forth the responsibilities of pharmacies and pharmacists regarding the dispensation of

Heller Ehrman LLP
701 Fifth Avenue, Suite 6100
Seattle, Washington 98104-7098
Telephone (206) 447-0900

medication. The adopted rules are intended to ensure that patients have timely access to lawfully prescribed and clinically safe drugs. Explanatory Letter at 1 (Declaration of Rima J. Alaily in Support of Defendant-Intervenors' Opposition to Motion for Preliminary Injunction, ("Alaily Decl."), Ex. B).

The Pharmacy Rule, WAC 246-869-010, imposes a duty on a pharmacy to dispense all lawful prescriptions or provide a therapeutic equivalent in a timely manner. WAC 246-869-010(1).[1] A pharmacy may not avoid dispensing medication by referring a patient to another pharmacy; the rule requires "pharmacies to meet the pharmaceutical needs of their patients." *See also* Explanatory Letter at 3 (Alaily Decl., Ex. B). The Pharmacist Rule, WAC 246-863-095, makes it "a pharmacist's primary responsibility to ensure patients get safe and appropriate medication therapy." *Id.* at 2. A pharmacist cannot delegate to pharmacy support staff the decision whether to dispense a lawfully prescribed drug or device. WAC 246-863-095(2)(j). Moreover, a pharmacist may be disciplined if he or she destroys or refuses to return an unfilled lawful prescription, violates a patient's privacy, discriminates against patients, or intimidates or harasses a patient. WAC 246-863-095(4). A pharmacist may ask another pharmacist on duty to provide the medication, but in all cases the *pharmacy* must dispense the medication in a timely manner. The purpose of these regulations is "to promote patient safety by assuring that patients have access to lawful, appropriate medications without delay." Explanatory Letter at 1 (Alaily Decl., Ex.B).

**B.  Background Facts Relating To The Litigation.**

On July 25, 2007, Plaintiffs filed suit against Defendants Selecky and Jinkins, officials within the department of Department of Health, members of the Board of Pharmacy, and the Commissioners and Executive Director of the Human Rights Commission, seeking to invalidate the Rules. Plaintiff Stormans Incorporated, which owns and operates a pharmacy in its grocery store, refuses for "moral and religious reasons" to allow its pharmacists to dispense Plan B. Storman Decl. ¶ 17. Similarly, Plaintiffs Rhonda Mesler and Margo Thelen are

---

[1] A pharmacy is excused from this duty in certain expressly enumerated circumstances. *Id*.

pharmacists who refuse to dispense Plan B for religious reasons. Mesler Decl. ¶¶ 11-12; Thelen Decl. ¶¶ 7-8. None of the Plaintiffs allege any injury as a result of the Rules, but Plaintiffs contend that the Rules impermissibly burden their free exercise of religion, violate the Equal Protection Clause, conflict with the Civil Rights Act of 1964, and deny them procedural due process. The day after filing their initial complaint, on July 26, 2007, Plaintiffs filed an Amended Complaint, along with a motion seeking a preliminary injunction. *See* Dkt. Nos. 8-9. Pursuant to the parties' stipulation and the Court's August 8, 2007 order, the motion is noted for August 17, 2007. *See* Dkt. No. 34.

### C. Background Facts Relating To The Intervenors.

The Proposed Intervenors are all Washington residents who have an interest in ensuring that they have timely access to lawfully prescribed and clinically safe drugs.

**Dr. Jeffrey T. Schouten**. Dr. Schouten is a Clinical Assistant Professor of Surgery at the University of Washington, a primary care physician at Washington's largest HIV-specialty clinic, and the current chair of the Governor's Advisory Council on HIV/AIDS. Schouten Decl. ¶ 3-5.[2] Dr. Schouten (who provided testimony in favor of the Board of Pharmacy Rules during the rule-making process) knows that timing is critical to effective treatment and prevention of HIV. For instance, following exposure to HIV, a treatment of combination anti-retroviral therapy can substantially reduce a patient's risk of contracting HIV, but there is a short window of effectiveness. The treatment must be started quickly after exposure; after 72 hours, it is largely ineffective. *Id.* ¶ 7. Timing is also critical for individuals managing HIV through chronic therapy. HIV medication must be taken daily, and missing even a couple of doses could allow the HIV virus to resume replicating and develop resistance to the drug. It is crucial that individuals undergoing chronic therapy for HIV are able to access refills of their medications without delay. *Id.* ¶ 8. Dr. Schouten, who is HIV positive, wishes to ensure that he and his patients have timely access to necessary medication. *Id.* ¶ 11.

---

[2] This brief refers to the Defendant-Intervenors' declarations filed herewith using the following short form: "[Defendant-Intervenor] Decl."

**Judith Billings**. Ms. Billings is an education professional and former elected state-wide official. She holds a juris doctorate from Seattle University, and has been active in education and public service for more than 40 years. Billings Decl. ¶¶ 3, 4. Ms. Billings contracted the HIV virus in the early 1980s from a medical procedure. *Id*. ¶ 6. She takes HIV medications daily, and knows that being able to access appropriate medications in a timely manner is critical to her survival. *Id*. ¶ 9. If she needs an emergency refill, she must go to a pharmacy to obtain it. Because going without the appropriate medications for even a short time can cause serious health consequences, she wants to ensure that her health and survival will not be put at risk by a pharmacist or pharmacy who will not fill a prescription. *Id.* ¶ 10.

**Molly Harmon.** In 2003, Molly Harmon became concerned that the method of contraception she was using had failed, so she telephoned her doctor and received a prescription for "Plan B," a form of emergency contraception. Harmon Decl. ¶ 5. Ms. Harmon obtained a prescription from her doctor, and went to the Bartell Drugs at University Village in Seattle. *Id*. ¶¶ 6-7. The pharmacist on duty told Ms. Harmon that Plan B was not a form of birth control and that she could provide Ms. Harmon with information about other forms of birth control. *Id.* Ms. Harmon, extremely upset, asked to speak to the head pharmacist who ultimately filled her prescription. *Id*. ¶ 8. Ms. Harmon left the pharmacy angered about having to defend an intimate decision that had been made between herself, her partner, and her doctor, to a complete stranger. *Id*. ¶ 9.

**Emily Schmidt**. Ms. Schmidt has also experienced difficulties obtaining Plan B. Ms. Schmidt is a single, 22 year-old-woman who was born and raised in Wenatchee, Washington. Schmidt Decl. ¶¶ 3-4. In March 2007 Ms. Schmidt requested Plan B at two pharmacies in Wenatchee. *Id*. ¶¶ 7-9. At both she was informed that the pharmacy could not honor her request because the pharmacy or pharmacist was unwilling to dispense Plan B. *Id.* ¶ 8-9.

**Rhiannon Andreini**. Ms. Andreini had a similar experience in November 2005, while visiting Mukilteo, Washington. She went to the Albertsons pharmacy to buy Plan B when her regular method of contraception failed. Andreini Decl. ¶ 6. The pharmacist refused to provide Ms. Andreini with Plan B, stating that the store did not carry it. *Id.* When she asked the

pharmacist where else she could go, the pharmacist provided her with the name of another pharmacy but would not provide her with directions. *Id.* Upset with the cold and disapproving manner in which the pharmacist treated her and unfamiliar with the area, Ms. Andreini cut her vacation short and returned to Bellingham the next morning to go to a pharmacy that she knew would dispense Plan B. *Id.*

**Catherine Rosman**. Ms. Rosman is a married, 22-year-old woman who lives in Spokane, Washington. She has taken Plan B on two occasions, and in both cases chose to obtain the medication from Planned Parenthood because she feared being subjected to judgment or harassment. Rosman Decl. ¶ 5. Ms. Rosman works as a case manager at a Young Woman's Christian Association (YWCA) shelter assisting women and adolescent girls who have been subjected to domestic violence. *Id.* ¶ 4. As part of her work, she has been asked on several occasions about the possibility of obtaining emergency contraception. Because she has heard numerous accounts of pharmacists who refused to fill emergency contraception prescriptions or otherwise acted in a hostile or harassing manner to those seeking such prescriptions, she advises that women go to Planned Parenthood rather than pharmacies to ensure that they are treated with respect. *Id.* ¶ 6. An active member of Spiritual Youth for Reproductive Freedom, an organization dedicated to educating, organizing, and empowering young adults to put their faith into action and advocate for pro-choice social justice, she has an interest in ensuring that she, along with other women in need, can get timely access to emergency and other forms of contraception. *Id.* ¶ 8-9.

**Tami Garrard**. Ms. Garrard is a single 31-year-old woman. Garrard Decl. ¶ 3. If her current method of birth control failed, she would likely use Plan B to prevent an unintended pregnancy. *Id.* ¶ 4. It is important to her to have timely access to such medications if the need were to arise. *Id.* ¶ 5.

## II.   ARGUMENT

### A.   The Proposed Intervenors Should Be Granted Intervention as of Right Pursuant to Rule 24(a).

Rule 24(a) of the Federal Rules of Civil Procedure permits intervention as of right if: (1) the motion to intervene is timely; (2) the proposed intervenor claims a significantly

protectable interest relating to the property or transaction which is the subject of the action; (3) the proposed intervenor is so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the proposed intervenor's interest is inadequately represented by the parties to the action. *Southwest Center for Biological Diversity v. Berg,* 268 F.3d 810, 817-18 (9th Cir. 2001). The Rule is to be construed liberally in favor of potential intervenors. *Id.* at 818. Further, a district court is required to accept as true all non-conclusory allegations made in support of an intervention motion. *Id.* at 819-20.

As demonstrated below, the Proposed Intervenors easily meet each of these four criteria. As such, the Proposed Intervenors should be allowed to intervene as a matter of right.

### 1. The Proposed Intervenors' motion to intervene is timely.

In determining whether a motion to intervene is timely, the court considers: (1) the stage of the proceedings; (2) the prejudice to other parties; and (3) the reason for and length of the delay. *United States ex rel. McGough v. Covington Techs.*, 967 F.2d 1391, 1394 (9th Cir. 1992). All of these criteria are met. Once this action was initiated, the Proposed Intervenors lost no time in filing this motion to intervene. This action was filed on July 25, 2007, and this motion comes less than three weeks later. No parties can possibly be prejudiced by the timing of this motion to intervene; indeed, Defendants Selecky, Jinkins, and Board of Pharmacy have indicated that they welcome this request for intervention. The Proposed Intervenors have complied with all existing deadlines, including the deadline for opposing Plaintiffs' Motion for a Preliminary Injunction.[3] *See* Defendant-Intervenors' Opposition to Motion for Preliminary Injunction (attached as Ex. 1); Alaily Decl. (attached as Ex. 2). Furthermore, discovery has not yet begun, and the parties' joint status report is not due until early October. Because this request is timely and comes during the very preliminary stage of this case, the Proposed Intervenors' request should be granted.

---

[3] Furthermore, the Proposed Intervenors intend to comply with the deadline to answer or otherwise respond to Plaintiffs' Amended Complaint.

### 2. The Proposed Intervenors have significant protectable interests in the subject of the action.

Intervention as of right is also appropriate because the Proposed Intervenors have significant protectable interests at stake. Indeed, the Proposed Intervenors' interests in this action far exceed what is required by the rule.

The Ninth Circuit has stated that the "interest" requirement is a threshold requirement rather than "the determinative criterion for intervention." *County of Fresno v. Andrus*, 622 F.2d 436 (9th Cir. 1980) (holding farmers' group potentially seeking to purchase land was entitled to intervene as of right in an action challenging regulations governing land sales). "It is generally enough that the interest [asserted] is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue." *Southwest Center*, 268 F.3d at 818 (internal quotations omitted). The Ninth Circuit has previously recognized that economic interests, such as that protected by contract, are sufficient interests to warrant intervention under Fed. R. Civ. P. 24(a). *See id.* at 820. *See also Forest Conserv. Cncl. v. United States Forest Serv.*, 66 F.3d 1489, 1495 (9th Cir. 1995).

The Proposed Intervenors' interests at issue here—the interest in ensuring timely access to lawfully prescribed and clinically safe drugs—far exceeds that required for intervention under Rule 24. Ms. Andreini, Ms. Harmon, Ms. Rosman, Ms. Schmidt, and Ms. Garrard have an interest in ensuring access to emergency and other contraception. *See, e.g.,* Andreini Decl. ¶¶ 3, 7. Ms. Billings and Dr. Schouten are HIV positive, and have an interest in ensuring access to the life-saving medications they need to manage their illness. Billings Decl. ¶ 6; Schouten Decl. ¶¶ 10, 11. Dr. Schouten, as a health care provider for HIV patients, has an additional interest in ensuring that his patients have timely access to appropriate medication. Schouten Decl. ¶ 11. These interests are legally protected by Washington law, including the regulations that are being challenged in this action. For example, RCW § 18.64.005, the statutory authority for the rulemaking at issue, provides in relevant part that the Board shall "[p]romulgate rules for the dispensing . . . of drugs and devices and the practice of pharmacy for the protection and promotion of public health, safety, and welfare."

RCW 18.64.005(7).  Moreover, the Proposed Intervenors' interest in access to contraception is constitutionally protected.  *Carey v. Population Services International*, 431 U.S. 678 (1977).

### 3. The Proposed Intervenors' ability to protect their interests may be impaired by the disposition of this action.

The outcome of this action will have a direct and substantial impact on the Proposed Intervenors' ability to protect their interest in ensuring timely access to lawfully prescribed and clinically safe drugs.  The Rules, which Plaintiffs seek to invalidate, are intended to protect the interests of the Proposed Intervenors and the interests of other Washington citizens like them.

The Rules are intended to prevent the harms to public health and safety that could result from a pharmacist's refusal—regardless of the reasons behind it—to fill valid prescriptions or dispense emergency contraception.  *See* Notice of Proposed Rule-Making (Alaily Decl., Ex. I).  For the Proposed Intervenors, such an incident could not only cause emotional distress and expense, but have more serious consequences.  If Ms. Billings, Dr. Schouten, or one of Dr. Schouten's patients were denied HIV medications, it could lead to serious health risks, because timely access to medication is critical to the effective management of their illness.  Billings Decl. ¶¶ 9-10; Schouten Decl. ¶¶ 7-8.  Similarly, the effectiveness of Plan B decreases hourly; if Ms. Andreini, Ms. Harmon, Ms. Rosman, Ms. Schmidt, or Ms. Garrard were denied Plan B the resulting delay could lead to an unintended pregnancy.

Without the protection of the Rules, the Proposed Intervenors would have little assurance that they could obtain lawful medication and contraception from their pharmacies.  This is particularly true for rural women, who have access to fewer pharmacies.  If Plaintiffs succeed in this action, the Rules will be invalidated, and the Proposed Intervenors will be directly and adversely impacted.  They are entitled, therefore, to intervene in this action to protect their interests.

### 4. The Proposed Intervenors' interests are not adequately represented by the existing parties to the action.

Finally, the Proposed Intervenors have unique, personal interests that will not be adequately represented in this action unless they are able to intervene.  The State Defendants

have a broad constituency—they represent all Washington citizens, including pharmacists such as Plaintiffs Thelan and Mesler. In contrast, the Proposed Intervenors represent a unique subset of this constituency who, in some cases, have been harassed or outright denied necessary medication. Given the minimal showing of inadequacy required and the importance of the Proposed Intervenors' interests at stake in this action, their request must be granted.

The proposed intervenor's burden on this requirement "should be treated as minimal." *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n.10 (1972). A proposed intervenor need not show that the representation is, or will be, inadequate. *Conserv. Law Found. v. Mosbacher*, 966 F.2d 39, 44 (1st Cir. 1992). Instead, a proposed intervenor need only show that the representation of his interests "may be" inadequate. *Id*. Courts generally consider three factors when making this determination: (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceedings that other parties would neglect. *County of Fresno*, 622 F.2d 436 at 438-39. A court must resolve any doubts on the question of adequacy of representation in favor of permitting intervention. 6 Moore's Federal Practice § 24.03[4][a][i] (2007).

The Proposed Intervenors' interests in this action are sufficiently different from the State Defendants' interest that they will not be adequately represented if unable to intervene. The Proposed Intervenors have unique, personal interests in ensuring access to emergency contraception and HIV medication. The State Defendants have a broad constituency—they represent all Washington citizens—and are obligated to serve the public interest. Indeed, Plaintiffs Thelan and Mesler are part of the constituency represented by the State Defendants. In contrast, the proposed intervenors represent a unique subset of this constituency whose private interests diverge from the overall public interest. For example, unlike the State Defendants, Proposed Intervenors have no interest in making arguments about the enforcement mechanisms or cost effectiveness of the Rules. Because the Proposed Intervenors' personal interests in achieving timely access to medications could potentially conflict with those of the

State Defendants, intervention is warranted.  Indeed, as noted by the Ninth Circuit in *Forest Conservation Council*, "'[i]nadequate representation is most likely to be found when the applicant asserts a personal interest that does not belong to the general public.'"  66 F.3d at 1499 (quoting 3B Moore's Federal Practice, Par. 24.07[4] at 24-27 (2d ed. 1995)) (reversing district court's denial of intervention as of right because the Forest Service was "required to represent a broader view than the more narrow, parochial interests" of the would-be intervenors, the State of Arizona and Apache County).  *Smuck v. Hobson*, 408 F.2d 175, 181 (D.C. Cir. 1969) ( "The school board represents all parents within the District.  The intervening appellants may have more parochial interests centering upon the education of their own children.  While they cannot of course ask the Board to favor their children unconstitutionally at the expense of others, they like other parents can seek the adoption of policies beneficial to their own children.").

Given these differences in the interests of the Proposed Intervenors and the State Defendants, it cannot be said that the State Defendants "will undoubtedly make all of [the proposed intervenors'] arguments" and will be "capable of and willing" to make those arguments.  *County of Fresno*, 622 F.2d at 438-39.  *See also Central Valley Chrysler-Jeep Inc. v. Witherspoon*, 2005 U.S. Dist. LEXIS 26536, *20-21, No. CV-F-04-6663 REC/JLO (E.D. Cal. Oct. 20, 2005) (holding that environmental organizations were entitled to intervene as defendants in an action challenging the constitutionality of California state regulations, on the sole ground that the organizations intended to raise different arguments than the state); *Southwest Center*, 268 F.3d at 823 (holding that it was not necessary for developers seeking intervention to have identified specific differences in trial strategy, merely to show that it was likely the city would advance different arguments than the developers would).

State Defendants, by their acquiescence to this request, have signaled that they believe that the Potential Intervenors have important voices that should be heard.  At a minimum, the Proposed Intervenors will offer the voice and perspective of individuals who personally need the protection of the Rules.  Like the intervenors in *Southwest Center*, the Proposed Intervenors will "offer important elements to the proceedings that the existing parties would

likely neglect," including "their own unique private perspectives." *Southwest Center*, 268 F.3d at 823. As such, the Proposed Intervenors should be given leave to intervene as a matter of right.

> **B.   Alternatively, the proposed intervenors should be granted to leave to intervene permissively pursuant to 24(b).**

Even if this Court finds that the Proposed Intervenors may not intervene as of right in this action, it should grant those parties permission to intervene in this proceeding. Rule 24(b) of the Federal Rules of Civil Procedure authorizes this Court to permit intervention when "an applicant's claim or defense and the main action have a question of law or fact in common." The determination of whether a party will be able to intervene is within the discretion of the court, which will consider whether it will unduly delay the main action or unfairly prejudice the existing parties. Fed. R. Civ. P. 24(b).

The Court should exercise its discretion to permit the Proposed Intervenors to intervene in this case. They satisfy the requirements of Rule 24(b) because their defense of the Rules presents common questions of law and fact with those of the Defendants. They do not seek to introduce any new issues, only to defend the rule against the objections raised by Plaintiffs. Ms. Billings and Dr. Schouten, additionally, seek to ensure that all the implications involving the Rule are considered, including the impact and importance of the Rules for those with HIV, even though Plaintiffs make no mention of this constituency in their briefing. As described above, this motion is timely, and will not require any change to existing deadlines or prejudice the current parties. The significance of the Proposed Intervenors' interests in the subject matter of this litigation outweighs any marginal additional burden that would be caused by intervention. *See United States v. City of Los Angeles*, 288 F.3d 391, 405 (9th Cir. 2002) (granting permissive intervention on the grounds that "'streamlining' the litigation . . . should not be accomplished at the risk of marginalizing those . . . who have some of the strongest interests in the outcome."). Even if the Court concludes that the Proposed Intervenors do not meet the standard for intervention as of right, it should nonetheless permit intervention under Fed. R. Civ. P. 24(b).

### III. CONCLUSION

The Proposed Intervenors should be allowed to intervene as a matter of right under Fed. R. Civ. P. 24(a). Given the significance of the rights at issue, if the Court concludes that the Proposed Intervenors do not meet the standard for intervention as of right, it should permit them to intervene under Fed. R. Civ. P. 24(b).

August 13, 2007

Respectfully submitted,

HELLER EHRMAN LLP

By s/ Molly A. Terwilliger
Rima J. Alaily (WSBA # 29225)
Molly A. Terwilliger (WSBA # 28449)
Matthew A. Carvalho (WSBA # 31201)
HELLER EHRMAN LLP
701 Fifth Avenue, Suite 6100
Seattle, WA  98104
Tel:  (206) 447-0900
Fax:  (206) 447-0849
E-mail:  rima.alaily@hellerehrman.com
molly.terwilliger@hellerehrman.com
matt.carvalho@hellerehrman.com

**ACLU OF WASHINGTON FOUNDATION**

By s/ Sarah A. Dunne
Sarah A. Dunne (WSBA # 34869)
Aaron H. Caplan (WSBA # 22525)
**ACLU OF WASHINGTON FOUNDATION**
705 Second Avenue, Suite 300
Seattle, WA  98104-1723
Tel:  (206) 624-2184
Fax:  (206) 624-2190
E-mail:  dunne@aclu-wa.org

**NORTHWEST WOMEN'S LAW CENTER**

By s/ Lisa M. Stone
Lisa M. Stone (WSBA # 15421)
**NORTHWEST WOMEN'S LAW CENTER**
907 Pine Street, Suite 500
Seattle, WA  98101-1818

Tel: (206) 682-9552
Fax: (206) 682-9556
E-mail: lstone@nwwlc.org

**PLANNED PARENTHOOD OF WESTERN WASHINGTON**

By <u>s/ Kelly S. Reese</u>
Kelly S. Reese (WSBA # 22498)
**PLANNED PARENTHOOD OF WESTERN WASHINGTON**
2001 East Madison Street
Seattle, WA 98122-2959
Tel: (206) 328-7734
Fax: (206) 720-4657
E-mail: kelly.reese@ppww.org

Attorneys for Defendant-Intervenors

SE 2220224 v3
(98359.0015)