# EXHIBIT 1

TO DEFENDANT-INTERVENORS' MOTION TO INTERVENE

CASE NO.:  07-CV-5374-RBL

The Honorable Ronald B. Leighton

IN THE UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

STORMANS, INCORPORATED doing business as
RALPH'S THRIFTWAY; RHONDA MESLER,
MARGO THELEN,

                             Plaintiffs,

    v.

MARY SELECKY, Acting Secretary of the
Washington State Department of Health; LAURIE
JINKINS, Assistant Secretary of Washington Health
Systems Quality Assurance; GEORGE ROE,
SUSAN TIEL BOYER, DAN CONNOLLY, GARY
HARRIS, VANDANA SLATTER, REBECCA
HILLE, ROSEMARIE DUFFY, Members of the
Washington Board of Pharmacy; KATHY BAROS
FRIEDT, ELLIS CASSON, DEBORAH SIOUS
CANO-LEE, JERRY HEBERT, SHAWN
MURINKO, Commissioners for the Washington
Human Rights Commission; MARK BRENMAN,
Executive Director of the Washington Human
Rights Commission,

                          Defendants.

Case No. C07-5374-RBL

**DEFENDANT-INTERVENORS'
OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION**

**NOTE ON MOTION CALENDAR:
  AUGUST 17, 2007**

**ORAL ARGUMENT REQUESTED**

DEFENDANT-INTERVENORS' OPPOSITION TO
MOTION FOR PRELIMINARY INJUNCTION: C07-
5374-RBL

Heller Ehrman LLP
701 Fifth Avenue, Suite 6100
Seattle, Washington  98104-7098
Telephone (206) 447-0900

# TABLE OF CONTENTS

I.  INTRODUCTION ..................................................................................................1

II. FACTUAL BACKGROUND ................................................................................2

    A.  Ensuring Dispensation Of Lawful Prescriptions In A Timely Manner Is A Matter Of Public Health .............................................2

    B.  The Board Of Pharmacy Adopted The Rules To Ensure That Patients Have Timely Access To Lawfully Prescribed And Clinically Safe Drugs ...........................................................................4

    C.  The Rules Were The Result Of An Extensive Rule-Making Process ......................6

    D.  Plaintiffs File Suit, Seeking To Invalidate The Rules .............................8

III. ARGUMENT .......................................................................................................9

    A.  Preliminary Injunction Standard ...........................................................9

    B.  Plaintiffs Cannot Establish A Likelihood Of Success On The Merits. ...................................................................................................10

        1.  Plaintiffs Cannot Show The Requisite Likelihood Of Success On Their Free Exercise Claim ..............................................10

            a.  The Supreme Court's decision in *Smith* dictates that neutral laws of general applicability require only a rational basis to be valid .................................................10

            b.  The Rules are neutral ..............................................................12

            c.  The Rules are generally applicable .........................................14

            d.  The Rules are valid under any level of scrutiny ......................15

        2.  Plaintiffs Cannot Show The Requisite Likelihood Of Success On Their Equal Protection Claim .....................................17

        3.  Plaintiffs Cannot Show The Requisite Likelihood Of Success On Their Title VII/Supremacy Clause Claim ..................19

        4.  Plaintiffs Cannot Show The Requisite Likelihood Of Success On Their Procedural Due Process Claim .........................22

    C.  The Public Interest And Balance Of Hardships Tip In Favor Of The Rules' Validity And Against Issuance Of A Preliminary Injunction. ....................22

IV. CONCLUSION ....................................................................................................24

# TABLE OF AUTHORITIES

Page

### Federal Cases

*Ansonia Bd. of Educ. v. Philbrook*,
   479 U.S. 60 (1986) ...................................................................................21

*Binford v. Benda*,
   2007 WL 2193756, *11 (W.D. Wash. July 27, 2007) ....................................18

*California Fed. Savings and Loan Ass'n v. Guerra*,
   479 U.S. 272 (1987) ..................................................................................20

*Cantwell v. Connecticut*, 310 U.S. 296 (1940) ...............................................10

*Central State Univ. v. Am. Ass'n of Univ. Professors*,
   526 U.S. 124 (1999) ..................................................................................18

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*,
   508 U.S. 520 (1993) ............................................................................passim

*Cipollone v. Liggett Group, Inc.*,
   505 U.S. 504 (1992) ..................................................................................20

*City of Cleburne, Tx. v. Cleburne Living Center*,
   473 U.S. 432 (1985) .............................................................................17, 18

*EEOC v. Townley Engineering & Mfg Co.*,
   859 F.2d 610 (9th Cir. 1988) .......................................................................10

*Employment Division, Department of Human Resources of Oregon v. Smith*,
   494 U.S. 872 (1990) .......................................................................10, 11, 12

*English v. Gen. Elec. Co.*,
   496 U.S. 72 (1990) ....................................................................................20

*Ferguson v. Skrupa*,
   372 U.S. 726 (1963) ..................................................................................19

*Florida Bar v. Went For It, Inc.*,
   515 U.S. 618 (1995) ..................................................................................16

*Florida Lime & Avocado Growers, Inc. v. Paul*,
   373 U.S. 132 (1963) ..................................................................................20

*Fund for Animals, Inc. v. Lujan*,
   962 F.2d 1391 (9th Cir. 1992) .....................................................................23

DEFENDANT-INTERVENORS' OPPOSITION TO
MOTION FOR PRELIMINARY INJUNCTION: C07-
5374-RBL

2

Heller Ehrman LLP
701 Fifth Avenue, Suite 6100
Seattle, Washington 98104-7098
Telephone (206) 447-0900

*Gallo v. United States District Court,*
349 F.3d 1169 (9th Cir. 2003) ........................................................................ 22

*Goldfarb v. Virginia State Bar,*
421 U.S. 773 (1975) ........................................................................................ 16

*Heller v. Doe,*
509 U.S. 312 (1993) ................................................................................. 15, 19

*Jacobson v. Massachusetts,*
197 U.S. 11 (1905) .......................................................................................... 11

*Lands Council v. Martin,*
479 F.3d 636 (9th Cir. 2007) ...................................................................... 9, 23

*Locke v. Davey,*
540 U.S. 712 (2004) ........................................................................................ 19

*Manufactured Home Comtys., Inc. v. City of San Jose,*
420 F.3d 1022 (9th Cir. 2005) ........................................................................ 12

*Mazurek v. Armstrong,*
520 U.S. 968 (1997) .......................................................................................... 9

*Miller v. Reed,*
176 F.3d 1202 (9th Cir. 1999) ................................................................... 11, 15

*Nat'l Audubon Soc'y v. Davis,*
307 F.3d 835 (9th Cir. 2002) .......................................................................... 20

*Oakland Tribune, Inc. v. The Chronicle Publishing Co.,*
762 F.2d 1374 (9th Cir. 1985) ...................................................................... 9, 10

*Portman v. County of Santa Clara,*
995 F.2d 898 904 (9th Cir. 1993) .................................................................... 22

*Prince v. Massachusetts,*
321 U.S. 158 (1944) ........................................................................................ 11

*Richardson v. Sec'y. of Labor,*
689 F. 2d 632 (6th Cir. 1982) ......................................................................... 18

*Russell v. Hug,*
275 F.3d 812 (9th Cir. 2002) .......................................................................... 15

*Southwest Voter Registration Education Project v. Shelley,*
344 F.3d 914 (9th Cir. 2003) ............................................................... 10, 23, 24

*Sutton v. Providence St. Joseph Med. Ctr.,*
192 F.3d 826 (9th Cir. 1999) .......................................................................... 21

DEFENDANT-INTERVENORS' OPPOSITION TO
MOTION FOR PRELIMINARY INJUNCTION: C07-
5374-RBL

3

Heller Ehrman LLP
701 Fifth Avenue, Suite 6100
Seattle, Washington 98104-7098
Telephone (206) 447-0900

*Texaco v. Short*,
   454 U.S. 516 (1982)..................................................................................22

*Ting v. AT&T*,
   319 F.3d 1126 (9th Cir. 2003) ...............................................................20

*Trans World Airlines, Inc. v. Hardison*,
   432 U.S. 63 (1977)....................................................................................21

*United States v. Lee*,
   455 U.S. 252 (1982)..................................................................................11

*Vision Church, United Methodist v. Village of Long Grove*,
   468 F. 3d 975 (7th Cir. 2006) ...............................................................14

*Washington v. Davis*,
   426 U.S. 229 (1976)..................................................................................18

*Williamson v. Lee Optical of Oklahoma*,
   348 U.S. 483 489 (1955).........................................................................18

**Federal Statutes**

42 U.S.C. § 2000e(j) .....................................................................................21

42 U.S.C. § 2000e-2 ......................................................................................21

42 U.S.C. § 2000e-7 ......................................................................................19

**State Statutes**

RCW 18.130.100 ..........................................................................................22

RCW 18.64.005 .........................................................................................4, 23

RCW 18.64.005(7) .........................................................................................23

RCW 34.05.410-.476 .....................................................................................22

RCW 48.43 .....................................................................................................17

RCW 49.60 .................................................................................................9, 17

RCW 70.47.160 ..............................................................................................17

RCW 9.02.170(3)..............................................................................................7

**State Regulations**

WAC 246-860-010(1).....................................................................................12

DEFENDANT-INTERVENORS' OPPOSITION TO          4
MOTION FOR PRELIMINARY INJUNCTION: C07-
5374-RBL

Heller Ehrman LLP
701 Fifth Avenue, Suite 6100
Seattle, Washington  98104-7098
Telephone (206) 447-0900

WAC 246-863-095.................................................................................................4, 5

WAC 246-863-095(4)...........................................................................................5, 7

WAC 246-869-010..................................................................................................4

WAC 246-869-010(1)...........................................................................................4, 5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DEFENDANT-INTERVENORS' OPPOSITION TO          5
MOTION FOR PRELIMINARY INJUNCTION: C07-
5374-RBL

Heller Ehrman LLP
701 Fifth Avenue, Suite 6100
Seattle, Washington  98104-7098
Telephone (206) 447-0900

# I.  INTRODUCTION

Pharmacies and pharmacists serve as the gatekeeper to many critical time-sensitive medications.  When pharmacies and pharmacists refuse to dispense prescribed medications or medications with restricted access for personal, moral, or religious reasons, they jeopardize the health of patients like the Defendant-Intervenors and impose unacceptable costs on society.  For this reason, the Washington Board of Pharmacy ("Pharmacy Board") adopted rules to ensure that patients have timely access to medication ("the Rules").  Those Rules do not require individual pharmacists to dispense medication to which they may have a personal, moral or religious objection.  Rather, the Rules require *pharmacies* to fill all valid prescriptions.  It is up to the pharmacy to determine how to meet that requirement, whether by hiring additional staff, shifting work schedules, or other accommodations.  By focusing the burden on the pharmacy as opposed to the pharmacist, the rules allow for the maximum possible accommodation of a pharmacist's individual beliefs while minimizing both the health risks to patients and costs to society.

Nonetheless, Plaintiffs—a Washington corporation that owns and operates a pharmacy and two individual pharmacists—challenge the validity of the Rules under the United States Constitution.  At base, they argue that the Rules violate their freedom of religion because the Rules require a pharmacy to dispense Plan B—a form of emergency contraception that they erroneously contend causes an abortion.  While the Rules will certainly prevent pharmacies and pharmacists from erecting barriers—for whatever reason—to Plan B by women in need, that does not mean that the Rules infringe on Plaintiffs' freedom of religion.  The Rules—whether one looks at their text or object—do not target conduct *because of* its religious motivation.  The Rules apply generally to all refusals to dispense prescribed medications or medications with restricted access, regardless of the motivation.  Moreover, while Plaintiffs have focused on Plan B, their arguments—if sustained—would purport to justify a pharmacist's denial of medications to HIV-positive patients, diabetics, or any number of other groups based upon the individual pharmacist's personal beliefs as to the patient or medication.  Once the challenged Rules are properly described, there is no likelihood that Plaintiffs will succeed on the merits of their

claims.  Balanced against the State's rational and compelling interest in ensuring public health, the public interest, and the Defendant-Intervenors' interests in access to lawfully prescribed medication, Plaintiffs' Motion fails.

## II.  FACTUAL BACKGROUND

**A.     Ensuring Dispensation Of Lawful Prescriptions In A Timely Manner Is A Matter Of Public Health.**

All of the Defendant-Intervenors have a sincere interest in ensuring that pharmacy or pharmacist refusals to dispense medication for personal, moral, or religious reasons do not prevent themselves and others from obtaining medication that they need.  As their individual circumstances demonstrate, those refusals impose health risks on themselves and others as well as significant costs on society.

Defendant-Intervenor Dr. Jeffrey Schouten is a Clinical Assistant Professor of Surgery at the University of Washington and a primary care physician at Harborview Medical Center's Madison Clinic, Washington's largest HIV-specialty clinic.  Schouten Decl. ¶ 3.[1]  He testified in favor of the Rules, focusing on aspects of the critical impact of timing in common HIV treatments.  *Id.* ¶ 6.  According to Dr. Schouten, timing is of the essence for those who have been exposed to HIV—whether due to condom failure or sexual assault.  *Id.* ¶ 7.  The risk of contracting HIV may be substantially reduced, if the exposed individual is given a regimen of combination antiretroviral therapy for 28 days.  *Id.*  But the therapy must be started quickly; after 72 hours the treatment is largely ineffective.  *Id.*  Timing is also critical for individuals managing HIV through chronic therapy.  HIV medication must be taken daily and missing even a few doses allows the HIV virus to resume replicating and to develop resistance to the drug, or even the entire class of drugs, drastically limiting the range of treatment option available.  *Id.* ¶ 8.

Because some people associate HIV with lifestyle choices that they do not agree with, those in need of access to HIV medication might face harassment or denial when attempting to fill prescriptions for antiretroviral and other medications.  Schouten Decl. ¶ 9.  In addition, some

---

[1]  This brief refers to the Defendant-Intervenors' declarations, filed herewith in support of their Motion to Intervene, using the following short form: "[Defendant-Intervenor] Decl."

DEFENDANT-INTERVENORS' OPPOSITION TO
MOTION FOR PRELIMINARY INJUNCTION: C07-
5374-RBL

7

Heller Ehrman LLP
701 Fifth Avenue, Suite 6100
Seattle, Washington  98104-7098
Telephone (206) 447-0900

1  pharmacists might believe that HIV-positive people should not have sex and would not fill

2  prescriptions that would assist them in maintaining their sexual abilities—such as testosterone

3  replacement therapy and drugs to treat erectile dysfunction. *Id.* ¶ 9. These concerns are not

4  merely hypothetical for Dr. Schouten; he is HIV-positive. *Id.* ¶ 10. So too is Defendant-

5  Intervenor Judith Billings. Billings Decl. ¶ 6. They would be exposed to serious health risks if a

6  pharmacy or pharmacist—for personal, moral or religious reasons—denied them timely access to

7  the medication that they need to manage their HIV. *Id.* ¶ 9; Schouten Decl. ¶ 11.

8      Concerns regarding refusals to fill valid prescriptions in a timely manner are also shared

9  by the other Defendant-Intervenors, but for other reasons. In November 2005, while visiting

10  Mukilteo, Washington, Defendant-Intervenor Rhiannon Andreini went to the Albertson's

11  pharmacy to buy "Plan B" when her regular method of contraception failed. Andreini Decl. ¶ 6.

12  Plan B is a form of emergency contraception, which if taken after sexual intercourse may prevent

13  pregnancy. It is most effective within the first 12 to 24 hours after sexual intercourse. JAMA

14  Article (Declaration of Rima J. Alaily In Support Of Defendant-Intervenors' Opposition To

15  Motion For Preliminary Injunction ("Alaily Decl."), Ex. A). The U.S. Food and Drug

16  Administration ("FDA") has approved Plan B for use without a prescription by women over 18

17  years, although it must be maintained behind the counter and can be dispensed by a pharmacist

18  or licensed staff to those with proper identification. Nonetheless, the pharmacist refused to

19  provide Ms. Andreini with Plan B, stating that the store did not carry it. Andreini Decl. ¶ 6.

20  When she asked the pharmacist where else she might go, the pharmacist provided her with the

21  name of another pharmacy but would not provide her with directions. *Id.* Upset with the cold

22  and disapproving manner in which the pharmacist treated her and unfamiliar with the area, Ms.

23  Andreini cut her vacation short and returned to Bellingham the following morning to go to a

24  pharmacy that she knew would dispense Plan B. *Id.*

25      Defendant-Intervenor Molly Harmon had a similar experience in 2003. When she

26  became concerned that the method of contraception she was using had failed, she obtained a

27  prescription for Plan B from her doctor (at the time Plan B was unavailable without a

28  prescription). Harmon Decl. ¶ 5. Ms. Harmon went to Bartell Drugs at University Village in

DEFENDANT-INTERVENORS' OPPOSITION TO          8
MOTION FOR PRELIMINARY INJUNCTION: C07-
5374-RBL

Heller Ehrman LLP
701 Fifth Avenue, Suite 6100
Seattle, Washington  98104-7098
Telephone (206) 447-0900

Seattle, Washington, but the pharmacist on duty refused to fill it.  *Id.* ¶ 7.  Instead, she told Ms.

Harmon that Plan B was not a form of birth control and that she could provide Ms. Harmon with

information about other forms of birth control.  *Id.*  Ms. Harmon, extremely upset, asked to speak

to the head pharmacist who ultimately filled her prescription.  *Id.* ¶ 8.  Ms. Harmon left the

pharmacy angered about having to defend an intimate decision that had been made between

herself, her partner, and her doctor to a complete stranger.  *Id.* ¶ 9.

In March 2007, Defendant-Intervenor Emily Schmidt too experienced difficulties

obtaining Plan B at two pharmacies in Wenatchee, Washington.  Schmidt Decl. ¶¶ 7-9.  At both,

she was informed that her request for Plan B could not be filled, because the pharmacy or

pharmacist was unwilling to dispense the drug.  *Id.* ¶¶ 8-9.  Defendant-Intervenors Catherine

Rosman and Tami Garrard have joined this lawsuit because of their acute awareness that they,

and other women like them, might be unable to obtain Plan B in a timely manner when in need

due to the refusal of a pharmacist.  Rosman Decl. ¶ 9; Garrard Decl. ¶¶ 4-6.

**B.      The Board Of Pharmacy Adopted The Rules To Ensure That Patients Have Timely Access To Lawfully Prescribed And Clinically Safe Drugs.**

The Pharmacy Board is responsible for the regulation of the practice of pharmacy "for the

protection and promotion of the public health, safety, and welfare," including the licensing and

discipline of pharmacies and pharmacists as well as the dispensation of medication. RCW

18.64.005.  In furtherance of this responsibility, the Pharmacy Board recently adopted and

amended regulations setting forth the responsibilities of pharmacies and pharmacists regarding

the dispensation of medication:  WAC 246-869-010 and WAC 246-863-095.  Those changes

became effective on July 26, 2007.

The Pharmacy Rule, WAC 246-869-010, imposes a duty on a pharmacy to dispense all

lawful prescriptions or provide a therapeutic equivalent in a timely manner.  *See also*

Explanatory Letter at 3 (Alaily Decl., Ex. B) ("it is the pharmacy's responsibility to ensure that

patients have access to lawfully prescribed and clinically safe drugs").  It states:

> Pharmacies have a duty to deliver lawfully prescribed drugs and devices
> to patients and to distribute drugs and devices approved by the U.S. Food
> and Drug Administration for restricted distribution by pharmacies, or
> provide a therapeutically equivalent drug or device in a timely manner

DEFENDANT-INTERVENORS' OPPOSITION TO        9
MOTION FOR PRELIMINARY INJUNCTION: C07-
5374-RBL

Heller Ehrman LLP
701 Fifth Avenue, Suite 6100
Seattle, Washington  98104-7098
Telephone (206) 447-0900

consistent with reasonable expectations for filling the prescription . . . .
WAC 246-869-010(1).  A pharmacy is excused from this duty only in certain expressly
enumerated circumstances.[2] *Id*.  A pharmacy may not avoid this duty by referring a patient to
another pharmacy; rather, the Pharmacy Rule requires "pharmacies to meet the pharmaceutical
needs of their patients." *Id*.

The Pharmacist Rule, WAC 246-863-095, makes it "a pharmacist's primary
responsibility to ensure patients get safe and appropriate medication therapy."  Explanatory
Letter at 2 (Alaily Decl., Ex. B).  A pharmacist cannot delegate to pharmacy support staff the
decision whether to dispense a lawfully prescribed drug or device or medications with restricted
distribution.  WAC 246-863-095(2)(j).  Moreover a pharmacist may be disciplined if he or she
destroys or refuses to return an unfilled lawful prescription, violates a patient's privacy,
discriminates against patients, or intimidates or harasses a patient.  WAC 246-863-095(4).
Important for present purposes, the Pharmacist Rule does *not* mandate that a pharmacist dispense
*all* lawful prescriptions or medications with restricted distribution regardless of the pharmacist's
personal, moral, or religious objection.  Indeed, if a pharmacist objects to a drug or device, it is
the *pharmacy's* responsibility to ensure that someone else is available to dispense that drug or
device in a timely manner.  Explanatory Letter at 3 (Alaily Decl., Ex. B); Concise Explanatory
Statement at 9 (Alaily Decl., Ex. C) ("The rules do not override the individual pharmacists'
moral or religious beliefs; however the rules do impose a duty on the business to ensure timely
access to lawful prescribed medications and devices.  The rules do not prohibit an employer from
accommodating a pharmacist's personal objections.").

As the Pharmacy Board has stated repeatedly, the purpose of these regulations is "to
promote patient safety by assuring that patients have access to lawful, appropriate medications
without delay."  Explanatory Letter at 1 (Alaily Decl, Ex. B).  *See also* Significant Analysis at 1

---

[2]  Those circumstances include lack of payment; contraindications; erroneous or
fraudulent prescriptions; national or state emergencies; the lack of specialized equipment or
expertise needed to produce, store, or dispense drugs or devices; or the unavailability of a drug or
device despite a good faith compliance with the regulations related to stocking of drugs or
devices.  WAC 246-869-010(1)-(3).

DEFENDANT-INTERVENORS' OPPOSITION TO
MOTION FOR PRELIMINARY INJUNCTION: C07-
5374-RBL

10

Heller Ehrman LLP
701 Fifth Avenue, Suite 6100
Seattle, Washington  98104-7098
Telephone (206) 447-0900

1   (Declaration of Kristen K. Waggoner ("Waggoner Decl."), Ex. K) ("to improve state-wide access

2   and reduce barriers for patients seeking [FDA] approved drugs and devices"); Concise

3   Explanatory Statement (Alaily Decl., Ex. C) ("The purpose of the rules is to promote patient

4   safety and access to health care by emphasizing the professional responsibilities of pharmacists

5   and pharmacies.").  Indeed, the Pharmacy Board, in its Final Significant Analysis, recognized

6   that the failure of a patient to receive necessary medications in a timely manner can have dire

7   medical and social consequences.  As support, it pointed to the fact that an HIV-positive patient

8   who fails to receive timely drug therapy experiences an increased ability to transmit the HIV

9   virus to others and an increased risk of serious infection.  Significant Analysis at 1 (Waggoner

10  Decl., Ex. K).  Defendant-Intervenor Dr. Schouten presented testimony on this topic to the

11  Pharmacy Board.  Schouten Decl. ¶ 6.  Additionally, the Pharmacy Board noted that women who

12  face barriers to obtaining birth control are at greater risk for unintended or unwanted

13  pregnancies, which in turn are associated with a variety of poor health outcomes for mothers,

14  infants, and children and cost the State hundreds of millions of dollars annually.  Significant

15  Analysis at 1 (Waggoner Decl., Ex. K).

16          **C.      The Rules Were The Result Of An Extensive Rule-Making Process.**

17          The Pharmacy and Pharmacist Rules were the result of an extensive two-year rule-

18  making process that involved numerous public hearings at which more than 90 stakeholders and

19  the public testified.  April 2007 Minutes at 2-3 (Alaily Decl., Ex. D).  The Pharmacy Board

20  received and considered more than 21,000 comments on the proposed rules.  DOH Press Release

21  (Waggoner Decl., Ex. I).  Even Governor Christine Gregoire weighed in and helped to build

22  consensus and support amongst the various stakeholders in favor of the Rules.  *See, e.g.,*

23  Governor's August 28, 2006 Letter (Waggoner Decl., Ex. G).

24          The rule-making process was sparked by complaints to the Pharmacy Board regarding the

25  refusal of pharmacies and pharmacists to fill prescriptions and a presentation in January 2006 by

26  the Washington State Pharmacy Association on the issue.  Significant Analysis at 2 (Waggoner

27  Decl., Ex. K); January 2006 Minutes at 5-7 (Alaily Decl., Ex. E); WSPA Presentation

28  (Waggoner Decl., Ex. D).  That presentation stressed the need for pharmacies to "have options in

DEFENDANT-INTERVENORS' OPPOSITION TO          11
MOTION FOR PRELIMINARY INJUNCTION: C07-
5374-RBL

1   place to offer to a patient when the pharmacist is unable to fill an otherwise lawful prescription."

2   WSPA Presentation at 1 (Waggoner Decl., Ex. D).  At the January 2006 meeting, the Pharmacy

3   Board observed that "this is a very complex issue and not just about reproductive rights."

4   January 2006 Minutes at 6 (Alaily Decl., Ex. E).  It also recognized the need for clear rules that

5   could guide disciplinary actions for unprofessional conduct that placed "additional barriers

6   before patients."  So, the Pharmacy Board voted then to initiate the rule-making process.  *Id.* at

7   6-7.

8          Although ensuring timely access to medication is critical for many individuals for a

9   variety of reasons, much of the subsequent public comment and interest focused on access to

10  Plan B.  *See, e.g.,* March 2006 Minutes at 6-9 (Alaily Decl., Ex. F).  According to the American

11  College of Obstetricians and Gynecologists, Plan B does not terminate a pregnancy.  ACOG

12  FAQs (Alaily Decl., Ex. G).  To the contrary, it works by preventing ovulation and fertilization

13  or, possibly, the implantation of a fertilized egg, before a pregnancy is established.  *Id.*; *see also*

14  JAMA Article (Alaily Decl., Ex. A); RCW 9.02.170(3) ("'Pregnancy' means the reproductive

15  process beginning with the implantation of an embryo.").  Nonetheless, certain individuals—like

16  Plaintiffs here—believe that Plan B is an abortifacient, *i.e.*, a drug that causes an abortion.

17  Therefore, many of those opposed to abortion—for a variety of reasons—inundated the

18  Pharmacy Board with testimony and comments in an attempt to transform the debate from one

19  about broad health care access into one about objections to abortion.  To bring balance to the

20  debate and to voice the concerns of the women they represent, the Northwest Women's Law

21  Center and Planned Parenthood of Western Washington participated in the rule-making process,

22  highlighting examples of pharmacies and pharmacists refusing to fill prescriptions for Plan B and

23  other contraception as well as antibiotics, syringes, and prenatal vitamins.  *See, e.g.,* March 2006

24  Minutes at 8 (Alaily Decl., Ex. F).

25         The Rules issued by the Pharmacy Board, however, addressed *all* medication, not just

26  Plan B.  The Pharmacy Board recognized that "[t]he effective treatment of many . . . diseases and

27  conditions depends on timely access to and administration of prescription drugs and devices."

28  SBEIS at 1 (Waggoner Decl., Ex. K).  Specifically, the Pharmacy Board noted the importance of

DEFENDANT-INTERVENORS' OPPOSITION TO          12
MOTION FOR PRELIMINARY INJUNCTION: C07-
5374-RBL

Heller Ehrman LLP
701 Fifth Avenue, Suite 6100
Seattle, Washington  98104-7098
Telephone (206) 447-0900

timely access to HIV medications as well as insulin, diabetic syringes, and erectile dysfunction medications.  Significant Analysis at 7 (Waggoner Decl., Ex. K).  The Pharmacy Rule requires the pharmacy to dispense lawful prescriptions and medications with restricted distribution regardless of the basis of the individual pharmacists' objection, *i.e.*, personal, moral, or religious.  The Governor too recognized that "patients' rights" not just emergency contraception was at stake and that refusals might be based on any number of grounds, not just a religious belief.  In June 2006, she observed:

> What if I came up and you assumed that I was an undocumented (worker), so you're going to deny me, because you decided I was getting some sort of state help and I don't deserve it.  Or you decided because I'm getting some prescription having to do with AIDS, therefore I'm gay and you don't like that or I have some sort of cancer and you think I've been a smoker and that's my problem so you're not going to do that.  I could go on with the list.  I think there's no end to it.

June 3, 2006 Seattle Times Article (Waggoner Decl., Ex. F).

### D.     Plaintiffs File Suit, Seeking To Invalidate The Rules.

On July 25, 2007, Plaintiffs filed suit against the Acting Secretary and Assistant Secretary of the Washington State Department of Health, Members of the Pharmacy Board, and the Commissioners and Executive Director of the Human Rights Commission ("HRC"), seeking to invalidate the Rules.  Plaintiff Stormans Incorporated, which owns and operates a pharmacy, refuses, for "moral and religious reasons" to dispense Plan B.  Declaration of Kevin Stormans ("Stormans Decl.") ¶¶ 5, 17.  Similarly, Plaintiffs Rhonda Mesler and Margo Thelen are pharmacists who refuse to dispense Plan B for religious reasons.  Declaration of Rhonda Mesler ("Mesler Decl.") ¶¶ 11-12; Declaration of Margo Thelen ("Thelen Decl.") ¶¶ 7-8.  None of the plaintiffs allege any injury as a result of the Rules.  Stormans contends that it has been "investigated" by the Pharmacy Board, but that investigation began and concluded well before the Rules took effect on July 26, 2007 (and presumably relates to violations of other regulations not at issue here).  Stormans Decl. ¶¶ 19-20.  In any event, the Pharmacy Board has not initiated any formal action, much less imposed any sanction, against Stormans.  Stormans Decl. ¶ 20.  Ms. Mesler has not been fired as she purportedly "expects," and Ms. Thelen—in advance of the Rules' effective date—obtained a position at a hospital pharmacy that is able to accommodate

DEFENDANT-INTERVENORS' OPPOSITION TO        13
MOTION FOR PRELIMINARY INJUNCTION: C07-
5374-RBL

Heller Ehrman LLP
701 Fifth Avenue, Suite 6100
Seattle, Washington  98104-7098
Telephone (206) 447-0900

her religious belief by having two or more pharmacists on duty.  Mesler Decl. ¶ 15; Thelen Decl.

¶¶ 12-13.  Nonetheless, Plaintiffs contend that the Rules impermissibly burden their free exercise

of religion, violate the equal protection clause, conflict with Title VII of the Civil Rights Act of

1964, and deny them procedural due process.

### III. ARGUMENT

Plaintiffs' Complaint seeks a declaratory judgment that the Rules are unconstitutional "as

applied," and a preliminary and permanent injunction prohibiting Defendants from enforcing the

Rules.  The Rules, however, are valid.  Plaintiffs thus cannot demonstrate the likelihood of

success on the merits that is required for a preliminary injunction to issue.[3]

### A.    Preliminary Injunction Standard

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be

granted unless the movant, *by a clear showing*, carries the burden of persuasion."  *Mazurek v.*

*Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A C. Wright, A. Miller, & M. Kane, Federal

Practice and Procedure § 2948, pp. 129-130 (2d ed. 1995)) (emphasis added).  The traditional

criteria for granting a preliminary injunction are "(1) a strong likelihood of success on the merits,

(2) the possibility of irreparable injury to plaintiff if the preliminary relief is not granted, (3) a

balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain

cases)."  *Lands Council v. Martin¸* 479 F.3d 636, 639 (9th Cir. 2007) (quoting *Johnson v. Cal.*

*State Bd. of Accountancy*, 72 F.3d 1427, 1430 (9th Cir. 1995)).  Alternatively, a party must show

either "(1) a likelihood of success on the merits and the possibility of irreparable injury, or (2)

the existence of serious questions going to the merits and the balance of hardships tipping in its

favor."  *Oakland Tribune, Inc. v. The Chronicle Publishing Co*., 762 F.2d 1374, 1376 (9th Cir.

1985) (quoting *Apple Computer, Inc. v. Formula Int'l, Inc.*, 725 F.2d 521, 523 (9th Cir. 1984)).

---

[3]  The Complaint also contains cryptic allegations regarding "threatened enforcement of RCW 49.60," the Washington Law Against Discrimination, by the Human Rights Commission ("HRC").  Plaintiffs seek to enjoin enforcement of RCW 49.60 with regard to their refusals to stock and dispense Plan B on religious and moral grounds.  Motion at 2-3.  Defendant-Intervenors believe those claims lack merit, but will leave the Commissioners and Executive Director of the HRC to defend those claims, since they are best positioned to do so.  For purposes of this Motion, the Defendant-Intervenors will focus instead on the validity of the Rules.

DEFENDANT-INTERVENORS' OPPOSITION TO
MOTION FOR PRELIMINARY INJUNCTION: C07-
5374-RBL

14

Heller Ehrman LLP
701 Fifth Avenue, Suite 6100
Seattle, Washington  98104-7098
Telephone (206) 447-0900

"This analysis creates a continuum: the less certain the district court is of the likelihood of success on the merits, the more plaintiffs must convince the district court that the public interest and balance of hardships tip in their favor." *Sw. Voter Registration Education Project v. Shelley*, 344 F.3d 914, 918 (9th Cir. 2003). Even if the balance of hardships tips decidedly in favor of the moving party, however, "it must be shown as an irreducible minimum that there is a fair chance of success on the merits." *Johnson*, 72 F.3d at 1430 (quotation omitted).

## B.    Plaintiffs Cannot Establish A Likelihood Of Success On The Merits.

Because Plaintiffs cannot make a "clear showing" of likely success on the merits of their claims, they cannot obtain the "extraordinary and drastic relief" of a preliminary injunction. On this factor alone, their Motion must fail.

### 1.    Plaintiffs Cannot Show The Requisite Likelihood Of Success On Their Free Exercise Claim

Plaintiffs assert that the Rules violate their rights under the Free Exercise Clause of the First Amendment of the Constitution, which protects an individual's right to freely exercise his or her religion. *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). Plaintiffs cannot demonstrate a likelihood of success on the merits of this claim. With respect to Stormans, as a private, secular entity it has no well-settled free exercise right. *See EEOC v. Townley Engineering & Mfg Co.*, 859 F.2d 610, 619-20 & n.15 (9th Cir. 1988). Even if it does, however, no plausible claim exists here because the U.S. Supreme Court has clearly held that neutral, generally applicable regulations with an incidental effect on the exercise of an individual's religious beliefs—like the Rules at issue here—do not violate the Free Exercise Clause so long as the regulations have a rational basis.

#### a.    The Supreme Court's decision in *Smith* dictates that neutral laws of general applicability require only a rational basis to be valid.

Plaintiffs' free exercise claim is governed by the standards set out in the Supreme Court's decision in *Employment Div., Dep't of Human Resources of Oregon v. Smith,* 494 U.S. 872 (1990) ("*Smith*"). In *Smith,* the Court articulated the general rule that religious beliefs do not excuse compliance with otherwise valid laws that regulate matters the state has authority to regulate. *Id.* at 877-882. While the government may not regulate religious beliefs or target

DEFENDANT-INTERVENORS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION: C07-5374-RBL

15

Heller Ehrman LLP
701 Fifth Avenue, Suite 6100
Seattle, Washington  98104-7098
Telephone (206) 447-0900

1  conduct for regulation *because* such conduct is undertaken for religious reasons, "the freedom to

2  act, unlike the freedom to believe, cannot be absolute." *Id*. at 877, 894.  Accordingly, "the right

3  of free exercise does not relieve an individual of the obligation to comply with a 'valid and

4  neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct

5  that his religion prescribes (or proscribes).'" *Id*. at 879 (quoting *United States v. Lee,* 455 U.S.

6  252, 263 n. 3 (1982) (Stevens, J., concurring)).[4]

7        Plaintiffs' right to practice religion freely is not limitless in this case for two reasons in

8  particular.  First, public health is implicated.  *See, e.g.*, *Prince v. Massachusetts*, 321 U.S. 158,

9  166-67 (1944) (religious freedom does not include the liberty to expose the community to

10  communicable disease, ill health, or death); *Jacobson v. Massachusetts*, 197 U.S. 11, 25 (1905)

11  (states have authority to enact "health laws of every description").  The Supreme Court has

12  instructed that "the police power of a state must be held to embrace, at least, such reasonable

13  regulations . . . as will protect the public health and the public safety." *Id.*  Second, "[w]hen

14  followers of a particular sect enter into commercial activity as a matter of choice, the limits they

15  accept on their own conduct as a matter of conscience and faith are not to be superimposed on

16  the statutory schemes which are binding on others in that activity." *Lee*, 455 U.S. at 261.

17  Plaintiffs' choice of profession is purely secular.  Although dispensing Plan B might conflict

18  with their religious beliefs, Plaintiffs could avoid the burden without violating their religious

19  beliefs.  Stormans might choose not to operate a pharmacy within its grocery store, instead

20  subleasing that space to another pharmacy or using that space to display and sell other

21  merchandise.  The individual Plaintiffs might choose to work in a pharmacy with more than one

22  pharmacist on duty—as Ms. Thelen has.  Or they might pursue the multitude of other options

23  available to trained pharmacists.[5]  Thus, Plaintiffs' right to freely exercise their religion does not

24       [4] *See also United States v. Lee*, 455 U.S. 252 (1982) (collection of Social Security taxes

25  from Amish employers and employees did not violate free exercise despite religious objection to
participation in government support programs); *Miller v. Reed*, 176 F.3d 1202, 1206 (9th Cir.

26  1999) (requiring social security number to obtain driver's license did not violate free exercise
rights of individual with religious objection to supplying that information).

27       [5] Those options include:  (1) a pharmacist in a chain pharmacy may occupy positions in
the development of patient care programs, pharmacist recruiting, pharmacist and technician

28   

*(Footnote Continued)*

DEFENDANT-INTERVENORS' OPPOSITION TO
MOTION FOR PRELIMINARY INJUNCTION: C07-
5374-RBL
16
Heller Ehrman LLP
701 Fifth Avenue, Suite 6100
Seattle, Washington  98104-7098
Telephone (206) 447-0900

1  relieve them of the obligation to comply with the Rules, because they are valid and neutral laws

2  of general applicability.

3               **b.      The Rules are neutral.**

4        To determine whether a regulation violates the Free Exercise Clause, a court first must

5  examine whether the regulation is neutral:  does it apply equally to citizens of all religious

6  backgrounds, or does it explicitly target conduct that is religiously motivated?  *Smith,* 494 U.S. at

7  879-80.  Plaintiffs effectively concede, as they must, that the Rules are neutral on their face.  *See*

8  Motion at 11.  The Rules apply to all pharmacies and pharmacists, without regard to religion.

9  Nothing in the Rules attempts to single out pharmacies or pharmacists with religious objections

10  to dispensing particular medications.

11        Because the Rules are unquestionably facially-neutral, Plaintiffs argue, instead, that the

12  object of the Rules is to suppress religious freedom.  Motion at 11.  This argument is a misguided

13  effort to bring their claim within the reach of *Church of the Lukumi Babalu Aye, Inc. v. City of*

14  *Hialeah*, 508 U.S. 520 (1993).  The Supreme Court held there that a facially-neutral regulation

15  may nonetheless violate the Free Exercise Clause if it "infringe[s] upon or restrict[s] practices

16  *because of* their religious motivation" *Lukumi*, 508 U.S. at 533 (emphasis added).  The evidence

17  cited in Plaintiffs' own brief, however—particularly when measured against the extraordinarily

18  different facts presented in *Lukumi*—shows this to be a wholly different situation.

19        In *Lukumi*, a congregation of the Church of the Lukumi Babalu Aye, Inc. announced

20  plans to bring the practice of the Santeria religion, including its ritual of animal sacrifice, into the

21  open in Hialeah, Florida.  508 U.S. at 525.  In response, the Hialeah City Council passed a

22  resolution and several ordinances that sought to ban the killing of animals in certain

23  circumstances.  *Id*.  Although the ordinances were arguably facially-neutral, the Court found that

24   

25  training, pharmacy operations, pharmaceutical buying, professional and legal affairs, and other
varying levels of management; (2) a pharmacist may work in a hospital, nursing home, or other

26  such facility ensuring that patients receive proper medication and counseling patients about
medication; (3) a pharmacist may work for a pharmaceutical company doing research and

27  development or as a sales representative; (4) a pharmacist may work in academia, teaching others
and conducting research; and (5) a pharmacist may work for a government agency such as the

28  FDA or DEA.  Pharmacist Career Options (Alaily Decl., Ex. H).

DEFENDANT-INTERVENORS' OPPOSITION TO    17
MOTION FOR PRELIMINARY INJUNCTION: C07-
5374-RBL

1   their text and effect made it plain that their object was "suppression of the central element of the

2   Santeria worship service." *Id.* at 534.  The Supreme Court noted, for example, that the

3   ordinances referred to "sacrifice" and "ritual," words with strong religious connotations.  *Id.*  A

4   City Council Resolution expressed concern "'that certain religions may propose to engage in

5   practices which are inconsistent with public morals, peace or safety,' and 'reiterate[d]' the city's

6   commitment to prohibit 'any and all [such] acts of any and all religious groups.'"  *Id.* at 535.  In

7   addition, the ordinances were gerrymandered such that few if any animal killings were prohibited

8   other than Santeria sacrifice; killings for religious reasons were deemed unnecessary, whereas

9   most other killings fell outside the prohibitions.  *Id.* at 536.  Finally, contemporaneous statements

10   by city council members and other city officials evidenced "significant hostility" toward the

11   Santeria religion and its practice of animal sacrifice.[6]  *Id.* at 541-42.

12        The record in this case could not be more different.  Here, the text of the Rules itself

13   demonstrates a deliberate effort to establish neutral standards.  The Rules do not refer to religion.

14   They were drafted to ensure access to needed drugs and devices without regard for the reason for

15   a particular pharmacy's or pharmacist's refusal to dispense.  *See* Section II.B, *supra*.  Likewise,

16   the effect of the Rules is wholly neutral; their restrictions apply to all pharmacies and

17   pharmacists, and to all refusals—regardless of their basis.  The Rules leave no discretion for the

18   State to distinguish between religious objections and secular ones; a pharmacy must ensure

19   timely access to lawfully prescribed drugs and devices regardless of the basis of the individual

20   pharmacist's objection.  Unlike *Lukumi*, religious practice is *not* being singled out for

21   discriminatory treatment here.  508 U.S. at 538.

22        Moreover, there is no evidence that the Rules were enacted with the "object of"

23   suppressing the exercise of any religion.  *See, e.g., Vision Church, United Methodist v. Village of

24   Long Grove*, 468 F. 3d 975, 998-99 (7th Cir. 2006) (Free Exercise Clause not violated even

25   ────────────────────

26        [6]  For example, the president of the city council asked, "What can we do to prevent the
     Church from opening?"  *Lukumi*, 508 U.S. at 541.  Another councilman said that "Santeria

27   devotees . . . 'are in violation of everything this country stands for.'"  *Id.*  The chaplain of the
     Hialeah Police Department told the city council that Santeria was a sin and concluded:  "I would

28   exhort you . . . not to permit this Church to exist."  *Id.* at 542.

DEFENDANT-INTERVENORS' OPPOSITION TO
MOTION FOR PRELIMINARY INJUNCTION: C07-
5374-RBL

18

Heller Ehrman LLP
701 Fifth Avenue, Suite 6100
Seattle, Washington  98104-7098
Telephone (206) 447-0900

1   though Village sought to control future development of Church's property where evidence did

2   not disclose that such control was desired *because* Church was a religious institution).  The

3   Pharmacy Board repeatedly noted that the purpose of the Rules is "to promote patient safety by

4   assuring that patients have access to lawful, appropriate medications without delay." *See, e.g.,*

5   Explanatory Letter at 1 (Alaily Decl., Ex. B).  Although much of the discussion during the rule-

6   making process revolved around access to Plan B, in particular, it mattered little whether the

7   refusal to dispense that drug was based on personal, moral, or religious grounds.  Rather, the

8   Pharmacy Board's concern was the act of refusing to dispense.  Indeed, unlike in *Lukumi*,

9   Plaintiffs do not point to any evidence of "significant hostility" to religion in the record of

10  enactment.  To the contrary, the Pharmacy Board was primarily concerned with barriers to

11  patient access that pharmacist refusals create, regardless of their source.  Similarly, the

12  Governor's support of the Rules was not based on any hostility toward religion, but on the belief

13  that pharmacists should not be permitted to interpose their own moral objections when

14  dispensing needed medication—whether those objections might be to undocumented immigrants,

15  gay individuals, or any other group.  *See* Seattle Times Article (Waggoner Decl., Ex. F).

16       All of this evidence, which is cited in Plaintiffs' Motion, and is evident from the public

17  record and the text of the Rules themselves, clearly indicates that the object of the Rules is to

18  neutrally ensure access to drugs and devices—regardless of the basis of an individual

19  pharmacist's objection.  Accordingly, Plaintiffs' effort to avoid rational basis review and to

20  invoke the strict scrutiny required by *Lukumi* is unfounded.

21                    **c.      The Rules are generally applicable.**

22       The element of general applicability is intertwined with neutrality.  *Lukumi*, 508 U.S. at

23  531-32.  The essence of the test is that "inequality results when a legislature decides that the

24  governmental interests it seeks to advance are worthy of being pursued only against conduct with

25  a religious motivation." *Id.* at 542-43.  In evaluating general applicability, courts thus examine

26  the law's means and the ends: if the means fail to match the ends, the statute likely targets

27  religious conduct and is therefore not generally applicable.

28       Plaintiffs do not even attempt to argue that the Pharmacy and Pharmacist Rules are not

DEFENDANT-INTERVENORS' OPPOSITION TO            19
MOTION FOR PRELIMINARY INJUNCTION: C07-
5374-RBL

Heller Ehrman LLP
701 Fifth Avenue, Suite 6100
Seattle, Washington  98104-7098
Telephone (206) 447-0900

generally applicable.  Nor can they.  The Rules apply to all pharmacies and pharmacists dispensing all drugs and devices.  Viewed under the means-ends test, the Pharmacy Board's means (the Rules) closely match its ends (providing citizens with lawful drugs and devices).  The Rules are neither under- nor over-inclusive in that regard, and their reach is not limited to religiously-based refusals.  Accordingly, it is plain that the Rules are generally applicable.

### d.      The Rules are valid under any level of scrutiny.

Because the Rules are neutral laws of general applicability that do not restrict conduct *because* of any religious motivation, rational basis scrutiny is the appropriate level of review. *Miller v. Reed*, 176 F.3d 1202, 1206 (9th Cir. 1999).  Rational basis review "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *Heller v. Doe,* 509 U.S. 312, 319 (1993) (quoting *FCC v. Beach Communications, Inc.,* 508 U.S. 307, 313 (1993)). Rather, the rational basis test requires only that the statute, as a general matter, serve a legitimate governmental purpose.  *Russell v. Hug,* 275 F.3d 812, 820 (9th Cir. 2002); *see also Beach Communications,* 508 U.S. at 313 (a law will survive rational basis review if there is "any reasonably conceivable state of facts that could provide a rational basis for the classification"). Therefore, a statute "does not fail rational-basis review because it is not made with mathematical nicety or because in practice it results in some inequality." *Heller,* 509 U.S. at 321 (citation and quotation marks omitted).  Courts instead "are compelled under rational-basis review to accept a legislature's generalizations even when there is an imperfect fit between means and ends." *Id*.

Plaintiffs make no effort to defend the Rules under this deferential standard, because the State's interest in protecting public health is indisputably furthered by rules that require pharmacies to dispense lawful drugs and devices.  As set out in Section II.B and C, *supra*, the Pharmacy Board undertook an extensive two-year rule-making process, resulting in its determination that the Rules were necessary to promote patient safety.

Even under the strictest of scrutiny, however, the Rules pass muster.  Under the strict scrutiny test, a law is valid if "it is justified by a compelling interest and is narrowly tailored to advance that interest." *Lukumi*, 508 U.S. at 532.  Here, the State emphasized throughout the rule-making process that its goal was to ensure that all Washingtonians have access to necessary,

lawfully prescribed medicines that directly benefit their well-being.  *See* Explanatory Letter at 1 (Alaily Decl, Ex. B) ("to promote patient safety by assuring that patients have access to lawful, appropriate medications without delay"); Significant Analysis at 1 (Waggoner Decl., Ex. K) ("to improve state-wide access and reduce barriers for patients seeking [FDA] approved drugs and devices"); Concise Explanatory Statement (Alaily Decl., Ex. C) ("The purpose of the rules is to promote patient safety and access to health care by emphasizing the professional responsibilities of pharmacists and pharmacies.").

A pharmacy's refusal to fill a valid prescription jeopardizes the well-being of others.  For example, regarding Plan B—which is most effective in the first 12 to 24 hours—refusal to dispense the drug in a timely manner could result in an unintended pregnancy.  *See* Significant Analysis at 1 (Waggoner Decl., Ex. K).  Refusal to dispense HIV medications in a timely manner could result in an increased risk of transmission of HIV to others and an increased vulnerability to serious infection for the patient.  *See id.*; *see also* Schouten Decl. ¶ 8; Billings Decl. ¶ 9.  The State's interest in ensuring public health is undeniably compelling and justifies the regulation of the pharmacy profession.  *See Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 625 (1995) ("'States have a compelling interest in the practice of professions within their boundaries, and . . . as part of their power to protect the public health, safety, and other valid interests they have broad power to establish standards for licensing practitioners and regulating the practice of professions.'") (quoting *Goldfarb v. Virginia State Bar,* 421 U.S. 773, 792 (1975)).

In furthering that compelling interest, the Rules are narrowly tailored to accommodate the religious, moral, or ethical objections of pharmacists to the extent possible while still ensuring the public's access to lawful drugs and devices.  Rather than barring all refusals to dispense drugs or devices across the board, the Rules provide pharmacies the latitude to accommodate an individual pharmacist's objections.  *See* Concise Explanatory Statement at 9 (Alaily Decl., Ex. C) ("The rules do not override the individual pharmacists' moral or religious beliefs; however the rules do impose a duty on the business to ensure timely access to lawful prescribed medications and devices.  The rules do not prohibit an employer from accommodating a pharmacist's personal objections."); Explanatory Letter at 3 (Alaily Decl., Ex. B) (if a

DEFENDANT-INTERVENORS' OPPOSITION TO
MOTION FOR PRELIMINARY INJUNCTION: C07-
5374-RBL

21

Heller Ehrman LLP
701 Fifth Avenue, Suite 6100
Seattle, Washington  98104-7098
Telephone (206) 447-0900

pharmacist objects to a drug or device, it is the *pharmacy's* responsibility to ensure that someone else is available to dispense that drug or device in a timely manner).[7]

### 2.   Plaintiffs Cannot Show The Requisite Likelihood Of Success On Their Equal Protection Claim

Plaintiffs also assert that the Pharmacy and Pharmacist Rules violate the Fourteenth Amendment's Equal Protection Clause, which commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws."  Plaintiffs contend that the Rules exclude pharmacies and pharmacists from the "right of conscience" purportedly extended by Washington law to all health care providers.  Motion at 16.  Plaintiffs cannot prevail on this claim.

As an initial matter, there is no "classification" at work here.  The statutes upon which Plaintiffs rely—RCW 48.43.065 and RCW 70.47.160—do not extend a "right of conscience" to all health care providers.  Plaintiffs recognize this.  Motion at 16 & n. 4.  Those statutes relate to coverage provided by health insurance carriers and, specifically, the State's basic health plan. Like the Rules at issue here, those laws require the Insurance Commissioner (RCW 48.43.065(c)) and the Health Care Authority Administrator (RCW 70.47.160(c)) to establish a mechanism to ensure that enrollees are not "denied timely access" to any service included in the basic health plan.  Therefore, it is not the case that pharmacies and pharmacists are being singled out for differential treatment from *all* other health care providers.  In the absence of any "classification," there cannot be a violation of the Equal Protection Clause.  Protections of the Equal Protection Clause apply only when "persons similarly situated" are treated differently.  *See City of Cleburne, Tx. v. Cleburne Living Center*, 473 U.S. 432, 439 (1985).

Even assuming that the Rules impose a "classification" that treats similarly situated persons differently, "[t]he general rule is that legislation . . . will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest."  *Cleburne*, 473 U.S. at

---

[7]  Plaintiffs suggest that pharmacies in a Catholic hospital may refuse to stock Plan B. Motion at 12.  The Rules, however, contain no such exemption.  Plaintiffs' arguments in this vein are irrelevant to the constitutionality of the Rules; Plaintiffs make those arguments only in relation to the constitutionality of the HRC's enforcement of the Washington Law Against Discrimination, RCW 49.60.

440.  As the Supreme Court has observed, "[w]hen social or economic legislation is at issue, the Equal Protection Clause allows the States wide latitude, and the Constitution presumes that even improvident decisions will eventually be rectified by the democratic process." *Id*.  The general rule gives way only when a statute burdens a "suspect" class or impinges on a fundamental right. *Cleburne*, 473 U.S. at 440; *Cent. State Univ. v. Am. Ass'n of Univ. Professors*, 526 U.S. 124, 128 (1999).  Neither exception is present here.

Indeed, Plaintiffs do not (and cannot) argue that the Rules are based on a suspect class of which Plaintiffs are a member.  Only classifications based on race, alienage, or national origin have been deemed "suspect" for purposes of the Equal Protection Clause.  *See, e.g., Cleburne*, 473 U.S. at 440 (identifying classifications based on race, alienage, or national origin as suspect). Neither Rule is based on any such classification.  To the extent Plaintiffs argue that pharmacists must be treated identically to other health care providers, it is well established that the state has wide latitude to define and regulate professions as it sees fit.  *Williamson v. Lee Optical of Oklahoma*, 348 U.S. 483, 489 (1955) (state may apply different rules to opticians, optometrists, ophthalmologists, and sellers of ready-to-wear eyeglasses).  To the extent Plaintiffs argue that the rules have disparate impact on solo pharmacists, there is no protected class of persons who run their businesses with fewer employees than others.  *See Richardson v. Sec'y of Labor*, 689 F. 2d 632, 633-34 (6th Cir. 1982) (state may impose liability based solely upon the business organization of employer).[8]

Finally, Plaintiffs cannot manufacture an Equal Protection claim by arguing that the Pharmacy and Pharmacist Rules burden their "right to freedom of religious belief and conscience."  Motion at 16.  As detailed in Section III.B.1 above, that is not the case.  The Rules

---

[8]  Even if the Rules have a "disparate impact" on or result in the "disparate treatment" of pharmacies, pharmacists, or solo pharmacists, strict scrutiny is inappropriate unless Plaintiffs prove a discriminatory purpose.  *Washington v. Davis*, 426 U.S. 229, 242 (1976) ("[A] law, neutral on its face and serving ends otherwise within the power of government to pursue," is not invalid under the Equal Protection Clause simply because it may disproportionately affect a suspect class.); *Binford v. Benda*, 2007 WL 2193756, *11 (W.D. Wash. July 27, 2007) (J. Leighton) (to prove a "*prima facie* violation of the Equal Protection Clause a plaintiff first must prove a discriminatory intent or purpose.").  Plaintiffs make no such showing.

are neutral and apply generally to all pharmacies and pharmacists.  The Supreme Court has instructed that in the absence of a violation of the Free Exercise Clause, rational-basis scrutiny applies to an equal protection claim.  *Locke v. Davey*, 540 U.S. 712, 721 n.3 (2004).

Under rational-basis review, a statute is presumed constitutional, and the "burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it." *Heller*, 509 U.S. at 312, 320 (quoting *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (1973)).[9]  Plaintiffs do not carry this burden or even try to do so.  As discussed in Section II.B and III.B.1.d above, the Pharmacy and Pharmacist Rules are rationally related to the State's legitimate interest in promoting public health, by protecting the ability of patients to obtain timely access to necessary medication.  That is sufficient to uphold their constitutionality.  In addition, because the Rules are narrowly tailored to a compelling state interest, they would survive even strict scrutiny.

### 3.   Plaintiffs Cannot Show The Requisite Likelihood Of Success On Their Title VII/Supremacy Clause Claim

Plaintiffs next allege that the Pharmacy and Pharmacist Rules are invalid because, pursuant to the Supremacy Clause of the U.S. Constitution, they are inconsistent with (and thus preempted by) Title VII of the Civil Rights Act of 1964.[10]  "The Supremacy Clause of the Constitution, Art. VI, cl. 2, invalidates state laws that interfere with, or are contrary to, federal law." *Nat'l Audubon Soc'y v. Davis,* 307 F.3d 835, 851 (9th Cir. 2002) (internal quotation marks

---

[9]  *See also Beach Communications*, 508 U.S. at 313 (noting that equal protection is not a license for courts to judge the wisdom, fairness or logic of legislative choices); *Ferguson v. Skrupa*, 372 U.S. 726, 729 (1963) ("Under the system of government created by our Constitution, it is up to the legislatures, not the courts, to decide on the wisdom  and utility of legislation.").

[10]  The precise theory posed by Plaintiffs in their Motion and Complaint is not entirely clear.  However, the Supremacy Clause provides for federal preemption of state statutes in only three situations: (1) where preemption is express in the text of the federal statute, (2) where Congress has expressed an intent to regulate an entire field, or (3) where state and federal law fundamentally conflict with one another.  Congress specifically stated that the first two types of preemption do not apply here.  *See* Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-7 ("Nothing in this subchapter shall be deemed to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of any State or political subdivision of a State . . .").

1  omitted). This claim is fundamentally flawed because the Rules do not regulate the same

2  conduct regulated by Title VII, and they pose absolutely no conflict with the terms of Title VII.

3      The type of preemption alleged by Plaintiffs—referred to as "conflict preemption"—

4  occurs "where it is impossible for a private party to comply with both state and federal

5  requirements, or where state law stands as an obstacle to the accomplishment and execution of

6  the full purposes and objectives of Congress." *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990)

7  (citation and quotation omitted); *accord Ting v. AT&T,* 319 F.3d 1126, 1135 (9th Cir. 2003)

8  (citations omitted). This, however, is not a case where "compliance with both federal and state

9  regulations is a physical impossibility," *Florida Lime & Avocado Growers, Inc. v. Paul,* 373

10  U.S. 132, 142-143 (1963), or where there is an "inevitable collision between the two schemes of

11  regulation." *Id.* at 143. Accordingly, in considering whether a state law is preempted "'[t]he

12  purpose of Congress is the ultimate touchstone' of pre-emption analysis." *Cipollone v. Liggett*

13  *Group, Inc.,* 505 U.S. 504, 516 (1992) (quoting *Malone v. White Motor Corp.,* 435 U.S. 497, 504

14  (1978)). Only state laws that pose "an obstacle to the accomplishment and execution of the full

15  purposes and objectives of Congress" are preempted. *English*, 496 U.S. at 79. There is no such

16  conflict here.

17      The purpose of Title VII is "to achieve equality of employment opportunities and remove

18  barriers that have operated in the past to favor an identifiable group of . . . employees over other

19  employees." *California Fed. Savings & Loan Ass'n v. Guerra*, 479 U.S. 272, 288 (1987)

20  (citations omitted). The Rules, by contrast, regulate pharmacies and say nothing about the

21  manner in which those pharmacies treat their employees.

22      Plaintiffs assert in their Motion and their Complaint that the Rules "require Washington

23  employers such as Stormans to take adverse employment action against the Plaintiff pharmacists

24  based on their religious beliefs and practices." Motion at 20; *see also* Compl. at ¶ 73. That is

25  not so. The Rules say nothing whatsoever about how pharmacies are to treat individual

26  pharmacists with religious or other objections to dispensing medications. They simply require

27  pharmacies to ensure that someone on staff is available to meet a patient's needs. How a

28  particular pharmacy chooses to ensure compliance with the Rules is for it to decide. Regardless

DEFENDANT-INTERVENORS' OPPOSITION TO
MOTION FOR PRELIMINARY INJUNCTION: C07-
5374-RBL

25

Heller Ehrman LLP
701 Fifth Avenue, Suite 6100
Seattle, Washington  98104-7098
Telephone (206) 447-0900

1  of the option chosen, a pharmacy must still comply with the restrictions of Title VII, including

2  the requirement that an employer attempt to accommodate the individual employee's religious

3  beliefs.[11]   Accordingly, this is not a situation in which it is "impossible" to comply with both

4  statutes.  To the contrary, pharmacies in Washington must comply with both and must treat their

5  employee pharmacists consistently with Title VII when deciding how to comply with the Rules.

6          Plaintiffs also make a confused attempt to identify a conflict by alleging that even if the

7  Rules do not *require* employers to treat employees differently based on their religious beliefs,

8  they *permit* employers to do so.  *See* Compl. at ¶ 73.  This allegation makes no sense.  As

9  explained above, the Rules are silent on the subject of how an employer ensures compliance with

10 the Rules when faced with an individual pharmacist who refuses to dispense medications.  But

11 silence does not mean that the Rules *permit* violations of Title VII.  As the Supreme Court has

12 held, if the term "permit" were interpreted so expansively, states "would be required to

13 incorporate every prohibition contained in Title VII into . . . state law, since it would otherwise

14 be held to 'permit' any employer action it did not expressly prohibit."  *Guerra,* 479 U.S. at 291

15 n.29.  The Court rejected that absurd interpretation, holding that the term "'permit' in [the statute

16 at issue] must be interpreted to pre-empt only those state laws that expressly *sanction* a practice

17 unlawful under Title VII; the term does not pre-empt state laws that are silent on the practice."

18 *Id.* (emphasis added).  Plainly, the Rules do not sanction violations of Title VII by pharmacies.

19

20

_____

[11]  Title VII of the 1964 Civil Rights Act requires employers with 15 or more employees to make reasonable accommodations for their employees' religious beliefs and practices unless doing so would result in undue hardship to the employer. 42 U.S.C. § 2000e-2; *Trans World Airlines, Inc. v. Hardison,* 432 U.S. 63, 84 (1977).  A reasonable accommodation is one that "eliminates the conflict between employment requirements and religious practices." *Ansonia Bd. of Educ. v. Philbrook,* 479 U.S. 60, 70 (1986).  However, an employee is not entitled to an accommodation if it would work an undue hardship on his or her employer. *See* 42 U.S.C. § 2000e(j) (employees are not entitled to an accommodation if it would work a hardship on his or her employer); *Trans World,* 432 U.S. at 84, (undue hardship exists when a religious accommodation would cause more than de minimus hardship to the employer or other employees).  For example, in *Sutton v. Providence St. Joseph Med. Ctr.,* 192 F.3d 826, 830 (9th Cir. 1999), the Ninth Circuit held that accommodating an employee who refused to give a social security number for religious reasons was an undue hardship on the employer as a matter of law.

DEFENDANT-INTERVENORS' OPPOSITION TO          26
MOTION FOR PRELIMINARY INJUNCTION: C07-
5374-RBL

Heller Ehrman LLP
701 Fifth Avenue, Suite 6100
Seattle, Washington  98104-7098
Telephone (206) 447-0900

### 4. Plaintiffs Cannot Show The Requisite Likelihood Of Success On Their Procedural Due Process Claim

Plaintiffs' purported procedural due process claim is so fundamentally flawed, it has no likelihood of success on the merits. To plead a violation of procedural due process, a plaintiff must allege each of the following: (1) a constitutionally-protected interest; (2) a deprivation of that interest by the government; and (3) a lack of constitutionally sufficient process in the deprivation. *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993).

Plaintiffs have no constitutionally-protected interest in being employed at the pharmacy of their choice. Although procedural due process may protect a licensed business professional from arbitrary revocation of the license, the Pharmacy and Pharmacist Rules themselves do not revoke or suspend any license. Rather, the Rules have been amended through the traditional rule-making process. Of course, that does not violate procedural due process. *Gallo v. United States District Court*, 349 F.3d 1169, 1182-83 (9th Cir. 2003) (no procedural due process violation when rules governing attorney admissions are changed with retroactive effect); *Texaco v. Short*, 454 U.S. 516 (1982) (no procedural due process where new statute is enacted that affected existing property interests).

Plaintiffs' fear that they *might* lose their license if they refuse to comply with the Rules in the future is irrelevant. The law is clear that a procedural due process claim based on a possible future deprivation is not ripe for judicial review where no administrative process has taken place.[12] *See, e.g.*, *Manufactured Home Comtys., Inc. v. City of San Jose*, 420 F.3d 1022, 1033 (9th Cir. 2005).

### C. The Public Interest And Balance Of Hardships Tip In Favor Of The Rules' Validity And Against Issuance Of A Preliminary Injunction.

Not only do Plaintiffs fail to demonstrate a likelihood of success on the merits of their claims, but they also fall short on the question of harms potentially caused by the injunction and

---

[12] If discipline under the new rules occurs in the future, it will be governed by the procedures of the Washington Administrative Procedures Act. RCW 18.130.100 (authorizing adjudications by Pharmacy Board pursuant to APA); *see also* RCW 34.05.410-.476 (APA procedures for the disciplinary process). Plaintiffs nowhere allege that these well-established disciplinary procedures are inadequate.

1   the impact on the public interest.  Plaintiffs have no colorable Free Exercise Claim.  As such, the

2   primary basis for their allegation of irreparable harm—violation of First Amendment rights—is

3   non-existent.  Motion at 21-22.  Plaintiffs' remaining purported harms—loss of license and

4   livelihood (none of which has occurred)—represent, at best, a possible monetary loss that does

5   not outweigh the impact on the public interest and the hardships that would be imposed by the

6   injunction on individuals like the Defendant-Intervenors.

7          The Ninth Circuit has made it clear that a district court must consider whether the public

8   interest favors issuance of an injunction.  *Sw. Voter Educ. Registration Project v. Shelley*, 344

9   F.3d at 917; *Lands Council v. Martin*, 479 F.3d at 639; *Fund for Animals, Inc. v. Lujan*, 962 F.2d

10  1391, 1400 (9th Cir. 1992).  The public interest does not here.  Indeed, the Rules were enacted

11  pursuant to RCW 18.64.005, which provides in relevant part that the Board shall "[p]romulgate

12  rules for the dispensing . . . of drugs and devices and the practice of pharmacy *for the protection*

13  *and promotion of the  public health*, *safety, and welfare*."  RCW 18.64.005(7) (emphasis added).

14  Further, the Notice of Proposed Rule-Making indicates that the Rules "meet the goals and

15  objectives of the statute by promoting patient safety and access to health care," and that the

16  Rules "are needed to minimize barriers to health care and to reduce risk for patients' health

17  where there may be an emergent need for a prescribed drug or device."  Notice of Proposed

18  Rule-Making (Alaily Decl., Ex. I).

19         The failure to timely dispense medication has broad social consequences and costs.

20  Plaintiffs cannot minimizethose by arguing that *Plan B* is widely available and, in any event, in

21  low demand.  Motion at 22.  First, the concerns regarding refusals to dispense are not limited to

22  Plan B.  In particular, the Pharmacy Board highlighted the social costs imposed with respect to

23  HIV medication and noted that diabetics and others might face similar problems.  Significant

24  Analysis at 6-7 (Waggoner Decl., Ex. K).  The declarations of the Defendant-Intervenors

25  confirm the individual health risks attendant to a denial of necessary medication.  Second, the

26  experiences of Defendant-Intervenors Ms. Andrieni, Ms. Harmon, and Ms. Schmidt show that

27  the problem of pharmacy and pharmacist refusals to dispense Plan B is clearly broader than what

28  the Pharmacy Board survey—the only evidence on which Plaintiffs rely—reveals.  Indeed, that

DEFENDANT-INTERVENORS' OPPOSITION TO        28
MOTION FOR PRELIMINARY INJUNCTION: C07-
5374-RBL

Heller Ehrman LLP
701 Fifth Avenue, Suite 6100
Seattle, Washington  98104-7098
Telephone (206) 447-0900

survey only captured information from 121 of the more than one-thousand pharmacies in the State of Washington.  *Compare* Survey Results at 1 (Waggoner Decl., Ex. A) ("Total 121 pharmacies responded) with Motion at 3 ("Approximately 1,370 licensed pharmacies serve the public in Washington State.").

Plaintiffs do not and cannot demonstrate that the public interest and balance of hardships tips in their favor, as they must.  *See Shelley*, 344 F.3d at 918 (requiring a particularly strong showing by plaintiffs that public interest and balance of hardships tip in their favor where there is not a strong likelihood of success on the merits).  Therefore, Plaintiffs' Motion must fail.

## IV.    CONCLUSION

For all of the reasons set forth above, Plaintiffs cannot demonstrate the likelihood of success that is required for a preliminary injunction—particularly when balanced against the important public health interests the Rules were enacted to protect.  Accordingly, Defendant-Intervenors respectfully request that the Court deny the Motion for Preliminary Injunction.

DEFENDANT-INTERVENORS' OPPOSITION TO     29
MOTION FOR PRELIMINARY INJUNCTION: C07-
5374-RBL

Heller Ehrman LLP
701 Fifth Avenue, Suite 6100
Seattle, Washington  98104-7098
Telephone (206) 447-0900

1

2  August 13, 2007                         Respectfully submitted,

3                                          **HELLER EHRMAN LLP**

4
                                          By s/  Rima J. Alaily
5                                             Rima J. Alaily (WSBA # 29225)
                                              Molly A. Terwilliger (WSBA # 8449)
6                                             Matthew A. Carvalho (WSBA # 31201)
                                              **HELLER EHRMAN LLP**
7                                             701 Fifth Avenue, Suite 6100
                                              Seattle, WA  98104
8                                             Tel:  (206) 447-0900
                                              Fax:  (206) 447-0849
9                                             E-mail:  rima.alaily@hellerehrman.com
10                                                      molly.terwilliger@hellerehrman.com
                                                        matt.carvalho@hellerehrman.com
11

12                                          **ACLU OF WASHINGTON FOUNDATION**

13
                                          By s/  Sarah A. Dunne
14                                            Sarah A. Dunne (WSBA # 34869)
                                              Aaron H. Caplan (WSBA # 22525)
15                                            **ACLU OF WASHINGTON FOUNDATION**
                                              705 Second Avenue, Suite 300
16                                            Seattle, WA  98104-1723
                                              Tel:  (206) 624-2184
17                                            Fax:  (206) 624-2190
                                              E-mail:  dunne@aclu-wa.org
18

19

20                                          **NORTHWEST WOMEN'S LAW CENTER**

21
                                          By s/  Lisa M. Stone
22                                            Lisa M. Stone (WSBA # 15421)
                                              **NORTHWEST WOMEN'S LAW CENTER**
23                                            907 Pine Street, Suite 500
                                              Seattle, WA  98101-1818
24                                            Tel:  (206) 682-9552
                                              Fax:  (206) 682-9556
25                                            E-mail: lstone@nwwlc.org
                                              E-mail: nsapiro@nwwlc.org
26

27

28

DEFENDANT-INTERVENORS' OPPOSITION TO          30          Heller Ehrman LLP
MOTION FOR PRELIMINARY INJUNCTION: C07-                   701 Fifth Avenue, Suite 6100
5374-RBL                                                  Seattle, Washington  98104-7098
                                                          Telephone (206) 447-0900

1

2          **PLANNED PARENTHOOD OF WESTERN
           WASHINGTON**

3          By s/ Kelly S. Reese

4              Kelly S. Reese (WSBA # 22498)
               **PLANNED PARENTHOOD OF WESTERN
5              WASHINGTON**
               2001 East Madison Street
6              Seattle, WA  98122-2959
               Tel:  (206) 328-7734
7              Fax:  (206) 720-4657
8              E-mail:  kelly.reese@ppww.org

9
           Attorneys for Defendant-Intervenors
10

11

12

13

14    8/13/07 8:50 PM ()

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT-INTERVENORS' OPPOSITION TO          31
MOTION FOR PRELIMINARY INJUNCTION: C07-
5374-RBL

Heller Ehrman LLP
701 Fifth Avenue, Suite 6100
Seattle, Washington  98104-7098
Telephone (206) 447-0900