1
2
3
4
5
6
7
8

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| STORMANS, INCORPORATED doing business as RALPH'S THRIFTWAY; RHONDA MESLER, MARGO THELEN,<br><br>Plaintiffs,<br><br>v.<br><br>MARY SELECKY, ACTING SECRETARY OF THE WASHINGTON STATE DEPARTMENT OF HEALTH, et. al,<br><br>Defendants. | **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**<br><br>Civil Action No. C07-5374<br><br>**NOTE ON MOTION CALENDAR:**<br>**August 17, 2007** |

## INTRODUCTION

Defendants failed to persuasively challenge Plaintiffs' factual and legal support for their free exercise, equal protection and due process claims under the First and Fourteenth Amendments and Title VII claim. Their claims are justiciable. The challenged Rules and threatened enforcement of anti-discrimination laws are not neutral, nor generally applicable. They cannot survive strict scrutiny. Because Plaintiffs' First Amendment claim is clearly colorable, the preliminary injunction should issue. Alternatively, Plaintiffs have shown the likelihood of success on their remaining claims and that absent injunctive relief, they would be irreparably harmed because they face forgoing constitutionally-protected activity or exposing their licenses and

ORIGINAL

livelihoods to discipline and sanction. Defendants have not established any specific harm they would sustain if the court should grant this motion.

## I. PLAINTIFFS' CLAIMS AGAINST THE WASHINGTON HUMAN RIGHTS COMMISSION OFFICIALS (HRC) SATISFY THE RIPENESS TEST.

The HRC Defendants contend the threat to Plaintiffs is hypothetical because Executive Director Brenman's March 2006 letter is neither a law nor formal policy. Defendants mischaracterize the nature of the threatened harm to which Plaintiffs are now exposed. Washington's Laws Against Discrimination (WLAD), RCW 49.60 *et. seq,.* prohibit sex discrimination and empower the Executive Director *personally* to bring enforcement actions, creating Plaintiffs' legal jeopardy.[1] Brenman's March 2006 letter is a warning to any pharmacy that employs conscientious objectors or refuses to stock Plan B that it violates the WLAD. The impact of this warning is as certain as it is injurious. The prudent pharmacy employer will terminate such pharmacists now that their continued employment represents an actual and ongoing liability. They may also refuse to hire conscientious objectors.

Plaintiffs Thelen and Mesler already face this imminent threat. Brenmnan's letter forces Ralph's Thriftway to either "intentionally flout[] state law" or "forgo what [it] believes to be constitutionally protected activity." *Steffel v. Thompson,* 415 U.S. 452, 462 (1974). Courts should not force plaintiffs to violate the law to assert their rights; rather, courts should reward fidelity to the law and enable plaintiffs to challenge a law before it is enforced against them. *Id.*

Plaintiffs' claims meet the three-factor analysis for ripeness where the state threatens prosecution.[2] Courts view the test through the lens of well-settled federal case law on pre-enforcement challenges such as this one. The cases reveal that the "credible threat of

---

[1] RCW 49.60.215; RCW 49.60.230(1)(b); WAC 162-08-072.

[2] In evaluating the genuineness of a claimed threat of prosecution, we look to whether the plaintiffs have articulated a "concrete plan" to violate the law in question, whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and the history of past prosecution or enforcement under the challenged statute. *Thomas v. Anchorage Equal Rights Comm'n,* 220 F.3d 1134 (9th Cir. 2000) (en banc), *cert. denied,* 531 U.S. 1143 (9th Cir. 2001).

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION (C07-5374) – 2

*96245 (13438.00)

ELLIS, LI & McKINSTRY PLLC
ATTORNEYS AT LAW
601 UNION ST STE 4900
SEATTLE WA 98101-3906
(206) 682-0565 Fax (206) 625-1052

1   prosecution" standard is a rather forgiving one. Generally, courts should find the threat credible

2   when a plaintiff has a serious intent to engage in the unlawful conduct and "the government fails

3   to indicate affirmatively that it will *not* enforce the statute." *Commodity Trend Serv. v.*

4   *Commodity Futures,* 149 F.3d 679, 687 (7th Cir. 1998) (citing *Virginia v. Am. Booksellers Ass'n,*

5   484 U.S. 383, 393, (1988)(emphasis added); *see also N.H. Right to Life Pol. Action Comm. v.*

6   *Gardner,* 99 F.3d 8, 15 (1st Cir.1996) ("[C]ourts will assume a credible threat of prosecution in

7   the absence of compelling contrary evidence.").

8       As to the first factor, Plaintiffs articulate a concrete plan to violate the law. In all three

9   cases, Ralph's, Mesler and Thelen have been presented with Plan B prescriptions, have overtly

10  refused to fill them and continue to refuse under circumstances that expose them to injury.

11  (Stormans, Mesler, and Thelen Decl's.). In *Thomas,* the plaintiff landlords who refused to rent to

12  unmarried couples in violation of Alaska anti-discrimination law could not "say when, to whom,

13  where or under what circumstances" they had refused to rent in the past nor whether they would

14  be faced with similar renters in the future. *Thomas,* 220 F.3d. at 1139.

15      By contrast, Plaintiffs have given the court the names, dates and circumstances of Ralph's

16  refusals to sell Plan B. (Waggoner Decl., Ex. B, pp. 9-10). The Board of Pharmacy (BOP)

17  confirms it has taken the refusals seriously, by opening and pursuing a complaint against Ralph's

18  license. (BOP Brief, p. 5). When hired as the pharmacy manager, Mesler told her employer she

19  would not stock Plan B. She now anticipates termination because she refuses to alter her practice

20  and her employer fears being sanctioned. (Mesler Decl.). Thelen had to find a new employer

21  because her former employer could only afford one pharmacist per shift. She continues to refer

22  Plan B customers to another pharmacist, but fears her new employer may prohibit this. (Thelen

23  Decl.). Plaintiffs' actions evidence a concrete plan to violate the law.

24      Plaintiffs also meet the second factor for ripeness. Director Brenman communicated a

25  specific warning to pharmacists and their employers. It is not a statement of his personal advice,

26  as the HRC claims. He declares that it is "the position of the WSHRC" that pharmacies must

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY
INJUNCTION (C07-5374) – 3

*96245 (13438.00)

ELLIS, LI & MCKINSTRY PLLC
ATTORNEYS AT LAW
601 UNION ST STE 4900
SEATTLE WA 98101-3906
(206) 682-0565 Fax (206) 625-1052

stock and dispense Plan B and self-enforce the law against their own employees who refuse to fill on conscientious objector grounds. Not to do so, the HRC maintains, is illegal discrimination. His letter remains prominently posted on the official HRC website in the section "Women's Issues:"[3]

> It is the position of the WSHRC that allowing pharmacists to discriminate, based on their personal religious beliefs, against women and others trying to fill lawful prescriptions would be discriminatory, unlawful, and against good public policy and the public interest. It is also WSHRC's position that allowing a practice of "refuse and refer" as a means of addressing this issue, allows and perpetuates discriminatory behavior.... Our interpretation of this statute is that granting pharmacists the ability to deny lawful prescriptions to women would constitute illegal discrimination on the basis of sex under the Washington Law Against Discrimination, would expose pharmacists to significant legal liability for such discriminatory, and hence, illegal acts, would similarly expose stores and corporations, under whose purview pharmacists operate, under the law of agency.... It is illegal and bad public policy to permit pharmacists to deny services to women based on the individual pharmacist's religious or moral beliefs.

Ralph's refusal to stock Plan B is known to public officials in the Olympia area. The store remains the target of picketers and a boycott led by activists who filed BOP complaints charging Ralph's with discrimination against women. The media has given the story extensive coverage. Even the Governor honored the boycott. (Stormans Decl., Ex. A; Plaintiffs' Brief, pp. 7-8). The BOP opened a complaint against Ralph's. Unlike the plaintiffs in *Thomas,* Ralph's conscientious objector status was public and known to enforcement officials before the BOP brought the action. The HRC warning has had its desired effect on Plaintiffs Mesler and Thelen as well. Their tenuous employment situations are discussed earlier. Here the threat of enforcement is "credible, not simply imaginary or speculative." *Thomas,* 220 F.3d at 1140; Mesler and Thelen Decl's.

As to the third factor, there is undeniably a long history of the HRC enforcing the WLAD on the basis of sex discrimination. *See Albertsons v. WSHRC,* 544 P.2d 98 (Ct.App. 1976). Notably, the HRC did not disavow an intention to enforce the WLAD against Plaintiffs. *New Mexicans for Bill Richardson v. Gonzales,* 64 F.3d 1495, 1502 (10th Cir.1995) (finding threat of prosecution credible where state had "not affirmatively disavowed any intention of bringing a

---

[3] http://www.hum.wa.gov/Women's%20Issues/Index.html (last viewed on August 16, 2007); (Waggoner Decl., Ex. J).

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION (C07-5374) – 4

*96245 (13438.00)

ELLIS, LI & MCKINSTRY PLLC
ATTORNEYS AT LAW
601 UNION ST STE 4900
SEATTLE WA 98101-3906
(206) 682-0565 Fax (206) 625-1052

1   criminal prosecution"). Plaintiffs have met the three-factor ripeness test.

2       In a case decided after *Thomas*, the Ninth Circuit reversed a dismissal of a suit for

3   declaratory and injunctive relief on standing and ripeness grounds where an attorney challenged

4   professional conduct rules that he claimed had a chilling effect. *Canatella v. State of California*,

5   304 F.3d 843, 852 (9th Cir. 2002). "To establish a dispute susceptible to resolution by a federal

6   court, plaintiffs must allege that they have been 'threatened with prosecution, that a prosecution is

7   likely, or even that a prosecution is remotely possible." *Id.* In *Canatella*, disciplinary proceedings

8   were not threatened, much less imminent. Ralph's, on the other hand, *remains* the target of

9   protesters and an active BOP complaint. Prosecution under the WLAD is not only possible, it is

10  likely. And the HRC's threat to pharmacy employers jeopardizes Mesler's and Thelen's jobs.

11  Plaintiffs face a realistic danger of sustaining a direct injury as a result of WLAD's operation or

12  enforcement. *Babbitt v. United Farm Workers Nat'l*, 442 U.S. 289, 298, (1979).

13      Finally, Plaintiffs meet the two-fold prudential test for ripeness. The issues are fit for

14  judicial decision and the Plaintiffs will sustain hardship if the court withholds consideration.

15  Plaintiffs meet the fitness prong when the issues are chiefly legal. *Abbott Laboratories v.*

16  *Gardner*, 387 U.S. 136, 154 (1967). Plaintiffs refuse to stock and dispense Plan B on religious

17  grounds. Defendants claim that Plaintiffs' refusal violates the WLAD. The issues are legal and

18  ready for adjudication. If the court withholds consideration, Ralph's will be forced to choose

19  between refraining from constitutionally-protected activity and exposing itself to WLAD

20  sanctions. Thelen and Mesler will similarly have to choose between their deeply-held religious

21  beliefs and their careers. The court should exercise its jurisdiction and grant Plaintiffs' motion for

22  a preliminary injunction against the BOP and HRC Defendants.

23  **II.    PLAINTIFFS HAVE A HIGH PROBABILITY OF PREVAILING ON THEIR
          FREE EXERCISE CLAIM.**

24
        The Rules and threatened enforcement by the HRC lack neutrality and general

25  applicability. This alone presents a colorable free exercise claim that warrants injunctive relief.

26

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY
INJUNCTION (C07-5374) – 5

*96245 (13438.00)

ELLIS, LI & McKINSTRY PLLC
ATTORNEYS AT LAW
601 UNION ST STE 4900
SEATTLE WA 98101-3906
(206) 682-0565 Fax (206) 625-1052

1 Only rarely can a challenged rule survive strict scrutiny. Defendants' asserted interests are neither

2 compelling nor narrowly-tailored. *Warsoldier v. Woodford*, 418 F.3d 989, 1001 (9th Cir. 2005);

3 *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 546 (1993).

4     **A.    The Rules And HRC Threatened Enforcement Are Not Neutral.**

5     Defendants suggest that the Rules are neutral and generally applicable because textually

6 they apply to all pharmacies, pharmacists and medications equally. (BOP Brief, pp. 9-10).

7 Defendants offer *no* response to the substantial evidence that Defendants targeted religious

8 objections when they adopted the Rules and threatened WLAD enforcement action. As an Illinois

9 federal court held in a similar conscience case, such strong evidence presents a colorable free

10 exercise claim. *Menges v. Blagojevich*, 451 F. Supp.2d 992 (C.D. Ill. 2006) (court found

11 colorable claim where governor issued order requiring pharmacies and pharmacists to stock and

12 dispense emergency contraception).

13     The Free Exercise Clause will not shield official action whose object is to restrict or

14 infringe upon religiously-motivated conduct. *Lukumi*, 520 U.S. at 534. The court determines a

15 rule's object from both "direct and circumstantial evidence." *Id.* at 540.

16         Relevant evidence includes, among other things, the historical background of the
        decision under challenge, the specific series of events leading to the enactment or

17         official policy in question, and the legislative or administrative history, including
        contemporaneous statements made by members of the decision-making body.

18         These objective factors bear on the question of discriminatory object.

19 *Id.* (internal citations omitted). A fair-minded person reviewing the record would reach but one

20 conclusion: the Rules were primarily (if not exclusively) intended to prohibit religious objections,

21 particularly as they relate to Plan B.

22     <u>Defendants' documents reveal the Rules were prompted by religious objections to Plan B.</u>

23 The BOP's own press release stated that the "rules were sparked by complaints that some

24 pharmacists and pharmacies refused to fill prescriptions for emergency contraceptives – also

25 known as morning after pills or Plan B." (Waggoner Decl., Ex. I). As addressed in the previous

26 section, the HRC's letter to the BOP clearly identifies the Rules' object and the HRC's direct

ELLIS, LI & McKINSTRY PLLC
ATTORNEYS AT LAW
601 UNION ST STE 4900
SEATTLE WA 98101-3906
(206) 682-0565 Fax (206) 625-1052

threat to conscientious objectors and their employers. In the letter, the HRC explained:

> The WSHRC understands that the Board of Pharmacy (the Board) is currently dealing with issues arising from some pharmacists in the state refusing to fill or desiring to deny filling some legal prescriptions for emergency contraception and other prescriptions for women, based on the pharmacists' asserted religious and moral beliefs…. As we understand it, the drug at the center of this issue is Plan B, an emergency contraceptive.

(Waggoner Decl, Ex. J, pp. 1-2, 12; *see also* Ex. I, K).

The BOP's minutes also show that the BOP remained focused on religious objections to Plan B when it adopted the Rules.[4] At its August 10, 2005 board meeting, the minutes state: "Steve Saxe [the Executive Director] informed the BOP that the office has received telephone calls from both the public and profession regarding pharmacist's ability to refuse to dispense emergency contraceptives for reasons of conscience." (Beebe Decl., p.1, Ex. A, pp 5-6). During the meeting, the BOP discussed whether to refer callers to 1-800-NOT2-LATE and whether to post this number on the BOP's website. *Id.* This number is the hotline used *exclusively* to order emergency contraception. Understandably, Defendants omit any reference to this in their brief.

The substantial role played by Planned Parenthood (PP) and Northwest Women's Law Center (NWLC) further confirms the Rules' object to eliminate religious objections to Plan B. PP and NWLC advocated predominantly one issue before the BOP - prohibiting the refusal to stock and fill Plan B on moral and religious grounds.[5] Defendants imply that PP and NWLC were one of "many" interested groups to participate in the rule-making process. This, too, misrepresents their substantial role and the BOP's clear focus on religious objections to emergency contraceptives. PP and NWLC representatives attended the August 10, 2005 meeting at which the Executive Director told the BOP his staff had received inquiries concerning its

---

[4] The declarations of the BOP's Program Manager and Acting Executive Director refer specifically to the fact that the rule-making process was focused on religious objections to Plan B. The Director repeatedly characterizes the Rules as concerning "pharmacists' ability to refuse to dispense medications for reasons of conscience." (Salmi Decl, pp. 4, 5; Beebe Decl., p. 2).

[5] Plaintiffs will oppose the motion to intervene filed by PP and NWLC. Their brief in opposition to this motion, filed as an exhibit to their motion to intervene, and answer is untimely and inappropriate. They are not a party to this case.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY
INJUNCTION (C07-5374) – 7

*96245 (13438.00)

ELLIS, LI & McKINSTRY PLLC
ATTORNEYS AT LAW
601 UNION ST STE 4900
SEATTLE WA 98101-3906
(206) 682-0565 Fax (206) 625-1052

position on religious objections to Plan B. These special-interest groups added that pharmacists in other states had refused to fill Plan B and the groups asked the BOP to consider a rule to require health-care providers to dispense Plan B regardless of religious objections. The BOP then began to discuss this possibility. (Beebe Decl., p. 2 and Ex. B).

At a later meeting, PP and NWLC made a formal presentation to the BOP urging them to oppose conscience rights related to Plan B. Plaintiffs know of no other group besides the Washington State Pharmacy Association (WSPA) permitted to make such a presentation. When the BOP later opened the meeting to the public, every comment dealt with emergency contraception or religious objections to the same. (Salmi Decl., Ex. C, pp. 6-9).

The Governor's extraordinary intervention and the BOP's 180-degree reversal further demonstrate that the Rule's object is to prohibit health-care providers from asserting religious objections. Defendants make no attempt to rebut or downplay Plaintiffs' description of the way in which the Governor directed the rule-making process. (Plaintiffs Brief, pp. 4-5) The BOP adopted a pro-conscience rule in June 2006 and Governor Gregoire demanded that the BOP abandon their version and adopt her own. The BOP dutifully did so after she threatened to remove them.[6] (Waggoner Decl., Ex. E-G). The Governor and the BOP have explained that the Rules resulted from "key stakeholders" working on the Rules. These "stakeholders" were the BOP, PP, NWLC and the WSPA, none of which expressed a religious objection to emergency contraceptives. (Waggoner Decl. in Support of Reply, "Waggoner II Decl," Ex. 2).

Documents published by the BOP after it adopted the Rule reveal the targeting of religiously-motivated conduct involving Plan B. After the BOP capitulated to the Governor, it realized it had not engaged in any significant analysis of the proposed rules. To cover its tracks, it

---

[6] The court should also be aware that two of the BOP board members who were appointed by the Governor have substantial ties to groups that have strong business interests in selling Plan B. One member is a previous Executive Director of Planned Parenthood while the other *continues* to serve on the NARAL Pro-Choice Washington Foundation that lobbied the BOP in coordination with PP and NWLC. *See* http://www.governor.wa.gov/news/news-view.asp?pressRelease=250&newsType=1 (last accessed on August 17, 2007); NARAL Pro-Choice Washington Foundation, Annual Report filed January 5, 2007.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION (C07-5374) – 8

*96245 (13438.00)

ELLIS, LI & MCKINSTRY PLLC
ATTORNEYS AT LAW
601 UNION ST STE 4900
SEATTLE WA 98101-3906
(206) 682-0565 Fax (206) 625-1052

1  faxed a survey to selected pharmacies, giving them only two days to respond. (Waggoner Decl.,
2  Ex. A). A review of the questionnaire confirms that the Rules primarily target health-care
3  providers who object to dispensing Plan B for ethical and religious concerns. Six of thirteen
4  questions dealt exclusively with moral and religious objections or emergency contraception.[7] The
5  remaining questions primarily dealt with the pharmacy's size and location. *Id.* In one of the
6  resulting reports, four out of the six categories of Rules' probable benefits focused exclusively on
7  emergency contraception. (Waggoner Decl., Ex. K, Final SAR, pp. 6-7).

8       The denial of conscience rights to health-care providers provides "strong evidence" that
9  the Rules lack neutrality. *Lukumi* teaches that regardless of the text of a rule, its effect in "real
10 operation" provides "strong" evidence of the intended purpose. *Lukumi*, 520 U.S. at 535.
11 Defendants themselves freely admit that the Rules effectively bar Plaintiffs from exercising a
12 religious objection. They have explained that the Rules "do not allow a pharmacy to refer a
13 patient to another pharmacy to avoid filling the prescription due to moral or ethical obligations."
14 (Waggoner II Decl, Ex. 1, p. 3). Defendants have also explained that the Rules "may require a
15 licensed pharmacist to occasionally fill a prescription for a medication whose intended use
16 offends the pharmacist's religious beliefs." (BOP Brief, p. 9). The HRC has gone so far as to say
17 that health-care providers who will not sell emergency contraception are analogous to a
18 pharmacist declining to serve African-Americans. (Waggoner Decl., Ex. J). This is also
19 evidenced by Defendants' continual reference to Supreme Court cases concerning racial
20 discrimination. (BOP Brief, p. 10, 15; HRC Brief, p. 12).

21       As in the Illinois *Menges* case, the effect of the Rules on health-care providers is also
22 significant and creates a colorable free exercise claim. *Menges*, 451 F. Supp.2d at 1000. The
23 BOP has unequivocally stated that Ralph's Thriftway may not refuse to stock Plan B due to a

---

[7] For example, the Board asked pharmacies whether they allow pharmacists to refuse to dispense for moral, ethical or religious reasons; whether they stock emergency contraception and if not, why not; how many requests pharmacies have for Plan B each year; and whether the pharmacists have a board-approved collaborative agreement that allows them to prescribe emergency contraceptives for patients. (Waggoner Decl., Ex. A).

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY
INJUNCTION (C07-5374) – 9

*96245 (13438.00)

ELLIS, LI & MCKINSTRY PLLC
ATTORNEYS AT LAW
601 UNION ST STE 4900
SEATTLE WA 98101-3906
(206) 682-0565 Fax (206) 625-1052

1  religious objection. Both the employers of Thelen and Mesler have refused to continue their

2  previous conscience policies. Nor can their employers accommodate them by hiring a second

3  pharmacist. The real operation of the Rules has been to eliminate Ralph's conscience rights and

4  cause the employers of Thelen and Mesler to change their conscience policies.[8]

5  Defendants' own documents, the Governor's extraordinary intervention, and the Rules'

6  "real operation" prevent Defendants from "reinventing" their object. All of the evidence points to

7  one purpose: to suppress religiously-motivated objections to emergency contraception. This

8  evidence alone means the Rules lack neutrality and presents a colorable free exercise claim.

9  **B.  The Rules And Threatened Enforcement Are Not Generally Applicable.**

10  Underinclusiveness may mean a law lacks generally applicability. Judge Alito explained:

11  > A law fails the general applicability requirement if it burdens a category of
   religiously motivated conduct but exempts or does not reach a substantial category
12  > of conduct that is not religiously motivated and that undermines the purposes of
   the law to at least the same degree as the covered conduct that is religiously
13  > motivated.

14  *Blackhawk v. Commonwealth of Pennsylvania*, 381 F.3d 202 (3rd Cir. 2004). The courts

15  must "meticulously" review exemptions as "categories of selection are of paramount concern

16  when a law has the incidental effect of burdening religious practice." *Lukumi*, 520 U.S. at 542.

17  A comparison of the Rules' asserted purpose and actual scope highlights the

18  constitutionally-fatal underinclusiveness. The Rules allow subjective exemptions for secularly-

19  motivated conduct. They permit health-care providers to turn away patients based on subjective

20  conclusions. WAC 246-869-010. The Rules allow health-care providers to decline to dispense if

21  the request is not consistent with "reasonable expectations for filling the prescription." *Id.*

22  Health-care providers may also refuse to dispense for a variety of other subjective reasons and,

23  significantly, the Rule state those reasons are not exhaustive. *Id.* Because the Rules allow health-

24  care providers to delay or refuse delivery for secular reasons and the regulation contains several

25

26  [8]Contrary to the BOP's brief, Thelen and Mesler clearly identify their accommodation requests in their declarations.

ELLIS, LI & McKINSTRY PLLC
ATTORNEYS AT LAW
601 UNION ST STE 4900
SEATTLE WA 98101-3906
(206) 682-0565 Fax (206) 625-1052

subjective, even unidentified, exemptions, the individuals most likely to be punished for not dispensing without delay are those who do so for religious reasons. This is precisely the "religious gerrymander" the First Amendment forbids.

Finally, Defendants claim the Rules seek to ensure patient health by providing prompt access to time-sensitive medications. (BOP Brief, p. 10; Waggoner Decl., Ex. K, p.1). However, Defendants do not require all pharmacies to stock well-known, time-sensitive medications. The only medication pharmacies must stock by regulation is Ipecac, which is designed to counter poisoning. WAC 246-869-200. Under the Rules, health-care providers do not violate the Rules if they fail to stock a drug unless their failure resulted from a "personal" or "religious" objection. (Waggoner Decl. II, Ex. 1, 2). Nor do the Rules require pharmacies to stock or dispense Plan B if they have chosen to focus in a specialized practice. (Waggoner II Decl., Ex. 1, p. 2). The Rules allow for secularly-motivated and subjective exemptions, but deny a religious exemption to Plaintiffs. Thus, the Rules fail the general applicability requirement.[9]

### C. Defendants Lack A Compelling Interest.

A law that lacks neutrality or is not of general application must "undergo the most rigorous of scrutiny," advancing "interests of the highest order." *Lukumi*, 508 at 546. Defendants assert two interests allegedly served by prohibiting Plaintiffs from exercising their religious objection: (1) promoting health by ensuring access to Plan B in a timely manner and (2) preventing sex discrimination. (BOP Brief, pp. 10, 15-16; HRC Brief, p. 11; Waggoner Decl., Ex. K, p. 1.). Defendants provide little analysis to support these interests, to explain how Plaintiffs' religious objections discriminate on the basis of sex, or to justify why such alleged discrimination trumps Plaintiffs' fundamental free exercise rights. Nor do they make an effort to articulate how these interests are narrowly-tailored.

Instead of explaining the state's specific interest in forcing *these health-care providers* to

---

[9] As outlined in Plaintiffs' opening brief, the HRC's selective enforcement and exemptions also render support for an underinclusive finding. (Plaintiffs' Brief, p. 12).

ELLIS, LI & MCKINSTRY PLLC
ATTORNEYS AT LAW
601 UNION ST STE 4900
SEATTLE WA 98101-3906
(206) 682-0565  Fax (206) 625-1052

violate their consciences, Defendants simply list interests that, in the abstract, sound important: promoting health and eliminating invidious discrimination. Defendants assume that the mere mention of these interests will carry their burden to show how the interests are advanced by prohibiting Plaintiffs from exercising their religious objections. The Supreme Court, however, has rejected the use of such generally stated interests. In *Gonzales v. O Centro Espirita Beneficente Uniao Do Vegetal*, 546 U.S. 418, 126 S. Ct. 1211, 1220 (2006), the court held that when strict scrutiny is applied, one must "look[] beyond broadly formulated interests justifying the general applicability of government mandates and scrutinize[] the asserted harm of granting specific exemptions to particular religious claimants."

Defendants have failed to demonstrate that patient health and access to Plan B is in any way compromised by Plaintiffs' refusals. Defendants have made no effort to prove that the Rules increase access to Plan B or that an increase in access is even necessary. In the Concise Explanatory Statement, Defendants concede that the Rules do not guarantee more access to Plan B. They merely "may" increase access. (Waggoner II Decl., Ex. 2, p. 5). In an attempt to downplay their targeting of religiously-motivated conduct, Defendants argue that the Rules do not require pharmacies to stock Plan B. Assuming arguendo that is true, the lack of such a requirement further undermines their asserted compelling interest. If the Rules' primary purpose is to ensure immediate access to time-sensitive medications, one must ask why the Rules do not require pharmacies to stock these drugs and why they allow providers to refuse to dispense in a variety of circumstances.

As important, Defendants have absolutely no proof that access was ever a problem. During the rule-making process, the *only* drug Defendants asked pharmacies about was Plan B. Defendants' survey revealed that the vast majority of pharmacies stock and dispense the drug. Those that did not cited no customer demand. (Plaintiffs' Brief, p. 3; Waggoner Decl., Ex. A).

Plaintiffs' refusal to participate in what they believe is the destruction of human life has nothing to do with sex discrimination. No court has held that a right exists to force health-care

ELLIS, LI & MCKINSTRY PLLC
ATTORNEYS AT LAW
601 UNION ST STE 4900
SEATTLE WA 98101-3906
(206) 682-0565 Fax (206) 625-1052

providers to carry and dispense Plan B in spite of their religious or ethical objections. In fact, the opposite is true. Federal and state law provides a clear right to health-care providers to not participate in abortion procedures. *See e.g.,* 42 U.S.C. § 300a-7(c)(1); RCW 9.02.150. Our State Legislature has codified an even broader "fundamental right" of a health-care provider not to participate in a health-care service (encompassing more than abortion) to which they have a religious objection. RCW 48.43.065(1); 70.47.160(1). Similarly, courts have held that a health-care provider does not engage in sex discrimination when he or she refuses to participate in an abortion procedure. *See e.g., Bray v. Alexandria Women's Clinic*, 506 U.S. 263, 271-74 (1993) The Supreme Court has observed that reasonable people disagree over when life begins and the refusal to participate in an act that one believes terminates that life has nothing to do with gender. *Id.* The customer's sex is inconsequential to Plaintiffs' refusal to stock and dispense Plan B, which they believe unnaturally terminates human life.

Citing cases like *Bob Jones University v. United States*, 461 U.S. 574 (1983), Defendants draw an analogy between Plaintiffs' objections and race discrimination. Asserting a religious objection to a drug that one believes is an abortifacient is hardly akin to racial discrimination. *Brey*, 506 at 274 ("whether one agrees or disagrees with the goal of preventing abortion, that goal in itself ... does not remotely qualify for such harsh description, and for such derogatory association with racism."). Defendants similarly rely on *United States v. Jaycees*, 408 U.S. 609 (1984), to suggest that sex discrimination can trump other First Amendment rights. *Jaycees* does not stand for this proposition. The Jaycees lost because they failed to prove how the inclusion of women would undermine their First Amendment rights, not because the interest in preventing sex discrimination trumped those rights. *Id.* at 621-28.

It is also worth noting that the Supreme Court has twice held that the Constitution may mandate an exemption from non-discrimination laws. *Boy Scouts of America v. Dale*, 530 U.S. 640 (2000); *Hurley v. Irish-American Gay, Lesbian and Bi-Sexual Group*, 515 U.S. 557 (1995). The Court has also rejected a challenge to a religious exemption from an otherwise generally

ELLIS, LI & McKINSTRY PLLC
ATTORNEYS AT LAW
601 UNION ST STE 4900
SEATTLE WA 98101-3906
(206) 682-0565 Fax (206) 625-1052

applicable rule that banned employment discrimination. *Corporation of Presiding Bishop v. Amos*, 483 U.S. 327 (1987). Many lower courts have struck down anti-discrimination rules when their application infringed upon a constitutionally-protected liberty.[10] The mere assertion that "public health is good" and "sex discrimination is bad" cannot serve as "interests of the highest order" sufficient to require Plaintiffs to choose between their deeply-held religious beliefs concerning the sanctity of life and forcing them to leave their life-long careers.

**D.  Defendants' Interests Are Not Narrowly Tailored.**

Defendants made no real effort to demonstrate that the Rules are narrowly-tailored. They claim "access to prescription medication often is emergent and time-sensitive," and summarily conclude that the inconvenience of traveling to a nearby pharmacy for Plan B outweighs Plaintiffs' religious belief that Plan B terminates innocent life. (BOP Brief, p. 16).

If Defendants believe "timely" access to Plan B is so important, then why don't they require every pharmacy to stock it in all circumstances? As described in Holly Whitcomb Henry's declaration, pharmacy associations have encouraged the use of many different options to ensure access to Plan B that do not eliminate conscience rights.[11] (Henry Decl.). These options include: (1) proactively directing prescribers and patients to pharmacies that carry certain drugs; (2) further education and participation in the Association of Reproductive Health Professionals national hotline that allows patients to find providers who dispense Plan B; (3) promotion of the http://not-2-late.com website that helps identify providers; (4) notifying patients in advance that the health-care provider will not sell Plan B; and (5) encouraging health-care providers to maintain comprehensive lists of drugs not stocked by local pharmacies. As the American Pharmacy

---

[10] *See e.g., Christian Legal Soc'y v. Walker*, 453 F.3d 853 (7th Cir. 2006); *University of Wisconsin-Madison Roman Catholic Found. v. Walsh*, 2007 WL 765255 (W.D. Wis. 2007); *Hsu v. Roslyn Union Free Sch. Dist.*, 85 F.3d 839 (2nd Cir. 1996); *Association of Faith-Based Organizations v. Bablitch*, 454 F. Supp.2d 812 (W.D. Wis. 2006); *Boy Scouts of America v. Till*, 136 F. Supp2d 1295 (S.D. Fla. 2001); *Cuffley v. Mickes*, 208 F.3d 735 (8th Cir. 2004); *Knights of the Ku Klux Klan v. East Baton Rouge Parish Sch. Bd.*, 578 F.3d 1122 (5th Cir. 1978).

[11] Ms. Henry owns several pharmacies, is the past-president of the Washington State Pharmacy Association, and current chair of the National Community Pharmacy Association.

ELLIS, LI & McKINSTRY PLLC
ATTORNEYS AT LAW
601 UNION ST STE 4900
SEATTLE WA 98101-3906
(206) 682-0565  Fax (206) 625-1052

Association has concluded, a regulation that restricts a health-care providers' right of conscience does a disservice to the profession and ignores the many other viable options to ensure patients' best interests are served. "[P]atients should receive their medications without harassment and interference, but pharmacists should not be compelled to participate in activity they find objectionable." (Henry Decl., Attachment A). Plaintiffs have not only presented a colorable free exercise claim, but demonstrated a strong likelihood they will prevail at trial. Their motion for preliminary judgment should be granted to protect their interests pending trial.

**E. Stormans, Inc. Has Properly Asserted a Free Exercise Right**

The right to free exercise of religion for a corporation is protected under the First and Fourteenth Amendments. *See First Nat. Bank of Boston v. Bellotti*, 435 U.S. 765, 780, n. 15 (1978); *Grosjean v. American Press Co.*, 297 U.S. 233, 243 (1936). The distinction between "citizen" and "person" is critical. Where rights are asserted under 42 U.S.C. § 1983, the claims are based not on the privileges and immunities of the corporation's citizenship, but based on its rights as a person. *Primera Iglesia Bautista Hispana v. Broward County*, 450 F.3d 1295, 1305 (11th Cir. 2006) (stating that "this distinction makes all the difference."). Although the rights of a corporation are not coextensive with the rights of an individual, "corporations plainly possess the rights...asserted here: due process, equal protection, and the free exercise of religion." *Id.* Defendants unconstitutionally attempt to deny Stormans, Inc.'s free exercise rights

**III. PLAINTIFFS HAVE DEMONSTRATED THAT THE RULES AND HRC'S SELECTIVE WLAD ENFORCEMENT THREAT LIKELY VIOLATES THE EQUAL PROTECTION CLAUSE.**

Defendant BOP mischaracterizes Plaintiffs' equal protection claim. As to pharmacists, Plaintiffs assert (1) the Rules treat pharmacists differently from similar health-care providers and (2) the Rules treat pharmacists in pharmacies that cannot employ two pharmacists at the same time differently from pharmacists employed in pharmacies that can. In the case of pharmacies, Plaintiffs contend that (1) small pharmacies like Ralph's are disparately impacted by the Rules and (2) Ralph's pharmacy is treated differently from similar health-care providers.

ELLIS, LI & McKINSTRY PLLC
ATTORNEYS AT LAW
601 UNION ST STE 4900
SEATTLE WA 98101-3906
(206) 682-0565 Fax (206) 625-1052

1  <u>Pharmacists.</u>  In an attempt to assert that pharmacists and similar health-care providers
2  enjoy the same conscientious objector status, Defendants claim the Rules "allow individual
3  pharmacists to exercise a conscientious objection," but place on pharmacies the burden "to ensure
4  that patients timely receive their validly prescribed medications." (BOP Brief, p. 14).  This is
5  nonsense.  As amended, WAC 246-863-095 states "(1) A pharmacist's primary responsibility is to
6  ensure patients receive safe and appropriate medication therapy."  The BOP's Final Significant
7  Analysis Report ties this new pharmacist duty directly to the same duty imposed on pharmacies:

8      The rules meet the goals and objectives of the statute [empowering the BOP to
       adopt standards] by clarifying the expectations for professional conduct and
9      practice for *pharmacists* and pharmacies when presented with lawful prescriptions.
       ... A pharmacy *and pharmacist* may be disciplined for failing to ensure patients
10     receive safe and appropriate medication therapy in a timely manner.

11  (Waggoner Decl, Ex. K) (emphasis added).  In fact, the BOP's brief contains a concession of the
12  Rules' application to pharmacists:  "[T]he Regulations may require a licensed pharmacist to
13  occasionally fill a prescription whose intended use offends the pharmacist's religious beliefs."
14  (BOP Brief, p. 9)

15      Another amendment to WAC 246-863-095 increases the burden on pharmacists to
16  dispense Plan B against their religious beliefs: their licenses may be revoked if they discriminate
17  based on sex.  The BOP tips its hand as to what it means by discrimination in its discussion of its
18  asserted compelling state interests: "While some pharmacies and pharmacists may balk at treating
19  certain classes of patients or be prejudiced against them ... and that prejudice may be based on
20  deeply-held personal or religious beliefs - the state is not bound to honor those prejudices." (BOP
21  Brief, p. 15-16).  The BOP alleges that pharmacists refusing to fill Plan B based on personal or
22  religious beliefs discriminate.  Clearly, the Rules *do* place a separate duty on pharmacists to
23  dispense Plan B even when to do so would violate their religious beliefs.

24      The BOP claims WAC 246-863-095 allows pharmacists to exercise a conscientious
25  objection.  Yet no conscience right is mentioned or implied in the regulation.  The BOP rejected a

26

ELLIS, LI & McKINSTRY PLLC
ATTORNEYS AT LAW
601 UNION ST STE 4900
SEATTLE WA 98101-3906
(206) 682-0565  Fax (206) 625-1052

right of conscience during the rule-making process.[12] In spite of the BOP's claim to the contrary, a pharmacist whose religious beliefs prevent her from dispensing Plan B violates the Rules.

In contrast, other health-care providers exercising a right of conscience who refuse to provide emergency contraceptives are immune. RCW 48.43.065 and 70.47.160, explicitly and broadly, refer to a fundamental right of conscience that protects all health-care providers. No provider "may be required by law or contract under any circumstances to participate in the provision of ... a specific service if they object to so doing for reason of conscience or religion." *Id.*[13] *RCW 48.43.065 applies to all medical services paid for by health care insurance.* Health-care providers are persons regulated under Title 18, including pharmacies and pharmacists. Thus, even though pharmacists and doctors are both defined as "health-care providers" and many pharmacists and doctors prescribe Plan B, the doctor who refuses to write the prescription is protected while the pharmacist is not. Thus, pharmacists are treated differently on religious grounds from all other providers. For the reasons stated in the previous section, it is unlikely they will be able to carry their burden of establishing a compelling interest advanced through the least restrictive means.

Separately, the Rules treat pharmacists, who work in settings where no other pharmacist is on duty, differently from pharmacists who work alongside another pharmacist who will dispense Plan B. The BOP refers in vague terms to a duty of pharmacies to ensure patient access to medications in stock when a pharmacist refuses to fill on conscience grounds. (BOP Brief, p. 14). But nowhere do the Rules impose such a duty on pharmacies or explain how the pharmacy is to accommodate the solo-pharmacist. In the case of emergency contraceptives, like Plan B, which

[12] The BOP considered and rejected an amendment that would have relieved the pharmacist of the duty to dispense in violation of her conscience. (Waggoner Decl, Ex. K, SAR, p. 12) ("The rule did not provide adequate protection for patients if a pharmacist denies [the prescription] based on personal, religious or moral objection.").
[13] Defendants suggest that the fundamental right recognized by the Legislature is limited to the basic health care plan. But this mischaracterizes the nature of a fundamental right and ignores the fact that RCW 48.43.065 applies to *all* medical services paid through health care coverage in the State. In any event, the Rules do not exempt pharmacists of the duty to fill Plan B prescriptions for enrollees and those paid by health insurance, while the statutes exempt, for example, a doctor refusing to write a Plan B prescription in both contexts.

ELLIS, LI & McKINSTRY PLLC
ATTORNEYS AT LAW
601 UNION ST STE 4900
SEATTLE WA 98101-3906
(206) 682-0565 Fax (206) 625-1052

1  are time-sensitive, the BOP's stated position is that a "pharmacy or pharmacist may be disciplined

2  for failing to ensure patients receive ... medication in a timely manner." (Waggoner Decl., Ex. K,

3  p. 4). The only real option is for the pharmacy to hire a second pharmacist. Small community

4  pharmacies reported that the estimated annual cost would be at least $80,000. The BOP conceded

5  the "probable cost of additional staffing would fall more heavily on community pharmacies [64%]

6  compared to corporate/chain pharmacies."[14] (Waggoner Decl., Ex. K, p. 10- 11).

7  Logic and real world economics inexorably lead to the conclusion that the smaller

8  pharmacies can afford but one pharmacist. As with Plaintiffs Mesler and Thelen, pharmacists

9  employed by such pharmacies are given two options: violate their consciences or find another job,

10  *if* they can. The Rules treat solo-pharmacists differently from pharmacists employed in larger

11  pharmacies and violate the Equal Protection Clause. (Henry Decl.)

12  <u>Pharmacies.</u> As to the equal protection rights of pharmacy owners, like Ralph's, their

13  rights are similarly violated. Small community pharmacy owners who must hire a second

14  pharmacist or terminate a conscientious objector and find a replacement are disparately treated

15  relative to larger chain or corporate pharmacies. The BOP's Final Small Business Economic

16  Impact statement so concludes. (Henry Decl., Waggoner Decl. Ex. K, p. 10).[15]

17  Separately, like pharmacists, pharmacies are regulated under Title 18 and as such meet the

18  definition of health-care provider. RCW 48.43.005(16)(a). But the Rules purport to strip

19  pharmacies of the fundamental conscience right that "every individual possesses." RCW

20  48.43.065(1) and 70.47.160(1). Accordingly, under the Rules the BOP treats pharmacy owners

21  differently than all other health-care providers. This disparate treatment is subject to strict

22  scrutiny. As discussed in the previous section, Defendants are likely to fail to meet this burden.

23

24  [14] Of the pharmacies responding to the BOP survey, 64% described their pharmacy as an independent community
pharmacy. (Waggoner Decl., Ex. A, p. 1).

25  [15]The SBEIS reads: "5. **Does the rule impose a disproportionate impact on small businesses?**
Yes, the cost of additional staffing for rule compliance for community pharmacies is much greater than the average

26  cost of additional staffing for corporate pharmacies, if those pharmacies choose to hire staff to comply with the rules."

The BOP argues that even if its Rules create classifications, it has compelling interests in ensuring patient health and welfare and eliminating sex discrimination. The BOP principally relies on *Goehring v. Brophy*, 94 F.3d 1294, 1301 (9th Cir. 1996) and *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 440-41 (1985). The BOP's reliance on *Goehring* is misplaced. The *Goehring* court qualifies its holding: "this is not a case in which the government has prohibited [the plaintiffs] from participating in a religious ritual, or penalized them for doing so." *Goehring*, 94 F.3d at 1301. Here, the BOP *is* penalizing the Plaintiffs for participating in a "religious ritual." Plaintiffs' religious beliefs tell them that Plan B ends innocent human life. The Rules will penalize the plaintiffs for adhering to their beliefs.

*City of Cleburne* is also distinguishable. The BOP cites to this case for the proposition that when social or economic legislation is at issue, the Equal Protection Clause allows the states wide latitude, and courts should be reluctant to closely scrutinize the means lawmakers have chosen to implement their purpose. But *City of Cleburne* deals with discrimination against a home for the mentally-retarded. The court held that the mentally-retarded are not a suspect class, and therefore they are not accorded greater protection than a social or economic class. This case focuses on discrimination against religious belief and conduct. Religious belief and practice are fundamental rights entitled to equal protection.

HRC's Selective Threat of Enforcement of the WLAD. The HRC contends it has not violated the Equal Protection Clause because it has not undertaken an enforcement action or adopted a policy and no one has complained. (HRC Brief, p. 12). But as discussed in the section addressing HRC's ripeness challenge, Director Brenman's warning on behalf of the HRC is a credible threat of prosecution. Brenman has the express authority to initiate a complaint against a pharmacy or pharmacist. WAC 162-08-072. The logical and intended consequence of the warning is that pharmacies will stock Plan B and remove pharmacists whose refusal to fill on conscientious grounds expose them to sanction. (Henry Decl.) Notably, the HRC Defendants did not affirmatively disavow bringing an enforcement action against Plaintiffs in their opposition

ELLIS, LI & MCKINSTRY PLLC
ATTORNEYS AT LAW
601 UNION ST STE 4900
SEATTLE WA 98101-3906
(206) 682-0565 Fax (206) 625-1052

materials and even suggested the sex discrimination provided a compelling interest here. *See New Mexicans for Bill Richardson v. Gonzales,* 64 F.3d 1495, 1502 (10th Cir. 1995). Just as significant, the HRC did not provide the court with a similar threat directed at doctors, for example, who refuse to prescribe Plan B or perform abortion services on conscience grounds. Plainly, the HRC has singled out pharmacies and pharmacists for censure in violation of their right to equal protection under the laws. A strong likelihood exists that Plaintiffs will prevail on their equal protection claim. Their motion for preliminary judgment should be granted.

**IV.     The Rules And Threatened Enforcement Likely Violate Title VII.**

Defendants' interpretation of the Rules and WLAD violates Title VII and the Supremacy Clause. 42 USC § 2000h-4 explains that it is not Congress' intent to "occupy the field in which any such title operates to the exclusion of State laws on the same subject matter ... *unless such provision is inconsistent with any of the purposes of this Act, or any provision thereof.*" 42 USC § 2000h-4 (emphasis added). In *California Savings & Loan Association v. Guerra,* 479 U.S. 272, 281 (1987), the Supreme Court limited instances of preemption of a state regulation to several circumstances, one of which satisfies one of the following two criteria: (1) it is impossible to comply with both federal and state rules or (2) the regulation impedes the accomplishment of Congress' full purposes and objectives. *Id.* Additionally, in a constitutional context, any state law violating or conflicting with Title VII is presumptively invalid under the Supremacy Clause of Article VI of the U.S. Constitution. *See, e.g., Rosenfeld v. S. Pac. Co.,* 444 F3d 1219 (9th Cir. 1971). *See also Burns v. Rohr Corp.,* 346 F. Supp. 994 (S.D. Cal. 1972) (Title VII preempted state regulation concerning rest breaks).

Title VII's prohibition against religious discrimination in employment conflicts with the Rules because it requires employers, such as Ralph's, to discriminate against pharmacists because of their religious beliefs concerning emergency contraceptives. The "timely manner" provision in the Rules leaves no room for the pharmacist to refer the patient to another pharmacy due to a religious objection. The Rules and HRC's threatened enforcement nearly guarantee that an

ELLIS, LI & MCKINSTRY PLLC
ATTORNEYS AT LAW
601 UNION ST STE 4900
SEATTLE WA 98101-3906
(206) 682-0565 Fax (206) 625-1052

1   employer will refuse to hire a pharmacist with a religious objection who must work alone.
2   Similarly, they will also terminate existing employees who assert such an objection. (Henry
3   Decl.). Plaintiffs Mesler and Thelen have already experienced this. Their employers have
4   previously accommodated them with a "refuse and refer" policy. As the court held in *Menges*,
5   such a past accommodation may provide evidence that the accommodation is reasonable and
6   required under Title VII. *Menges*, 451 F. Supp.2d at 1002-03. Despite this, both the Rules and
7   the HRC prohibit this accommodation. This conflicts with Title VII and violates the Supremacy
8   Clause. For this reason, the Court should enter a preliminary injunction to protect Plaintiffs
9   through trial.

10      Lastly, Defendants' reliance on *Hillsborough County, Fla. v. Automated Medical*
11  *Laboratories*, 471 U.S. 707, 715 (1985), is misplaced for two reasons. First, the agency
12  administering the federal regulation expressly indicated that it did not intend to preempt state and
13  local regulation. Second, the court made it very clear that the presumption against preemption of
14  state health and safety regulations exists only when "state and local regulation of health and safety
15  matters can constitutionally coexist with federal regulation. *Id.* at 716. A showing of an "implicit
16  preemption in the field, or of a conflict between a particular local provision and federal scheme"
17  overcomes the presumption. *Id.* The Rules and HRC's position cannot coexist with the Civil
18  Rights Act, which expressly prohibits employers from discriminating on religion and requires
19  reasonable accommodations.

20  **V.    Plaintiffs Are Likely to Prevail on Their Due Process Claim**
21      Defendants misunderstand Plaintiffs' Due Process Claim because they misunderstand the
22  fundamental right of conscience recognized by the Legislature and given distinctive form in the
23  medical care context in RCW 48.43.065 and 70.47.160. The Legislature conferred on health-care
24  providers a broad "fundamental right" to refuse the provision of any service on the basis of
25  conscience or religion under "any circumstances." The BOP's Rules place a new, and unlawful,
26  burden on that right (both a liberty and property interest). This constitutes a violation of

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY
INJUNCTION (C07-5374) – 21

*96245 (13438.00)

ELLIS, LI & MCKINSTRY PLLC
ATTORNEYS AT LAW
601 UNION ST STE 4900
SEATTLE WA 98101-3906
(206) 682-0565 Fax (206) 625-1052

Plaintiffs' fundamental right in violation of federal due process.

*Williamson v. Lee Optical*, 348 U.S. 483 (1955), relied on by Defendants, is distinguishable. It is true in *Williamson* that the Supreme Court upheld a law prohibiting opticians from fitting or duplicating eyeglasses without a prescription, but unlike here the Oklahoma Legislature had not conferred a fundamental right. Plaintiffs do not allege a right to pursue a vocation; they allege a violation of their fundamental right of free exercise of religion.

## VI. PLAINTIFFS SATISFY THE IRREPARABLE HARM ELEMENT FOR AN INJUNCTION EITHER BECAUSE THEIR FIRST AMENDMENT CLAIM IS COLORABLE OR, ALTERNATIVELY, BALANCING THE HARDSHIPS TIPS DECIDEDLY IN THEIR FAVOR.

Defendants appear to concede that if Plaintiffs' First Amendment claim is colorable, they satisfy the irreparable harm element. *Warsoldier v. Woodford*, 418 F.3d 989, 1001 (9th Cir. 2003). At a minimum, Plaintiffs' First Amendment claim is indeed colorable. Plaintiffs have also shown (1) a likelihood of success or the possibility of irreparable injury or (2) raised serious questions going to the merits and the balance of hardships tip sharply in their favor. *Clear Channel Outdoor Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003).

Defendants failed to challenge Plaintiffs' reliance on *Vietnamese Buddhism Study Temple v. City of Garden Grove*, 460 F.Supp.2d 1165,1173 (C.D.Cal. 2006), where the district court enjoined the city's enforcement of its zoning ordinance against the temple to protect the temple's free exercise right pending trial. Similar to that case, without the injunction Plaintiffs would be subjected to the "burdensome choice" between forgoing constitutionally-protected activity and exposing their licenses, and therefore their livelihoods, to potential disciplinary action and sanctions by the BOP and HRC Defendants.

The BOP Defendants suggest disciplinary action is speculative, relying on *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988). *Caribbean* is inapposite. In that case the moving parties, fishermen who didn't want female observers placed on their boats, did not offer evidence to establish potential harm. *Id.* at 675. Here, Plaintiffs have shown their

ELLIS, LI & MCKINSTRY PLLC
ATTORNEYS AT LAW
601 UNION ST STE 4900
SEATTLE WA 98101-3906
(206) 682-0565 Fax (206) 625-1052

First Amendment rights will be chilled and, additionally, Thelen and Mesler have shown that the Rules and the WLAD will likely result in their employers being forced to terminate their employment. HRC's reliance on *City of Los Angeles v. Lyons,* 461 U.S. 95 (1983) for the proposition that Plaintiffs' injuries are speculative is equally misplaced. In *Lyons,* Plaintiffs sought to enjoin the entire Los Angeles police department from using choke holds in future arrests. The plaintiffs in that case obviously could not show the likelihood of future injury and the Court upheld the motion's denial. *Id.* at 105.

Defendants' claimed hardship if an injunction should issue *is* speculative. The BOP offers platitudes about protecting the public health instead of competent evidence that patients will not have access to Plan B if a single pharmacy and two pharmacists are allowed to exercise conscience rights pending trial. Plaintiffs offered evidence in their moving papers, unchallenged by Defendants, that in each of their communities there are numerous nearby pharmacies to which customers go, and have gone, to obtain Plan B. The public health will not suffer harm.

The HRC's only stated harm, if an injunction should issue, is that it will not be able to administer the WLAD against Plaintiffs. This is precisely Plaintiffs' point. Without an injunction, Plaintiffs First Amendment rights will be chilled by the threat of enforcement. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373 (1976). Plaintiffs motion should be granted.

## CONCLUSION

For the forgoing reasons, Plaintiffs respectfully submit that they have met the requirements for a preliminary injunction. Their motion should be granted.

DATED this 17th day of August, 2007.

ELLIS, LI & MCKINSTRY PLLC

Steven T. O'Ban, WSBA No. 17265
Kristen K. Waggoner, WSBA No. 27790
Attorneys for Plaintiffs

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY
INJUNCTION (C07-5374) – 23

*96245 (13438.00)

ELLIS, LI & MCKINSTRY PLLC
ATTORNEYS AT LAW
601 UNION ST STE 4900
SEATTLE WA 98101-3906
(206) 682-0565 Fax (206) 625-1052