The Honorable Ronald B. Leighton

1

2

3

4

5

6

7

8

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

11

12

13

14

15

STORMANS, INCORPORATED doing
business as RALPH'S THRIFTWAY;
RHONDA MESLER; and MARGO THELEN,

Plaintiffs,

v.

MARY SELECKY, ACTING SECRETARY
OF THE WASHINGTON STATE
DEPARTMENT OF HEALTH, et. al,

Defendants.

Civil Action No. C07-5374

**PLAINTIFFS' RESPONSE IN
OPPOSITION TO MOTION TO
INTERVENE**

Noted on Motion Calendar:
August 31, 2007

16

17

## I.   INTRODUCTION

18

19

20

21

22

23

Planned Parenthood, Northwest Women's Law Center, and the American Civil Liberties Union seek to intervene on behalf of Judith Billings, Jeffrey Schouten, Rhiannon Andreini, Molly Harmon, Catherine Rosma, Emily E. Schmidt, and Tami Garrard.[1]   Applicants fall into two categories: those claiming that a conscience exception may prevent them from accessing HIV medications and those claiming that an exception may jeopardize their access to Plan B even though none of them were unable to obtain the drug when they claimed to need it.

24

25

Regardless of what they will claim in their reply brief, Applicants' pleadings, declarations and exhibits demonstrate that they do not offer *any* new interests or arguments related to

26

_____

[1] Plaintiffs will refer to the intervenor-applicants as "Applicants."

PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO
INTERVENE (C07-5374) – 1

ELLIS, LI & McKINSTRY PLLC
ATTORNEYS AT LAW
601 UNION ST STE 4900
SEATTLE WA 98101-3906
(206) 682-0565 Fax (206) 625-1052

1    Plaintiffs' claims.  Nor have they asserted an interest that justifies the expense, inefficiency and

2    prejudice their intervention would cause to the orderly adjudication of the issues and the public

3    interest.[2]  Plaintiffs respectfully request Applicants' Motion be denied, without prejudice to their

4    ability to apply to file as *amici curiae* when this Court rules on Plaintiffs' constitutional claims.

5    **II.    RESPONSE TO FACTUAL STATEMENT**

6    Plaintiffs set forth in detail the factual basis for their challenge in their Amended

7    Complaint, moving papers and Reply in Support of a Preliminary Injunction.  They will respond

8    to Applicants material factual inaccuracies here.  Applicants claim Plaintiffs seek to "invalidate

9    the Rules".  (Intervention Motion, p. 3).  Plaintiffs make an as applied challenge to WAC 246-

10   869-010 and WAC 246-863-095 (the Rules).  They do not ask this Court to strike down the Rules.

11   The Court will adjudicate a narrow issue:  whether Plaintiffs possess a constitutional right to

12   decline to sell a specific drug they and other health-care providers consider to be an abortifacient

13   and to which they have deeply-held religious objections.  Nothing less and nothing more.

14   Applicants claim a specific interest in ensuring access to HIV medications and Plan B.

15   Plaintiffs have never asserted an objection to dispensing HIV medications.  Applicants' brief

16   mischaracterizes the supporting declarations.[3]  None of the Applicants have actually been denied

17   drugs when they perceived a need for them.  (Garrard Decl., p. 2; Schmidt Decl., p. 2; Rosman

18   Decl., p. 2; Harmon Decl., p. 2; Schouten Decl., p. 3; Andreini Decl., p. 2; Billings Decl., p. 3).

19

20   [2] Applicants' disregard for procedural rules substantiates Plaintiffs' concern that Applicants' involvement will hinder
     a proper and efficient adjudication.  Applicants filed an overlength Motion to Intervene and proposed Opposition to
     Motion for Preliminary Injunction without seeking the Court's leave, they presumptuously filed their Answer as if this

21   Court had granted them intervenor status and without regard for Rule 24(c), and they filed their opposition papers
     without a motion to shorten time even though Plaintiffs' Motion is already under consideration. For these reasons, the
     Court may deny intervention or, at a minimum, strike the Answer and opposition papers. Local Rule 7(g).

22   [3] Schouten suggests he "is aware that some people associate HIV with what they perceive as lifestyle choices with
     which they do not agree."  His perception of what others believe makes him "concerned that this poses a risk to

23   people who need access to HIV medication...." (Schouten Decl., p. 3).  Schouten has not been denied medication
     and a fear of future stereotyping by third-parties is not sufficient for intervention.  Harmon claims it was "very

24   upsetting" that a pharmacist told her Plan B should not be used as birth control.  (Harmon Decl., p. 2).  She purchased
     the drug at the same visit and the pharmacist's warning was good practice.  Barr Pharmaceuticals, Plan B's
     manufacturer, provides similar advice.  *See* Question 10 in "Plan B Frequently Asked Questions" (available at

25   www.go2planb.com/ForConsumers/Taking_PlanB/faqs.aspx) (accessed on August 27, 2007). Similarly, many
     allegations in Applicants' brief are based on mischaracterization, speculation and overly subjective interpretation.

26   *See e.g.*, Andreini Decl., p. 2 (Pharmacist said the store did not carry Plan B, but did not say it was due to a religious
     objection.  The pharmacist gave general directions to Bartell Drugs, where Andreini could purchase Plan B).

ELLIS, LI & MCKINSTRY PLLC
ATTORNEYS AT LAW
601 UNION ST STE 4900
SEATTLE WA 98101-3906
(206) 682-0565 Fax (206) 625-1052

1   Of the five Applicants asserting an interest in Plan B, only three have ever felt the need to take

2   Plan B and *all* purchased it in a timely manner, even under the new Rules. (Rosman Decl., p. 2;

3   Harmon Decl., p. 2; Andreini Decl., p. 2). The fourth Applicant has never sought the drug for any

4   purpose (Garrard Decl., p. 2) and the fifth has never sought Plan B for herself.  She merely

5   participated in an activist "testing program" sponsored by Planned Parenthood.  (Schmidt Decl.,

6   p. 2).   The declarations fail to support Applicants' claim that they will be unable to access

7   medications in the future if Plaintiffs' prevail.

8       Finally, Applicant Emily Schmidt, who has never used emergency contraception, no

9   longer resides in Washington.  (Schmidt Decl., p. 2).  Her departure makes her interest and

10  involvement even more tenuous and burdensome and precludes intervention.   *Donnelly v.*

11  *Glickman,* 159 F.3d 405, 409 (9th Cir. 1998).

12                              **III.    ARGUMENT**

13  **A.    THE APPLICANT HAS NO RIGHT TO INTERVENE UNDER RULE 24(A)(2).**

14      Courts in the Ninth Circuit are guided primarily by practical considerations when

15  determining whether intervention is appropriate. *Id.*  Although courts take a liberal approach to

16  intervention, they require satisfaction of a four-part test to intervene as of right. *League of United*

17  *Latin American Citizens v. Wilson,* 131 F.3d 1297, 1302 (9th Cir. 1997).   An applicant must

18  demonstrate that: (1) they possess a "significant protectable" interest relating to the case; (2) the

19  disposition may "as a practical matter, impair or impede [their] ability to protect" that interest; (3)

20  the interest is "inadequately represented by the parties"; and (4) the application is timely.  *Id.*

21  Applicants fail to meet all four requirements.[4]

22      **1.    Applicants Have No Significantly Protectable Interest.**

23      Applicants do not possess a significantly protected interest related to Plaintiffs' claims for

24  two reasons.   First, Applicants have asserted nothing more than a general desire to access

25  medication. Second, the Court's ruling in Plaintiffs' favor will not cause a direct, immediate or

26  ─────────────────────
[4] Applicants address "timeliness" in Section III, C.

PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO
INTERVENE (C07-5374) – 3

ELLIS, LI & McKINSTRY PLLC
ATTORNEYS AT LAW
601 UNION ST STE 4900
SEATTLE WA 98101-3906
(206) 682-0565  Fax (206) 625-1052

harmful effect on Applicants' asserted interest.

As Applicants suggest, the interest prong is a threshold requirement. However, the applicant must assert an interest protected by law and that has a relationship with the plaintiff's claims. The "relationship requirement" is only satisfied if resolution will "actually affect" the applicant's interest. *Arakaki v. Cayetano*, 324 F.3d 1078, 1084 (9th Cir. 2003). An applicant proves "actual affect" if the outcome would cause "direct, immediate, and harmful effects upon" that interest. *Forest Conserv. Council v. United States Forest Serv.*, 66 F.3d 1489, 1494 (9th Cir. 1995). The Court must examine the applicant's interests in light of the plaintiff's particular claims and requested remedies. *Donnelly*, 159 F.3d at 409, 411. The mere possibility that the plaintiff's remedy might affect the applicants in the future will not support intervention. *Id.* An "undifferentiated, generalized interest in the outcome" is insufficient. *United States v. Alisal Water Corp.*, 370 F.3d 914, 920 (9th Cir. 2004).

In *Forest Conservation,* the court granted intervention because the intervenor had "concrete rights protected by various federal and state laws, as well as contracts with the federal government" all related to the subject property. *Forest Conserv.*, 66 F.3d at 1495. The court granted intervention because disposition would have an immediate and direct impact on the intervenor's rights. *See also Southern California Edison Co. v. Lynch*, 307 F.3d 794, 803 (9th Cir. 2002) (applicants had no "direct, non-contingent, substantial and legally protectable" interest).

Applicants do not have concrete rights similar to the *Forest Conservation* intervenors. No law grants Applicants the unlimited right to access medications upon demand. Providers are not always available, pharmacies do not stock all drugs, and the Rules provide subjective exceptions that already limit access. WAC 246-869-010. Nor does Applicants "constitutional interest" in contraception require every private provider to sell abortifacients. (Intervention Motion, p. 9).

Applicants have asserted nothing more than a general desire likely held by *every* person in Washington State. Customers suffering from blood-pressure, diabetes, cancer, infection or other

PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO
INTERVENE (C07-5374) – 4

ELLIS, LI & McKINSTRY PLLC
ATTORNEYS AT LAW
601 UNION ST STE 4900
SEATTLE WA 98101-3906
(206) 682-0565 Fax (206) 625-1052

1   illnesses desire access to time-sensitive medications as well.  Applicants fail to assert an interest

2   that is any greater than the interests of thousands (and perhaps millions) of residents in this State.

3   Applicants' interest in joining as a party boils down to their disagreement with the possible

4   outcome of the case.  But it is well-settled that mere disagreement with an outcome does not

5   warrant intervention.  *See e.g., Brody v. Spang*, 957 F.2d 1108, 1116 (3rd Cir. 1992) (parents and

6   students' interest insufficient to intervene in challenge to graduation prayer).

7          Applicants also fail to allege their interest will suffer "direct, immediate and harmful

8   effects" should Plaintiffs prevail.  The interest of Applicants Garrard, Schmidt, Rosman, Harmon

9   and Andreini (Plan B Applicants) must be more than the abstract future potential desire for Plan B

10  as expressed in their declarations.  The three Applicants who have sought to use the drug due to a

11  possible pregnancy admit they have purchased it in a timely manner, *without* the Rules'

12  "protection" that Applicants claim is so essential.  (Rosman Decl., p. 2; Harmon Decl., p. 2;

13  Andreini Decl., p. 2).  The remaining two Applicants have never even sought to use the drugs

14  themselves. (Schmidt Decl., p. 2; Garrard Decl., p. 2).

15         Applicants simply speculate that at some point, they may choose to engage in sexual

16  intercourse, and in the course of nature, as a result of that choice, have the potential to become

17  pregnant.  Pregnancy is not a disease or illness with an unknown cause or an unpredictable

18  exposure period. Absolutely nothing prevents Plan B Applicants from obtaining the drug in

19  advance or at least identifying one of many health-care providers that sell the drug should an

20  "emergency" arise.  Applicants failure to prevent the natural occurrence of pregnancy is not the

21  "direct, immediate, and harmful" result of the Court upholding Plaintiffs' constitutional rights.

22         Applicants Billings and Schouten's interest in obtaining HIV medications is even more

23  remote.  As *Donnelly* identified, this Court should review Plaintiffs' particular claims in light of

24  Applicants' asserted interest. *Donnelly*, 159 F.3d at 409, 411.  Plaintiffs object to Plan B because

25  they believe it destroys innocent human life in violation of their religious beliefs.  The Scriptures

26  explain:

PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO
INTERVENE (C07-5374) – 5

ELLIS, LI & McKINSTRY PLLC
ATTORNEYS AT LAW
601 UNION ST STE 4900
SEATTLE WA 98101-3906
(206) 682-0565  Fax (206) 625-1052

> For you [God] created my inmost being; you knit me together in my mother's womb. I praise you because I am fearfully and wonderfully made; your works are wonderful, I know that full well. My frame was not hidden from you when I was made in the secret place. When I was woven together in the depths of the earth, your eyes saw my unformed body. All the days ordained for me were written in your book before one of them came to be.[5]

During the time of Jesus' earthly ministry, leprosy was considered a highly contagious disease and those with it were social outcasts. But regardless of the social norms, Jesus touched and healed many of those with the disease.[6]  When a woman caught in an immoral act was brought to Jesus for judgment, He showed her compassion and she was spared from the penalty of her act.[7]

Plaintiffs request a liberty of conscience exception bounded by such Biblical teaching. That exception is limited to preserving life, not determining who deserves medicine based on perceived methods of acquiring an illness. Plaintiffs model their behavior after Jesus who healed the sick and had compassion on the shunned woman. This includes dispensing medicine to treat HIV, without judgment, and withholding medicine that unnaturally terminates an existing human life. Refusing to dispense medicine to treat an illness would violate the very theory of protecting life that is the gravamen of Plaintiffs' requested relief. Applicants Schoeten and Billings' interest will remain unaffected if this Court grants Plaintiffs' religious objection to emergency contraception. Further, none of the Applicants have a legal interests that will actually suffer direct, immediate or harmful effects should Plaintiffs prevail.

## 2.    The Outcome of This Case Will Not Affect Applicants' Asserted Interests.

The second intervention requirement is that the outcome of the litigation must impair the applicants' ability to protect their interests. *Donnelly*, 159 F.3d at 410. Applicants cannot prove that a Plan B conscience exception will impede their ability to obtain the drug. Applicants have

---

[5] *Psalm* 139:13-15.
[6] Jesus put out his hand and touched the man. He said, 'I want you to be healed.' Right away the man was free from leprosy. *Luke* 5:13.
[7] "'Teacher, this woman has been caught in adultery, in the very act. Now in the Law Moses commanded us to stone such women; what then do You say?' They were saying this, testing Him, so that they might have grounds for accusing Him. But Jesus stooped down and with His finger wrote on the ground. But when they persisted in asking Him, He straightened up, and said to them, 'He who is without sin among you, let him be the first to throw a stone at her.'" *John* 8:4-7.

ELLIS, LI & McKINSTRY PLLC
ATTORNEYS AT LAW
601 UNION ST STE 4900
SEATTLE WA 98101-3906
(206) 682-0565 Fax (206) 625-1052

1   already demonstrated that they can obtain timely access to their medications without the

2   "protection of the Rules." (Rosman Decl., p. 2, Harmon Decl., p. 2, Andreini Decl., p. 2). It is

3   highly speculative to suggest that a limited exception for Plan B religious objectors removes all

4   "assurance that they could obtain lawful medication and contraception from pharmacies."

5   (Intervention Motion, p. 9). This is particularly true when Washington has a long history of

6   ensuring access to Plan B even before it became an over-the-counter product. (Waggoner Decl. in

7   Support of Motion for Preliminary Injunction, Ex. D, WSPA Talking Points).

8        Moreover, Plaintiffs do not assert an objection to providing HIV drugs and have never

9   denied access to HIV patients. Nor have Applicants been denied such drugs based on a religious

10  objection. HIV medications do not implicate abortion; they prolong life. In any event, the Rules

11  expressly forbid health-care providers from destroying or refusing to return prescriptions,

12  violating their privacy or unlawfully harassing or intimidating them.   WAC 246-869-010(4);

13  WAC 246-863-095(4). If Plaintiffs' prevail, these prohibitions will remain in force. Applicants

14  cannot prove the outcome will actually impair their ability to protect their interests in the future.

15      **3.    Applicants Have Failed to Overcome The Presumption that Defendants Will
             Adequately Represent Their Interests.**

16      Applicants must prove Defendants may not adequately represent their interest. *Forest*

17  *Conserv.*, 66 F.3d at 1489. In determining the adequacy of representation the Court considers: (1)

18  whether the interest of a present party suggests they will undoubtedly make the applicants'

19  arguments; (2) whether the present party is capable and willing to make those arguments; and (3)

20  whether the applicant would offer any necessary elements to the proceedings that other parties

21  would neglect. *Id.*   While this burden is generally minimal, the most important factor in

22  determining adequate representation is how the applicant's "interest compares with the interests

23  of existing parties." *Arakaki*, 324 F.3d at 1086.

24      As a result, where "an applicant for intervention and an existing party have the same

25  ultimate objective [*i.e.*, to ensure timely access to Plan B and HIV medications], a presumption of

26

PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO
INTERVENE (C07-5374) – 7

ELLIS, LI & McKINSTRY PLLC
ATTORNEYS AT LAW
601 UNION ST STE 4900
SEATTLE WA 98101-3906
(206) 682-0565 Fax (206) 625-1052

1   adequacy of representation arises," requiring a compelling showing to demonstrate inadequate

2   representation. *Arakaki*, 324 F.3d at 1086. An even stronger presumption exists where the

3   government acts "on behalf of a constituency that it represents," and the applicant fails to provide

4   "a very compelling showing to the contrary". *See also United States v. City of Los Angeles*, 288

5   F.3d 391, 401 (9th Cir. 2002); *Arakaki*, 324 F.3d at 1086. Even if the parties share the same

6   ultimate objective, differences in litigation strategy will not normally justify intervention.

7   *Arakaki*, 324 F.3d at 1086.

8       Applicants assert a general community interest, which is more akin to the community

9   applicant in *City of Los Angeles*. 288 F.3d at 402. In that case, the applicant sought intervention

10  in a civil rights action brought by the federal government against Los Angeles and its Police

11  Department. *Id.* The court denied intervention because the community applicants were the "exact

12  constituents" the government sought to protect in the action. *Id.* at 402.

13      Just as in *City of Los Angeles*, Applicants are the "exact constituents" Defendants seek to

14  protect. Applicants' interest is precisely the same interest asserted by Defendants.[8] They concede

15  that Defendants have the statutory *duty* to promulgate and defend the Rules to protect health,

16  safety and welfare. (Intervention Motion, p. 8); RCW 18.64.005. Applicants raise *no* new

17  arguments or interests as evidenced by their Motion to Intervene and supporting declarations,

18  Answer, and even their Opposition to Plaintiffs' Motion for Preliminary Injunction.

19      Applicants claim Defendants represent all Washington citizens and then attempt to create

20  a subclass of citizens whose medical needs are "unique." (Intervention Motion, p. 10). Certainly,

21  each citizen's right to timely access to medicine is of equal importance to Defendants. Applicants

22

23  ---

[8] *See* Intervention Motion, p. 8 ("interest in ensuring timely access to lawfully prescribed and clinically safe drugs", HIV medications and Plan B in particular); BOP Opposition to Motion for Preliminary Injunction, pp. 9, 10, 15-16 ("object of the Regulations is to ensure the timely provision of medications to individuals presenting a valid prescription"; "ensuring the health and fair treatment of patients and respect for their private medical choices"; BOP has interest in preventing sex discrimination as "access to prescription medication is emergent and time-sensitive."); HRC Opposition to Motion for Preliminary Injunction, p. 12 (compelling interest in preventing sex discrimination). *See also* Waggoner Decl. in Support of Motion for Preliminary Injunction, Exhibit K, Final Small Business Economic Impact Statement and Significant Analysis for Rule, which specifically address access to Plan B and HIV medications); Exhibit J, Letter to BOP from HRC (Rules focus on access to emergency contraception and allowing a religious objection would constitute sex discrimination).

PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO
INTERVENE (C07-5374) – 8

ELLIS, LI & McKINSTRY PLLC
ATTORNEYS AT LAW
601 UNION ST STE 4900
SEATTLE WA 98101-3906
(206) 682-0565  Fax (206) 625-1052

1   make no argument as to why their need for timely access is greater than other Washingtonians

2   who need to regulate their blood pressure or diabetes with daily medication, or need penicillin to

3   treat a child's ear infection, or require time-sensitive medicine to treat a myriad of other health

4   conditions.   Plaintiffs also submitted ample evidence in their moving papers and reply that

5   Defendants remain primarily committed to ensuring access to Plan B and secondarily, to HIV

6   medications – the precise medications in which Applicants claim their interest.

7           While Applicants cite *Southwest Center for Biological Div. v. Berg*, 268 F.3d 810 (9th

8   Cir. 2001), to suggest their own "personal perspectives" should be heard, *Southwest Center* is

9   distinguishable.   That case involved a developer and trade association that were third-party

10  beneficiaries to the very agreement being challenged and stood to lose concrete rights gained from

11  the agreement. Nor were their interests or arguments nearly identical to the parties as here. *Id.* at

12  820. Applicants also fail to identify why those "perspectives" cannot be heard as *amici curiae*.

13          Finally, Applicants offer no proof that Defendants are not capable or willing to assert their

14  interests. The HRC has its own Assistant Attorney General on the case. The BOP, represented by

15  a separate set of Assistant Attorney Generals, hired three more private attorneys as Special

16  Assistant Attorney Generals, just to defend this lawsuit. Clearly, the BOP, HRC, and Attorney

17  General will vigorously defend against Plaintiffs' claims with all of their considerable resources.

18  Thus, this Court should deny intervention.

19  **B.      APPLICANTS DO NOT MEET THE REQUIREMENTS FOR PERMISSIVE
            INTERVENTION UNDER RULE 24(B)**

20          The Court must deny Applicants permissive intervention because they have not met the

21  requirements. These requirements include demonstrating an independent ground for jurisdiction;

22  that the applicant's claim or defense and the main action have common questions of law or fact;

23  and that the applicant's motion is timely. *Greene v. United States*, 996 F.2d 973, 978 (9th Cir.

24  1993). Even if the applicant meets the above requirements, the district court has broad discretion

25  to deny intervention. *Donnelly*, 159 F.3d at 412.  In exercising its discretion, this Court must

26

PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO
INTERVENE (C07-5374) – 9

ELLIS, LI & McKINSTRY PLLC
ATTORNEYS AT LAW
601 UNION ST STE 4900
SEATTLE WA 98101-3906
(206) 682-0565 Fax (206) 625-1052

1    consider whether intervention "will unfairly prejudice the existing parties." *Id.*

2    **1.   Applicants Have No Independent Ground For Jurisdiction.**

3         Applicants lack independent jurisdiction because they have no redressable injury. To

4    satisfy the jurisdiction requirement, Applicants must prove: (1) they have suffered an injury in

5    fact that is (a) "concrete and particularized" and (b) "actual or imminent, not conjectural or

6    hypothetical;" (2) the injury is fairly traceable to the challenged action; and (3) "it is likely, as

7    opposed to merely speculative, that the injury will be redressed by a favorable decision.'"

8    *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1111 (9th Cir. 2002).

9         As explained earlier, Applicants have not alleged a protectable interest let alone an injury-

10    in-fact. A desire to defend the constitutionality of a law or to guarantee unlimited access to Plan

11    B does not constitute an injury. "Conjectural or hypothetical" injuries cannot satisfy the injury-in-

12    fact requirement for standing. *Id.* Nor can Applicants prove their desire for immediate access to

13    medications will be remedied by this Court's refusal to affirm Plaintiffs' constitutional rights.

14         Applicants' brief and declarations suggest that the real "injury" asserted is a desire not to

15    be "offended" or "uncomfortable." (Garrad, p. 2; Schmidt, p. 2; Rosman, pp. 2-3; Harmon, p. 3;

16    Schouten, p 3; Andreini, p. 2.). No law gives Applicants the right to be free of offense or of

17    encountering others who do not share their value system. While Plaintiffs believe health-care

18    providers should treat all individuals with respect, the public does not have a legal right to be

19    spared from being uncomfortable. Just as the State cannot mandate a better "bed side manner" for

20    doctors, there is no law requiring pharmacists to be accepting and affable. Feeling

21    "uncomfortable" is not an injury-in-fact. This Court should deny permissive intervention because

22    no independent jurisdictional basis exists.

23    **2.   Applicants Have Failed To Present A Common Question of Law Or Fact.**

24         In addition to lacking standing, Applicants do not have a common question of law or fact.

25    As in *Donnelly* where the applicants asserted an interest under the same law, but unrelated to the

26    plaintiffs' claims, Applicants Schoeten and Billings assert an interest that involves the same

PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO
INTERVENE (C07-5374) – 10

ELLIS, LI & MCKINSTRY PLLC
ATTORNEYS AT LAW
601 UNION ST STE 4900
SEATTLE WA 98101-3906
(206) 682-0565  Fax (206) 625-1052

1   Rules, but has no relation to Plaintiffs' particular claims or remedy.  This Court is not being asked

2   to determine whether a health-care provider may refuse to dispense HIV medication.  Plaintiffs do

3   not have such an objection.

4          Plan B Applicants also fail to demonstrate a common question.  Defendants claim to

5   advance the interests of sexually active Washington females seeking Plan B.  Applicants, on the

6   other hand, admit they are not now patients fitting this critical description.  One has never sought

7   Plan B, one lives in another state and admits the only time she sought the drug was as a

8   participant in an activist campaign, and at least two, if not three, of the five have not used the drug

9   for between two and four years.  None of the Applicants has the required common question.

10         **3.**    **Permissive Intervention Would Unfairly Prejudice Plaintiffs.**

11          Even if Applicants met the requirements to permissively intervene, this Court may still

12   deny intervention. Applicants' interest does not support intervention when weighed against the

13   prejudice of granting seven additional parties, and as many lawyers, the full rights to conduct

14   discovery, including propounding interrogatories and taking depositions; participating in all

15   conferences and settlement negotiations and briefing and oral argument opportunities; putting on

16   expert and rebuttal expert testimony; and filing motions on any topic.  Participation by Applicants

17   also logically invites intervention by other individuals and groups who could claim similar or

18   opposing interests.

19          If this court is inclined to grant *any* relief to Applicant, it should consider Applicants'

20   arguments as *amici curiae* when the Court considers the merits of Plaintiffs' constitutional claims.

21   This would allow Applicants to assert arguments they believe have not been addressed, but avoids

22   imposing the unnecessary complications and undue burdens on Plaintiffs and the Court.  *See*

23   *Bethune Plaza Inc. v. Lumpkin*, 863 F.2d 525, 533 (7th Cir. 1988) (participation as *amicus* is

24   "strongly preferred" to intervention).

25

26

ELLIS, LI & McKINSTRY PLLC
ATTORNEYS AT LAW
601 UNION ST STE 4900
SEATTLE WA 98101-3906
(206) 682-0565  Fax (206) 625-1052

**C.   UNDER BOTH PRONGS OF RULE 24, THE APPLICANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION IS UNTIMELY.**

Rule 24 requires that a motion to intervene be timely. The court determines timeliness by considering the stage of proceedings when the application is made, the prejudice to the existing parties should the court grant intervention, and the reasons for a delay in applying for intervention. *Wilson*, 131 F.3d at 1303. Applicants' overlength Opposition to Plaintiffs' Motion for Preliminary Injunction is untimely. (Intervention Motion, Exhibit 1). Applicants' Motion to Intervene is noted for August 31, 2007; Plaintiffs' Motion for a Preliminary Injunction was noted for August 17, 2007.[9] Applicants did not file a motion to shorten time. The briefing is complete and submitted to the Court for its consideration. It would unduly burden and unnecessarily require Plaintiffs to respond to a third opposition brief and to further delay consideration of Plaintiffs' Motion.[10] While Plaintiffs believe this Court should deny intervention entirely, it should refuse to allow Applicants untimely attempt to participate in the preliminary injunction proceedings as an intervenor or *amici curiae*.

## IV.   RELIEF REQUESTED

For the foregoing reasons, Plaintiffs request that the Court deny the Motion to Intervene and, at most, allow Applicants to appear as *amici curiae*. If the Court denies Applicants' Motion, Plaintiffs request that the Court strike Applicants' Answer already filed with this Court. Local Rule 7(g). If this Court grants their Motion, Plaintiffs ask this Court to prohibit Applicants from participating in the preliminary injunction proceedings because their Motion is untimely.

[REMAINDER OF THE PAGE INTENTIONALLY LEFT BLANK]

---

[9] Plaintiffs filed their Motion for Preliminary Injunction on July 26, 2007 and noted their Motion for August 10, 2007. Because Plaintiffs could not obtain service on several of the fifteen defendants in time, the parties stipulated to re-note Plaintiffs' Motion for August 17, 2007. The Court signed the stipulation and order.
[10] This Court has the authority to limit intervention to certain issues or to impose conditions on the grant of the application. *See Southern v. Plumb Tools*, 696 F.2d 1321, 1322 (11th Cir. 1983); *Ionian Shipping Co. v. British Law Ins. Co.*, 426 F.2d 186, 191-92 (2nd Cir. 1970).

PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO INTERVENE (C07-5374) – 12

ELLIS, LI & McKINSTRY PLLC
ATTORNEYS AT LAW
601 UNION ST STE 4900
SEATTLE WA 98101-3906
(206) 682-0565  Fax (206) 625-1052

1    Respectfully submitted this the 27th day of August, 2007.

2    ELLIS, LI & McKINSTRY PLLC          ALLIANCE DEFENSE FUND

3

4    By: *Kristen Waggoner*              By: _____ /s/ Amy Smith _____
     Kristen K. Waggoner, WSBA 27790     Benjamin W. Bull (Of Counsel),
5    kwaggoner@elmlaw.com                Arizona Bar #009940*
     Steven T. O'Ban, WSBA No. 17265     Byron J. Babione, Arizona Bar #024320*
6    soban@elmlaw.com                    bbabione@telladf.org
7    601 Union Street, Ste. 4900         Amy Smith, California Bar #246942*
     Seattle, Washington 98101           asmith@telladf.org
8    (206) 682-0565                      ALLIANCE DEFENSE FUND
     Fax:  (206) 625-1052                15333 N. Pima Road, Ste. 165
9                                        Scottsdale, AZ 85260
10                                       (480) 444-0020
                                         Fax: (480) 444-0028
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO
INTERVENE (C07-5374) – 13

ELLIS, LI & McKINSTRY PLLC
ATTORNEYS AT LAW
601 UNION ST STE 4900
SEATTLE WA 98101-3906
(206) 682-0565  Fax (206) 625-1052