|  | HONORABLE RONALD B. LEIGHTON |
|---|---|

Case 3:07-cv-05374-RBL   Document 174   Filed 06/11/08   Page 1 of 6

HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| STORMANS, INCORPORATED doing business as RALPH'S THRIFTWAY; RHONDA MESLER, MARGO THELEN, | Case No. C07-5374RBL |
|---|---|
| Plaintiffs, | ORDER |
| v. | |
| MARY SELECKY, SECRETARY OF THE WASHINGTON STATE DEPARTMENT OF HEALTH, et al., | |
| Defendants. | |

THIS MATTER comes before the Court on Defendant-Interveners' Motion to Compel Discovery Responses from Plaintiffs Mesler and Thelen [Dkt. #161] and upon Plaintiffs' Motion for Protective Order [Dkt. #164]. The Court has reviewed the materials filed for and against each motion and is fully advised about the factual and legal issues involved. Oral argument is not necessary for deciding the issues before the Court. Defendant-Interveners, apparently recognizing that Plaintiffs do not oppose the discovery requests, have filed a Motion to Withdraw Motion to Compel [Dkt. #170]. That Motion is **GRANTED**. The only issue before the Court is whether certain information to be disclosed by Mesler and Thelen should be subject to a Protective Order. For the following reasons, Plaintiffs' Motion for Protective Order is **GRANTED IN PART AND DENIED IN PART**.

Page - 1

## BACKGROUND

On May 8, 2008, Plaintiffs responded to Defendant-Interveners' First Set of Interrogatories and Requests for Production. Plaintiffs have objected to identifying their current employers and Ms. Thelen's former employer. In addition, Plaintiffs refused to provide other discoverable information or documents from which their current employers and Ms. Thelen's former employer might be identified. For example, Plaintiffs refused to provide the addresses of those pharmacies to which they refer patients seeking Plan B.

Recognizing that the discovery requests seek information that is relevant to the issues central to this litigation, Plaintiffs do not oppose disclosure of the information to either the Defendants or to the Interveners. Instead, they seek a protective order limiting access to information identifying current or former employers of Plaintiffs to litigants and their counsel. Plaintiffs express the concern that once their places of work are made known to the public that they and their employers will become the target of pickets or boycotts in the same or similar manner as their co-plaintiff, Storman's, has encountered.

Defendants and Interveners allege that Plaintiffs' concerns are at best speculative and that Plaintiffs cannot meet the heavy burden of establishing good cause for a protective order barring discoverable material from public disclosure.

## LEGAL STANDARD

Fed.R.Civ.P. 26(c) provides in relevant part as follows:

**(c) Protective Orders.**

> **(1)** A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending–or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> **(A)** forbidding the disclosure or discovery;
>
> **(B)** specifying terms, including time and place, for the disclosure or discovery;
>
> **(C)** prescribing a discovery method other than the one selected by the party seeking discovery;
>
> **(D)** forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;

**(E)** designating the persons who may be present while the discovery is conducted;

**(F)** requiring that a deposition be sealed and opened only on court order;

**(G)** requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and

**(H)** requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

## DISCUSSION

As a general rule, the public can gain access to litigation documents and information produced during discovery unless the party opposing disclosure shows "good cause" why a protective order is necessary. *See San Jose Mercury News, Inc. v. United States Dist. Ct.,* 187 F.3d 1096, 1103 (9th Cir. 1999) ("[i]t is well-established that the fruits of pre-trial discovery are, in the absence of a court order to the contrary, presumptively public. Rule 26(c) authorizes a district court to override this presumption where good cause is shown.").

In order to establish good cause for issuance of a protective order, the party seeking protection bears the burden of showing that specific prejudice or harm will result if no protective order is granted. *See Beckman Indus., Inc. v. International Ins. Co.,* 966 F.2d 470, 476 (9th Cir. 1992) (holding that broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test); *see also San Jose Mercury News, Inc.,* 187 F.3d at 1102 (holding that to gain a protective order the party must make a particularized showing of good cause with respect to any individual document). If a court finds particularized harm will result from disclosure of information to the public, it then balances the public and private interests to decide whether a protective order is necessary. *See Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3rd Cir. 1995).

Plaintiffs' "articulated reasoning" for seeking the protective order is that they fear their employers may terminate them if their participation in this litigation attracts picketing or a boycott organized by individuals or organizations opposing plaintiffs' legal stance in this case. They point to the experience of their co-plaintiff in Olympia which was, in fact, picketed and boycotted for its refusal to stock Plan B in its pharmacies. In light of that experience, these individual Plaintiffs claim their fear of termination is based on more than mere speculation. They cite to specific example, which if repeated could result in actual harm to

their employment relationship.

Defendants and Interveners argue that Plaintiffs' motion is born of fears and subjective beliefs, not facts. They distinguish the experience of Storman's by pointing out that the picketers were neighborhood shoppers who were merely asserting their own First Amendment freedom to express disagreement with an entity whose position on a matter of public interest had become public. Defendants and Interveners observe that a comprehensive list of those pharmacies which do not stock Plan B has been widely published and no incident involving pickets or boycotts has been reported. Moreover, they argue, that the "public" already knows where plaintiffs work because they are required by law to prominently display their license at their workplace. Finally, Defendants and Interveners argue that the information Plaintiffs seek to protect is not of the type generally covered by protective orders (i.e., privileged documents, confidential settlements or medical/psychiatric records).

Plaintiffs reply that the protection they seek from this Court is no different than that afforded by state and federal law to a whistleblower or government employee who provides information of illegal conduct. *See* RCW 42.40 et. seq.; *RCO Reforesting v. U.S.,* 42 Fed. Ct. 405, 410 (1998).

Courts often protect information about litigants, even their identity. Minors are almost uniformly identified only by their initials. Indeed, the privacy plaintiffs seek here is no more than that afforded Jane Roe whose actual identity was kept private during the entire *Roe v. Wade* litigation. Plaintiffs also observe that the kind of information they seek to keep from the public is also kept from the public by state regulators. The public information made available by the state about its licensed pharmacists does not include information about where they work.

The Court is satisfied that Plaintiffs have met their burden and shown good cause why a protective order is necessary in this case. Their motion does not present broad allegations of harm but rather a very narrow concern about the viability of their current employment should their employers be targeted by pickets or boycotts. They substantiate their argument with a specific example and articulate reasoning that satisfies the requirements of Fed.R.Civ.P. 26(c).

This Court is mindful of the highly charged atmosphere in which this litigation will proceed. Thirty-five years ago, Justice Blackmun began his decision in *Roe v. Wade* stating:

> We forthwith acknowledge our awareness of the sensitive and emotional nature of the abortion controversy, of the vigorous opposing views, even among

Page - 4

> physicians, and the deep and seemingly absolute convictions that the subject inspires. One's philosophy, one's experiences, one's exposure to the raw edges of human existence, one's religious training, one's attitudes toward life and family and their values, and the moral standards one establishes and seeks to observe, are all likely to influence and to color one's thinking and conclusions about abortion.

*Roe v. Wade*, 410 U.S. 113, 116 (1973). Neither the passage of time nor advances in scientific knowledge have done much to narrow the philosophical and religious divide that Justice Blackmun observed in that watershed decision. The issues surrounding Plan B, while not identical, are closely related to the abortion issue and this case has aroused the partisan fires of good and decent people on both sides of the divide. While the Court would hope that no action by individuals on either side of the debate would cause harm to others, it is satisfied that Plaintiffs are justified in their fear of retaliation.

Based on the record before it, the Court finds that particularized harm will result from public disclosure of information identifying plaintiffs' current employer or place of work. Plaintiffs have failed to meet their burden with regard to Ms. Thelen's former employer.

Though Plaintiffs have established that specific harm would result if a protective order is not entered, they must also show that their private interests against disclosure outweighs the public interest in disclosure. *See Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3rd Cir. 1995). The following factors are considered by courts engaged in this balancing test:

(1)   whether disclosure will violate any privacy interests;

(2)   whether the information being sought is for a legitimate purpose or for an improper purpose;

(3)   whether disclosure of the information will cause a party embarrassment, hardship, oppression or other harm;

(4)   whether confidentiality is being sought over information important to public health and safety;

(5)   whether the sharing of information among litigants will promote fairness and efficiency;

(6)   whether a party benefitting from the order of confidentiality is a public entity or official; and

(7)   whether the case involves issues important to the public.

*Rivera v. NIBCO, Inc.*, 484 F.3d 822, 828 n.6 (9th Cir. 2004) (citing *Glenmede Trust Co. v. Thompson*, 56 F.3d at 483.

In this challenge to Plaintiffs' motion, Defendants and Interveners argue that none of the factors used to test the balance between disclosure and non-disclosure tips in favor of non-disclosure. They contest any

ORDER
Page - 5

claim of a privacy interest in an "amicable working relationship . . . free from interference by activists" and claim that the disclosure of employer identity is "important to public health" and of interest to the public. The Court disagrees.

The debate over Plan B and its availability is of great interest to the public. The identity of Plaintiffs' employers is not. No aspect of the debate is informed by their names or addresses. The identity of the employers is only relevant to the discovery process in this particular case. That interest will be served by the Plaintiffs providing the information to the litigants and their counsel under conditions protecting it from public dissemination. The public's interest in this case will not be affected by the Court's extending this protection to the Plaintiffs. Similarly, public health will not be harmed by restricting use of this information to the legitimate litigation needs of the parties. The public is already informed of the identity of pharmacies in Washington where Plan B is not available. That information meets the essential public health need of patients seeking access to Plan B. Moreover, no provision of the protective order will limit the public availability of all information relevant to the factual or legal matters which will ultimately govern the outcome of this case. From the materials supplied by the parties to date, the Court can identify no public interest that is negatively impacted by limiting the dissemination of information identifying Plaintiffs' current employers.

Because the Court has determined that Plaintiffs have a well-founded justification for preventing public access of their employers' identity/location and because there is no countervailing public interest favoring such disclosure, the Plaintiffs' Motion for Protective Order is **GRANTED** as to information regarding current employers but **DENIED** as to former employers.

Plaintiff Thelen's and Plaintiff Mesler's current employers' names and other identifying information produced in discovery shall not be disclosed to third parties and may only be used for litigation purposes. The parties shall insure that all pleadings and papers filed with the Court omit the names and other identifying information of Plaintiffs' employers.

IT IS SO ORDERED.

Dated this 11th day of June, 2008.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE