The Honorable Ronald B. Leighton

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| STORMANS, INCORPORATED doing business as RALPH'S THRIFTWAY, et al.<br><br>Plaintiffs,<br><br>vs.<br><br>MARY SELECKY, SECRETARY OF THE WASHINGTON STATE DEPARTMENT OF HEALTH, et al.,<br><br>Defendants. | Civil Action No. C07-5374<br><br>PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF CERTAIN NON-PRIVILEGED INTERNAL COMMUNICATIONS AND SURVEY DOCUMENTS OF THIRD PARTIES<br><br>Note On Motion Calendar:<br><br>February 13, 2009 |

## I. **INTRODUCTION**

Plaintiffs move for an order requiring:

(1) Planned Parenthood of Western Washington ("PPWW"), NARAL Pro Choice Washington ("NARAL"), Cedar River Clinics ("CRC"), and Northwest Women's Law Center ("NWWLC") (collectively, "Third-Party Organizations") to produce information related to mental impressions or internal communications concerning actual communications that the organization had with governmental agencies involved with rulemaking;

(2) PPWW and NWLLC to produce information related to internal communications within or between PPWW and NWWLC related to "why or how to communicate to governmental agencies" occurring on or after June 1, 2006, the date on which the Board of

PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF CERTAIN NON-PRIVILEGED INTERNAL COMMUNICATIONS AND SURVEY DOCUMENTS OF THIRD PARTIES (C07-5374) - 1
*109939 (13438.00)

ELLIS, LI & MCKINSTRY PLLC
Attorneys at Law
Two Union Square
601 Union Street, Suite 4900
Seattle, WA 98101-3906
206•682•0565  Fax: 206•625•1052

Pharmacy ("Board") approved a rule that the Governor and these organizations opposed. The Governor relied upon and worked jointly with PPWW and NWWLC to develop an alternative rule, ultimately adopted, that impairs Plaintiffs' constitutionally protected rights. PPWW and NWWLC cannot make a prima facie showing that disclosure would burden their Associational interests by resulting in the loss of members or prevent others from joining, and in any case, Plaintiffs have a compelling need for this information;

(3) NARAL to produce all documents related to the fall 2007 survey of Washington pharmacies ordered by the Court; and

(4) Nancy Sapiro, who represented NWWLC before the Board and with the Governor's Office in the rulemaking process, to appear for the continuation of her December 11, 2008 deposition to answer questions concerning NWWLC documents belatedly produced on December 15, 2008 in response to the September 8, 2008 subpoena and to questions concerning internal communications and mental impressions described in paragraphs (1) and (2) above.

## II. STATEMENT OF FACTS

A. Special Role of PPWW and NWWLC.

As early as Spring 2005, representatives from PPWW, Planned Parenthood Public Policy Network ("PPPN") and NWWLC contacted the Governor's office and the Board about the issue of pharmacist conscience rights. In May 2005, Shana Melanson, a member of the Governor's staff, contacted Christina Hulet, the Governor's health adviser, to inquire about the Governor's position on pharmacists that "refuse to fill prescriptions for the morning after pill and contraceptives." Declaration of Steven T. O'Ban ("O'Ban Decl."), Ex. A. Ms. Hulet testified that at least two meetings occurred between the Governor's office, PPWW representatives, and NWWLC representatives to discuss a possible rule to require pharmacists to dispense Plan B. O'Ban Decl., Ex. B, 192:7-193:4.

In June 2005, Ms. Hulet referred NWWLC to Steven Saxe, Executive Director of the Board of Pharmacy, in order to obtain a "profile of BOP members," and their applications and

PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF CERTAIN NON-PRIVILEGED INTERNAL COMMUNICATIONS AND SURVEY DOCUMENTS OF THIRD PARTIES (C07-5374) - 2
*109939 (13438.00)

ELLIS, LI & MCKINSTRY PLLC
Attorneys at Law
Two Union Square
601 Union Street, Suite 4900
Seattle, WA 98101-3906
206•682•0565  Fax: 206•625•1052

files. O'Ban Decl., Ex. C. In anticipation of the Board's August 2005 meeting, NWWLC and PPWW wrote a letter to the Board focused on Plan B and pharmacist conscience rights, urging the Board to adopt a policy that would require pharmacists to fill such prescriptions onsite. O'Ban Decl., Ex. D.

At the August 2005 Board meeting, Mr. Saxe told the Board that the office had received "telephone calls from both the public and the profession regarding pharmacists ability to refuse to dispense emergency contraceptives for reasons of conscience." O'Ban Decl., Ex. E, p. 5-6. The Board declined to change its position and informed pharmacists that conscientious objectors should "refer the patient to a colleague or another pharmacy." *Id*; O'Ban Decl., Ex. F.

On October 5, 2005, Amy Luftig of PPPN and Ms. Sapiro of NWWLC met privately with then Board of Pharmacy member Sharon Sellers to discuss "invaluable information about the pharmacy board and its workings." O'Ban Decl., Ex. G. Ms. Sellers encouraged someone from PPWW or NWWLC to apply for the Board's "citizen position." *Id.*

On January 4, 2006, the Executive Director of PPPN, Elaine Rose, met with the Governor and Ms. Hulet to discuss "pharmacy refusals" of emergency contraception. O'Ban Decl., Ex. H. A week after the meeting, Ms. Rose sent a letter to the governor promising to provide incidents of pharmacy refusals in Washington State. O'Ban Decl., Ex. I.

Ms. Hulet testified that in response to the meeting with Ms. Rose, the Governor sent a letter to the Board stating she had been alerted to the Board's review of state policy on the "personal, religious, or moral objection of individual pharmacists," referenced a "women's access to contraception" and rejected the appropriateness of any pharmacist objection. O'Ban Decl., Ex. J; Ex. B, 76:6-13.

In late January, the Governor appointed Rosemarie Duffy, a former director of Planned Parenthood, to the Board. O'Ban Decl., Ex. K. Ms. Hulet emailed Ms. Rose when the Duffy announcement was made. *Id.*

PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF CERTAIN NON-PRIVILEGED INTERNAL COMMUNICATIONS AND SURVEY DOCUMENTS OF THIRD PARTIES (C07-5374) - 3
\*109939 (13438.00)

ELLIS, LI & MCKINSTRY PLLC
Attorneys at Law
Two Union Square
601 Union Street, Suite 4900
Seattle, WA 98101-3906
206•682•0565  Fax: 206•625•1052

In March 2006, representatives from PPWW and NWWLC, including Ms. Sapiro, gave an oral presentation and sent a letter to the Board urging it to adopt a rule requiring pharmacies to stock Plan B and pharmacists to dispense the drug onsite (without referring). O'Ban Decl., Ex. L, p. 6-7. The letter provided four examples of alleged (and unsubstantiated) pharmacy refusals. O'Ban Decl., Ex. M, p. 3-4. These alleged "referrals" were later included in a map prepared by PPWW and NWWLC and provided to the Governor's Office. O'Ban Decl., Ex. N.

At the Board's May 2, 2006, meeting, the Board considered two draft rules: one permitted objectors to refer patients to nearby providers and the other did not. After that meeting, Ms. Rose contacted Ms. Hulet at the Governor's Office to urge the Governor to ensure the Board adopted the regulation prohibiting referral. O'Ban Decl., Ex. O.

On May 30, prior to the June 1 BOP meeting, the Governor reiterated in a second letter to the Board her position (and the position of PPWW and NWWLC) that pharmacists dispense onsite, explicitly rejecting "personal, religious or moral objection" as a basis for refusal and referral to another pharmacy. O'Ban Decl., Ex. P. Just days earlier, in advance of the June 1 Board meeting, Ms. Hulet received an email from Ms. Luftig with the subject heading, "Confidential: Intel on June 1st Pharmacy Board Hearing," speculating on how the vote would come out and urging the Governor to contact Board members. O'Ban Decl., Ex. Q. PPWW explained that they were particularly concerned about Donna Dockter, Asaad Awan, Susan Boyer, and George Roe, members who might allow referral. *Id.* Ms. Hulet testified that the Governor did not contact the Board (at that time) and prohibited staff from contacting the Board because her legal counsel had advised it was likely illegal. O'Ban Decl., Ex. B, 91:21-92:4.

On June 1, 2006, the BOP declined to follow PPWW, NWWLC, and the Governor and instead approved the pro-right of conscience rule. O'Ban Decl., Ex. R. In her report to the Governor on the action taken by the Board, the Secretary of the Department of Health

PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF
CERTAIN NON-PRIVILEGED INTERNAL
COMMUNICATIONS AND SURVEY DOCUMENTS OF
THIRD PARTIES (C07-5374) - 4
*109939 (13438.00)

ELLIS, LI & MCKINSTRY PLLC
Attorneys at Law
Two Union Square
601 Union Street, Suite 4900
Seattle, WA 98101-3906
206•682•0565  Fax: 206•625•1052

stated that the controversy over the draft rule "is mostly related to the so-called 'morning after pill' – an emergency contraceptive" and that the rule approved by the Board permitted referral to another pharmacy.  O'Ban Decl., Ex. S.

On June 5, 2006, the Governor publicly denounced the BOP, stating "I will do anything in my power," to ensure the Board's decision is reversed, including "the ability to replace members of the board."  O'Ban Decl., Ex. T.  That same day, Ms. Hulet forwarded a memorandum from PPWW and NWWLC, to Richard Mitchell, legal counsel to the Governor.  O'Ban Decl., Ex. U.  The memorandum was entitled "Governor Power to Initiate Emergency Rulemaking" and supported an emergency rule to overturn the BOP decision, similar to the rule adopted by then Governor Rod Blagojevich in 2005.  *Id.*  Ms. Hulet then scheduled a conference call to discuss how the Governor would react to the BOP action, and she noted that the PPWW and NWWLC memorandum "will be part of our discussion…"  *Id.*

By June 7, 2006, PPWW and NWWLC had sent Ms. Hulet an alternative rule that incorporated the "duty to dispense" language.  O'Ban Decl., Ex. V.  In a Governor's briefing document, the Governor reviewed this alternative rule and asked Ms. Hulet, "Is this draft clear enough for the advocates re: conscious/moral issues can't allow pharmacist to refuse?"  O'Ban Decl., Ex. W.  Ms. Hulet responded to the Governor's question several days later: "…yes our advocates are comfortable with the 'duty to dispense' language re. the conscious/moral issues.  They feel this is strong enough."  O'Ban Decl., Ex. X.

Under pressure from the Governor, lawmakers and activists, on July 21, 2006 the Board "reconsidered" its position.  O'Ban Decl., Ex. Y.  The Governor then convened a meeting of PPWW and NWWLC, the Washington State Pharmacy Association (WSPA), Donna Dockter and Don Downing to "discuss the wording of the rule in more depth."  O'Ban Decl., Ex. Z.  The WSPA, Ms. Dockter and Professor Downing all sought (unsuccessfully) protections for conscientious objectors and a rule that allowed referral.  Professor Downing testified that WSPA did not support the rule presented by the Governor's office and that

PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF CERTAIN NON-PRIVILEGED INTERNAL COMMUNICATIONS AND SURVEY DOCUMENTS OF THIRD PARTIES (C07-5374) - 5
\*109939 (13438.00)

ELLIS, LI & MCKINSTRY PLLC
Attorneys at Law
Two Union Square
601 Union Street, Suite 4900
Seattle, WA 98101-3906
206•682•0565  Fax: 206•625•1052

WSPA was trying to get the best regulation possible "knowing referral was off the table." O'Ban Decl., Ex. AA, 214:14-215:3.

On August 28, 2006, the Governor sent the Board another letter, enclosing her proposed rule (over WSPA's objection) and all but demanding adoption without amendment. O'Ban Decl., Ex. BB. On August 25, 2006, the Governor called the Board Chair Asaad Awan to urge the Board to approve her draft without further delay. O'Ban Decl., Ex. CC; Ex. B, 301:22-304:5. It was the substance of this version of the rule pertaining to pharmacists that was subsequently adopted by the BOP in April 2007. O'Ban Decl., Ex. DD, p.3.

To further ensure the BOP approved her rule, the Governor took the extraordinary step of eliciting the help of NWWLC, PPWW, and NARAL to identify and interview candidates to fill the two board positions expiring at the end of 2006. O'Ban Decl., Ex. EE. The Governor appointed to the Board the candidates recommended by these organizations. O'Ban Decl., Ex. FF.

 B. Plaintiffs' Discovery of Third Party Organization Documents and Witnesses.

By subpoenas dated September 8, 2008, Plaintiffs sought documents from the Third Party Organizations related to their involvement in the rule-making process and access complaints. The organizations raised substantially the same objections: relevancy, Associational privilege and hardship. Plaintiffs moved to compel. On October 28, 2008, the Court granted in part and denied in part the motion (Dkt. #258). Specifically, the Court ruled Plaintiffs may discover information pertaining to "actual communications between Non-Parties and those persons responsible for promulgating the regulations" but not "internal communications among Non-Parties, their members, allies and affiliates related to why or how they communicated to government decision-makers." *Id.*

In a telephone conference call on December 17, 2008, the Court clarified that Plaintiffs are permitted to inquire about actual communications with state agencies and their employees, including mental impressions and internal communications within the

CERTAIN NON-PRIVILEGED INTERNAL
COMMUNICATIONS AND SURVEY DOCUMENTS OF
THIRD PARTIES (C07-5374) - 6
*109939 (13438.00)

ELLIS, LI & MCKINSTRY PLLC
Attorneys at Law
Two Union Square
601 Union Street, Suite 4900
Seattle, WA 98101-3906
206•682•0565  Fax: 206•625•1052

organization and external communications with other organizations about actual communications with the State. O'Ban Decl., ¶3.

### 1. Third Party Organizations Continue to Withhold Internal Communications Regarding *Actual* Communications with Government Agencies and Alleged Refusals.

The Third Party Organizations have withheld documents since the December 17, 2008 conference call. For example, NWWLC redacted the responses to an email from NARAL employee Karen Cooper to Christina Hulet and NWWLC director Nancy Sapiro. O'Ban Dec., Ex. GG. Presumably the responses are internal communications, *but they are about the Cooper communication with Ms. Hulet*, the Governor's point person to insure that the Board adopted rules preventing refusal based on conscience. The redacted material is discoverable. Further examples of redacted documents pertaining to internal communications about <u>actual</u> communications with Ms. Hulet and other government employees are attached. O'Ban Decl., Ex. HH. There are many similar examples.

### 2. NARAL Survey

In the fall of 2007, NARAL conducted a statewide survey of pharmacies regarding the availability of emergency contraception in Washington State. NARAL explains the purpose of the survey:

> The ongoing [legal] challenge to the Pharmacy Board rules and concern over the availability of Plan B® led NARAL Pro-Choice Washington Foundation to launch the Emergency Contraception Access Project to better understand how accessible Plan B® is for women across the state.

http://www.prochoicewashington.org/issues/ecap.shtml. Plaintiffs sought NARAL "surveys, research, studies, investigations or other documents related to … lack of access or limited access to Plan B or any other drug." O'Ban Decl., Ex. II. NARAL objected. Plaintiffs' October 9, 2008 Motion to Compel (Dkt. #206) specifically referred to the NARAL survey, and the Court plainly ordered production of the NARAL survey (Dkt. #258). NARAL initially conceded it had to provide the survey but has since refused claiming Plaintiffs' counsel agreed to limit the timeframe of its document production to pre-August 2007

PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF
CERTAIN NON-PRIVILEGED INTERNAL
COMMUNICATIONS AND SURVEY DOCUMENTS OF
THIRD PARTIES (C07-5374) - 7
*109939 (13438.00)

ELLIS, LI & MCKINSTRY PLLC
Attorneys at Law
Two Union Square
601 Union Street, Suite 4900
Seattle, WA 98101-3906
206•682•0565  Fax: 206•625•1052

documents. O'Ban Dec., Ex. JJ; Ex. KK. As Plaintiffs' Response to Non-Parties Motion for Clarification made clear, they did not limit the timeframe of the survey (Dkt #206, p. 5, fn. 2).

### 3. The Sapiro Deposition

In Ms. Sapiro's December 11, 2008 deposition, her counsel, Scott Smith, stated "that the communications of a … citizens organization with the government in the exercise of their First Amendment rights" had no bearing on the case and he interpreted the Court's discovery order to prohibit Plaintiffs from inquiring into any subject related to Ms. Sapiro's private opinions, the NWWLC's internal communications, or its communications with nonpublic actors. O'Ban Decl., Ex. LL, 13:19-22. "Accordingly, Ms. Sapiro will not be answering questions about such matters." *Id.*, 15:12-13. For example, Ms. Sapiro refused to answer questions regarding a PP/NWWLC draft rule provided to Ms. Hulet. *Id.*, 138:5-139:2. This is inconsistent with the Court's clarification of its order on December 17, 2008 that the Plaintiffs could inquire into all matters pertaining to actual conversations with government agencies.

On December 15, 2008, four days <u>after</u> Ms. Sapiro's deposition, NWWLC produced an installment of documents directly related to alleged access problems, Bates Nos. NWWLC 1664 – 2448. O'Ban Decl., Ex. MM. Plaintiffs received two installments of documents from NWWLC prior to the Sapiro deposition (November 12 and 21 respectively); neither installment hinted that an additional installment was imminent. O'Ban Decl., Ex. NN.

### III.   ISSUES

A. Should the Court compel production of internal and external communications related to actual communications with state agencies; all internal and external communications of PPWW and NWWLC after June 1, 2006; and the NARAL survey?

B. Should the Court require Ms. Sapiro to be deposed on internal communications and her mental impressions of such communications and on documents NWWLC belatedly produced after her December 11 deposition?

PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF
CERTAIN NON-PRIVILEGED INTERNAL
COMMUNICATIONS AND SURVEY DOCUMENTS OF
THIRD PARTIES (C07-5374) - 8
*109939 (13438.00)

ELLIS, LI & MCKINSTRY PLLC
Attorneys at Law
Two Union Square
601 Union Street, Suite 4900
Seattle, WA 98101-3906
206•682•0565  Fax: 206•625•1052

## IV. **AUTHORITY AND ARGUMENT**

A. Discovery Standard.

A trial court has wide discretion in controlling discovery. *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988). The scope of discovery is broad and includes information regarding "any nonprivileged matter that is relevant to any party's claim or defense – including…the identity and location of persons who know of any discoverable matter." Fed. R. Civ. P. 27(b)(1).

B. Third Party Organizations Continue to Withhold Information Concerning *Actual* Communications with Government Agencies.

Plaintiffs counsel wrote NWWLC and the other Third Party Organizations, after the December 17 conference call, requesting that they supplement their discovery in light of the Court's clarification of its previous discovery order. On behalf of Third Party Organizations, NWWLC, Scott Smith, refused. O'Ban Dec., Ex. OO.

NWWLC was aware of the upcoming deposition of Sapiro, yet it failed to inform Plaintiffs that a third installment, which included highly significant documents about alleged access problems to Plan B, would be sent just four days after the deposition. Accordingly, the Court should order the parties to supplement written discovery and order that Ms. Sapiro submit to a second deposition to answer questions regarding actual communication with governmental agencies, access problems and the recently produced NWWLC documents.

C. Internal Communications after June 1, 2006 About "How and Why" PPWW and NWWLC Would Communicate With the Governor's Office and Board of Pharmacy Are Highly Probative and Discoverable.

The NWWLC, PPWW, and the Governor's office worked closely to craft an anti-conscience rule. These activist organizations closely resemble state actors[1] working hand-and-glove with government officials to compel the Board to enact their rule.

---

[1] The joint action test looks at whether a private actor is a "willful participant in joint activity with the State or its agents." *Price*, 383 U.S. at 794; *See also Brunette v. Humane Society of Ventura County*, 294 F.3d 1205, 1210 (9th Cir. 2002). One means by which the joint action test is satisfied is if a conspiracy to deprive a plaintiff of her constitutional rights exists between the state and a private actor is shown. *Howerton*, 708 F.2d at 383 (citing *Adikes v. S. H. Kress & Co.*, 398 U.S. 144 (1970). A plaintiff establishes a conspiracy by showing that there was "an

PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF
CERTAIN NON-PRIVILEGED INTERNAL
COMMUNICATIONS AND SURVEY DOCUMENTS OF
THIRD PARTIES (C07-5374) - 9
*109939 (13438.00)

ELLIS, LI & MCKINSTRY PLLC
Attorneys at Law
Two Union Square
601 Union Street, Suite 4900
Seattle, WA 98101-3906
206•682•0565  Fax: 206•625•1052

Plaintiffs are entitled to develop their theory that such conduct deprived Plaintiffs of their constitutional rights. For purposes of discovery, Plaintiffs should be permitted to inquire into all matters pertaining to that joint-activity, specifically internal discussions within PPWW and NWLLC, and between them, about strategies to work jointly with the Governor to stop the pro-conscience rule and in its place adopt an anti-conscience alternative that was ultimately adopted by the Board.

### D. Third-Party Organizations' Actions are Not Protected Activities

The First Amendment guarantees the right of persons to petition the government for a redress of their grievances. U.S. Const. amend. I. In general, the right of persons to lobby for the passage of legislation is a form of protected speech, regardless of the intent of the person seeking action by the government. *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *United Mine Workers of America v. Pennington*, 381 U.S. 657 (1965). The *Noerr-Pennington* doctrine immunizes from liability lobbying and related activity. *Video Int'l Production, Inc. v. Warner-Amex Cable Communications, Inc.*, 858 F.2d 1075, 1084 (5th Cir. 1988) (citing examples). Plaintiffs have not brought claims against PPWW and NWWLC and thus there is no need to "immunize" their alleged lobbying activity. Rather, Plaintiffs seek only discovery of this highly relevant joint-activity with governmental agencies.

As to the claimed Associational Privilege, Third Party Organizations have the burden of demonstrating the privilege should be applied, i.e., make a prima facie showing discovery will substantially burden their Associational interests. For discovery purposes, the organizations and their members must show a reasonable probability that the discovery would adversely affect their ability to collectively advocate for their beliefs by: 1) inducing members to withdraw or dissuade others from joining, 2) because fear of exposure of their beliefs will lead to threats or reprisals. *NACCP v. Alabama*, 357 U.S. 449, 462 (1958). If such a showing can be made, the burden

---

agreement or meeting of the minds to violate constitutional rights." *United Steel Workers of America v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540-41 (9th Cir. 1989) (en banc) (internal quotations omitted).

PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF
CERTAIN NON-PRIVILEGED INTERNAL
COMMUNICATIONS AND SURVEY DOCUMENTS OF
THIRD PARTIES (C07-5374) - 10
*109939 (13438.00)

ELLIS, LI & MCKINSTRY PLLC
Attorneys at Law
Two Union Square
601 Union Street, Suite 4900
Seattle, WA 98101-3906
206•682•0565  Fax: 206•625•1052

shifts to plaintiffs to show compelling need for the information. *State of Wyoming v. U.S. Dept of Agriculture*, 239 F. Supp. 2d 1219, 1236 (D. Wyo. 2002).

In *Wyoming*, the State of Wyoming sued the federal government to invalidate new regulations that limited road building on national lands. Certain environmental groups that had lobbied the Department of Agriculture for the limitations, intervened to defend them. The State sought documents and testimony from intervenors regarding internal communications within and between allied environmental organizations "related in any way to lobbying visits or conversations that the groups might have had with federal employees" regarding the regulations. *Id* at 1235. The district court upheld a magistrate's order requiring production of this information because the organizations were unable to show with reasonable probability that disclosure would cause active members to withdraw or others from joining and there was no authority that the privilege applies to an association of organizations. *Id*. at 1238, 1240.

Here, Plaintiffs seek internal information similar to that sought by the State of Wyoming: internal communications regarding actual communications the organizations had with State of Washington officials and internal communications about claims of access problems and post-June 1, 2006 internal communications within and between the NWWLC and PPWW. They do not seek membership lists or financial information. These organizations have not shown, nor can they, that disclosure would cause their members to withdraw or prevent others from joining.

Even if PPWW and NWWLC could carry their burden, Plaintiffs have shown compelling need for this information. The Governor conferred on NWWLC and PPWW a special status to craft rules opposing Plaintiffs' conscience right thus these organizations' understanding of the regulations intent and operation is highly probative. Without their internal communications it is not possible for Plaintiffs to fully develop their theory that the Regulations were intended, and operate, to prohibit Plaintiffs' religious objections while permitting secular objections.

PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF
CERTAIN NON-PRIVILEGED INTERNAL
COMMUNICATIONS AND SURVEY DOCUMENTS OF
THIRD PARTIES (C07-5374) - 11
*109939 (13438.00)

ELLIS, LI & MCKINSTRY PLLC
Attorneys at Law
Two Union Square
601 Union Street, Suite 4900
Seattle, WA 98101-3906
206•682•0565  Fax: 206•625•1052

## V. **CONCLUSION**

For the foregoing reasons, Plaintiffs' motion should be granted.

RESPECTFULLY SUBMITTED this 29th day of January, 2009.

                              ELLIS, LI & McKINSTRY PLLC

By:   /s/ Steven T. O'Ban
Kristen K. Waggoner, WSBA No. 27790
Steven T. O'Ban, WSBA No. 17265
Ellis, Li & McKinstry PLLC
601 Union Street, Suite 4900
Seattle, WA 98101-3906
Telephone: (206) 682-0565
Facsimile: (206) 625-1052
E-mail: kwaggoner@elmlaw.com
E-mail: soban@elmlaw.com
Attorneys for Plaintiffs

PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF CERTAIN NON-PRIVILEGED INTERNAL COMMUNICATIONS AND SURVEY DOCUMENTS OF THIRD PARTIES (C07-5374) - 12
*109939 (13438.00)

ELLIS, LI & MCKINSTRY PLLC
Attorneys at Law
Two Union Square
601 Union Street, Suite 4900
Seattle, WA 98101-3906
206•682•0565  Fax: 206•625•1052