**ATG MI MDS Printing**

| | |
|---|---|
| From: | Melanson, Shana |
| Sent: | Tuesday, May 03, 2005 11:38 AM |
| To: | Hulet, Christina (OFM) |
| Subject: | Pharmacy policy questions |

Christina,
I have a quick question.  Do you know what the Governor's policy is on Pharmacists that refuse to fill rx's for the morning after pill and contraceptives?

Thanks,
Shana

---

Shana Melanson
Executive Appointments Analyst
Office of Governor Christine O. Gregoire
Office: 360.902.0388
Fax: 360.753.4110

GOV0004397

1

**5**                     EXHIBIT A

Christina Hulet                                    November 25, 2008

Page 1

IN THE UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT TACOMA

--------------------------------------------------------

STORMANS, INCORPORATED        )

doing business as RALPH'S      )

THRIFTWAY; RHONDA MESLER,       )

MARGO THELEN,                  )

      Plaintiffs,          )

    vs.                        )   No. C07-5374-RBL

MARY SELECKY, Acting           )

Secretary of the Washington )

State Department of Health, )

et al.,                        )

      Defendants.          )

--------------------------------------------------------

Deposition Upon Oral Examination Of

CHRISTINA HULET

Volume 1, Pages 1 - 229

--------------------------------------------------------

7141 Cleanwater Drive Southwest, #S132,

Tumwater, Washington


DATE:  November 25, 2008

REPORTED BY:  Mindi L. Pettit, RPR, CCR #2519

Christina Hulet                                December 5, 2008

Page 230

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT TACOMA

----------------------------------------------------------

STORMANS, INCORPORATED, doing     )

business as RALPH'S THRIFTWAY;    )

RHONDA MESLER, MARGO THELEN,      )

        Plaintiffs,               )

     vs.                          ) No. C07-5374-RBL

MARY SELECKY, Acting Secretary    )

of the Washington State           )

Department of Health, et al.,     )

        Defendants.               )

----------------------------------------------------------

Deposition Upon Oral Examination Of

CHRISTINA HULET, VOL. 2

Pages 230 - 354

----------------------------------------------------------

1:05 p.m.

Monday, December 15, 2008

2401 Bristol Court SW, Suite A-104

Olympia, Washington

REPORTED BY:  Keri A. Aspelund, RPR, CCR No. 2661

Christina Hulet                                        November 25, 2008

Page 74

1    Q. Did you have any conversations with Mr.
2  Downing about his position on religiously based
3  refusals and whether they should be permitted?
4    A. Not to my knowledge.
5    Q. And the objections that Mrs. Dockter was
6  raising, those were focused primarily on business
7  concerns, weren't they?
8    A. I believe -- I believe so. I believe she
9  also, in a board of pharmacy meeting, recognized or --
10  or put forward a statement about her support for or
11  allowing a pharmacist to refuse for a number of
12  reasons, whether that's business or for conscience
13  reasons.
14    Q. Do you recall whether that letter or statement
15  that she put forward was before or after the
16  stakeholder meetings had been convened?
17    A. I -- I thought it was a statement beforehand.
18  I think it was a comment she made at one of the board
19  of pharmacy meetings, but I don't have the -- have the
20  exact date.
21    MS. WAGGONER: Okay. Do you want to take a
22  break now?
23    MR. TOMISSER: Yeah, this is probably a good
24  time for a little --
25    MR. O'BAN: It's almost 20 to 12:00.

Page 75

1    MR. TOMISSER: Before noon, so --
2    MS. WAGGONER: Oh. Are you okay if we go till
3  noon?
4    MR. TOMISSER: I'm --
5    THE WITNESS: That's fine.
6    MR. TOMISSER: Well, I'm fine.
7    THE WITNESS: I'm fine.
8    MR. TOMISSER: Are you okay for a few minutes?
9    THE WITNESS: Yeah, yeah.
10    MR. TOMISSER: All right. Why don't we go on
11  till noon. Is everyone good with that?
12    (Discussion off the record.)
13    (Exhibit-112 marked.)
14    Q. Handed you Exhibit-112, which appears to be an
15  e-mail from you to some other individuals in the
16  governor's office, and it refers to a meeting between
17  the governor and Elaine Rose. Do you recall that
18  meeting?
19    A. Yes.
20    Q. Do you know when that occurred? It's not on
21  your time line.
22    A. I don't recall the exact date. It was before
23  the January 18th board of pharmacy meeting.
24    Q. Are you sure it was the January 18th, or could
25  it have been January 26th pharmacy meeting?

Page 76

1    A. Ah, that could be. It was before her letter.
2  I'm thinking -- it was before her letter to the board
3  of pharmacy on January 18th.
4    Q. Okay.
5    A. My mistake.
6    Q. And was it Ms. Rose's visit that prompted the
7  governor's letter? It seems to be about a week later.
8    A. The governor talked about sending a letter in
9  this meeting with Elaine Rose. I don't recall if it
10  was something the governor offered or something that
11  Elaine asked for.
12    Q. Did you attend the meeting?
13    A. I did.
14    (Exhibit-113 marked.)
15    Q. Handing you Exhibit-113 which appears to be
16  some handwritten notes. Do you know if these are your
17  notes?
18    A. They are.
19    Q. And do you know -- there is no date on them.
20  Do you know when you took these notes?
21    A. I don't. I was actually trying to recall that
22  as well when I saw this.
23    Q. Do you want to take a minute and -- would it
24  help you to -- to review to figure out what meeting
25  this was at, or do you know?

Page 77

1    A. I know. This was the -- I believe the first
2  meeting that Planned Parenthood and Northwest Women's
3  Law Center and I had about the issue. And that would
4  mean that this was sometime, I believe, in the spring
5  of 2000 -- spring or summer of 2005.
6    Q. Was that -- do you know if that occurred
7  before or after the Northwest Women's Law Center and
8  Planned Parenthood made their presentation to the board
9  of pharmacy? On your time line, it shows August 2005.
10    A. I don't know.
11    Q. Well, actually if you look at the line that
12  says, "Washington State Pharmacy Association will
13  likely recommend that pharmacists can refuse to fill
14  these" --
15    A. So it must have been before.
16    Q. -- on your notes, so it must have been before
17  that, right?
18    A. Correct.
19    Q. Okay. And do you recall who it was that asked
20  you for that meeting?
21    A. I don't. I would suspect it was either Pam
22  Crone from Northwest Women's Law Center or Amy Luftig
23  from Planned Parenthood.
24    Q. And who attended the meeting?
25    A. I don't recall. Probably both of them, plus

20  (Pages 74 to 77)

Page 90

1    A. These notes were notes that I drafted in
2  preparation for media calls.
3    Q. And it looks like these notes were taken after
4  the governor had proposed the rule --
5    A. Correct.
6    Q. -- or the rules? Okay. So that would have
7  been sometime in August of 2006?
8    A. Correct. August, September.
9    Q. And the next page, is that the same time
10  frame, or is this something different?
11    A. This is earlier. This probably would have
12  been in May or June of 2006, because it references the
13  governor's support of the initial set of draft rules by
14  the board, which I would presume would have been in May
15  of '06.
16    Q. And they reference that the governor's
17  position has been consistent and clearly communicated
18  with every board member?
19    A. Correct.
20    Q. How was it communicated with every board
21  member?
22    A. Via the letter to the board -- via her letter
23  to the board.
24    Q. And this is through the May -- this is through
25  May 2006, right?

Page 91

1    A. May or June, correct.
2    Q. May or June, okay.
3    A. So, by that point, she had sent at least two,
4  if not three letters, depending on when this was.
5    Q. And those were sent to individual board
6  members, right?
7    A. To the full board, correct.
8    Q. And do you know if she had any direct contact
9  with the board members prior to June of 2006?
10    A. She did not.
11    Q. And did you have any direct contact with the
12  board members prior to June of 2006?
13    A. No. No, the governor made very explicit to me
14  in a conversation in March of 2000 and --
15    Q. Of 2000 what?
16    A. Let me think here. March of 2006 and May of
17  2006, she made very explicit to me that she did not
18  want the governor's office to have contact with the
19  board members -- with any board member. And so I --
20  because Gayatri Eassey, as you know, had been a part of
21  some of the meetings, I sent an e-mail to Gayatri and
22  to other members on our team saying, "The governor said
23  there's no contact with board members."
24    Q. Did she tell you why she didn't want anyone
25  from the governor's office to have contact with the

Page 92

1  board members?
2    A. She didn't think it was legal. And she asked
3  Richard Mitchell, her general counsel at the time, to
4  confirm that, and he did.
5    MS. WAGGONER: Okay. Are you good for a
6  break?
7    MR. TOMISSER: Good place for a break here?
8    MS. WAGGONER: Yes.
9    MR. TOMISSER: Okay.
10    (Lunch recess.)

Page 93

1  Tumwater, Washington; Tuesday, November 25, 2008
2                    1:11 P.M.
3        ------------------------
4    (Exhibit-114 marked.)
5        E X A M I N A T I O N (Resumed)
6  BY MS. WAGGONER:
7    Q. We're back on the record.
8    A. Okay.
9    Q. I wanted to ask you about Exhibit-105, which
10  was the time line that you prepared.
11    A. Um-hum.
12    Q. At whose direction did you prepare this time
13  line?
14    A. Rene's.
15    Q. Okay. And did he -- did you talk at all about
16  why you needed the time line?
17    A. To help me remember, over a two-year period,
18  what we -- what the difference steps were on the board
19  of pharmacy.
20    Q. And what documents did you -- did you consult
21  different documents --
22    A. I did.
23    Q. -- while you were preparing this? Okay. Do
24  you recall any specific documents that you reviewed?
25    A. It included e-mails, letters, received or

24  (Pages 90 to 93)

Christina Hulet

November 25, 2008

Page 190

1  meeting was?
2      A.  I don't recall.  I think I assumed -- if they
3  didn't, I would have assumed it was about this issue.
4      Q.  Do you recall who attended that meeting?
5      A.  I don't.  I would speculate that it would
6  include Pam Crone, Nancy Sapiro, probably Amy Luftig.
7  Those were generally the folks that I heard from on
8  this issue.
9      Q.  Did you ever meet with Elaine Rose, or was her
10  meetings with the governor?
11      A.  I'm not sure -- I'm sure she was in some of
12  these meetings.  It wouldn't surprise me if she was or
13  not.  But typically it was Amy, Pam, or Nancy that I
14  had the most contact with.
15      Q.  And do you remember the meeting?
16      A.  I believe this was the meeting that we
17  reviewed the notes for earlier around their ask of the
18  governor and bringing -- bringing up the issues they
19  were concerned about.
20      Q.  I thought you said those were notes from an
21  October 2005 meeting.
22      A.  There was a different set.
23      Q.  The summer -- earlier you had said that was
24  notes from the summer 2005 meeting.  Is there a third?
25      A.  There were two meetings.  There was one in

Page 191

1  October and one in March.  And I believe one of those
2  notes was on the March one -- the very first time I
3  heard about the issue.
4      Q.  Okay.  Why don't you go back and -- towards
5  the bottom of that pile, those exhibits, it should be
6  there.  I had written down on -- on my notes that you
7  testified there was a summer 2005 meeting and then an
8  October 2005 meeting with Planned Parenthood and
9  Northwest Women's Law Center.  Was that your testimony?
10      A.  I don't recall now all of --
11      Q.  Well, what do you --
12      A.  -- our meeting notes --
13      Q.  -- recall about your meetings?
14      A.  What I -- what I recall is that the -- I
15  believe this -- this exhibit was my meeting notes for
16  the first time I met with them, which would have been
17  in the spring of 2006, for this meeting, I believe.
18  But I could be wrong about that.  I believe that was
19  the first time.
20      Q.  Okay.  This is Exhibit-113 that you're
21  referring to.  And earlier you testified that you had
22  met with Planned Parenthood and Northwest Women's Law
23  Center in 2005.
24      A.  Ah, you are correct.  This is 2005.
25      Q.  Okay.

Page 192

1      A.  And this is a separate meeting in 2006.
2      Q.  Okay.
3      A.  My apologies.
4      Q.  So Exhibit-113 is a meeting that occurred
5  when -- notes from the meeting that occurred when?
6      A.  In 2005.
7      Q.  And was that in the spring and summer --
8  spring or summer of 2005 -- the notes from --
9      A.  I believe so.
10      Q.  -- Exhibit-113?  Now, the second set of notes
11  that -- there should be another set that are there.  Is
12  there another set?  What is the exhibit after the
13  handwritten notes?
14      A.  The top one --
15      Q.  Could I see the notes?
16      A.  Yeah.
17      Q.  Oh, you know what?  It's the second page.  I
18  thought your testimony was that that was the second
19  meeting, a different meeting than what the first page
20  of these notes indicated?
21      A.  It is.
22      Q.  And when -- on the second page of Exhibit-13
23  (sic), when did this meeting occur?
24      A.  I'm not sure.
25      Q.  Okay.  You earlier testified, I thought, that

Page 193

1  it was in October of 2005 --
2      A.  I believe that --
3      Q.  -- that this meeting occurred.
4      A.  -- that's correct.
5      Q.  So now we're talking about a meeting -- and
6  then there was the January 2006 meeting --
7      A.  Correct.
8      Q.  -- that you did not take notes for or that
9  you don't -- you didn't keep notes for, right?
10      A.  With the governor, yes.
11      Q.  With Planned Parenthood as well, right?
12      A.  Yes.  Elaine Rose and the governor.
13      Q.  And now we're at another meeting in March of
14  2006 that you had with -- with Planned Parenthood,
15  right?
16      A.  Correct.
17      Q.  And I don't know that there are any notes from
18  that.  Did you produce any notes from that meeting?
19      A.  I don't know.
20      Q.  Do you recall what was discussed at that
21  meeting?
22      A.  I don't.
23      Q.  But you know it was about pharmacy refusals --
24      A.  Yes.
25      Q.  -- and the right -- or lack of a right to

49 (Pages 190 to 193)

Christina Hulet                                                      December 5, 2008

## Page 299

1      MR. TOMISSER: Okay.
2          (Exhibit-300 marked.)
3      Q.  Exhibit-300 appears to be notes from a meeting
4  by Steve Saxe to those at DOH, and it seems to be a recount
5  of who attended the 8-23 meeting.  Do you see that?
6      A.  I do.
7      Q.  And could you just look on the list of
8  attendees, is that who you recall attending that 8-23
9  meeting?
10     A.  Yes.
11     Q.  Do you recall anyone else being there?
12     A.  No.
13     Q.  And the August 23rd meeting was the second
14 stakeholder meeting, correct?
15     A.  Correct.
16         (Exhibit-301 marked.)
17     Q.  Exhibit-301 appears to be an e-mail to you from
18 Lonnie Johns-Brown.  If you could take a look at that
19 highlighted statement.  Ms. Brown -- is it a Ms. Brown?
20     A.  Yes.
21     Q.  She makes the statement that it would be
22 difficult for a pharmacy owner to give conscience rights if
23 it's a small pharmacy because they work alone, right?
24     A.  Say your question again.
25     Q.  Do you see the highlighted statement?

## Page 300

1      A.  I do.
2      Q.  She raises the issue that it would be difficult
3  for a pharmacy to give conscience rights to a pharmacist
4  who works in a small pharmacy, right?
5      A.  Correct.
6      Q.  Did you have any discussions with her about
7  that?
8      A.  Not that I recall.
9      Q.  And did you do anything to research whether that
10 statement was, in fact, true?
11     A.  No.  I think I relied on feedback from the
12 pharmacy association on that issue.
13     Q.  But the pharmacy association never told you that
14 it would not be difficult for a small pharmacy to provide
15 conscience rights to a pharmacist, right?
16     A.  No, but nor did they, during our negotiation
17 session, say that it would -- that it would -- I mean, at
18 no point did they object to the final rule that was
19 negotiated, so I would presume that if they were
20 comfortable with that rule, they would have been able to
21 work with their members or talk to their members about what
22 the impact would be.
23     Q.  Do you know if the pharmacy association believed
24 that referrals were allowed to accommodate pharmacists
25 under the final rules?

## Page 301

1      A.  Say that again.
2      Q.  Do you know if the pharmacy association
3  understood the rules to allow referrals for religious
4  objectors?
5      A.  No, I don't think they thought it would allow
6  that.
7      Q.  Do you know that the WSPA's position is to allow
8  for facilitated referrals?
9      A.  Yes.
10     Q.  Their position now is to allow facilitated
11 referrals, but it's your understanding that at the time
12 they were going through this rule-making process, they
13 didn't think facilitated referrals was appropriate?
14     A.  Rod Shafer followed -- the only reason why we
15 ended up with a final negotiated rule is because we had
16 agreement around the table with the language that
17 ultimately got presented to the board.  So, I rely on the
18 representatives of the organizations present to outline
19 whether a final draft of the rule is something they accept
20 or not, and I got the okay from Rod.
21         (Exhibit-302 marked.)
22     Q.  Exhibit-302 appears to be some e-mails from
23 Steve Saxe to Asaad Awan, from Steve Saxe to you, and they
24 all have to do with contacting Asaad Awan; do you see that?
25     A.  Yes.

## Page 302

1      Q.  Do you remember seeing those e-mails from Steve
2  to you giving you the contact information?
3      A.  Yes.
4      Q.  And didn't you also ask for the contact
5  information of each of the Board of Pharmacy members around
6  this time?
7      A.  I did.  And we ultimately didn't call any of the
8  other board members, but the governor did talk to Asaad
9  Awan privately.
10     Q.  And if you look at the next e-mail, it's an
11 e-mail exchange where Steve Saxe appears to be discussing
12 that call that the governor made, and he says that you told
13 him that they were in good shape; do you recall telling
14 Steve Saxe that?
15     A.  I do.
16     Q.  What did you mean by that?
17     A.  That after the governor talked to Asaad, she
18 called me and expressed what I would say is some sympathy
19 for the position that Asaad was in.  She said that he was a
20 very nice person, and it was clear to her that he was an
21 example of a resident of the state of Washington who
22 volunteers for the State, and tries to serve on a board,
23 and then gets inundated in a particularly challenging
24 policy area that he may not have anticipated.  And so she
25 expressed to me, frankly, some compassion for the tough

19 (Pages 299 to 302)

Christina Hulet                                       December 5, 2008

Page 303

1  spot he was in, and she asked me to follow up with Gayatri
2  Eassey thinking longer term about with all the boards and
3  commission appointments that we had, we provide some
4  training to board members about what their experience is
5  likely to be, and what kind of training, and so forth, they
6  need, and she asked me to follow up with Gayatri and ask
7  that Gayatri start thinking about in terms of helping board
8  members as they sign up for a board or commission for the
9  State to get some background or training in how do you
10  handle really tough issues, because a lot of these folks
11  are very well-meaning people who are not necessarily
12  anticipating such a contentious issue.
13    Q.  Did she tell you what she told Asaad?
14    A.  No.
15    Q.  Did she tell you what Asaad told her?
16    A.  No.
17    Q.  Did she give you any indication of what message
18  she may have conveyed to Asaad?
19    A.  No.
20    Q.  Did you understand the purpose of her call?
21    A.  My understanding was we had just sent out,
22  either that day or the day prior, the negotiated rule with
23  the letter that the governor included for that rule, and
24  our original thinking was to -- I think it was a couple
25  days prior, in which in that e-mail to the board members, I

Page 304

1  said if you have any questions about this or about the
2  rule, please give me a call, and I hadn't heard from any of
3  the board members, and so the original thinking was that I
4  would call the board members to follow up again and see if
5  you have any questions, and so forth.  And ultimately, we
6  decided not to do that.  My understanding from that, from
7  their conversation, was that the negotiated rule would be
8  presented at the next board meeting and that there weren't
9  any anticipated issues with it.
10    Q.  So, you understood the purpose of the governor's
11  call was to find out if there were any anticipated issues
12  with the rule being presented at the meeting the next week?
13    A.  I don't know -- I don't know what her intent was
14  with that call, so I don't know if her intent was to talk
15  about the particular rule and the language, and what it
16  meant, and how it arrived where it did, or more generally,
17  to touch base about it, but I did not get the impression
18  that -- the governor, at least, didn't provide any details
19  about here's what he said, here's what I said, and here was
20  the back and forth, except to explain to me that she felt
21  some compassion for the situation that he was in.
22    Q.  Did the governor make any comments to you about
23  her earlier statement that she thought it would be illegal
24  to have direct contact with the Board of Pharmacy?
25    A.  Not at that time, no.

Page 305

1      (Exhibit-303 marked.)
2    Q.  Exhibit-303 appears to be an e-mail from Karen
3  Cooper to you; do you remember receiving that e-mail?
4    A.  Yes.
5    Q.  Did you respond to it?
6    A.  I believe I talked to her on the phone.
7    Q.  And what did you tell her on the phone?
8    A.  I don't recall.
9    Q.  Okay.
10      (Exhibit-304 marked.)
11    Q.  Exhibit-304 appears to be talking points that
12  you were using at your presentation to the Board of
13  Pharmacy, is that correct?
14    A.  Yes.
15    Q.  And is it safe to say that you followed these
16  notes when you gave the talk to the Board of Pharmacy on
17  August 31st?
18    A.  Yes, the first page.
19    Q.  The second page I want to ask you about.
20    A.  Okay.
21    Q.  I saw there were some drafts that went around
22  about the anticipated questions; did you have others in the
23  governor's office review these tacking points?
24    A.  I believe Marty Brown reviewed them, and it's
25  possible that Holly Armstrong reviewed them as well.

Page 306

1    Q.  I note that you specifically address the issue
2  with Ralph's in point 4; do you see that?
3    A.  I do.
4    Q.  Was the governor's office aware that Ralph's had
5  made a decision not to carry Plan B because of a religious
6  reason at the time of the rule-making process?
7    A.  I'm not sure when I learned about that.
8    Q.  Well, you clearly knew about it by August 31st,
9  right?
10    A.  Yeah.
11    Q.  And there are e-mails that show you were
12  e-mailing about it in June and July as well; do you recall
13  those?
14    A.  It could be.  Yeah, I don't recall, but I trust
15  my e-mails.
16    Q.  Were you aware that Ralph's was subject to
17  boycott and picketing for its religious objection?
18    A.  Yes.
19    Q.  And were you aware of that as the boycotting and
20  picketing was occurring, I mean, in the same time frame?
21    A.  Yeah.
22    Q.  Do you know if the governor canceled the
23  governor's mansion account with Ralph's during that time
24  frame?
25    A.  No, the only time I heard about that was when we

20  (Pages 303 to 306)

## Salmi, Lisa  (DOH)

| | |
|---|---|
| **From:** | Saxe, Steven |
| **Sent:** | Wednesday, June 22, 2005 11:22 AM |
| **To:** | Dunning, Mike (DOH); Finch, Denise; Henry, Todd; Jinkins, Laurie; King, Bonnie; Latsch, Patricia; Lawson, Brook; Lovinger, Pamela G; Peyton, Brian (DOH); Shoblom, Susan; Townley, Chris |
| **Cc:** | Salmi, Lisa; Mecca, Andrew J.; Roper, Joyce (ATG) |
| **Subject:** | Gov Contact - Christina Hulet, Gov Hlth Policy |

I received a message from the NW Women's Law Center asking for a profile of the BOP members about Friday, 6/17. They said they had gotten my name from Christina Hulet. Before I called the NWWLC I called Christina to get a feel for background of the request.

As anticipated the question came from the NWWLC looking into the issue of a pharmacist's right to refuse to fill a prescription for moral/religious views.  They are considering pushing for national or state legislation on the issue.

I then discussed the issue with Christina and explained that we have gotten lots of phone calls on the topic but no formal complaints or cases.  Anecdotally the calls seem to indicated there may be cases of pharmacists individually not filling but getting the prescription to a colleague or back to the patient to take to another pharmacy.  Christina was interested in anything that may help identify how big of an issue this is.  I also took the opportunity to explain Washington has been a leader in pharmacist prescriptive authority.  With additional training and a board approved collaborative agreement with a prescriber a pharmacist can work with a patient to provide medications such as immunizations, refill authorizations, anticoagulation, smoking cessation AND emergency contraception without a prescription.  We have about 398 of these pharmacists across the state.

I will pull some information together and share with her (after we all get a chance to review) when I return from vacation. Andy reports that the number of calls has dropped on significantly the last few weeks.

I then called the NWWLC and sent them a file that showed the Board members, town they are from, tenure on board, type of occupation.  The person I talked with said that they would share with the "lawyers" and let me know if they need anything else.

Steven M. Saxe, RPh, MHA, FACHE
Executive Director
Health Professions Quality Assurance, Section 4
Washington State Department of Health
310 Israel Road SE
PO Box 47863
Olympia, WA 98504-7863
phone: (360) 236-4829
fax: (360) 586-4359
steven.saxe@doh.wa.gov

Working to protect and improve the health of people in Washington State.

For delivery of shipments or to visit the Board Office, the address is
310 Israel Road S.E., MS 47863, Tumwater, WA  98501

101614

1

**BOP(PR) 018682**

**13**

EXHIBIT C



RECEIVED AUG 08 2005

August 4, 2005

Washington State Board of Pharmacy
PO Box 47863
Olympia, Washington  98504-7863

Dear Board Members:

The Northwest Women's Law Center and Washington's family planning providers are dedicated to promoting women's legal rights to the full range of healthcare services, including prescription contraceptives. On behalf of the women of Washington, we seek to ensure that no woman's health will be endangered by a pharmacist who refuses to fill her prescription.

We commend the vast majority of pharmacists who take very seriously their legal and ethical obligation to properly fill prescriptions, protect patient safety and ensure timely access to needed medications. We also commend the members of the pharmacy profession who are working to increase access to emergency contraception through collaborative agreements. But this record is tarnished by a few individual pharmacists who force their personal values on patients and deny women access to needed medical care.

We write to urge you to adopt a policy that protects the health of all Washington residents by ensuring that no one is denied an appropriate and safe prescription simply because of a pharmacist's personal beliefs. Such a policy is not only necessary to protect public health: it is mandated by Washington law.

**Introduction**

Recent national attention to instances of pharmacist's refusing to dispense emergency contraception has focused attention on Washington law concerning a pharmacist's duty to dispense contraception, including emergency contraception. In April, a Wisconsin pharmacist's refusal to refill, return, or transfer a patient's prescription for oral contraceptives resulted in a reprimand by the Wisconsin Pharmacy Examining Board for endangering the health, welfare and safety of the patient and for departing from the standard of care ordinarily exercised by a pharmacist. Meanwhile, reports in Illinois of pharmacists' refusals resulted in an emergency amendment to that state's pharmacy practice act clarifying the duty of a pharmacy to dispense contraceptives without delay.

Unfortunately, Washington women, too, have been refused their prescriptions by pharmacists in this state. In March of this year, Wenatchee pharmacist Al Glass told the Wenatchee World newspaper that he and his two co-pharmacists would not fill prescriptions for emergency contraception. In Seattle, a pharmacist refused to fill a prescription for antibiotics following a woman's abortion. These examples illustrate not only the barriers that women face in getting their prescriptions filled, but the risks to their health that they suffer when pharmacists turn them away.

Northwest Women's Law Center

3161 Elliott Avenue, suite 101, Seattle, Washington 98121-1016
Administration: 206.682.9552 ♦ Fax: 206.682.9556
Legal information & referral: 206.621.7691 ♦ TTY: 206.521.4317
email: nwwlc@nwwlc.org  www.nwwlc.org
Member, Women's Funding Alliance

The American Pharmacists Association (APhA), which supports a limited right to "step away" from serving a patient, recognizes that refusal to dispense creates health risks for patients, particularly in the instance of emergency contraception. The APhA concedes that refusing to dispense emergency contraception may either delay or deny entirely access to treatment, that the delay incurred may reduce the effectiveness of treatment, and that refusal could create an insurmountable barrier for women living in rural areas where there may be few pharmacies.

While Congress and state legislatures debate whether an individual's religious beliefs may ever excuse him or her from performance of the duty to provide patient care, Washington law makes clear that pharmacists must dispense contraceptives.

**The Washington Pharmacy Board Should Require Pharmacists to Dispense Contraception**

<u>Washington Women Have a Fundamental Right to Choose Birth Control, Including Emergency Contraception</u>

Washington law explicitly protects a woman's right to choose to use birth control. (RCW 9.02.100) The Washington State Pharmacists Association (WSPA) recognizes this point (with regard to providing emergency contraception to minors, although it applies to adult women as well). According to the WSPA, "[e]very individual has the fundamental right to choose and refuse birth control. Even without such laws, minors may be protected to obtain confidential contraceptive services under the constitutional right to privacy." RCW 9.02 states that Washington "shall not discriminate against the exercise of these rights in the regulation or provision of benefits, facilities, services, or information." If a pharmacist denies contraception to women in this state, his or her actions, per state law, are discriminatory and unlawful.

<u>Pharmacists Have a Duty to Dispense Contraception, Including Emergency Contraception</u>

The Washington Supreme Court, in a 1989 case (*McKee v. American Home Products*), found that a pharmacist is not liable for failing to warn a patient about potentially harmful side effects that a drug may cause. Despite that protection from liability, the state Supreme Court found that pharmacists still have a "duty to accurately fill a prescription." This duty is also found in Washington law governing the pharmacy profession. (RCW 18.64). The law defines the practice of pharmacy to include, "dispensing and distributing drugs." There is no exception for denial of any drug, including emergency contraception.

<u>Washington Law Does Not Permit Pharmacists to Refuse to Dispense Contraception Because of Personal Beliefs</u>

Washington law does not permit pharmacists to refuse to dispense contraception of any kind, including emergency contraception, on religious, moral, or ethical grounds. Some pharmacists, such as the Wenatchee pharmacist noted above, mistakenly argue that emergency contraception, in particular, is an abortifacient and have refused to dispense it on that ground. While Washington law does permit a healthcare provider to refuse to participate in or provide an abortion, emergency contraception is <u>not</u> an abortifacient and thus this law does not apply to this situation.

<u>Refusal to Dispense Contraception May Violate Codes of Ethics for Pharmacists and also Violate State Law Prohibiting Discrimination</u>

The national code of pharmacy ethics states in part that "a pharmacist avoids discriminatory practices or behavior that impairs professional judgment and actions that compromise dedication to the best interests of patients." Only women use emergency contraception and certain other types of prescription birth

2

BOP (RFP) 00684

control. Therefore, denial of contraceptives, which have been legally available to women for years (the first birth control pills since 1960, emergency contraception since 1998) and deemed safe to dispense by the Food and Drug Administration, discriminates against women on the basis of sex. Additionally, women in Washington can either access emergency contraception with a physician's prescription or through a collaborative agreement protocol. This means that either a physician, by issuing a prescription, or a woman herself, through the protocol, deem that it is in the patient's "best interest" to have access to emergency contraception.

Washington's constitution and state law against discrimination prohibit discrimination on the basis of sex. By refusing to provide a service that only women need, pharmacists discriminate against them. This point is easily illustrated if we substitute race for gender.

Thus, refusing to dispense contraceptives is a discriminatory act that places a pharmacist in violation of both ethical codes and state law.

<u>Pharmacists May Be Subject to Lawsuits for Refusing to Provide Contraception to a Patient</u>

WSPA states, "[b]ecause emergency contraception pills are considered the accepted standard of treatment to prevent an unwanted pregnancy after unprotected intercourse, refusal to provide services and/or refer patients to another provider may leave a pharmacist open to liability." *See* WSPA website at http://www.wsparx.org/cem/TreatmentMinorsVictumsofAbuseAdditional.doc. In this analysis, WSPA cites a 1989 California case, *Brownfield v. Daniel Freeman Marina Hospital*, which denied a religiously-affiliated hospital immunity under a state abortion law for refusing to provide information about and access to emergency contraception, stating immunity did not apply to emergency contraception because it is a pregnancy prevention treatment, not an abortifacient.

<u>Under Washington Law, Pharmacists May be Disciplined for Refusing to Dispense Contraception</u>

Current law in Washington allows the pharmacy board to discipline a pharmacist for dispensing less than the prescribed dose of medicine (RCW 18.64.160(5)). Therefore, if a pharmacist refuses to give the prescribed dose of contraception to a patient, he or she is subject to discipline. Further, a pharmacist can be disciplined for unprofessional conduct (RCW 18.64.180). Subsection (4) defines unprofessional conduct as "incompetence, negligence, or malpractice which results in an injury to a patient or creates an unreasonable risk that a patient may be harmed." A 1979 Michigan case, *Troppi v. Scarf*, held that a pharmacist could be held liable for professional negligence resulting in pregnancy to a patient, if shown to be an injury to her. Washington courts could apply the same logic and hold pharmacists liable for denying emergency contraception to a patient, a form of negligence resulting in her pregnancy. Further, Washington courts have ruled that health care providers, including pharmacists, who behave improperly are subject to disciplinary action even if that professional was unaware of the impropriety of the conduct (*Heinmiller v. Department of Health* (1995)).

**Recommendation for the Washington Pharmacy Board**

<u>Establish a Policy Mandating that Washington Pharmacists Must Dispense Contraception or Face Disciplinary Actions by the Board</u>

Washington's own professional pharmacists' association, as stated above, has determined that pharmacists must dispense emergency contraception to all their patients or possibly face legal liability. (http://www.wsparx.org/cem/TreatmentMinorsVictumsofAbuseAdditional.doc; See "Legal Issues"). Further, courts in Washington have ruled that pharmacists have a duty to accurately fill a prescription.

3

*Therefore, the Northwest Women's Law Center and local family planning providers urge the Washington Pharmacy Board to issue formal guidance interpreting the state's disciplinary laws for pharmacists to prohibit refusals of contraception, including emergency contraception, even if the pharmacist states the denial is because of personal religious, ethical, or moral objections to contraception.* If a pharmacist violates this policy by refusing to dispense contraception, he or she should be sanctioned by the pharmacy board. Those sanctions should include suspension and/or revocation of the professional license, or other equally serious sanctions the Board deems appropriate.

Individuals rely on pharmacists for their professional skills in protecting patient safety and ensuring timely access to necessary health care. This reliance – and the attendant confidence in the pharmacy profession – must not be undermined by the actions of a few individual pharmacists who substitute their moral beliefs for their professional responsibility.

Sincerely,

By Sara L. Ainsworth, Staff Attorney
Northwest Women's Law Center

Washington State Council on Family Planning

Family Planning Association of Chelan-Douglas Co, Inc.

Planned Parenthood Affiliates of Washington

Cowlitz Family Health Center

Okanogan Family Planning

Public Health Nursing Director, Jefferson County Public Health

4

BOP (RFP) 00686

WASHINGTON STATE DEPARTMENT OF HEALTH
BOARD OF PHARMACY
CenterPoint Corporate Park
Kent, Washington

**CONVENE**

Chair George Roe convened the meeting at 9:00 a.m. on August 10, 2005.  Board Members present:

> Susan Teil-Boyer, RPh
> Asaad Awan, RPh
> Donna Dockter, RPh
> Gary Harris, RPh
> Sharron Sellers

Rebecca Hille was not present for this meeting.

Staff Members present:

> Steven Saxe, Executive Director
> Tim Fuller, Pharmacy Consultant
> Andy Mecca, Pharmacy Consultant
> Lisa Salmi, Deputy Director
> Grace Cheung, Chief Investigator
> Doreen Beebe, Health Service Consultant
> Georgia Sage, Administrative Assistant
> Joyce Roper, AAG Advisor
> Stan Jeppesen, Investigator

**CONSENT AGENDA**

**ACTION:**  Asaad Awan moved to accept the following:
> Pharmacy and Other Firm Application Approval
> Pharmacy Tech Training Program Approval for:
> > Bridgeport Pharmacy, Lakewood

**MOTION CARRIED.**

<u>Automated Drug Dispensing Device Acceptance</u>

> St, Mary Medical Center Pharmacy



**ACTION:** Susan Teil-Boyer moved to accept the dispensing device agreement for St. Mary Medical Center Pharmacy with a change to item "C" under Access on page 1 of Pyxis Policy & Procedure. "Someone" must be identified to activate float nurses and on page 8 A under Loading and Refilling Medications, either a pharmacist or technician must load and refill the Pyxis machine not "pharmacy personnel." **MOTION CARRIED.**

Board Minutes

**ACTION:** Donna Dockter moved to accept the minutes with the following corrections:
     Ms. Dockter was not present for the presentation of Orders by the Staff Attorney, however she was present for the disciplinary hearing.
     George Roe was present for the entire disciplinary day on July 8, 2005. **MOTION CARRIED.**

**REPORTS**

Steve Saxe reported on the following:

- Have been working with the Health Care Authority to draft a waiver as required by the two importation bills that were passed this legislative session. The waiver letter is due to be out September 1, 2005.
- Restructure of Section 4 continues. The professions included are Pharmacy, Veterinary, Optometry, Dispensing Opticians, Occularists and Orthotics and Prostetics. To complete the restructure process a Health Service Consultant 3 position needs to be filled. Interviews have been conducted and an announcement will be forthcoming.
- Dr. Yu, Health Officer for Lewis County, states that Lewis County providers are being approached by patients of a recently suspended Osteopath for continuation of care. A meeting was held with Dr. Yu and area prescribers to set standards to deal with the issue. It is expected that Pharmacists will also be questioned about continuation of medication care as well as questions from prescribers wanting support in continuation of medications they don't often prescribe. WSPA was instrumental in providing a speaker and coordinating the meeting.
- The Budget has recently been received. Due to the salary increases, it is unclear what the line-by-line amounts are, but it does appear to be restrictive. Travel and other expenses will need to be prioritized. More information will be forthcoming.
- Information on the reduction of licensing fees is going out with the renewals.
- Work on GMAP (Government, Management, Accountabilities and Performance) continues. The process is a priority of Governor Gregoire and sets ways to measure and manage state government's accountability to the public.
- A 3.2% salary increase was provided to those employees represented by the Union effective July 1. Those not represented will see the same increase on September 1.
- Two Board conferences will be held in September. The September 12th meeting is a Board Leadership conference and is just for Board Chairs and Vice Chairs. The September 23rd meeting is the Board/Commission/Committee Leadership Conference for all members.

- Working with members of the Medical Quality Assurance Commission regarding prescription legibility.

Attorney General

Attorney General Advisor Joyce Roper reported on the current Court of Appeals decision that will affect how the Department handles incoming complaints. The Court found only the Board/Commission's have the authority to initiate an investigation. The Attorney General's Office is discussing this decision with the Department as well as Boards and Commissions regarding the implications of the ruling.

Pharmacy Consultant

Tim Fuller discussed the following:

- Minutes from the Long Term Care Return of Controlled Substances Regulations stakeholder meeting was held on July 19, 2005. The Board reviewed the minutes. The group is working with the DEA on options for disposal of controlled substances, DEA registration, and the impact on nursing homes and long-term care facilities.
- Along with Investigator Jim Doll, working on finding ways to reconstitute doxycycline syrup and ciprofloxacin suspension for pediatric dosing, which are not commercially available in the quantities needed. The FDA provided the CDC with a formula so that the parents could take the tablets and make the preparations. Mr. Fuller and Mr. Doll took the formula to a compounding pharmacy to prepare. The following week CDC people came to evaluate the state's bio-terrorism program, which allowed them to provide feedback to them on the formulas which are not conducive for children.

Andy Mecca commented that:

- He continues to field questions concerning the recently passed legislation on precursors and the revised standard of practice of Naturopath's. Another question is methadone use in detox facilities. On July 27, Andy and Tim toured the methadone clinic at Harborview to learn more on how the rules and regulations are implemented in this type of facility.
- A conference call to be held with the investigators twice a month was developed to ensure consistent interpretation and implementation of the rules and standard of practice.

Chief Investigator

Grace Cheung provided the following:

- Continue to work closely with former Chief Investigator Dick Morrison on her transition into the new position.
- September 7, 8, 2005 will be the next quarterly investigator meeting. Mr. Roe volunteered to attend on behalf of the Board.
- Involved in attending various department training programs.

- Mr. Doll is nearing the end of his term as the Board's representative to the WRAPP Advisory Committee. The Board representative position will be rotated every two years among the investigators. Kelly McLean will be the next WRAPP Committee Board representative.
- University of Washington Extern Robert Kahn is scheduled to begin a four-week rotation with Board staff on September 5. Andy Mecca will be the lead preceptor and coordinator.
- Information on other investigator activities as well as inspection and investigation statistics was distributed to the Board of review.

## RULES HEARING

Chair, George Roe called the rules hearing to Order at 10:00 a.m. regarding **WAC 246-887 Chemical Capture.** All Board members were in attendance with the exception of Rebecca Hille. Lisa Salmi provided a summary of the proposed rule change and background information. The proposed rule provides State Fish & Wildlife officers and biologist's access to approved controlled substances under very specific conditions. Enforcement Officer Dennis Nick and Veterinarian Dr. Kristin Mansfield testified in behalf of the rule change. ACTION: Asaad Awan moved to accept WAC 246-887 with once a year inventory, if allowed by federal regulations, and striking the word "emergency" in paragraph three of WAC 246-887-260. MOTION CARRIED. Ms. Dockter was opposed. The hearing concluded at 10:31 a.m.

## DISCUSSION

Travel Plan

The Board reviewed the proposed travel plan for 2005-06 as submitted by staff. Mr. Saxe indicated that budget constraints may continue so it would be prudent for the Board to set priorities for what trips they consider the highest priority. The members consider the University of Utah School on Alcoholism and Other Drug Dependencies to be the number one priority. Sharron Sellers suggested that additional travel resources be used so that more Board/Staff be allowed to attend if necessary to "catch up" after canceling the 2005 meeting. The second priority would be the NABP meetings with APhA, NACS and DEA Conference to follow.

## PRESENTATION

OnCallData

Richard Laughlin a representative of OnCallData presented information to the Board on their electronic prescription transfer program, which works through the Internet. **ACTION:** Susan Teil Boyer moved to accept the system. **MOTION CARRIED.**

NewCrop LLC

 Dr. Lawrence Susnow a representative of NewCrop LLC presented information to the Board on their electronic prescription transfer program. **ACTION:** Asaad Awan moved to accept the system. **MOTION CARRIED.**

NDC PharmacyRX

Brian Morris a representative of NDC PharmacyRX presented information to the Board on their electronic prescription transfer program. **ACTION:** Asaad Awan moved to accept the system. **MOTION CARRIED.**

Karen Gifford, a representative of Virginia Mason presented information to the Board on their electronic prescription transfer program, which works in conjunction with an established collaborative therapy agreement. **ACTION:** Asaad Awan moved to accept the system with a report back to the Board in one year. **MOTION CARRIED.**

Disciplinary Process Review

Karen Jensen, Supervising Staff Attorney with the Department presented information to the Board on a workgroup that is charged with reviewing current disciplinary sanctions and to ensure fair, consistent and rational sanction determinations for use by all Boards, Commissions and Committee's. At this time, the workgroup is sharing the sanction guidelines and requesting input/feedback from the Boards and Commissions. She noted that the Board of Pharmacy is one of the few to currently use sanction guidelines in their discipline process.

Patient Counseling Stakeholder Meeting

Andy Mecca reviewed the items discussed at the May 19 patient stakeholder meeting. Among the items discussed the group suggested language for a voluntary patient counseling sign and the attendees thought that documentation of patient counseling should be considered a "best practice" not require a specific rule. Donna Dockter said that the goal is to get the consumer to seek and demand patient counseling. Therefore, if the department's communication office knows the Board's goal it will enable the group to create a sign that will motivate the public. **ACTION:** Donna Dockter moved to have staff proceed with making sign consumer friendly and distribute to pharmacies through WSPA & Website on a voluntary basis. Re-evaluate after six months to determine if rule making is necessary.    **MOTION CARRIED .**
**ACTION:** Asaad Awan moved to evaluate existing systems for documentation of patient counseling and report back to the Board. **MOTION CARRIED.**

Pharmacist Responsibility to Fill Prescriptions

Steve Saxe informed the Board that the office has received telephone calls from both the public and profession regarding pharmacists ability to refuse to dispense emergency contraceptives for

reasons of conscience. Currently there are no rules requiring a pharmacist to fill prescriptions if they choose to do so for reasons that do not violate the laws prohibiting discrimination. When we get calls from pharmacists who do not wish to dispense for reasons of conscience, Board staff suggest the patient be directed to another colleague or pharmacy. **ACTION:** Ms. Sellers requested staff research the possibility of adding the 1-800NOT2LATE number to the Board and/or Department's website so the consumer could obtain the necessary information in a timely manner. **ACTION:** Susan Boyer moved to continue with current message crafted by Steven Saxe and refine based on the Board's discussion today.   **MOTION CARRIED.**

Remote Site Service for Walla Walla General Hospital

The Board reviewed the request by staff of Walla Walla General Hospital to contract with Adventist Hospital in Portland, Oregon to provide remote pharmacy services.  Adventist Hospital has agreed to be licensed as a non-resident pharmacy in Washington State.  However, they are requesting that the pharmacists who work the remote site not be required to maintain a Washington license. **ACTION:**  Asaad Awan moved to deny their request at this time. **MOTION CARRIED** by a 3 - 2 vote. **ACTION:**  Susan Teil- Boyer moved to review the guidelines for telepharmacy to meet changing needs and technology. **MOTION CARRIED.**

WSPA Quality Improvement Process

Association president, Rod Shafer presented information to the Board on The Quality Manager and The Sentinel System, two programs that help track and prevent medication errors.  WSPA will offer continuing education courses on quality improvement.

Rule Review

The Board reviewed the current list of rules being worked on.  The Board requested staff provide them with information on why certain rules are on the list and why they need revisions.  Staff also asked the Board to assign a higher priority to the Technician Exam.  The Board decided to make the patient counseling sign voluntary and study the effectiveness for six months.   Staff suggested removing the patient counseling sign from the rules process until the study is completed and results reported to the Board.  This would allow increasing the priority of the pharmacy technician exam rules.

Review of Prescription Monitoring Program

Mr. Saxe reviewed information presented to the Senior Management Team at their July 22, meeting on the benefits of going forward with legislation concerning the Prescription Monitoring Program.  The Team decided to move forward with a presentation to Assistant Secretary Laurie Jinkins and Secretary Mary Selecky next week.

**DISCIPLINE**

Two panels of the Board met in Executive Session to authorize investigation for the following complaints:

9927 – 10225.

Case No. 05-10224 was closed below threshold.

The following Stipulated Findings of Fact, Conclusions of Law and Agreed Order were accepted:

Jason Jungert, RPh

Deon Boyd, CA

The following Stipulated Findings of Fact, Conclusions of Law and Final Order (Waiver of Hearing) presented by AAG Cindy Gideon was accepted:

Carrie Furlong, CA

The following Stipulated Findings of Fact, Conclusions of Law and Agreed Order on Reinstatement was accepted:

Terry Thomas, RPh and

Korner Pharmacy

There being no further business, the Board adjourned at 4:30 p.m.  They will meet again on September 13, 14, 2005 in Tacoma, Washington.

Respectfully submitted,



Georgia A. Sage
Administrative Assistant

APPROVAL


_____

Board Chair

**24**   August 10, 2005



**NEWS**

**Washington State Board of Pharmacy**

October 2005

## No. 891– Pseudoephedrine/Ephedrine Legislation

During the 2005 legislative session, Engrossed Substitute House Bill (ESHB) 2266 was passed by the legislature and signed into law by Governor Christine Gregoire. Two important implementation dates are coming up, October 1, 2005 and January 1, 2006. The Washington State Board of Pharmacy encourages each pharmacist to review the law in its entirety. The law can be found at the legislative Web site; search for bill number 2266. The direct link is www.leg.wa.gov/wsladm/billinfo1/dspBillSummary.cfm?billnumber=2266.

**Beginning October 1, 2005**

♦ All pseudoephedrine-, ephedrine-, and phenylpropanolamine-containing products must be kept in a central location not accessible to the public.

♦ All pharmacies, shopkeepers, itinerant vendors, and practitioners must view a customer's photo identification that shows the person's birth date.

♦ Any person purchasing these products must be 18 years of age or more.

**Beginning January 1, 2006,** an electronic or written log of the record of sales for pseudoephedrine, ephedrine, or phenylpropanolamine must be kept. The Board of Pharmacy is working on the rule making to define these logs. If you want to receive information on this rule-making process contact the Board office or Manet Wade at 360/236-4838 or manet.wade@doh.wa.gov.

Oregon has recently increased the restrictions it will have on the sale of these products. Beginning July 1, 2006, Oregon will require a prescription to obtain a pseudoephedrine- or ephedrine-containing product. The prescriptions may include up to five refills in a six-month period.

## No. 892 – Collaborative Agreements

Washington State has been recognized as a pioneer in collaborative drug therapy agreements. These agreements allow a pharmacist to initiate or modify drug therapy based upon a Board approved protocol. Initially, these agreements were site specific. In other words, a pharmacy that had an agreement with a physician could allow any pharmacist working in its pharmacy to participate. In 2003, the Board decided to change the structure of these agreements to include a record of each participating pharmacist.

When a collaborative agreement protocol is renewed, be sure to include (along with the signature of the authorizing practitioner) the name of each participating pharmacist. Further, if the previously approved agreement does not include the pharmacist's name the protocol should be updated by submitting an authorization sheet addendum signed by the authorizing prescriber.

## No. 893 – Frequently Asked Questions: "Office Use" Sale

Is a prescription issued for "office use" valid? The simple answer is no. The sale or transfer of drugs between a pharmacy and an authorized practitioner must be recorded as an invoice not a prescription. Invoices of controlled substances must be readily retrievable. A Drug Enforcement Administration 222 Order Form must be used for the sale or transfer of Schedule II controlled substances.

## No. 894 – 50-year Pharmacists

We extend our congratulations to the following pharmacists who were issued Gold Certificates signed by the Governor and the Board in honor of their completion of 50 years of licensure as pharmacists in Washington State: Jack C. Means, Charles L. Butkovich, William D. Cope, Patrick G. Damiano, Robert L. Lowry, Alden R. Peppel, Gerald L. Stocker, Ralph L. Anderson, Florence M. Sumida, Donald N. Elliston, Cyril E. Hart, Donald M. Kelly, John W. Long, Richard L. Marshall, Larry L. Martens, Frank A. Roe, Robert D. Satterthwaite, Herbert M. Tsuchiya, Harold L. Blanchard, Clyde A. Chappel, and Thomas W. Larsen.

## No. 895 – Conscience Issues Related to Filling Prescriptions

The Board of Pharmacy has received calls from the public and profession regarding refusing to fill an emergency contraception prescription for reasons of conscience. The American Pharmacists Association has a code of ethics with concepts that address this topic. A pharmacist should function by serving the individual, community, and societal needs while respecting the autonomy and dignity of each patient. The best practice by a pharmacist is to promote good health for every patient in a caring, compassionate, and confidential manner.

Currently, Washington State statutes and rules do not require pharmacists to fill prescriptions if they choose not to, as long as they do not violate the laws prohibiting discrimination. However, the Board advises pharmacists who do not wish to fill prescrip-

Continued on page 4

25

EXHIBIT F

218 Sixe 12-10-08

BOP(PR)007794

*Continued from page 1*

tions for reasons of conscience, to refer the patient to a colleague or another pharmacy. Further, the Board recommends that pharmacists address this issue proactively with their employer, colleagues, and prescribers to have convenient and timely options available for patients.

The Board has concerns about inflexible mandates to fill any prescription. There are circumstances when it may be clinically appropriate for a pharmacist to delay or refuse filling a prescription or to take possession of a fraudulent prescription. Pharmacists are expected to review prescriptions and patient profiles and use their knowledge and professional judgment when considering the appropriateness and validity of a particular prescription or drug regimen.

Pharmacists should also consult with their legal counsel if they choose not to fill a lawful and therapeutically responsible order, consistent with the patient's conditions and other medications. The refusing pharmacist may incur liability by not filling the prescription, particularly if the prescription was confiscated or destroyed.

Washington State has been a leader in prescriptive authority agreements. In Washington, women can obtain emergency contraception without seeing a physician through more than 300 participating pharmacists who have obtained the necessary additional training. Pharmacists with emergency contraception authority may be found at www.not-2-late.com. In addition, the Board of Pharmacy works with pharmacy organizations to provide the necessary education to apply for collaborative agreements.

The Board recognizes the conflict between the pharmacist's desire to not participate in therapy he or she is morally opposed to versus the patient's right to obtain a legitimate prescription. However, access to health care is one of the charges of the Department of Health. Emergency contraception medication has been authorized for use by Food and Drug Administration. Pharmacists are encouraged to identify convenient options so patients can receive medications that are lawful and therapeutically accepted.

## No. 896 – Upcoming Board of Pharmacy Meetings

The Board of Pharmacy is encouraging all pharmacists to mark their calendars for the following Board meetings in 2005.

| Date | Location |
|------|----------|
| November 2 | Tumwater |
| December 14 | Kent |

Board meetings are open to the public. Pharmacists, pharmacy technicians, and others who work closely with pharmacy are encouraged to attend. While the meetings have a formal structure, time is reserved on the agenda for public comment. If you would like to receive Board meeting agendas on an ongoing basis, please contact the Board office at 360/236-4825. We will be glad to add you to our meeting agenda distribution list. This is a great opportunity to help the profession progress. Your questions, suggestions, and comments are appreciated.

## No. 897 – Board Phone Numbers

George Roe, Chair (January [Jan.] 2009) ............ 360/668-0763
Asaad Awan, Member Vice Chair (Jan. 2007) ..... 206/731-5448
Susan Teil-Boyer, Member (Jan. 2008) ............... 253/697-2787
Donna Dockter, Member (Jan. 2007) ................... 206/523-5700
Gary Harris, Member (Jan. 2009) ....................... 425/883-8398
Rebecca Hille, Public Member (Jan. 2008) ......... 509/455-3713
Sharron Sellers, Public Member (Jan. 2006) ....... 425/640-1423
Board Office ...................................................... 360/236-4825
Board Fax .......................................................... 360/586-4359

Page 4 – October 2005

The *Washington State Board of Pharmacy News* is published by the Washington State Board of Pharmacy and the National Association of Boards of Pharmacy Foundation, Inc, to promote voluntary compliance of pharmacy and drug law. The opinions and views expressed in this publication do not necessarily reflect the official views, opinions, or policies of the Foundation or the Board unless expressly so stated.

Steven M. Saxe, RPh, FACHE - State News Editor

Carmen A. Catizone, MS, RPh, DPh - National News Editor
& Executive Editor

Larissa Doucette - Editorial Manager

Prescored Standard
U.S. Postage
PAID
Chicago, Illinois
Permit No. 5744

WASHINGTON STATE BOARD OF PHARMACY

National Association of Boards of Pharmacy Foundation, Inc
1600 Feehanville Drive
Mount Prospect, IL 60056

BOP(PR)007795

**Nancy Sapiro**

| | |
|---|---|
| **From:** | Sharron Sellers [ssellers@edcc.edu] |
| **Sent:** | Thursday, October 06, 2005 3:26 PM |
| **To:** | Luftig, Amy |
| **Cc:** | Nancy Sapiro |
| **Subject:** | Re: Thank you, Sharron! |

It was a fun meeting. Again, I encourage your organization to see a person to apply for the citizen position.

To get on the list to receive notice of the agenda -- contact both:

Steve Saxe, executive director - Steven.Saxe@DOH.WA.GOV Lisa Salmi, assistant director - Lisa.Salmi@DOH.WA.GOV

All my best!

Sharron


> From: "Luftig, Amy" <Amy.Luftig@ppnetworkwa.org>
> Date: Thu, 6 Oct 2005 14:08:21 -0700
> To: Sharron Sellers <ssellers@edcc.edu>
> Cc: <nsapiro@nwwlc.org>
> Subject: Thank you, Sharron!
>
> Hi, Sharron!
>
> Nancy and I want to thank you again for meeting with us yesterday and
> for providing us with such invaluable information about the pharmacy
> board and its workings.  We both learned a lot from our conversation.
>
> I wanted to follow up with you about the best way to go about
> obtaining a copy of the agenda for future meetings.  When you get a
> chance, could you forward me that information?
>
> Many thanks!
>
> Amy

1

NWWLC 0000550

27                              EXHIBIT G

**NWWLC 0000551**

**NWWLC 0000552**

**NWWLC 0000553**

Governor Gregoire                    **MEETING BRIEF**                    Briefing Book

| | |
|---|---|
| **TITLE:** | **Elaine Rose, Planned Parenthood** |
| **DATE:** | Wednesday, January 4, 2005 ~~/~~ *error 2006* |
| **TIME:** | 8:30am – 9:00am |
| **REQUESTED BY:** | Elaine Rose |
| **PARTICIPANTS:** | Elaine Rose |
| **Exec. Branch:** | Christina Hulet |
| **PURPOSE:** | Discuss reproductive health care |
| **FOLLOW UP:** | Christina Hulet |
| **LEAD/PHONE:** | 902-0660 |
| **ISSUES:** | |

Elaine originally asked for an informal, one-on-one sit down with you over coffee. However, she subsequently mentioned that she'd like to discuss Planned Parenthood's role in the delivery of reproductive health care, so Christina is scheduled to attend (unless, of course, you'd rather proceed with a one-on-one).

Key Issue: Pharmacists Refusing to Dispense Emergency Contraception

- Planned Parenthood & the Northwest Women's Law Center have raised issue with the WA State Board of Pharmacy (BOP) about pharmacists refusing to dispense emergency contraception. While there's limited data about how widespread the issue is in Washington, several instances have occurred this year (in Wenatchee and Seattle), with growing trends around the country.
- Current WA law allows the pharmacy board to discipline pharmacists for dispensing less than the prescribed dose of medicine and for unprofessional conduct, defined as "incompetence, negligence, or malpractice that results in injury or creates unreasonable risk to patients." Several court cases in California and Michigan have applied this to include emergency contraception.
- Planned Parenthood would like the BOP to establish a policy that mandates that WA pharmacists must dispense contraception or face disciplinary action by the board. They presented the issue to the board in August 2005. Meanwhile, the WA State Pharmacy Association (WSPA) created a task force to address the issue and make recommendations to the BOP, which are scheduled for review at BOP's January meeting. It is not yet clear what they'll recommend, but there's rumor that WSPA would prefer a policy that directs pharmacists to find another pharmacist who can dispense contraception if they are morally uncomfortable doing it themselves. Planned Parenthood is concerned about this approach, particularly as it relates to rural areas.

Other issues she might raise include abstinence only sex education in schools and federal funding cuts in family planning, largely in Medicaid.

Page 1 of 1

GOV0004404

EXHIBIT H

<u>Planned parenthood</u>
    ⌐ coming into

    Cover my pills phone number / website.

Concern about BOP policies:

WA State ~~Pharmacist~~ Pharmacy assn. - task force re. emergency
contraception — more concerned philosophically
    ⌐ will likely recommend that pharmacists can refuse to
    fill these

Pharmacy board - divisions - don't want to regulate Rx drugs. Plan B.
    ⌐ disciplinary board
       ⌐ guideline for pharmacists

Plan B - current law. - 72 hours.
    WA State leg. - emergency contraception
        hospitals required to counsel sexual
        assault victims but not others, & provide
        it.

                              ⌐ 1 of 2, 3 states that anyone
                              can go to participating pharmacies
Participating pharmacies           ~~→~~ & emergency
   ⌐ DOH, BOP?                  contraception w/o a prescript

Ask: Plan B, & contraceptives
    Rulemaking w/ BOP a regulation
    to adopt a policy that pharmacists
    must fill prescriptions (valid) - clinical but not personal
                                 judgment
OR
   if there's someone else to hand off to
   will they provide other info.
   not a solution for rural areas - not 10+ pharmacist
   (where will she need to go)

Insured? Plan B considered a contraceptive (~~not abortion~~)
     Statute - says they can use their conscience
        but science says this is contraception

    CHOICE community, Planned Parenthood.

GOV0004405



**Planned Parenthood**®
Public Policy Network of Washington

*CC: Christina*

Bellevue
Bellingham
Bremerton
Centralia
Cheney
Cle Elum
Colfax
Ellensburg
Everett
Federal Way
Friday Harbor
Issaquah
Kenmore
Kent
Longview/Kelso
Kennewick
Lynnwood
Marysville
Monroe
Mount Vernon
Oak Harbor
Olympia
Pasco
Port Orchard
Pullman
Puyallup
Salmon Creek
Seattle
Shelton
Silverdale
Spokane
Sunnyside
Tacoma
University Place
Walla Walla
Wapato
Vancouver
 Yakima

Main Office
2001 E Madison
Seattle, WA 98122
Tel: (206) 328-7735
Fax: (206)328-6810

January 12, 2006

Governor Christine Gregoire
Office of the Governor
PO Box 40002
Olympia, WA 98504-0002

Dear Governor Gregoire,

Thank you for meeting with me last week to talk about issues of concern to Planned Parenthood. We are grateful for your strong commitment to reproductive health care.

The collection of stories on pharmacy refusals is on-going. We will compile a sampling and share these with you. As we discussed, it is a disturbing trend when partners in the medical delivery system take it upon themselves to override an appropriate course of treatment prescribed by one's personal physician. Who knows where the line will be drawn next and who will be hurt.

As I mentioned we are thrilled to have you speak at our Lobby Day rally on January 30. I will see that some talking points are provided to your staff for your consideration.

Our efforts to work with our partner, the Health Recovery Service Administration, continue. It is a bewildering situation at best. We are hopeful that we can clear up the confusion that seems to permeate our relationship so that we can deliver the services that make such a difference in people's lives. We are now scheduled to have a meeting in late January. We are also having some frank conversations. I can't help but think you may have had something to do with that and I thank you.

I want to reiterate my invitation to have you come and tour one of our clinics and talk with the CEOs of the five Planned Parenthood affiliates in Washington State. The focus of our health care practice has been prevention based since its founder Margaret Sanger opened a birth control clinic in 1916. As a health care provider we know first hand the value of prevention and how it leads to healthier individuals and families and stronger communities. As such, we applaud your efforts to improve Washington's health care system by including

GOV0004406

**33**

EXHIBIT I

including prevention as one of your strategies.  Count on us as partners with you in that endeavor. I'll work with your staff to schedule something for later in the year.

It was wonderful to see you.  And as I knew you would, you are making Washington a better place for all of us.

All the best,

Elaine Taylor Rose
Executive Director
Planned Parenthood Public Policy
Network of Washington
(206) 328-7735
elaine.rose@ppnetworkwa.org

Cc: CEOs
Chris Charbonneau
CEO, Planned Parenthood of Western Washington
Anna Franks
CEO, Planned Parenthood of Central Washington
David Greenberg
CEO, Planned Parenthood of Columbia/ Willamette
CJ Gribble
CEO, Planned Parenthood of Inland Northwest
Linda McCarthy
CEO, Mount Baker Planned Parenthood

GOV0004407

34



CHRISTINE O. GREGOIRE
Governor

**STATE OF WASHINGTON**

## OFFICE OF THE GOVERNOR

*P.O. Box 40002 • Olympia, Washington 98504-0002 • (360) 753-6780 • www.governor.wa.gov*

January 18, 2006

Dr. Asaad Awan, Chair
Board of Pharmacy
Box 359885
Seattle, WA  98104

Dear Dr. Awan:

It has come to my attention that the Washington State Board of Pharmacy (Board) is evaluating state policy regarding pharmacists who refuse to sell lawfully prescribed products and services. No one should be denied appropriate prescription drugs based on the personal, religious, or moral objection of individual pharmacists.  I urge the Board to continue to honor our state's long history of protecting the health of Washington residents, regardless of such personal objections.

This issue goes far beyond women's access to contraception, but appeals to the right of all patients to have their prescription filled without judgment or discrimination.  Pharmacists have an important and clear job in our health care system to dispense drugs deemed appropriate by doctors and their patients.  It is, in my view, inappropriate for pharmacies or pharmacists to interfere with this established patient-doctor relationship by granting or denying prescriptions based on their personal objections.

Many pharmacies now have policies that accommodate the medical needs of customers and the individual rights of conscience of their employees.  I support policies that recognize that pharmacies bear the ultimate responsibility for filling prescriptions and, if necessary, have staff readily available to serve the patient, if another pharmacist has personal objections.

I appreciate the role of the Washington State Board of Pharmacy in deliberating on this issue and urge that the rights of patients remains central in its review.

Sincerely,

*Christine Gregoire*

Christine O. Gregoire
Governor

cc:   Members of the Board of Pharmacy (BOP)
      Steven Saxe, Executive Director, BOP
      Mary Selecky, Secretary, Department of Health
      Christina Hulet, Executive Health Policy Advisor

EXHIBIT J

HRC (RFP) 00305

**ATG MI MDS Printing**

| | |
|---|---|
| **From:** | Hulet, Christina (GOV) |
| **Sent:** | Tuesday, January 24, 2006 5:09 PM |
| **To:** | 'elaine.rose@ppnetworkwa.org' |
| **Subject:** | FW: Gov. Gregoire announces appointments |

Elaine,
Here's the announcement of Duffy's appointment.

Let me know how the SBOP meeting goes. I have a conflict but will be interested to learn what took place.

Thanks,
Christina
-----Original Message-----

| | |
|---|---|
| **From:** | Gov Comm Office |
| **Sent:** | Tuesday, January 24, 2006 4:18 PM |
| **Subject:** | Gov. Gregoire announces appointments |

Media contact:
Governor's Communications Office, 360-902-4136; www.governor.wa.gov <http://www.governor.wa.gov>

## Gov. Gregoire announces appointments to boards and commissions

*Citizens appointed from Spokane, Seattle, Woodinville, Centralia, Gig Harbor, Yakima, Ellensburg, Port Orchard, Vancouver, Olympia, Port Angeles, Burlington, Bellingham, University Place, Tacoma, Dupot, Lakewood, Moses lake, Aberdeen, Addy, Orting, Wenatchee and Richland*

OLYMPIA - January 24, 2006 - Governor Chris Gregoire today announced appointments to the following boards and commissions:

### Board of Pharmacy
**Rosemarie Duffy** of **Spokane** has been appointed to a term effective January 30, 2006, ending January 18, 2010. Duffy is a registered nurse and currently works at the Spokane Veterans Hospital. Her professional role is to triage patients in an outpatient setting to determine the level of care they require.

She has consulted with the Yakima Valley Farm Workers Clinic in their development and implementation of competency standards. Duffy also worked for the United State Air Force in Indiana where she was responsible for recruiting all health professionals.

The board establishes policy for pharmacies, including licensing, disciplinary hearings and enforcement of laws pertaining to legal drugs, and licenses the manufacture and sale of poisons.

### Board of Pilotage Commissioners
**Charles Davis** of **Seattle** has been reappointed to a term effective January 9, 2006, ending December 26, 2009. Davis works in the Law Office of Charles M. Davis in Seattle, specializing in maritime law. He served in the United States Naval Reserves from 1966 through 1977. Davis is a member of the Washington State Bar Association and the Maritime Law Association of the United States. He also serves as the committee chair for the Boy Scouts of America Troop 72.

The board examines and licenses qualified pilots for vessels operating on the inland waterways of the state, fixes pilotage rates and adopts and publishes rules and regulations.

GOV0002435

EXHIBIT K

## Cascadia Community College Board of Trustees

**Julie Davidson** of **Woodinville** has been appointed to a term effective March 1, 2006, ending September 30, 2010. Davidson is currently a private consultant specializing in community health access and sustainable agriculture support services. She serves on the board of the Friends of the Woodinville Farmers' Market, and is a trustee at the Overlake Hospital Healthcare Foundation. She also serves as an advisory board member for the Susan G. Komen Foundation.

The Board is the governing board for the community college.

## Commission on Pesticide Registration

**Charles Masters** of **Centralia** and **Kurt Volker** of **Yakima** have been reappointed to terms effective January 9, 2006, ending September 14, 2008. Masters is a team leader in technology at the Weyerhaeuser Company. He holds a PhD in Forest Genetics from Purdue University. He serves as chair of the Centralia Downtown Advisory Committee and works with local police and tavern owners on downtown drug issues. Volker is retired, and currently serves as an independent consultant on pesticide research and development issues. He volunteers with the Northwest Harvest Food Bank and Habitat for Humanity, and worked with the Red Cross in Florida to help the victims of Hurricane Wilma.

The commission provides guidance to Washington State University Food Safety and Environmental Quality Lab in the area of pesticide registrations for minor crops and minor uses and the availability of pesticides for emergency use. The commission approves use of state monies appropriated to WSU specifically for studies or activities regarding pesticide registrations.

## Community Economic Revitalization Board

**Julie Tappero** of **Gig Harbor** has been appointed to a term effective January 9, 2006, ending September 2, 2009. Tappero is the president and owner of West Sound Inc. Additionally she serves as the chair for the Gig Harbor Chamber Business and Economic Committee and as well as numerous other community organizations, including Kitsap Regional Economic Development council and the Gig Harbor Public Policy Committee.

The board's objectives are to strengthen the economy in areas of the state that have experienced high unemployment rates or below-average economic growth; to encourage economic diversification within our state; and to provide incentives for expansion of employment opportunities.

## Examining Board of Psychology

**Darlene Madenwald** of **Seattle** has been appointed to a term effective January 6, 2006, ending January 6, 2007. Madenwald has an M.S. in Biology and B.S. in Nursing. She is the principal at Orion Group Associates, a consulting firm on governmental and community outreach issues and a founding member of the University of Washington Center for Women & Democracy.

The board establishes policy for the practice of pharmacy, including licensing, disciplinary hearings and enforcement of laws pertaining to legal drugs; licenses the manufacture and sale of poisons.

## Forensic Investigations Council

**Greg Sandstrom** of **Port Orchard** has been appointed to a term effective January 9, 2006, ending August 10, 2007. Sandstrom is the Kitsap County Coroner and a former Washington State Patrol Trooper. He volunteers with House of Hope, working with Romanian orphans.

**Gerald Bowers** of **Burlington**, **Lauren Erickson** of **Port Angeles**, **Emmanuel Lacsina** of **University Place**, **David McEachran** of **Bellingham**, and **Dennis Wickham** of **Vancouver** have been reappointed to terms effective January 9, 2006, ending August 10, 2010. Bowers serves as the police chief of the City of Burlington.

GOV0002436

37

He is a member of the Washington Association of Sheriffs & Police Chiefs and the National Association of Chiefs of Police. Bowers also works with the Skagit County Emergency Medical Services.

Erickson is a Clallam County Deputy Prosecuting Attorney and a Clallam County Coroner, as well as serving as a member of the Port Angeles City Council. Lascina works as a forensic pathologist, providing services throughout Kitsap, Thurston, Masen, and Grays Harbor counties.

He is a member of the American Academy of Forensic Sciences as well as the Forensic Investigation Council. McEachran currently holds the position of Whatcom County Prosecuting Attorney. He is a member of the Washington State Bar Association and serves on the Board of Trustees for the Washington State Association of Prosecuting Attorneys.

McEachran is also the Chairman of the Board of Directors for the Boys and Girls Club of Whatcom County. Wickham serves as the Clark County Medical Examiner, and is a member of the Washington Forensic Investigations Council. He is also an active member of the Rotary Club of Clark County, serving as Assistant District Governor and participating in the Elementary School Mentoring Program.

The Council oversees the state toxicology laboratory at the University of Washington; studies and recommends improvements in the death investigation system; and reports the findings to the Legislature.

## Horse Racing Commission
**Paul George** of **Yakima** has been appointed to a term effective January 9, 2006, ending January 17, 2007. George served as mayor of Yakima from 2004-2005 and on the Yakima City Council from 2002-2205. Previous to this he worked as the general manager for Yakima Meadows racetrack for 13 years, and 12 years as director of information for United Tot, Inc.

The Commission regulates and supervises all race meets held in the state that have pari-mutuel wagering.

## Interagency Committee for Outdoor Recreation
**The Honorable Val Ogden** of **Vancouver** has been reappointed to a term as chair effective January 4, 2006, ending December 31, 2008. **Ogden** is a private consultant, providing training to non-profit boards. She also served as a State Representative for the 49th District from 1990-2002. She is currently serving on the boards for the Washington State Historical Society and Washington State University (Vancouver campus), as well as chairing the State of Washington Oral History Development Committee and the Southwestern Washington Center for the Arts.

The Committee oversees the statewide comprehensive outdoor recreation plan; provides grants-in-aid to local government and state agencies for purchase of recreation and habitat land and development of recreational facilities.

## Municipal Research Council
**Mark McClain** of **Ellensburg** and **Cathy Wolfe** of **Olympia** have been appointed to terms effective January 9, 2005, ending July 31, 2007. McClain works in the Kittitas County Prosecutor's office as a senior deputy prosecutor. He also serves on the Kittitas County Planning Commission and the Civil Service Commission. Wolfe is a former State Representative and is in her second term as a Thurston County Commissioner. She serves on several committees including the EMS council, justice project oversight committee and is a board member on the Community Youth Services Board. **Mike Doherty** of **Port Angeles** has been reappointed to a term effective January 9, 2006 ending July 31, 2007. **Doherty** is a Clallam County commissioner and serves on several other local boards including chairing the Olympic Resource Advisory Committee and volunteering as a youth sports coach, volunteer firefighter and with the Medic One board.

GOV0002437

**38**

The Council assures that Washington cities and towns have a comprehensive research and service program.

## Nursing Care Quality Assurance Commission

**William Hagens** of **Tacoma** has been appointed to term effective December 19, 2005, ending June 30, 2009. Hagens is a retired professor and health policy advisor. He has worked for the University of Washington, Evergreen State College, and the Department of Social and Health Services. He is currently serving as the President of the Public Health Alliance of Washington. Hagens is also a Trustee of the Seattle Gilbert and Sullivan Society, and volunteers with the Tacoma Care Team, making home repairs for low income and disabled persons.

The Commission regulates the competency and quality of nursing care professionals by establishing, monitoring, and enforcing qualifications for licensing, consistent standards of practice, continuing competency mechanisms, and discipline.

## Public Disclosure Commission

**Jane Noland** of **Seattle** has been reappointed to a term effective December 31, 2005, ending December 31, 2010. Noland is the owner of Jane Noland Glass Art in Seattle. She served as a member on the Seattle City Council from 1986 through 1997. Prior to her election to the Council, Ms. Noland was an attorney with the Seattle Law firm of Perkins Coie and was attorney for the King County Council. She is past president of the Association of Washington Cities, a former board member of the Seattle King County Bar Association, past president of Washington Women Lawyers and is a board member of the Pratt Fine Arts Center.

The Commission administers and enforces Washington's public disclosure law.

## Public Works Board

**Merrill Ott** of **Addy** has been appointed to a term effective January 9, 2006, ending June 30, 2008. Ott serves as the Stevens County Commissioner. He is a retired United States Air Force Officer. He is the Eastern District President of the WSAC Board of Directors, and also serves as a volunteer firefighter for the Addy Fire District # 5 and an EMT with the Chewelah Rural Ambulance and Stevens County Sheriff's Ambulance.

The board administers public-works assistance funds; makes loans to various forms of local government for public-works projects.

## Salmon Recovery Funding Board

**David Troutt** of **Dupont** and **Joe Ryan** of **Seattle** have been appointed to a terms effective January 9, 2006, ending July 15, 2009. Troutt is the Natural Resources Director for the Nisqually Indian tribe. He also serves as Chair of the Nisqually River Council and President of the Nisqually River Foundation. Ryan has been a member of the Washington State Bar Association since 1976. He was an attorney for the U. S. Environmental Protection agency in Seattle between 1993 and 2002, focusing primarily on water quality. In 2000 he won a national award for his work on water quality issues; in 2002 was named Innovator of the year by EPA Region Ten. He currently serves as the President to the Board of the Washington Environmental council.

**Stephen Tharinger** of **Port Angeles** has been reappointed to a term effective January 9, 2006, ending July 15, 2009. **Tharinger** serves as a Clallam County Commissioner and is a member of the Washington Biodiversity Council. He volunteers as a member of the United Way of Clallam County and serves as Vice-Chair for the Council of Governments of the Olympic Area Agency on Aging.

The Board is responsible for making grants and loans for salmon habitat projects and salmon recovery activities from the amounts appropriated to the board.

## State Independent Living Council

4

GOV0002438

Al Neely of Yakima and Elizabeth Winzer of Aberdeen have been appointed to terms effective January 9, 2006, ending September 30, 2009. Neely is a former consultant for ADA issues, concerns, and accessibility. He serves as a volunteer consultant for the Yakima County ADA. Winzer is a retired high school teacher working in special education. She founded and served as Vice-President of Sight Impaired of Grays Harbor Together (SIGHT), a support group for the blind.

Romel Moackelprang of Seattle has been reappointed to a term effective January 9, 2006, ending September 30, 2009. Mackelprang is a Professor and Technology Director in the School of Social Work at Eastern Washington University. He also works as a social work legal consultant and has a private counseling practice. He holds his PhD in Social Work from the University of Utah in Salt Lake City.

The council's charge is to develop, sign and submit the State Plan for Independent Living jointly with DSHS, the Health Services Division of Vocational Rehabilitation, and the Dept of Services for the Blind. The council monitors, reviews and evaluates the implementation of the state plan. The council coordinate activities with the State Rehabilitation Council, the State Rehabilitation Council for the Blind, and other councils that address the needs of disability population.

## State Employee Combined Fund Drive Committee
Representative Brendan Williams of Olympia has been appointed to a term effective January 3, 2006, ending January 1, 2009. Representative Williams is the State Representative for the 22nd legislative district. He has worked in all three branches of state government, as a judicial law clerk for Justices Gerry Alexander and Bobbe Bridge of the Washington Supreme Court; as executive secretary for former House Speaker Brian Ebersole, and an aide and intern for former Senator Al Bauer; and as a governor's intern for former Governor Booth Gardner. Williams is an attorney and business consultant in private practice, and served as the past executive director of the Washington Health Care Association.

Karl Allison of Moses Lake, John Howard of Tacoma and Sharon Price of Lakewood have reappointed to terms effective January 3, 2006, ending January 1, 2009. Allison is a Community Service Office Administrator for the Department of Social and Health Services. He is responsible for providing cash grants food assistance and medical needs to households in both Grant and Adams County. Howard is the Dean of Instruction with Bates Technical College in Tacoma. He supervises the Health Services, Dental, Computer and Electronics programs. Price is a retired licensed practical nurse; she also worked for Pierce County juvenile court as a medical services coordinator.

The Combined Fund Drive is a mechanism where state employees can donate money to be distributed to a variety of charitable organizations.

## State Rehabilitation Council
Beth Berg of Spokane, Joanne Butts of Orting, John Harrison of Olympia, and William Murray of Wenatchee have been reappointed to terms effective January 9, 2006, ending September 30, 2009. Berg is an administrative coordinator at Avista Corporation in Spokane. She serves on the Spokane Public Relations Council, and volunteers with the Ronald McDonald House. Butts is the Executive Director of Washington PAVE. She is a member of the Business Advisory Committee for the Department of Services for the Blind, and served as a past President for the Pierce County chapter of the Learning Disability Association. Harrison is a retired school official working with the Shelby (Montana) Elementary Schools. He has also served on the Shelby City Council and the Mental Health Advisory Board of Shelby, MT. Murray is currently working as a mental health and developmental disabilities consultant. He is a licensed mental health counselor and developmental disabilities specialist, and a member of the Chelan-Douglas Developmental Disability Advisory Board.

GOV0002439

The Council reviews, analyzes and advises the general vocational rehabilitation program of responsibilities under the Rehabilitation Act.

**Transportation Commission**
**Carol Moser** of **Richland** has been appointed to a term effective January 9, 2006, ending June 30, 2011. Moser currently serves in the Richland City Council as mayor pro-tem.  She is chair of the Regional Transportation Planning Organization in Richland, and vice-chair of the Ben-Franklin Transit Board of Directors.

The Commission establishes policy for the Department of Transportation.

###

GOV0002440

41

DEPARTMENT OF HEALTH
WASHINGTON STATE BOARD OF PHARMACY
MEETING AGENDA
March 10, 2006
CenterPoint Corporate Park
Creekside Bldg #3 – 2nd Floor
20435 72nd Ave
Kent, WA  98032
253- 395-6719

## CONVENE

Chair Asaad Awan convened the meeting at 9:12 a.m. on March 10, 2006.  Board Members present:

> George Roe, RPh
> Donna Dockter, RPh
> Gary Harris, RPh
> Rebecca Hille, Vice-Chair
> Rosemarie Duffy, RN

Absent Member:
> Susan Teil-Boyer, RPh

Staff Members present:
> Joyce Roper, Assistant Attorney General
> Steven Saxe, Executive Director
> Lisa Salmi, Deputy Executive Director
> Tim Fuller, Pharmacy Consultant
> Andy Mecca, Pharmacy Consultant
> Grace Cheung, Chief Investigator
> Richard Morrison, Pharmacist Investigator
> Doreen Beebe, Program Manager

**March 10, 2006**                                                    **Open Meeting**

### Welcome to New Board Member

The meeting began with the introduction of Rosemarie Duffy. Ms. Duffy was appointed by Governor Gregoire on January 30, 2006 to serve a four year term as a public member of the Board of Pharmacy.  She has been a resident in Washington State for approximately 12 years and is a nurse by profession.  In her introduction she quoted Marian Wright Edelman summing up her motivation for serving her community. "Service is the rent we pay for being."

### Pharmacy Intern Study Plan

Andy Mecca provided the regulatory basis for this request coming before the Board. Elise Ng, a pharmacist intern, has been unsuccessful in passing the NAPLEX.  Ms. Ng is requesting that the Board approve her study plan and authorize her to re-take the exam.  **MOTION:** George Roe moved that the Board accept the Pharmacy Intern study plan and approve Elise Ng to re-take the NAPLEX exam.  **MOTION CARRIED.**

BOP(PR)005527

EXHIBIT L

<u>CONSENT AGENDA</u>

**1.1**    Pharmacist License Application Approval
- Thu N. Vu – Application for Nuclear Pharmacist
- Anthony Parks – Application for Nuclear Pharmacist

**1.2**    Pharmacy & Other Firm Application Approval
- Closed & New Pharmaceutical Firms 12/23/2005- 2/13/2006

**1.6**    Automated Drug Dispensing Device Acceptance
- Bridgeport Pharmacy Services
- Sunnyside Community Hospital
- Yakima Valley Memorial Hospital

**1.8**    Board Minute Approval
- January 26, 2006 meeting minutes

Items 1.3 –Pharmacy Technician Application Approval; 1.4- Pharmacy Technician Training Program Approval; 1.5- Collaborative Drug Therapy Agreement Acceptance; and 1.7- Sample Distribution Requests were deleted from the consent agenda. **MOTION:** George Roe moved to accept 1.1, 1.2, 1.6 and 1.8 of the consent agenda items. **MOTION CARRIED.**

<u>REPORTS</u>

Steve Saxe reported on the following:

    Health Professions Section Four
- Judy Haenke, Program Manager and the Optometry Board is putting on a seminar next weekend with 650 participants registered for continuing education credits. The event will be held at the University of Washington. She has also been involved in the Dispensing Optician exam (given twice a year) and the North American Veterinarian licensing exam.

    Personnel Issues
- Section Four has hired a temporary staff person to assist with the credentialing process during the absence of one permanent staff member. The temporary position begins this week for 3 months.
- The Veterinary Board is down two veterinarians and one public member. Interested parties may visit the Governor's web page for application information.
- The secretary's Orthotics and Prosthetics Advisory Committee also has two vacancies.
- Working with bill analysis for the Legislative Session ended 3/9.
- Doreen Beebe, Program Manager to the Board of Pharmacy and the Orthotics and Prosthetics Advisory Committee is interviewing to fill a support position.

    Department of Health
- Steve Saxe has participated on the interview panel with other Department of Health staff to fill the Medical Director's position with the Washington Physicians Health Program (WPHP). Dr. Lynn Hankes, who has held the position for a number of years, plans to retire. Dr. Mick Oreskevich has been selected to fill the position. Section Four works with 3 different impaired practitioner programs: Washington Recovery Assistance for Pharmacy

BOP(PR)005528

43

Program (WRAPP), Optometry Washington Health Professional Services and WHPS.

- The department is working on a strategic plan to develop one single complaint process that will address complaints that encompass several programs. The plan is looking to develop common business practices, enhance data management, and looking at better technologies. DOH has signed a contract for a new licensing system that will support credentialing, complaints, inspection process, etc. The system will assist us in improving workforce diversity, competency and satisfaction. The strategic plan has been finalized and work will begin looking at organizational functions and structure. Each section within Health Systems Quality Assurance Division has identified the time it devotes to credentialing, complaints, compliance, inspections and board support to determine if there are opportunities to improve the functionality of the division. The Board will be updated as the process moves forward.

## BOARD MEMBERS

*George Roe* attended the March 1st Investigators' quarterly meeting. Mr. Roe highlighted concerns expressed at the meeting regarding the need to find business license holders accountable for system related complaints. Actions against licensed personnel are often not enough to solving system issues. In some cases operating procedures and conditions which are controlled by employers may be contributing factors to dispensing errors and are controlled by employers. Mr. Roe stated that this is something that the Board should address.

## ASSISTANT ATTONEY GENERAL

Joyce Roper will be working with Steven Saxe to review the recently enacted Patriot Act, which contains language addressing methamphetamine precursors. They will be comparing the federal regulations to Washington's laws to identify where there may be differences.

## CONSULTANT PHARMACIST

*Tim Fuller* provided an update on the Automated Devices Rules. The hearing is tentatively scheduled for June 1st. Mr. Fuller participated in an emergency response drill of the department's reception, storage and supply facility. This facility will receive drugs from the strategic national stockpile. Mr. Fuller along with Investigator Jim Doll and Deputy Director Lisa Salmi will participate in the statewide exercise planned for April 5th. The full scale exercise will include filling and sending order to various sites.

*Andy Mecca* updated the Board on the collaborative work being done by the Department of Health, Labor and Industries, Department of Corrections and other agencies in establishing opiate dosing guidelines. Meetings are progressing. Final guideline will be reported to the Board.

Patient counseling sign and letter explaining voluntary compliance has been posted to the Board's website and an article has been submitted for the April newsletter, which will be mailed to all pharmacists.

## CHIEF INVESTIATOR

Grace Cheung reported on the following:

BOP(PR)005529

- Jan 31, 2006, Randy Flett provided an overview of precursor laws and rules to members of King County Sheriff, various legislature staff, city, county, state, and federal personnel from various agencies affected by methamphetamine.
- Dick Morrison, as a member of the University of Washington, School of Pharmacy Admissions Committee, has been involved in interviewing applicants to the University of Washington, School of Pharmacy.
- Stan Jeppesen and Andy Mecca are participating in a law review class designed for individuals who are studying for the MPJE. These classes are held on two Saturdays in March at the University of Washington.
- March 1-2, 2006 Investigators Meeting. Board member George Roe attended on March 1st and had a chance to meet the entire Section 4 staff at our all staff meeting. We had a full agenda of current issues and updates on procedures relating to case management.
- The investigator vacancy in Central Washington continues to pose challenges for the rest of the investigators. In addition to their own workload many investigators have been assigned Central Washington cases, practice reviews and non-routine inspections (i.e. new, relocation and remodel inspections).
- Donna Dockter tentatively accepted the invitation to attend the June 7th Investigators' meeting.

## PRESENTATIONS

### Cerner Corporation
Dr. Steve Ward presented Cerner Corporation's EasyScript (Sending System) and PharmNet (Pharmacy Receiving System) for Board approval.
- EasyScript solution does not currently support NCPDP script standards – it does not send prescriptions out electronically but directly to the pharmacy fax machine. In the future, should the system transmit prescriptions other than via fax, Cerner will request an amended approval from the Board.

**MOTION:** George Roe moved to approve the electronic prescription transmission and receiving systems by Cerner Corp with the stipulation that it documents chronic conditions and remove the brackets on the refill–prescription **MOTION CARRIED.**

### PDX Inc.
Ben Loy, Senior Vice-President of PDX Inc. presented their eRx Network (Gateway System) and Pharmacy PDX Retail Pharmacy Management System (Pharmacy Receiving System) to the Board for approval. **MOTION:** George Roe moved to approve the electronic prescription transmission and gateway systems by PDX Inc. once the system shows "Dispense as Written" and the physician's DEA # on screen. **MOTION CARRIED.**

### LSS Data Systems
Ken Carlson, CEO and Chief Technology Office of LSS Data System presented their electronic prescription transmission system (Sending) to the Board for approval. **MOTION:** George Roe moved to accept LSS Data Systems. **MOTION CARRIED.**

## DISCUSSION

### Update 2006 Legislative Session

BOP(PR)005530

Steve Saxe recognized Rebecca Hille for her participation in the Monday "meet me" calls, which provided the department an opportunity to receive input from representative of all Boards, Commissions, and Advisory Committees on 2006 multi-profession bills.

Mr. Saxe provided a summary of legislative bills of interest to the Board and Section Four.

*HB2292 Healthcare Liability Reform* – Patient safety malpractice bill – legible prescription clause, which requires prescriptions to be hand printed, type written or electronically generated Signed by Governor. Effective 90 days after end of session.

*ESB6194 Multicultural Education for Healthcare Professionals* - Requires multicultural education to be incorporated in the curriculum of the professional educational programs within the state. The Department of Health will be charged with developing ongoing cultural diversity education. This bill also looks into disparity in access to healthcare for different cultural groups. This bill passed and is waiting to be signed by the Governor.

*SHB2974 Health Professions Discipline* – Mandatory reporting of findings of unprofessional conduct. A section of this bill provides that the disciplinary history is given to the boards as it looks at authorizing investigations. This legislation emphasizes public safety. The Washington State Patrol will report any violations that they may be aware of to any disciplinary boards. There are concerns that this bill did not address property crimes, which is an issue when dealing with vulnerable adults. Also related to this bill is a decision package for funding to do national databank checks for all applicants. In addition, a provision of this bill authorizes a summary suspension of the license status in Washington pending retribution for actions taken by another state. This bill passed and is waiting to be signed by the Governor.

*HB1850 Retire Volunteer Medical Workers' License* – creates a retired volunteer medical license – up to 10 years out of practice. The Department of Health is charged with establishing continuing competency requirements. This license is for working in emergency situations. The bill also addresses liability issues for the retired worker. This bill passed and is waiting to be signed by the Governor.

*SB6193 Surveys of Health Professions Work Force Supply and Demographics*. This bill passed.

*Optometry Licensing* – eliminating tiered licenses for all Optometrist by 2011. All optometrist must get have completed the training and licensure to prescribe oral drugs and epinephrine. This bill requires rule making. New applicants in 2007 must meet new credentialing level. This bill passed.

*SB6591 Expanding provisions relating to wholesale distribution of dangerous drugs*. This bill did not pass. A significant amount of work and meetings went into this bill. There were issues around pedigree and concerns raised regarding penalties. Look for this bill to return in 2007.

*HB332 Controlled Substances Prescription Monitoring Program*. Representative Hinkle dropped this bill shortly before the session ended. The Board will be providing comments to prepare for next session. The department had a grant last year and did significant stakeholder work and wrote draft rule language.

BOP(PR)005531

Health Systems Quality Assurance division reviewed 134 bills. The office of Health Professions Quality Assurance was lead on 98 and assigned as support on 36 bills.

Engrossed Substitute House Bill 2266

The law which was passed in 2005, effective January 1, 2006, requires the Board of Pharmacy to form a task force or work group to assess the effectiveness of methamphetamine precursor retail logs. The group will evaluate:

- Whether the log or other means of recording the transactions is an effective law enforcement tool?
- What information is needed to make logs or other means of recording a transaction useful as a deterrent to criminal activity?
- What is the most effective and lease intrusive method of obtaining, recording, and storing the log or other electronic data?
- How long the information should be maintained?
- How can the information be most effectively transmitted to law enforcement and the Board of Pharmacy?

The members of the Task force include representation from the Washington State Association of Sheriffs and Police Chiefs, Washington State Patrol, Washington Association of Prosecuting Attorneys, Attorney General's Office, two representatives from the retail industry and a Board of Pharmacy member. A letter will be going out soon to invite retail folks to come to the table to select 2 representatives. We also need to identify a representative from the Board. It is anticipated that the task force will meet for 8 half-day meetings.

**MOTION:** Rebecca Hille moved to appoint Donna Dockter with her valuable retail background to the Meth Task Force as a representative of the Board. **MOTION CARRIED.**

University of Utah School on Alcoholism and other Drug Dependencies

Due to schedule conflicts Rosemarie Duffy and Gary Harris are unable to attend. **MOTION:** Rebecca Hille moved Board staff appoint two appropriate staff members to attend the Utah training. **MOTION CARRIED.**

Northwest Women's Law Center & Planned Parenthood

Steven Saxe reminded the Board that representatives from Northwest Women's Law Center and Planned Parenthood requested in January to present to the Board their views following the Washington State Pharmacy Association's presentation on a Pharmacist's "Conscience Clause." Mr. Saxe went on to say that this is just one step in the rules process. The rule making process initiated by the Board in January will consist of stakeholder meetings held in various locations throughout the state and are scheduled to begin this spring. The Board will then determine whether rules are needed. If rules are necessary, draft language will be written and additional public comment received. This is a very open process.

Washington has been a leader – first in the country where pharmacists with a collaborative agreement can prescribe and dispense emergency contraception. Washington has the longest running pharmacist emergency contraception training program. Training is available for pharmacist through the American Pharmacy Association and the Washington Pharmacy Association (WSPA) and included as part of the curriculum for pharmacy students.

BOP(PR)005532

Steven Saxe reiterated that the Board staff advises pharmacists to be proactive by working with their employers and colleagues to ensure patients receive timely and convenient patient care.

The following is a summary of the presentation made to the Board by Nancy Sapiro, representing the NW Women's Law Center; Roberta Riley and Amy Luftig representing Planned Parenthood Presentation.

The presenters provided a brief overview of the legal landscape in Washington and why they feel that pharmacist have a greater responsibility to their patients under Washington law than the position reported in the WSPA's position presented at the January meeting. Ms. Sapiro stated that while they think that WSPA's proposal is viable in some respects they feel it is an inadequate response to the issue of pharmacist's refusals in this state.

They acknowledged that the vast majority of pharmacists in this state take their ethical and legal responsibility very seriously and that they are committed to protect the patients' safety and timely access to needed medications. They went on to say, pharmacists in this state are refusing to fill prescriptions and particularly refusing to fill prescriptions for birth control. In so doing they are creating a significant new threat to women's reproductive healthcare. The impact of these refusals is not simply minor inconveniences they pose significant barriers to necessary health care for women. These negative impacts are greatest for those with limited access to alternative pharmacies.

Reasons to fill legally prescribed medications:
- Professional standards of conduct
- National Pharmacist Codes of Ethics - requires pharmacist to avoid actions that compromise the dedication to the best interest of their patients.
- Washington laws
  - Duty to fill – pharmacy practice
  - RCW 9.02.100 Reproductive Privacy Act - that an individual had a fundamental right to choose birth control and that the state can not discriminate in a way that inhibits an individual's ability to exercise that right.
  - 1978 US Supreme Court noted that laws can not interfere with religious belief/opinions, the constitution protects these individual beliefs; however, laws may regulate our actions.

Reasons not to fill legally prescribed medications:
- Professional judgment
  - Forgery
  - Contraindications

Amy Luftig highlighted trends in the nations and gave four examples from Washington State of pharmacist refusing to fill prescriptions for antibiotics, syringes, prenatal vitamins and ECP citing religious or implying other biases. Ms. Luftig stated that these examples pose a direct health risk to the client and are not limited to emergency contraception.

National Trends
- Other states and pharmacy boards summarily reject pharmacists' right to refuse in favor of patient protection
- Wyoming and Nevada Boards of Pharmacy adopted a proposal that pharmacists can refuse only on the basis of unlawful prescription or contraindications.

BOP(PR)005533

- North Carolina Board released a policy stating it is unacceptable for pharmacist to impose their moral or ethical beliefs on their patients the serve.
- Governor Jim Doyle of Wisconsin stated regarding a similar bill proposal - it is hard enough for many people to get the healthcare they need.

They acknowledged that the WSPA's position paper recognizes the foremost responsibility of a pharmacist is to provide pharmaceutical care to their patients. They strongly disagreed that in those instances when a pharmacist's personal beliefs conflicts with their professional responsibilities the pharmacists' has the right to refuse to fill. A referral is not a minor inconvenience for many women who live in towns with only one pharmacy or have to go to another town or across town. This is especially compelling when you think of emergency contraception where the efficacy of the drug is decreasing.

Ms. Sapiro, Ms Luftig and Ms. Riley urged the Board to follow their colleagues in other states and reach the same conclusion. They asked the Board to move forward with a policy that will protect the health of all Washington residents to ensure that no one is denied safe and legal prescriptions in this state because of an individual's personal beliefs. Without imposing an undo burden on the employer, the employer should attempt to accommodate the employee. Pharmacies can accommodation the religious refusal of pharmacist while protecting a patient's rights if and only if the patient's care is not disrupted or delayed in anyway.

Comments from the Audience
  There were approximately eighty persons in attendance. Twenty-one individuals provided their input on the issue and their perspective of the presentation by the NW Women's Law Center and Planned Parenthood. Eighteen supported a "conscientious clause", three opposed. Speakers included representation from healthcare practitioners, lawyers, political affiliations, pro-choice activist groups, religious affiliations, pharmacy students and concerned citizens.

The Board acknowledges the passion of each speaker and appreciates the opportunity to consider their input. The following is a summary of the comments addressed to the Board regarding a pharmacist's right to exercise their conscience.

- RCW 48.43.065(2) - no individual healthcare provider may be required to participate in a specific service if they object for reasons of conscience or religion.
- RCW 9.02.100 - Reproductive Privacy Act
- There are over 7000 pharmacist licensed in Washington – no access problem.
- Abortifacient verses emergency contraception ( prevents implantation verse prevents ovulation)
- To be required to refer a patient elsewhere would not honor the pharmacist's conscience, but rather a partner in the process.
- Planned Parenthood has a financial interest in Plan B.
- The Hippocratic Oath – states above all do no harm.
- According to the NotToLate webpage there are 515 providers of emergency contraception in Washington, of which 87 providers are in the 509 area code.
- Employers provide reasonable accommodations to allow a pharmacist's to exercise conscientious objection.
- Washington State law provides for women's rights to reproductive choices
- Even if I choose not to fill, I recognize that the prescriptions belong to the patient.

BOP(PR)005534

- The 1st Amendment of the Bill of Rights states in part Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof...
- The name emergency contraception is a misnomer. There is no emergency. The drug is effective if taken within 120 hours after unprotected intercourse.
- Recognition of the civil rights of pharmacist does not infringe on the rights of patients.
- There is no crisis of availability or access. Emergency contraception is available through mail-order, internet, Planned Parenthood Health Center.
- Other professionals such as physicians, lawyers, nurses, etc. have the right not to participate in the termination of a pregnancy. RCW 9.02.150
- Checks and balances are a good thing when it comes to critical matters of life and death.
- State law defines that pregnancy begins with the implantation of the fertilized ovum on the uterine wall.
- Exercising ones conscience in not unrestricted.
- What about drugs prescribed for assisted suicide?

<u>Draft Response to Interested Parties</u>
The letter drafted to respond to the number of letters regarding a pharmacist's right to exercise conscientious objection was distributed to the Board. Steven Saxe asked the Board for its input. **MOTION:** Rebecca Hille moved to removed emergency contraception from paragraph 2 and remove paragraph 3 entirely. **MOTION CARRIED.**

**MOTION:** George Roe moved that item 4.4 GMAP Presentation, 4.5 Operating Agreement, 4.8 Notice of Correction & Stipulations to Informal Disposition, and 4.9 Future Board Agenda be postponed until a future meeting. **MOTION CARRIES.**

<u>Adjournment</u>
There being no further business, the Board adjourned at 4:00 p.m. They will meet again on April 20-21, 2006 in Yakima, Washington.

*Respectfully Submitted by:*

_____
*Doreen E. Beebe, Program Manager*

*Approved on April 20, 2006*

_____
*Dr. Asaad Awan, Chair*
*Board of Pharmacy*

BOP(PR)005535

March 7, 2006

Board of Pharmacy
c/o Executive Director Steve Saxe and Board Chair Asaad Awan
Department of Health
PO Box 47863
Olympia, WA 98504

Planned Parenthood and the Northwest Women's Law Center are dedicated to ensuring
women's legal rights, including their right to health care.  On behalf of the women of
Washington, we appreciate this opportunity to respond to the January 26, 2006
presentation by Mr. William Fassett to the Board of Pharmacy regarding whether a
pharmacist can refuse to provide lawful, medically appropriate care to a patient based
upon the pharmacist's personal beliefs.   Mr. Fassett's presentation included a position
paper on behalf of the Washington State Pharmacy Association (WSPA).

We wholeheartedly agree with the WSPA that "a pharmacist's foremost professional
responsibility is to provide pharmaceutical care for his or her patients" and "to always
hold the autonomy, dignity, and confidentiality of his or her patients in the highest
regard." [1]    And while we commend the WSPA on several of the laudable principles set
forth in the position paper, the recommendations as a whole fail to delineate a lawful,
workable procedure for pharmacists to follow when those principles collide.  Upon
reading the position paper, the first question most will ask is – *what does it mean?* It fails
to explain to pharmacists precisely how, and under what circumstances, they may
exercise their personal objections to caring for patients without violating their solemn
duty to "assure optimal drug therapy outcomes for the patient." Pharmacist's Oath,
*available at* http://www.uspharmd.com/rxcode.htm.

As discussed  below as well as  in our August 2005 submission to this body, the
Pharmacy Board cannot as a matter of law, and should not as a matter of public health,
allow the personal beliefs of pharmacists to outweigh their duty to serve the health care
needs of their patients. In fact, there is only one lawful and ethical way that the Pharmacy
Board can reconcile these competing interests:  by taking a position that permits
accommodation of a pharmacists' genuinely held religious beliefs provided that the
accommodation does not cause the patient delay or untold barriers to securing services.
In this way the Pharmacy Board can accommodate pharmacists' genuinely held beliefs
without elevating the personal beliefs of pharmacists over the health needs of patients.
In practical terms, this means that a pharmacy owner may accommodate a
pharmacist's religious beliefs to the extent another pharmacist is available to promptly fill
the prescription but the owner/employer need not turn away customers.

---

[1] Presentation to the Washington State Pharmacy Board, January 26, 2006, by William E. Fassett, Ph.D,
R.Ph., Member WSPA Ad Hoc Conscience Clause Committee, page 3.

1

HRC (RFP) 00318

EXHIBIT M

**It would be <u>unlawful</u> for the Pharmacy Board to adopt a rule or policy that would enable a pharmacist's personal beliefs to trump the medical needs of their patients.**

As we explained more fully in our August, 2005 legal analysis to the Pharmacy Board,[2] under Washington law, pharmacists have a duty to dispense drugs, including emergency contraception[3]. Washington law does not permit pharmacists to refuse to dispense contraception (or any other medication) because of personal beliefs.[4] Further, such refusals violate pharmacist ethical obligations.

Washington stands at the nation's forefront in protecting reproductive freedom and the rights of women. Accordingly, pharmacists may be subject to sex discrimination lawsuits for refusing to fill women's contraception prescriptions. RCW 49.60.030(b). *See also Erickson v. Bartell Drug Co.*, 141 F.Supp.2d 1266 (W.D.WA 2001) (holding it unlawful sex discrimination for employer to exclude contraception from employee health benefits); WAC 284-43-822 (declaring the reduction of health insurance on the basis of sex an unfair practice and prohibiting the exclusion of prescription contraception from generally comprehensive plans); and AGO 2002 Number 5, (Attorney General formal opinion interpreting state and federal anti-discrimination law, concluding it would be an unfair practice for a health carrier to offer employees health coverage that generally includes the cost of prescription drugs but requires the employee to pay an additional amount to cover contraceptive stating "The conscientious objection must be exercised in a manner that does not have a discriminatory impact." ).

Finally, the Reproductive Privacy Act, RCW 9.02.100 et seq. (also known as Initiative 120) forbids the Pharmacy Board, and any other state board, agency or subdivision from adopting any rules or policies that result in discrimination against a woman's fundamental right to use contraception. RCW 9.02.100. Over the years, the Attorney General has consistently advised state agencies, officials and boards that their rules and policies must conform with the Act. In 1993, the Attorney General advised the Health Services Commission that the act barred the commission from "taking action that would restrict access" to women's reproductive health needs and reiterated that the commission "has no authority to develop rules regarding the conscience clause."[5] In addition, the Reproductive Privacy Act's "statements of intent and the priorities established in the initiative measure's text provide the polestar for construing" the act with other law. AGO 2004 No.1, *available at* http://www.atg.wa.gov/opinions/2004/opinion_2004_1.htm.

---

[2] On August 4, 2005 the Northwest Women's Law Center, Planned Parenthood and other family providers submitted a legal analysis to the Pharmacy Board supporting our recommendation that the board establish a policy mandating that pharmacists dispense contraception or face disciplinary action. Subsequently, in September 2005, these organizations presented similar analysis to the WSPA ad hoc committee on conscience clauses.

[3] RCW 18.64.011(11) defines the practice of pharmacy to include 'responsibility for ...dispensing...and distributing [of] drugs and devices...'; WAC 246-863-095(1) (g) requires pharmacists to 'dispense prescriptions to patient[s] with proper patient information.'

[4] There is no question that a pharmacist may refrain from filling a prescription that she has reason to believe is medically unsafe or contraindicated. RCW 18.64.011(11) and WAC 246-875-040.

[5] Health Services Commission Policy Issue Paper by Attorney General dated 11/28/94.

HRC (RFP) 00319

The legal obligations of pharmacists and the civil rights of women cannot be diminished because WSPA believes a "pharmacist has a 'serious responsibility…to diligently develop his or her conscience-guided response to selected pharmaceutical services…and to inform (his or her) employer and the pharmacy's staff, 'as appropriate', concerning his or her anticipated response to identified pharmaceutical care requests."[6]  Such a policy simply encourages pharmacists to articulate their prejudices.  It cannot and does not make it lawful for pharmacists to inflict their prejudices or beliefs on others. "To permit this would be to make the professed doctrines of religious belief superior to the law of the land, and in effect to permit every citizen to become a law unto himself." *Reynolds v. U.S.*, 98 US 145 (1897) (holding that a person's religious belief in polygamy does not exempt him from the law.)

**It would be <u>harmful</u> to Washington citizens for the Pharmacy Board to adopt a rule or policy that would enable a pharmacist's personal beliefs to trump the medical needs of their patients.**

Under the WSPA proposal, a pharmacist who refuses to fill prescriptions has the power to indiscriminately decide who may obtain their drugs and who does not. Although this discussion is currently relevant in the context of Emergency Contraception (EC), such a refusal policy has far broader implications. Under this proposal, a pharmacist could refuse to provide anti-retroviral drugs to an HIV positive patient on the basis of objecting to (perceived) homosexuality, for example, or refuse to provide drugs following a blood transfusion because they object to that particular medical procedure.

The WSPA proposal, if adopted, would only serve to increase the frequency of refusals that are already happening right now, in many communities throughout Washington. The following are just four examples of pharmacist refusals that occurred last year in Washington State.

- In May of 2005, a pharmacist at a hospital pharmacy in Seattle refused to fill a prescription for a woman needing antibiotics following an abortion procedure based upon the fact that the script came from a health care facility that provides abortion services, citing religious reasons.

- On September 30, 2005 a woman who resides in Eastern Washington was visiting her boyfriend who lives in the Seattle area. After a contraceptive failure (her patch fell off) she went in to a local pharmacy in Redmond, Washington, where she asked for EC. The pharmacist she spoke with was very rude to her and said that they "cannot supply her with Plan B without a prescription," and "we don't do that here." The woman then asked if she could at least get a new patch, and advised the pharmacist that she had a prescription on file at her home pharmacy. The woman asked the pharmacist to call and get it the prescription filled for her. The pharmacist said she couldn't look up the number and "maybe you should just go look

---

[6] Presentation by William Fassett to Washington State Board of Pharmacy, January 6, 2006, page 3.

3

HRC (RFP) 00320

somewhere else. Maybe you can go to Fred Meyer; they do that kind of thing there."

- In September 2005, a young diabetic male tried to buy needles from Walgreen's in the Tri-Cities. The pharmacist behind the counter proceeded to ask the young man, who was tattooed and wore his hair gelled back, question after question about why he would be using the needles. It became clear to the patient that the pharmacist thought he would be using the needles for drugs, and offered to help the pharmacist call his doctor. The pharmacist refused, and the young man left without the needles that he needed to administer life-saving drugs.

- In November of 2005, a Yakima woman went to a Safeway to try and fill a prescription for pre-natal vitamins. The pharmacist inquired if she was pregnant and why she had a script from a particular clinic. The woman stated that she had terminated her pregnancy but had been prescribed the vitamins for her anemia. At that point the pharmacist refused to fill her prescription, informing her that if she wasn't pregnant she didn't need pre-natal vitamins.

In each of these instances, the pharmacist's refusal posed an added risk to the health of the patient.

The WSPA paper seems to imply that pharmacist refusals pose nothing more than a minor inconvenience to the patient who needs the medication. But the reality is many Washingtonians live in rural areas or small towns where there is no other pharmacy nearby. Even in larger cities, those without transportation must find their way across town (or to another town) to obtain their drugs if they are refused. Women who need EC—a drug whose efficacy decreases with every passing minute that she can not obtain the drug—are often forced to do without.

We certainly hope the Pharmacy Board will join us in our efforts to improve men and women's access to the drugs that they need.

**It would go against the national trend for the Pharmacy Board to adopt a rule or policy that would enable a pharmacist's personal beliefs to trump the medical needs of their patients.**

Finally, in answer to Pharmacy Board members' inquiries, it is important to note that several states have ruled squarely on the side of upholding public health by categorically rejecting pharmacist refusal policies similar to those advanced here by WSPA:

- On October 5th 2005, the Wyoming State Board of Pharmacy voted unanimously to reject a proposal to allow pharmacists to refuse to fill prescriptions based on their personal beliefs.

4

HRC (RFP) 00321

- In October 2005, the Nevada State Board of Pharmacy debated a proposal that would allow pharmacists in the state to refuse to fill a prescription because it violates a "genuine principle or tenet of conscience." Under the proposal, pharmacists refusing to fill prescriptions would be required to arrange to have them filled without delay and would not be allowed to discuss their objections with patients. However, a refusing pharmacist could refer the patient to another pharmacy to get their lawful prescription filled. In the end, the Board decided to remove any language about conscience or morals, allowing pharmacists to refuse only based on unlawful prescriptions or contraindicated medications.

- James DeVita, the president of the Massachusetts Board of Registration in Pharmacy issued a letter stating that "a Massachusetts licensed pharmacist providing services in the Commonwealth is required to fill a prescription that has been determined by the pharmacist...to be a valid prescription." DeVita added "No statutory or regulatory exception exists for any particular drug or class of drugs." Massachusetts also recently required Wal-Mart to stock emergency contraception in accordance with a state law that requires pharmacies to provide all "commonly prescribed medicines."

- The North Carolina Board of Pharmacy has stated that "It is unacceptable for pharmacists to impose their moral or ethical beliefs on the patients they serve. Pharmacists who object to providing a medication for a patient on this basis alone, therefore, should take proactive measures so as not to obstruct a patient's right to obtain such medication." The North Carolina Board notes that although pharmacists have a right to avoid moral or ethical conflict, they do not have a right to obstruct otherwise legitimate prescription dispensing or delivery solely on the basis of conscientious objection.

- The state of Illinois has a regulation explicitly protecting patient access to prescription drugs and devises. The rule requires that any pharmacy in the state that sells any FDA-approved contraceptives must fill all prescriptions for approved birth control, including emergency contraception, in a timely manner. If the prescribed contraceptive is out of stock, pharmacies must provide an alternative, order the drug, and make arrangements for another local pharmacy to fill the order or return the prescription to the customer. The rule also established a toll-free number for state residents to report pharmacies that refuse to fill contraceptive prescriptions; pharmacies that violate the rule risk losing their license.

- California's new law (SB 644) explicitly protects patient access to prescription drugs and devices. While the new law does not explicitly say that a prescription must be filled in-store, advocates are working with the California Pharmacy Board to clarify this in regulation.

HRC (RFP) 00322

In addition, three other states (AZ, MO, and PA) have already introduced similar patient protection and/or duty to dispense legislation to date. Meanwhile, major pharmacy chains continue to follow the lead of CVS by adopting policies that require that drugs are dispensed in-store, without discrimination or delay.

These advances are taking place in states where the rights of women are less established than in Washington. Indeed, Washington law so clearly compels a woman's fundamental right to contraception that any move by the Pharmacy Board enabling pharmacists to refuse contraception we believe is a per se discriminatory, unlawful act.

## Conclusion

Washington State was the first state to create a pharmacy access project that allowed women to obtain emergency contraception directly from a pharmacist, without first obtaining doctor's prescription. Our state should continue to take the lead in promoting, ensuring and encouraging access to emergency contraception and other commonly prescribed drugs rather than working on policies that obstruct otherwise legitimate dispensing and delivery of drugs.

The WSPA argues that no one should be forced to do something against their moral will. Planned Parenthood, the Northwest Women's Law Center and other health care advocates argue that a patient should not (and, legally, cannot) be refused access to legally and medically prescribed birth control simply because the health care provider does not believe in it. The Pharmacy Board can fairly and properly accommodate these competing rights by taking a position that permits accommodation of a pharmacists' genuinely held religious beliefs, provided that the accommodation does not cause the patient delay or untold barriers to securing services.

The issue of how to accommodate religious, personal beliefs in the workplace is not unique to pharmacies. Title VII of the Civil Rights Act imposes a duty on all employers to reasonably accommodate the religious practices of employees. This means that the employer must make a good faith effort to accommodate, unless "undue hardship" would result. Undue hardship has been interpreted to mean any situation where the employer would incur more than a 'de minimus' cost.

In other employment contexts this has meant that a school district can legitimately discharge a teacher who refuses to teach certain subjects. The state has a compelling interest in the school's curriculum choices designed to benefit the students and the teacher's actions neglected the impact on students who did not share the teacher's faith. In yet another case, it meant that the voluntary trading of employee shifts to accommodate an employee's Sabbath observance was a reasonable accommodation.

These examples, while establishing that there is room for accommodating the personal beliefs of the individual in the workplace, also clarify that an employee does not have

6

HRC (RFP) 00323

unbridled discretion to perform as s/he wishes nor must an employer elevate the personal beliefs of the employee above all else.

Patients' access to their prescriptions in store, without delay or discrimination, is paramount, but compassionate care and conscientious objection are not mutually exclusive. In the words of Wisconsin Governor Jim Doyle (D) upon vetoing legislation that would permit health care providers and pharmacists to refuse to fill prescriptions for reasons of religious objection, "…it is hard enough for many people to get the health care they need, and this bill would make it even tougher."

We urge the Board to follow the example of your colleagues in other states and reach the same conclusion.

Thank you.

Sincerely,




Amy Luftig
Deputy Director of Public Policy
Planned Parenthood Network of Washington




Roberta Riley
Consulting Counsel, Legal and International Affairs
Planned Parenthood




Nancy L. Sapiro
Senior Legal and Legislative Counsel
Northwest Women's Law Center

7

HRC (RFP) 00324

**57**

# Examples of Pharmacist Refu  ls Around Washington State



In September 2005, a Spokane woman in her 40's was given a prescription for misoprostol which was prescribed prior to a pending surgery. The woman gave the prescription to a pharmacist who told her that he would not fill her prescription. The woman asked, "Why?" The pharmacist answered by again telling her that he would not fill her prescription. When the woman became frustrated, the pharmacist yelled "are you using this for an *abortion?*" Upset and humiliated, the woman left without the drug.

In November of 2005, a Yakima woman went to a Safeway to fill a prescription for prenatal vitamins. The pharmacist inquired if she was pregnant and why she had a script from a particular women's clinic. The woman stated that she had terminated a pregnancy and had been prescribed the vitamins for her anemia. The pharmacist refused to fill her prescription, informing her that if she wasn't pregnant she didn't need pre-natal vitamins.

In September 2005, a young diabetic male tried to buy needles from a Walgreens in the Tri-Cities. The pharmacist behind the counter proceeded to ask the young man—who had gelled-back hair and tattoos—question after question about why he would be using the needles. It became clear to the patient that the pharmacist thought he would be using the needles for drugs, so he offered to help the pharmacist call his doctor to confirm his diabetic status. The pharmacist refused, and the young man left without the needles that he needed to administer his life-saving drugs.

In 2005 a woman in **Bellingham** went to a pharmacy in a Haggen supermarket and tried to obtain emergency contraception because a condom broke. She asked for it and was told, "We don't dispense that." She asked, "you don't or Haggen's doesn't?" The pharmacist said, "because of my religious convictions I will not dispense it." She asked the pharmacist where she could obtain EC, and he said he didn't know.

In 2005 a young couple visited a Walgreens in **Seattle**, having experienced a contraceptive failure the previous evening. They asked for the "morning after" pill, but did not have a prescription. The pharmacist said, "we have it in the store but I won't help you." The pharmacist gave the couple a lecture which he concluded by saying, "I don't believe in that stuff?"

In May of 2005, a pharmacist at a hospital pharmacy in **Seattle** refused to fill a prescription for a woman needing antibiotics following an abortion procedure based upon the fact that the script came from a health care facility that provides abortion services, citing religious reasons.

In 2004 a woman in **Olympia** attempted to fill a prescription for misoprostol to be taken four hours before a surgery for a uterine fibroids. The pharmacist refused to fill it out of hand, accusing her of using it for an abortion. He lectured her on his anti-abortion views, causing her to leave the store in tears.

GOV0004337

58                    EXHIBIT N

**ATG MI MDS Printing**

| | |
|---|---|
| **From:** | Hulet, Christina (GOV) |
| **Sent:** | Tuesday, May 09, 2006 9:30 AM |
| **To:** | 'Rose, Elaine' |
| **Subject:** | RE: Pharmacy Board |

I did update the Governor about the May 2nd meeting and am working with our senior team now that the Governor is on the trade mission.

Thanks,
Christina

-----Original Message-----
**From:** Rose, Elaine [mailto:Elaine.Rose@ppnetworkwa.org]
**Sent:** Tuesday, May 09, 2006 9:27 AM
**To:** Hulet, Christina (GOV)
**Subject:** RE: Pharmacy Board

Hi Christina,
Thanks for getting back to me. What I really wanted to know is what, if anything, will the Governor's office be doing particularly now that we have two competing proposals on the table. I understood from our conversation last week that you were going to be talking to the Governor about the meeting on May 2nd and next steps from her perspective, not the DOH or the Board of Pharmacy.
Thanks,
Elaine

**From:** Hulet, Christina (GOV) [mailto:Christina.Hulet@OFM.WA.GOV]
**Sent:** Tuesday, May 09, 2006 9:16 AM
**To:** Rose, Elaine
**Subject:** RE: Pharmacy Board

Hi Elaine,
How are you?  The next steps are for the Dept of Health to bring forward the now two version of the draft rules for consideration at the June board meeting.  I believe that meeting is June 1st, which I will attend.

Christina

-----Original Message-----
**From:** Rose, Elaine [mailto:Elaine.Rose@ppnetworkwa.org]
**Sent:** Friday, May 05, 2006 4:46 PM
**To:** Hulet, Christina (GOV)
**Subject:** Pharmacy Board

Hi Christina,

I wanted to follow up on our phone conversation from Tuesday.  Can you let me know what your next steps will be?

Thanks and have a good weekend,
Elaine

Elaine Taylor Rose

1

GOV0004605

**59**                                           EXHIBIT O

Executive Director
Planned Parenthood Public Policy
 Network of Washington
(206) 328-7735
elaine.rose@ppnetworkwa.org

GOV0004606

**60**



CHRISTINE O. GREGOIRE
Governor

STATE OF WASHINGTON

## OFFICE OF THE GOVERNOR

*P.O. Box 40002 • Olympia, Washington 98504-0002 • (360) 753-6780 • www.governor.wa.gov*

May 30, 2006

Dr. Asaad Awan, Chair
Washington State Board of Pharmacy
Box 359885
Seattle, WA 98104

Dear Dr. Awan:

I understand that the Washington State Board of Pharmacy (Board) is finalizing its proposed rules regarding pharmacists who refuse to sell lawfully prescribed health care products and services.

In follow-up to my letter of January 18, 2006, I must reiterate to the Board my position that no one should be denied appropriate prescription drugs based on the personal, religious, or moral objection of individual pharmacists. Patients must be assured that their valid prescriptions will be filled without difficulty, delay, and certainly without judgment.

I strongly support the Board's draft rules, as distributed on May 2nd, that made clear a pharmacist's obligation to fill lawfully prescribed prescriptions except when clinically contraindicated, potentially fraudulent, or where there is another on-site pharmacist available to patients without delay. This proposed rule protects a patient's right and recognizes the important role of pharmacists in using their clinical expertise to ensure patient safety. In contrast, I am very concerned about alternative rules under discussion that strip away these important provisions.

This issue is about the entire array of medications, from contraceptives to treatments for cancer, HIV/AIDS, and mental health illnesses. I am deeply concerned about a rule that allows pharmacists to interject their personal objections or biases among any group of patients.

Like you, I have heard from hundreds of constituents from around the state who firmly support protecting a patient's right to receive valid, legally prescribed prescriptions. Again, thank you for all your hard work on this very important issue for patients.

Sincerely,

*Chris Gregoire*

Christine O. Gregoire
Governor

cc:   Members of the Board of Pharmacy
      Steven Saxe, Executive Director, Board of Pharmacy
      Mary Selecky, Secretary, Department of Health
      Christina Hulet, Office of the Governor

BOP(PR)004413

EXHIBIT P

## ATG MI MDS Printing

| | |
|---|---|
| **From:** | Hulet, Christina (GOV) |
| **Sent:** | Tuesday, May 30, 2006 10:51 AM |
| **To:** | Armstrong, Holly (GOV) |
| **Subject:** | FW: Confidential: Intel on the June 1st Pharmacy Board Hearing |

**Importance:**      High

-----Original Message-----
**From:** Luftig, Amy [mailto:Amy.Luftig@ppnetworkwa.org]
**Sent:** Friday, May 26, 2006 5:35 PM
**To:** Hulet, Christina (GOV); Judd, Ron (GOV)
**Cc:** Eassey, Gayatri; tracy@newmanpartners.com
**Subject:** Confidential: Intel on the June 1st Pharmacy Board Hearing
**Importance:** High

Hi, Ron and Christina:

We have what we believe to be a reliable vote count for Thursday's Pharmacy Board hearing on pharmacist refusals. On Thursday, we understand that the Board may be planning to have an early thumbs up/thumbs down vote on the original version of the rule (i.e., the one that we, and the Governor, prefers).

The vote count is as follows:

Rosemarie Duffy - Yes
Rebecca Hille - Yes
Gary Harris - Yes

Donna Dockter - No

Asaad Awan - Undecided
Susan Teil Boyer - Undecided
George Roe - Undecided

We believe that it would have a strong, positive and meaningful effect if the Governor would personally contact the three undecided members prior to the meeting, if only to remind them of the importance of protecting patient access to care. However, of the three, we understand that the most important member to contact is George Roe. He is most likely to be influenced by a call by the Governor.

While none of us can be certain of the outcome of Thursday's meeting, I am fairly certain that we can expect that the rule that is voted on on Thursday is the rule that we will ultimately see codified into law. Thursday is our best and possibly last opportunity to influence the direction that the board will take on this issue. We hope that the Governor can and will utilize this information, and appreciates the urgency of persuading at least one undecided member to vote the right way on Thursday.

I am available if you have any questions. Elaine Rose, our executive director, is also available, and is happy to contact the Governor directly on Tuesday as well.

Thanks,

GOV0002687

EXHIBIT Q

Amy Luftig
Deputy Director of Public Policy
Planned Parenthood Network of Washington
(360) 561-9144

Elaine Rose:  206-328-7735

GOV0002688

63

DEPARTMENT OF HEALTH
WASHINGTON STATE BOARD OF PHARMACY
MEETING MINUTES

June 1, 2006
Department of Health
Point Plaza East – Conference Rm 152/153
310 Israel Road SE
Tumwater, WA 98501
(360) 236-4825

## CONVENE

Chair Asaad Awan convened the meeting at 9:03 a.m. on June 1, 2006.  Board Members present:
- Donna Dockter, RPh
- Gary Harris, RPh
- Rebecca Hille, Vice-Chair
- Rosemarie Duffy, RN
- Susan Teil-Boyer, RPh

Absent Member:
- George Roe, RPh

Staff Members present:
- Joyce Roper, Assistant Attorney General
- Steven Saxe, Executive Director
- Lisa Salmi, Deputy Executive Director
- Tim Fuller, Pharmacy Consultant
- Andy Mecca, Pharmacy Consultant
- Grace Cheung, Chief Investigator
- Doreen Beebe, Program Manager
- Jennifer Wells, Program Support

**June 1, 2006**                                                                 **Open Meeting**

## CONSENT AGENDA
**1.2**    Pharmacy & Other Firm Application Approval
- Report of opened and closed pharmacy firms from 04/08/06 thru 06/15/06

**1.3**    Pharmacy Technician Application Approval
- Lorna R. Mayo

**1.4**    Pharmacy Tech Training Program Approval
- Kmart Pharmacy

**1.5**    Collaborative Drug Therapy Agreement Acceptance
- Scott White/Anti-Malarial Prophylaxis
- Scott White/Altitude Sickness
- Scott White/Epi-Pen
- Scott White/Motion Sickness
- Jennifer Matin/Anti-Malarial Prophylaxis
- Jennifer Matin/Traveler's Diarrhea
- Jennifer Matin/Altitude Sickness
- Jennifer Matin/Epi-Pen

BOP(PR)005395

EXHIBIT R

- Jennifer Matin/Motion Sickness
- Roger Woolf/Anemia

Items 1.1- Pharmacist License Application Approval; 1.6- Automated Drug Dispensing Device Acceptance; and 1.7- Sample Distribution Requests were deleted from the consent agenda.
**MOTION:** Rebecca Hille moved to accept 1.2, 1.3, 1.4, 1.5, and 1.8, with correction to page 3, Susan Teil-Boyer made reference to the American Pharmaceutical Association (APhA) conference.
**MOTION CARRIED.**

REPORTS
Executive Director Steven Saxe reported on the following:
  Health Professions Section Four
- Tim Alden was reappointed to the Dispensing Optician Examination Committee.
- Dr. William Keatts was appointed by Governor Gregoire on May 5, 2006, to serve on the Veterinary Board of Governor's.
- In 2005, methamphetamine precursor law ESHB2266 required the establishment of a task force comprised of representatives from the Board of Pharmacy, legal, law enforcement, and retail industries to evaluate the efficiency of the retail transaction logs for products containing ephedrine, pseudoephedrine, or phenylpropanolamine as a deterrent for methamphetamine production. A report to the legislature is due November 2007. On April 25, 2006, representatives of the retail businesses tasked with maintaining these logs selected two representatives to the Methamphetamine Work Group. The Work Group had its first meeting scheduled for June 13. Members include: Donna Dockter, Board of Pharmacy; Chris Johnson, Attorney General's Office; Mark Lindquist, WA Assoc of Prosecuting Attorneys; Gary Gasseling, Washington State Patrol; Scott Smith, WA Assoc of Sheriff and Police Chiefs; Lee Worthy, Safeway; and Dan Connolly, Bartell for retail.

BOARD MEMBERS
*Rebecca Hille* and Asaad Awan attended the Board and Commission Leadership Forum on April 26th. The discussion included roles and relationships, disciplinary sanctions, sexual abuse/misconduct, etc. Ms. Hille has requested to participate on a task force developing recommendations for revisions to the Uniform Discipline Act (UDA).

*Donna Dockter* attended a University of Washington town hall meeting in which the guest speaker, a pharmacist from Oregon, discussed the state's "Death with Dignity" laws and related dispensing issues.

CONSULTANT PHARMACISTS
*Tim Fuller* provided an update on the Drug Disposal meeting sponsored by the DEA.

Mr. Fuller presented at a meeting in Spokane Region 9, regarding emergency response. He attended a course on Clear Rule Writing. Grace Cheung, Tim Fuller, and Andy Mecca attended the State Investigator Training course.

*Andy Mecca* updated the Board on the collaborative work being done by the Department of Health, Labor and Industries, Department of Corrections, and other agencies in establishing opioid dosing guidelines. Meetings are still progressing. This group is working on developing guidelines to ensure the safe use of opioid pain relievers for treatment of non-cancer pain. A guideline has been drafted and continues to be refined. Final guideline will be reported to the Board.

BOP(PR)005396

## CHIEF INVESTIGATOR

Grace Cheung reported on the following:

- Along with Tim Fuller and Stan Jeppesen, Ms. Cheung attended the Drug Disposal Meeting in Portland, OR. They participated in discussions regarding the appropriate disposal of drugs in the community setting. Participants included: the Drug Enforcement Administration, representatives of the Oregon and Montana Boards of Pharmacy, and various environmental agencies from the northwest region.
- Weekly participation in the University of Washington (UW) Pharm 440 communications lab class is coming to a close. The investigators involved this year include Tim Fuller, Stan Jeppesen, Kelly McLean, Andy Mecca, Dick Morrison, and Grace Cheung. This class provided investigators with an avenue to share the Board's expectations with current and future pharmacists who work with these students/interns.
- On May 4, 2006, Steven Saxe, Andy Mecca and Ms. Cheung met with UW and Washington State University instructors to discuss Internship and Preceptor issues.
- Stan Jeppesen gave a lecture to UW pharmacy students regarding implementation of Quality Improvement Methods in the Retail Pharmacy Environment on May 8, 2006. This lecture was aimed at ways of reducing dispensing errors.
- On May 8, 2006, Jim Doll provided a joint presentation with Pierce County Prosecutor on prescription forgeries and the legal consequences at Multicare Medical Center, Tacoma.
- On May 18, 2006, Jim Doll provided a joint presentation with Pierce County Pharmacy Association entitled, "Update on pending pharmacy rules".
- From May 19th to 21st, 2006, Ms. Cheung and Dick Morrison drafted new law exam questions to be introduced into the Washington state pool of questions for the Multi-state Jurisprudence Exam (MPJE). Dick was one of a few MPJE Review Committee members who were tasked to assist representatives from each state in drafting quality questions.

## PROGRAM MANAGER

Doreen Beebe reported on the following:

- Introduced Jennifer Wells, who was appointed to the new Board/Committee support position on May 15th.
- A "New Board Member Orientation" was held on May 31, 2006. This is a great source of information for new board members to learn about their role and responsibilities as members of a gubernatorial board.
- There is an upcoming Rules Hearing on July 20th regarding Automatic Drug Distribution Devices.
- May 2006 Budget reports were distributed for members to review.

## **PRESENTATIONS**

### eClinicalWorks

Tim Fuller provided an introduction to a presentation by eClinicalWorks. Mr. Bhavin Shah presented an online demonstration of eClinicalWorks' electronic prescription transmission system to the board for approval. The demonstration highlighted the required elements. eClinicalWorks will add to its fax transmission the name or logo of the electronic system.

Key Points
- System includes list of all medications available on the market today.
- Gives an alert to the doctor when prescribing a medication from the same family of products as the previously prescribed medication. (Alerts of duplication)
- Will allow input of weight-based medications.

BOP(PR)005397

- Will alert of interactions, gives the prescriber a list of options to choose from of interactions and the prescriber can review the interactions (drug-drug, drug-food, etc.)
- Has option to show "no substitute", generic prescription name, can add coversheet, and prescriber can add comments.
- Prescriptions are faxed only, each fax shows who prepared the prescription and adds a unique transaction identifier.
- Prescriber can input patient's preferred pharmacy, or any pharmacy of the patient's choice.
- System prints DEA# and License # on prescription, and can also add new signature to prescription other than one saved in the system for each provider.
- System keeps a log and copies of each fax.
- The system stores all sent faxes infinitely.
- Has ability to search prescription history by date or by patient.

**MOTION:** Susan Teil-Boyer moved to approve the electronic prescription transmission system by eClinicalWorks. **MOTION CARRIED.**

Design Clinicals LLC

Tim Fuller provided an introduction to a presentation by Design Clinicals LLC. Design Clinicals LLC has requested approval to establish an Electronic Prescription Transmission System.

Dr. Charles Butler, MD, (Valley Medical Center) provided an introduction to his business which is comprised of 4 partners, of which, 2 are physicians. They began their business in August 2005 with the idea of improving communication with MedsTracker between physicians and patients in regards to tracking and prescribing medications.

Key Points
- Web-based, extracts list of medications downloaded from Electronic Medical Records software by McKesson.
- Currently prints prescriptions for faxing or delivering to pharmacy. This program is not currently an electronic sending system, although it possibly will be in the future.
- Provides security by ensuring unique user identification with encrypted passwords.
- User ID's associated with specific roles.
- Has audit function to record the date, time, and user that accessed the system.
- Has login timeout of 3 minutes.
- Has a user self audit for verification of usage. Allows user to ensure account was not used by anyone other than the user themselves.
- Has detailed "keystroke" auditing showing each step the user took.
- All data is reviewable.
- NCPDP Basic Guidelines compliant.
- Shows medication history, dosage, usage, and timelines.
- Patient drug profiles.
- Compliant with controlled substance regulations.
- Drug use review, medication error, quality assurance.
- Allows history search.

Key Concerns
- Does the system allow the prescriber to select non-formulary drugs?

**MOTION:** Donna Dockter moved to approve the electronic prescription transmission system by Design Clinicals, LLC. **MOTION CARRIED.**

4

BOP(PR)005398

## DISCUSSION

### Pharmacist Responsibilities Draft Rule Language

The Board discussed the draft rules from the May 2nd meeting and reviewed Washington laws related to conscience clauses and discrimination. In addition, they referenced other states' regulations and a list provided to Donna Dockter by other pharmacists of non-clinical situations when a pharmacist may choose not to dispense.

The Board discussed which draft rule version to adopt and each Board member stated their preference of the two drafts. **MOTION:** Rosemarie Duffy moved to accept the first draft rule language (Draft 1) from the May 2nd Meeting. **MOTION FAILED** with a vote of 2 (Duffy, Harris)-3 (Docktor, Hille, Teil-Boyer), the Board Chair did not vote.

The Board adjourned for a 15 minute closed session to discuss potential litigation.

The Board amended both rule language drafts and developed a third draft.
- Subsection (1) reads: Pharmacists and ancillary personnel shall not obstruct a patient in obtaining a lawfully prescribed drug or device.
- Add: Second sentence of Draft 2 omitting "stocked"
- Add: (1)a, b, c and d of Draft 2; and (4)a and c of Draft 1.
- Delete: all words following professional responsibilities from subsection (2)
- Add: to subsection (3) after "payment" – of their usual and customary or contracted charge.
- Remove: subsection (4)
- Remove: subsection (7)

**MOTION:** Rebecca Hille moved to accept the new draft. **MOTION CARRIED** with an affirmative vote of 5-0, the Board Chair did not vote.

### Service Recognition

The Board recognized 24 Pharmacists who have been licensed in the state of Washington for 50 years. The honorees will also be recognized at the 3rd Annual Northwest Pharmacy Conference in Spokane.

### Administration of Medication in Schools

Tim Fuller provided a request for information from the Office of Superintendent of Public Instruction (OSPI), asking for input to update their policy regarding administration of medication in schools. This policy will be distributed to schools concerning immediate access to medications and providing required medications to students when medications stored in a locked cabinet may not be easily accessible.

There was concern that if students were on a field trip or in a sporting event away from school, how they would have access to their medications if the medications are in a locked cabinet at the school. There was discussion of self-administration, or having a teacher, bus driver, or coach carry the prescription medication in case of emergencies.

Paula Meyer, Executive Director of the Nursing Commission, voiced her concerns about maintaining safety for all children while providing immediate access for the child in need. She was concerned if that meant allowing the child to carry their own medication. There was also concern about controlled substances. If a child needs a different medication, should that child be able to carry a controlled substance as well.

5

BOP(PR)005399

It was concluded that the Board of Pharmacy will work with the Nursing Commission to develop and provide input to OSPI for distribution to schools regarding safekeeping and administration of medications for students.

Offsite Pharmacy Practice
Andy Mecca presented two requests for approval to permit pharmacists to engage in the practice of pharmacy at a location other than a pharmacy. The first letter was from Medco, stating they have implemented programs in a number of states in which pharmacists are practicing their profession in alternative settings, primarily their residence or a separate private office under their control.

The second request is from Sarah Benator, of Foley & Lardner LLP, Attorneys at Law, who have a client providing a service where individuals can email questions to a pharmacist, and get a response via email with general medication information about prescription medications, non-prescription medications, and dietary supplements. Depending on the question the individual asks, the pharmacist may also guide him or her to appropriate sources of medication and medical information. When appropriate, the pharmacist will recommend the individual contact their physician. The pharmacist does not recommend specific prescription medications or diagnose medical conditions, and the service is not an online pharmacy.

The questions are: (1) does an email as described above constitute the practice of pharmacy under Washington law, and (2) is a pharmacist who resides outside of Washington and who answers an email from a Washington resident required to be licensed in Washington.

The Board agreed they would need more information from Ms. Benator to further address her questions.

Joyce Roper noted that nothing states that pharmacy practice is restricted to a "pharmacy". Some pharmacists practice outside of a conventional pharmacy, such as in clinics and other non-dispensing facilities.

Prescription Legibility Legislation
Andy Mecca distributed a draft of the notice to be mailed to all practitioners with prescriptive authority, pharmacies and pharmacists regarding 2SHB 2292. The law, which is effective June 7, 2006, further defines a "legible prescription" by stating, a prescription must be hand-printed, typewritten, or electronically generated.

Susan Teil-Boyer expressed that in hospitals this bill will improve patient safety and reduce errors. There was an expressed concern from the audience that a prescription written in cursive is not a legal prescription. The Board determined that the law addressed the definition of a legible prescription and that a prescription written in cursive will be considered illegible, not illegal.

Executive Director Saxe stated that staff will be working with the other boards and commissions within the Department of Health in the technical assistance of practitioners. At this juncture the staff has been directed to take an educational approach to this new law.

Petition for Rulemaking
The Board discussed a petition filed by Adam Karp, an animal rights attorney. Mr. Karp provided the Board with clarification of his petition and answered questions from the Board. The petition requests that the Board adopt rules regarding the administration, recordkeeping, and public disclosure

6

BOP(PR)005400

of logbooks relating to the use of sodium pentobarbital and legend drugs by animal control agencies and humane societies in the performance of humane euthanasia.

Donna Dockter expressed her concern that the current rules aren't being followed and that inspections have primarily focused on storage, access, and inventory of the drug supply. The Board discussed the need for developing guidelines to address the concerns raised in the petition rather than pursuing the rulemaking process.

**MOTION:** Donna Dockter moved to develop guidelines describing what is sufficient detail to include, at a minimum; weight, dose, and method of administration. **MOTION CARRIED.** Joyce Roper reminded the Board that guidelines are not enforceable. **MOTION:** Donna Dockter moved to open the rulemaking process regarding the administration and recordkeeping requirements for animal control agencies and humane societies. **MOTION CARRIED.**

Petition for Rulemaking
The Board discussed a petition submitted by a Washington pharmacist requesting the Board adopt rules making ephedrine and pseudoephedrine prescription only. The Legislature has included provisions for the over-the-counter sale of ephedrine and pseudoephedrine (RCW 69.43); therefore, the Board does not have the authority to move forward on this request. The legislature also addressed various options during the 2005 legislative session and asked the Board to create rules requiring a sales transaction log. A work group is required to evaluate the effectiveness of the log and report to the legislature by November 2007.

**MOTION:** Rebecca Hille moved to deny the petition for rule making. **MOTION CARRIED.**

**MOTION:** Rosemarie Duffy moved to postpone Agenda Items 3.8 and 3.9 to a future meeting. **MOTION CARRIED.**

**OPEN FORUM**
No comments provided.

**PRESENTATION OF AGREED ORDERS**

**CLOSED SESSION – Case Presentations.**

Adjournment
There being no further business, the Board adjourned at 5:00 p.m. They will meet again on July 20, 2006 in Tumwater, Washington.

*Respectfully Submitted by:*

*Jennifer L. Wells, Program Staff*

*Approved on July 20, 2006*

*Dr. Asaad Awan, Chair*
*Board of Pharmacy*

7

BOP(PR)005401

Intended for internal state government distribution only!

### Governor's Monday Alert
### June 5, 2006

**TO:**          Tom Fitzsimmons, Chief of Staff
                 Office of the Governor

**FROM:**        Mary C. Selecky, Secretary
                 Department of Health

**SUBJECT:**     Monday Alert 06/05/2006

## Hot new issues

### Proposed pharmacy board rule grants pharmacists right to refuse to fill prescriptions

The Board of Pharmacy Thursday voted to propose a rule that allows pharmacists to decline to fill valid, legal prescriptions based on their personal beliefs. The controversy over this draft rule is mostly related to the so-called "morning after pill" — an emergency contraceptive. The draft rule was one of two under consideration; the other option, rejected by the board, would have required pharmacists to fill any legal, valid prescription — provided they stock that product — or refer the patient to another pharmacy that would fill the prescription. The draft rule now under consideration contradicts the governor's request in letters sent to the board and disappoints women's rights organizations and many legislators. As an agency, we have consistently said we support women's right to access the care and products they need. The public hearing on the proposed rule is tentatively scheduled for August 31. The time and location haven't been set. The board will make its final decision at that hearing.

### Tribes challenge validity of Municipal Water Law

A group of 10 Indian tribes recently sent a letter to the attorney general asking him to invalidate portions of the Municipal Water Supply - Efficiency Requirements Act of 2003. The request was made on grounds that the law retroactively expands certain classes of water rights to the detriment of all other water rights. The tribes have been threatening to challenge the law ever since the legislation passed. This legal strategy is based on an unusual device called a "taxpayer's action," alleging that portions of the law create a new tax that is unconstitutional. Our attorney and Ecology's will meet with the Solicitor General to prepare the state's response. Meanwhile, we're progressing with one aspect of the law that directs us to establish new rules for the efficient use of water by municipal water suppliers. We expect to put forth the draft Water Use Efficiency rule in July with public hearings in August. We're unclear how, or if, the legal challenge to the law will affect our rule making efforts, but we're moving forward with the draft rule.

BOP(PR)004363

EXHIBIT S

Intended for internal state government distribution only!

### Chelan inpatient psychiatry unit closes

We were notified Thursday by Lake Chelan Community Hospital that it had closed its voluntary inpatient psychiatric unit. The hospital says it was a financial decision due to increased costs and reduced Medicare Psychiatric Inpatient Program reimbursement — adding that, with 10 beds the hospital cannot even break-even, financially. The hospital stopped admissions three weeks ago and discharged its last patient from the unit on June 1. It will continue to offer out-patient psychiatric services. The next closest inpatient units are a considerable distance away at Sacred Heart Medical Center in Spokane, Fairfax Hospital in Seattle, and Lourdes Medical Center in Pasco.

BOP(PR)004364

## ATG MI MDS Printing

| | |
|---|---|
| **From:** | Hulet, Christina (GOV) |
| **Sent:** | Monday, May 12, 2008 10:57 AM |
| **To:** | Isaki, Lucy (OFM); Mitchell, Richard (GOV) |
| **Subject:** | FW: Transcript |
| **Attachments:** | Pharmaceutical Board Trans and Contact Info.doc |

Pearse also sent me the attached transcript which captures some of the press conference I sent earlier.

---

**From:** Edwards, Pearse (GOV)
**Sent:** Monday, May 12, 2008 10:55 AM
**To:** Hulet, Christina (GOV)
**Subject:** Transcript

This what you were looking for?

Pearse Edwards
Communications and External Affairs Director
Office of Governor Chris Gregoire
Olympia, WA 98504-0002

Direct: 360-902-0386
Cell: 360-239-1954

1

GOV0004291

**73**                    EXHIBIT T

Media Avail Transcripts: June 05, 2006—On Pharmaceutical Board Decision
http://www.tvw.org/media/mediaplayer.cfm?evid=2006060124&TYPE=A&CFID=3025
159&CFTOKEN=128dcb4183bce86-1944E257-3048-349E-
4ED96773E2CCFEB1&bhcp=1

Should Pharmacists be able to deny the morning after pill because it is a breach of their
personal ethics?

    No, power cannot be given to pharmacists to deny a prescription that has been
given by a doctor. This is a denial of a persons right to get the healthcare they
need.  Pharmacists would be left to make assumptions of patients and deny
service for any reason they see fit.

What will your response be?

    I will sit down with all knowledgeable groups to see that the right decision is
made. I will do anything in my power to ensure that in August the boards decision
will be reversed. Although these are professionals in their fields, they are not law
makers and they have gotten this decision wrong.

    The people on this board are subject to confirmation, and are also elected through
popular vote, by a correction needs to be made. As it stands their decision does
not represent what is best for the patients and they are our first priority.

You do have the power to replace the members of this board, would you use that power if
it came to it?

    The right decision needs to be reached, but I want to go through the proper and
necessary processes that it does. But my power does include the ability to replace
memebers of the board, but it is a power that I can only call upon when the
legislature is in session. I want to reiterate that I hope that when coupled with
legislative officials that the proper decision can be reached and if the legislature
needs to step in and see that it is, then so be it.

Contact INFO.

Less Blumenthal
    D.C. Bureau- 202.383.0008
    Lblumenthal@mcclatchydc.com

Seattle PI- has no DC correspondent at the moment

Seattle Times
    D.C. Correspondent- 202.662.7457
    A.Mundy@seattletimes.com

GOV0004292