## ATG MI MDS Printing

| | |
|---|---|
| **From:** | Hulet, Christina (GOV) |
| **Sent:** | Monday, June 05, 2006 4:43 PM |
| **To:** | Mitchell, Richard (GOV); Isaki, Lucy (OFM) |
| **Cc:** | Judd, Ron (GOV) |
| **Subject:** | FW: Pharmacy board |

Richard, Lucy,

Attached is an analysis from Planned Parenthood/NW Women's Law Center re. how Illinois' governor issued an emergency pharmacy rule. This will be part of our discussion on Wednesday's conference call.

Thanks,
Christina



0278_001.pdf

GOV0002774

**75**

EXHIBIT U

## MEMORANDUM

**TO:**      AMY LUFTIG, PLANNED PARENTHOOD OF WESTERN WASHINGTON

**FROM:**    GRETCHEN BORCHELT, NATIONAL WOMEN'S LAW CENTER

**SUBJECT:** GOVERNOR POWER TO INITIATE EMERGENCY RULEMAKING

**DATE:**    5/30/06

You asked for information on the authority used by Illinois Governor Blagojevich to initiate emergency rulemaking regarding pharmacy refusals to dispense contraceptives. Below is a summary of the authority used, as well as a comparison to the parallel Washington statute.

I.       Governor Blagojevich's Action and Justification

After hearing about the problem of pharmacy refusals, Governor Blagojevich invoked the emergency rulemaking power under the Illinois Administrative Procedures Act. The Act gives an agency the ability to bypass the regular rulemaking process when it finds that there is a threat to the public interest, safety, or welfare. 5 Ill. Comp. Stat. 100/5-45 (attached). Recognizing the denial of safe, legal prescription contraceptives as a threat to public interest, safety, and welfare, Governor Blagojevich asked the Department of Financial and Professional Regulation to initiate an emergency rule to require pharmacies to dispense contraceptives without delay.

The Act requires that the agency state in writing its reasons for finding that an emergency exists. In the "Notice of Emergency Amendment" filed in the Illinois Register (attached), the "Reason for Emergency" was described as follows:

> Recent instances of a pharmacy's refusal to dispense legally prescribed contraceptives has resulted in delay and/or prevention of women from meeting their most basic health needs, including pregnancy prevention and treatment of various medical conditions. Based upon the foregoing and upon reported violations of the Act, the Department of Financial and Professional Regulation finds that the refusal to dispense contraceptive prescription drugs without providing reasonable alternatives for the protection of the patient constitutes a threat to the public interest, safety, or welfare.

The Notice also mentioned that "Because of an increased availability and demand for certain contraceptive prescription drugs, there is an urgency to clarify the duty of Division I pharmacy in dispensing contraceptives and the requirements of a pharmacy when the contraceptive is out of stock."

GOV0002775

76

The emergency rulemaking was subject to later, after-the-fact review by a legislative committee, after which time it became permanent (permanent rule attached).

## II.    Washington Governor Powers

The Washington Administrative Procedures Act contains language very similar to that contained in the Illinois Administrative Procedures Act. Wash. Rev. Code § 34.05.350(1) allows emergency rulemaking where it is necessary for the public health, safety or general welfare and observing the normal process for rulemaking would be contrary to the public interest. The Washington Act goes beyond Illinois, however, by allowing an agency to immediately *adopt, amend* or *repeal* a rule. The agency must have good cause in so finding.

If the Board of Pharmacy were to adopt a rule that permits pharmacists to refuse to dispense but does not include patient protections or require a burden on the pharmacy to ensure that women receive their legally prescribed contraceptives, the Governor could initiate emergency rule making to amend or repeal that rule and adopt a new rule. Like Governor Blagojevich, the Governor could explain that this emergency action is necessary for the public health, safety or general welfare because pharmacist refusals mean a delay or cessation of basic health care for women. In addressing a lack of patient protections or burden on the pharmacy, the Governor could cite examples of pharmacists misleading women about whether contraceptives are in stock, confusing women about the mechanism of certain drugs, subjecting them to moralistic lectures or harassment, or refusing to provide a referral.

An emergency rule or change to an existing rule would be in effect for no longer than 120 days after filing it with the code reviser (unless a later date is specified), and the agency can adopt it as a permanent rule, by following the appropriate procedures. Wash. Rev. Code § 34.05.350(2).

Note that the statute permits any person to petition the governor requesting the immediate appeal of an emergency rule. The governor must respond within 7 days of the petition and must either deny the petition in writing or order the immediate repeal of the rule. In so deciding, the governor need only consider whether the adoption of the emergency rule was necessary. Wash. Rev. Code § 34.05.350(3).

GOV0002776

**ATG MI MDS Printing**

| | |
|---|---|
| From: | Luftig, Amy [Amy.Luftig@ppnetworkwa.org] |
| Sent: | Wednesday, June 07, 2006 5:56 PM |
| To: | Eassey, Gayatri; Hulet, Christina (GOV); Judd, Ron (GOV) |
| Subject: | Proposed Alternative Pharmacy Rule |
| Attachments: | Proposed Alternative Rule Language.doc |

Importance:       High

Hi, Gayatri, Christina and Ron –

Attached you will find a proposed alternative rule that could be supported by Planned Parenthood and the Northwest Women's Law Center.

Please note that we have suggested new language for sections 1-4 and section 7 only. Any amended language in sections 5 and 6 were proposed by the Board of Pharmacy at the June 1st meeting, and, having no concerns with those edits, we have maintained those changes.

Our goal in preparing this language was to offer a draft that protects patient's access to care without over-regulating pharmacists or the practice of pharmacy.

After you have reviewed this language, we would very much like to schedule a time to discuss next steps. Please let me know when that might next be possible.

Thanks,

Amy Luftig
Deputy Director of Public Policy
Planned Parenthood Network of Washington
(360) 561-9144

1

GOV0004746

**78**                              EXHIBIT V

Draft 1 From June 1st Meeting

WAC 246-863-095

**WAC 246-863-095 Pharmacist's professional responsibilities.** (1) A pharmacist's primary responsibility is to ensure patients receive safe and appropriate medication therapy. Pharmacists have a duty to dispense lawfully prescribed drugs or devices or provide suitable therapeutic substitution in a timely manner consistent with reasonable expectations for filling the prescription.

(2) Nothing in this rule shall interfere with a pharmacist's screening for potential drug therapy problems, pursuant to the pharmacist's professional responsibilities.

(3) Nothing in this rule requires pharmacists to dispense a drug or device without payment of their usual and customary or contracted charge.

(4) If despite good faith compliance with WAC 246-869-150, the lawfully prescribed drug or device is not in stock the pharmacy shall provide to the patient or agent a timely alternative for appropriate therapy which, consistent with customary pharmacy practice, may include obtaining the drug or device. These alternatives include but are not limited to:

(a) If requested by the patients or their agents, return unfilled lawful prescriptions to the patient or agent; or,

(b) If requested by the patients or their agents, transfer the prescription to a pharmacy of the patient's choice.

~~(1)~~(5) A pharmacist shall not delegate the following professional responsibilities:

(a) Receipt of a verbal prescription other than refill authorization from a prescriber.

*10/28/2008*

GOV0004747

Draft 1 From June 1st Meeting

    (b) Consultation with the patient regarding the prescription, both prior to and after the prescription filling and/or regarding any information contained in a patient medication record system provided that this shall not ~~preclude~~ prohibit a pharmacy <u>ancillary</u> <u>personnel</u> ~~assistant~~ from providing to the patient or the patient's health care giver certain information where no professional judgment is required such as dates of refills or prescription price information.

    (c) Consultation with the prescriber regarding the patient and the patient's prescription.

    (d) Extemporaneous compounding of the prescription, <u>however</u> ~~provided that~~ bulk compounding from a formula and IV admixture products prepared in accordance with chapter 246-871 WAC may be performed by a ~~level A~~ pharmacy ~~assistant~~ <u>technician</u> when supervised by a pharmacist.

    (e) Interpretation of data in a patient medication record system.

    (f) Ultimate responsibility for all aspects of the completed prescription and assumption of the responsibility for the filled prescription, such as: Accuracy of drug, strength, labeling, proper container and other requirements.

    (g) Dispense prescriptions to patient with proper patient information as required by WAC 246-869-220.

    (h) Signing of the poison register and the Schedule V controlled substance registry book at the time of sale in accordance with RCW 69.38.030 and WAC 246-887-030 and any other item required by ~~law,~~ or rule ~~or regulation~~ to be signed or initialed by a pharmacist.

    (i) Professional communications with physicians, dentists, nurses and other health care practitioners.

    (j) <u>Decision to not dispense prescriptions for any reason.</u>

~~(2)~~(6) Utilizing personnel to assist the pharmacist.

10/28/2008

GOV0004748

**80**

Draft 1 From June 1st Meeting

    (a) The responsible pharmacist manager shall retain all professional and personal responsibility, as shall the pharmacy employing ~~such~~ these personnel.  The responsible pharmacist manager shall determine the extent to which personnel may be utilized to assist the pharmacist and shall assure that the pharmacist is fulfilling his or her supervisory and professional responsibilities.

    (b) This does not ~~preclude~~ prohibit delegation to an intern or extern.

(7) It is considered unprofessional conduct for a pharmacist to engage in any of the following:

    (a) Destroy or refuse to return unfilled lawful prescriptions when requested to do so by patients or their agent,

    (b) Violate a patient's privacy, or

    (c) Discriminate against patients or their agent in a manner prohibited by state or federal law.

10/28/2008

GOV0004749

81

**ATG MI MDS Printing**

| | |
|---|---|
| From: | Luftig, Amy [Amy.Luftig@ppnetworkwa.org] |
| Sent: | Wednesday, June 07, 2006 5:56 PM |
| To: | Eassey, Gayatri; Hulet. Christina (GOV); Judd, Ron (GOV) |
| Subject: | Proposed Alternative Pharmacy Rule |
| Attachments: | Proposed Alternative Rule Language.doc |

Importance:          High

Hi, Gayatri, Christina and Ron –

Attached you will find a proposed alternative rule that could be supported by Planned Parenthood and the Northwest Women's Law Center.

Please note that we have suggested new language for sections 1-4 and section 7 only. Any amended language in sections 5 and 6 were proposed by the Board of Pharmacy at the June 1st meeting, and, having no concerns with those edits, we have maintained those changes.

Our goal in preparing this language was to offer a draft that protects patient's access to care without over-regulating pharmacists or the practice of pharmacy.

After you have reviewed this language, we would very much like to schedule a time to discuss next steps. Please let me know when that might next be possible.

Thanks,

Amy Luftig
Deputy Director of Public Policy
Planned Parenthood Network of Washington
(360) 561-9144

1

GOV0004746

EXHIBIT V

Draft 1 From June 1st Meeting

WAC 246-863-095

**WAC 246-863-095 Pharmacist's professional responsibilities.**  (1) A pharmacist's primary responsibility is to ensure patients receive safe and appropriate medication therapy. Pharmacists have a duty to dispense lawfully prescribed drugs or devices or provide suitable therapeutic substitution in a timely manner consistent with reasonable expectations for filling the prescription.

(2) Nothing in this rule shall interfere with a pharmacist's screening for potential drug therapy problems, pursuant to the pharmacist's professional responsibilities.

(3) Nothing in this rule requires pharmacists to dispense a drug or device without payment of their usual and customary or contracted charge.

(4) If despite good faith compliance with WAC 246-869-150, the lawfully prescribed drug or device is not in stock the pharmacy shall provide to the patient or agent a timely alternative for appropriate therapy which, consistent with customary pharmacy practice, may include obtaining the drug or device.  These alternatives include but are not limited to:

    (a) If requested by the patients or their agents, return unfilled lawful prescriptions to the patient or agent; or,

    (b) If requested by the patients or their agents, transfer the prescription to a pharmacy of the patient's choice.

~~(1)~~(5) A pharmacist shall not delegate the following professional responsibilities:

    (a) Receipt of a verbal prescription other than refill authorization from a prescriber.

*10/28/2008*

GOV0004747

**83**

Draft 1 From June 1st Meeting

(b) Consultation with the patient regarding the prescription, both prior to and after the prescription filling and/or regarding any information contained in a patient medication record system provided that this shall not ~~preclude~~ prohibit a pharmacy <u>ancillary personnel</u> ~~assistant~~ from providing to the patient or the patient's health care giver certain information where no professional judgment is required such as dates of refills or prescription price information.

(c) Consultation with the prescriber regarding the patient and the patient's prescription.

(d) Extemporaneous compounding of the prescription, <u>however</u> ~~provided that~~ bulk compounding from a formula and IV admixture products prepared in accordance with chapter 246-871 WAC may be performed by a ~~level A~~ pharmacy ~~assistant~~ <u>technician</u> when supervised by a pharmacist.

(e) Interpretation of data in a patient medication record system.

(f) Ultimate responsibility for all aspects of the completed prescription and assumption of the responsibility for the filled prescription, such as: Accuracy of drug, strength, labeling, proper container and other requirements.

(g) Dispense prescriptions to patient with proper patient information as required by WAC 246-869-220.

(h) Signing of the poison register and the Schedule V controlled substance registry book at the time of sale in accordance with RCW 69.38.030 and WAC 246-887-030 and any other item required by law~~,~~ or rule ~~or regulation~~ to be signed or initialed by a pharmacist.

(i) Professional communications with physicians, dentists, nurses and other health care practitioners.

(j) <u>Decision to not dispense prescriptions for any reason.</u>

~~(2)~~(6) Utilizing personnel to assist the pharmacist.

10/28/2008

GOV0004748

84

Draft 1 From June 1st Meeting

(a) The responsible pharmacist manager shall retain all professional and personal responsibility, as shall the pharmacy employing ~~such~~ these personnel. The responsible pharmacist manager shall determine the extent to which personnel may be utilized to assist the pharmacist and shall assure that the pharmacist is fulfilling his or her supervisory and professional responsibilities.

(b) This does not ~~preclude~~ prohibit delegation to an intern or extern.

(7) It is considered unprofessional conduct for a pharmacist to engage in any of the following:

(a) Destroy or refuse to return unfilled lawful prescriptions when requested to do so by patients or their agent,

(b) Violate a patient's privacy, or

(c) Discriminate against patients or their agent in a manner prohibited by state or federal law.

10/28/2008

GOV0004749

85

**ATG MI TOR Storman's v. State**

| | |
|---|---|
| rom: | Landino, Ellen (GOV) |
| Sent: | Monday, June 19, 2006 4:32 PM |
| To: | Hulet, Christina (GOV) |
| Subject: | Governor's Feedback on Board of Pharmacy Update Briefing Document |
| Attachments: | Scan001.PDF |

*Please see attached with the Governor's handwritten comments.  Thanks, Ellen*

*******************************
*Ellen Landino*
*Executive Assistant*
 *to Governor Christine O. Gregoire*
*Office of the Governor*
*P.O. Box 40002*
*Olympia, WA  98504-0002*
*(360) 902-4123*
*******************************
*Sprinkle joy.*
*~Ralph Waldo Emerson*

1

GOU 2891

EXHIBIT W

Governor Gregoire       **BRIEFING DOCUMENT**

**DATE:**        June 16, 2006
**FROM:**        Christina Hulet
**PHONE:**       902-0660
**ISSUE:**  Update on Board of Pharmacy Refusal Issue
**PURPOSE OF THIS MEMO:**

        X  **Informational material**          ◯  **Decision needed**

*[handwritten note in upper right: Christina Is this draft clean enough for the advocates? No conscious / moral issues raised - allow pharmacist to refuse? C]*

**BACKGROUND:**

**Alternative Rule:** Attached is an alternative rule for your review. Underlined are proposed changes to the board's current rule. (I left alone sections we had no issues with.)

Planned Parenthood & the NW Women's Law Center support it (and helped draft it). I met with Rod Schaffer, CEO of the **Washington State Pharmacy Association** (WSPA), and several of his members today, who said the draft was reasonable and would recommend one word change (from "suitable therapeutic substitution" to "therapeutic alternative" -- see draft for details). I think this is reasonable and will run this by the other advocates.

At today's meeting, WSPA's restated their key issues: 1) that requiring pharmacists to dispense "all legally valid" prescriptions does not take into account clinical issues such as dosing errors; and 2) that even a requirement to fill all "legally valid and clinically safe" prescriptions doesn't take into account unique circumstances. For example, exposure to broken tablets of finasteride poses a risk to a pregnant pharmacist or, during a pandemic flu, requiring pharmacists to dispense vaccines to anyone with a prescription rather than to those designated as high-risk populations. In other words, they're concerned about an overly prescriptive rule that minimizes a pharmacist's professional and clinical expertise, particularly in unique circumstances. They were also frustrated that the Governor's letter "pitted pharmacists against Washington families," saying that pharmacists do work on behalf of their patients. *[handwritten: The Pharmacy Bd. pitted pharmacist against WA families.]*

That said, Rod and his team were very appreciative of our meeting today and comfortable with the draft if we include their word change. I anticipate that Rod will share this draft with BOP members. I have not contacted any of them directly but sent a copy of this alternative to DOH.

**Feedback from Board:** DOH met this week with the chair, Asaad Awan, who said several board members didn't mean for the rule to end up the way it did. I have not talked to Asaad directly but understand through DOH that he's open to shopping a new draft to board members for reconsideration at the July 20th meeting. For this to be successful, we should reach consensus on language before that meeting.

**Miscellaneous:**
1. Your meeting with **Donna Dockter** is scheduled for July 19. Donna has asked that Susan Boyer, one of the other board members, and Don Downing, a UW professor, be included.
2. **Jim McDivitt** (US Attorney, Eastern WA; friend from Gonzaga) wanted you to know that he supports your position and is equally concerned about the board's rule. He believes there's a potential violation of federal civil rights law and said that if the current rule passes, he may "take action" (not something he wants to make public at this time but wanted you to know). *[handwritten note in left margin: Let's get Christina on this point]*
3. **Patty Murray** just signed on to federal legislation (SB 809) that would require pharmacies to fill a prescription on-site if a pharmacist refuses on the basis of personal belief.

Page 1 of 2

*[handwritten: GOV 2892]*

Governor Gregoire                 **BRIEFING DOCUMENT**

**DATE:**          June 21, 2006
**FROM:**          Christina Hulet
**PHONE:**         902-0660
**ISSUE:   Update on Board of Pharmacy Refusal Issue**
**PURPOSE OF THIS MEMO:**

X  **Informational material**         O  **Decision needed**

**BACKGROUND:**

Governor,
To follow-up on your question, yes our advocates are comfortable with the "duty to dispense" language re. the conscious/moral issues. They feel this is strong enough.

Unfortunately, WSPA has recently changed their position, saying now that they are <u>not</u> comfortable with our draft, namely the "duty to dispense" language. (I believe they met over the weekend to discuss with their full board & backtracked from last week.) They would prefer a rule that states that pharmacists have "an obligation to meet the patient's needs," which in my view is too broad.

I'm working on the following pending issues with WSPA and our advocates:
1.  **Pharmacies currently refer regularly for legitimate reasons**: In addition to prescriptions not in stock (which our language now covers), pharmacists often refer to another pharmacy when they lack specific knowledge or expertise (for example, with HIV cocktail treatments) or they lack specialized equipment (for example, for some nuclear medicine drugs). We're looking at how/if we can account for these.
2.  **Option of a <u>pharmacy</u> being responsible, verses the pharmacist.** Of note, Planned Parenthood is even comfortable stating that a pharmacist can exercise his/her conscience so long as the patient is still served – the pharmacy is responsible. This is consistent with the federal legislation Sen. Murray signed on to. I'm not sure we necessarily want to go this route, but it's an option worth looking into. Frankly, I think WSPA may still oppose (they're "thinking about it" and will get back to me).
3.  **Existing conscience clause (RCW 48.43.065).** Our insurance code states (in abbreviated form) that: "no individual health care provider, religiously sponsored health carrier, or health care facility may be required by law or contract in any circumstances to participate in the provision of...a service if they object to doing so for reason of conscience or religion." It goes on to say that no person shall be discriminated on the basis of such objection. I'm working with our advocates & their legal team about what that means, how this fits, etc. WSPA fundamentally believes that pharmacists should be able to exercise their conscience, and shouldn't be singled out among health providers.

**Immediate Next Steps:**
1.  I'd like another week to work with the advocates and WSPA on draft language. We all agree that we're not ready to walk away from the table yet (though I have indicated to WSPA that we should be frank when/if we simply agree to disagree).
2.  Once finalized (either with or without WSPA), we should strategize about how to discuss this draft with board members (directly from the Gov's office, through DOH, through advocates, etc). I'm not yet confident that the chair will champion an alternative draft or be a strong advocate for a motion to reconsider at the July 20th meeting.
3.  Richard Mitchell is following up on Jim McDivitt's concern about violating federal civil rights law.

**GOVERNOR'S COMMENTS:**                    O  **Schedule meeting to discuss**

Page 1 of 2

GOV0004852

**88**                              EXHIBIT X

Governor Gregoire    **BRIEFING DOCUMENT**

GOV0004853

89

# NEWS RELEASE



**P** **Planned Parenthood®**
of Central Washington

**Date: Friday, July 21, 2006**
**FOR IMMEDIATE RELEASE**

> **For more information, please contact:**
> Anna Franks
> 509.853.2521
> garzak@ppcentwa.org

## Pharmacy Board To Reconsider Harmful "Pharmacist Refusal" Rule

Pharmacy Board To Reconsider Harmful "Pharmacist Refusal" Rule Seattle, WA – Citing the 2,450 letters, emails and phone calls that the Pharmacy Board has received since approving a draft rule at their June meeting– most of which, according to Executive Director, Steve Saxe, overwhelmingly opposed the draft rule – the board today agreed to hold off on proceeding with that language and opted instead to work on developing new language that will be considered at their next meeting in August.

Donna Dockter, the strongest proponent of the controversial language passed last month, agreed to consider new language. Dockter also expressed her desire for the Board to develop a policy statement for the public, so that the public might better understand "what we are trying to do." That policy statement will also be considered at the next meeting.

"Clearly the Board has begun listening to the voices of Washington's citizens." said Linda Tosti-Lane, Legislative Coordinator and immediate past President of the Washington chapter of the National Organization for Women.

From the outset Governor Gregoire has strongly opposed the policy that the Board passed last month, and has in two separate letters to the Board encouraged them to require pharmacies to ensure that patients receive non-judgmental and timely access to their medications.

Health Advocacy groups are encouraged by the Board's decision to reconsider. "The American Pharmacists Association Code of Ethics is very clear in stating that '[a] pharmacist respects the autonomy and dignity of each patient,'" said Beverly Whipple, Executive Director of Cedar River Clinics. "We know that most pharmacists take this very seriously, and we are hopeful that the Pharmacy Board will fulfill their responsibility to protect patients with the forthcoming draft of this rule."

"Though we don't yet know what new language the board will consider, today's decision again opens up the possibility of a rule being adopted that meets the needs of Washington's health care consumers," said Alison Duren-Sutherland, WARC chair and executive director of Aurora Medical Services.

The Washington Alliance for Reproductive Choice (WARC) is a coalition of organizations that advocate for reproductive rights and provide reproductive health care around Washington State.

**091311**

**BOP(PR) 015835**

*Steve Sope* 360/236-4829

EXHIBIT Y

PPCW is a non-profit, 501(c)3 organization with health centers located in Ellensburg (509-925-7113), Sunnyside (509-837-6979), Kennewick (509-783-2859), Walla Walla (509-529-3570) and Yakima (509-248-3625), as well as express health centers in Cle Elum, Kennewick, Pasco, Sunnyside, Walla Walla, Wapato and Yakima. PPCW exists to assure that all people are empowered to make reproductive health choices and have access to the quality health care and sexuality education services required to exercise those choices. Visit www.plannedparenthood.org/centralwa for more information.

###

stevensape@doh.wa.gov

091312

BOP(PR) 015836

## ATG MI MDS Printing

| | |
|---|---|
| **From:** | Hulet, Christina (GOV) |
| **Sent:** | Wednesday, July 26, 2006 1:27 PM |
| **To:** | Eberle, Jennifer (GOV) |
| **Subject:** | FW: Pharmacist responsibility rule |

for this meeting - I'd say 1.5 hours - Let's try to schedule so Marty can be there.

-----Original Message-----
| | |
|---|---|
| **From:** | Hulet, Christina (GOV) |
| **Sent:** | Wednesday, July 26, 2006 1:25 PM |
| **To:** | ███dockter@██████ 'Don Downing'; 'Luftig, Amy'; Nancy Sapiro; Schafer, Rod  (DOHi); Brown, Marty (GOV); Saxe, Steven (DOH); Roper, Joyce (ATG) |
| **Cc:** | Hulet, Christina (GOV); Eberle, Jennifer (GOV) |
| **Subject:** | Pharmacist responsibility rule |

As many of you know, the Governor, Donna Dockter, and Don Downing met last week to discuss the pharmacist responsibility rule and concluded that there was far more agreement on policy direction than on language reviewed to date.  The Governor asks that we convene a meeting to discuss the wording of the rule in more depth.

I am asking my assistant, Jennifer, to schedule this meeting for next week or early the following week.  We will hold it here in Olympia but will provide a conference call line for your convenience.

Thank you,
Christina

1

GOV0003101

**92**                                    EXHIBIT Z

Donald F. Downing                                    December 5, 2008

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT TACOMA

------------------------------------------------------------

STORMANS, INCORPORATED doing        )

business as RALPH'S THRIFTWAY;      )

RHONDA MESLER, MARGO THELEN,        )

         Plaintiffs,        )

      vs.                          ) No. C07-5374-RBL

MARY SELECKY, Acting Secretary      )

of the Washington State             )

Department of Health, et al.,       )

        Defendants.          )

------------------------------------------------------------

Deposition Upon Oral Examination Of

DONALD F. DOWNING

------------------------------------------------------------

9:15 a.m.

Friday, December 5, 2008

601 Union Street, Suite 4900

Seattle, Washington

REPORTED BY:  Keri A. Aspelund, RPR, CCR No. 2661

Donald F. Downing

December 5, 2008

## Page 214

1       A.  I don't recall it specifically.
2       Q.  At the bottom of the first page there's a note
3   that says WSPA okay with this section if we keep or similar
4   language; do you see that in the bold?
5       A.  Uh-huh.  Uh-huh.
6       Q.  Throughout this draft, there are comments on
7   positions that are taken by different groups, and at the
8   end, when the governor's office presented the regulations
9   to the Board of Pharmacy, there was at least some
10  implication, if not explicit statement, that you and the
11  WSPA had agreed that this was a good compromise rule; was
12  that your understanding of what occurred?
13      A.  Yes.
14      Q.  And you believed that the rule that was proposed
15  by the governor's office was a good rule?
16      A.  No.
17      Q.  So, you didn't support the rule that was
18  presented by the governor's office?
19      A.  Only -- only in submission.
20      Q.  And is it your impression that that was the
21  WSPA's position as well?
22      A.  Yes.
23      Q.  Basically you understood and Mr. Shafer
24  understood that the governor was proposing a regulation and
25  you were trying to get the best regulation you could

## Page 215

1   knowing referral was off the table?
2       A.  Yes.
3       Q.  Okay.
4       MS. ALAILY:  Kristen, before you move on, can
5   you please let us know where this document came from?  It
6   doesn't have a Bates stamp.  Was it from Mr. Downing's
7   production or is it some other source?
8       MS. WAGGONER:  Yes, I believe it was.  I think
9   everything else has been Bates stamped.
10      THE WITNESS:  From mine?
11      MS. ROPER:  I should say this actually came from
12  the governor's productions and the subsequent waiver of
13  executive privilege, and those documents where we waived
14  executive privilege did not have Bates stamps on them.
15      THE WITNESS:  Yeah, I don't remember seeing this
16  document ever before.
17      MS. WAGGONER:  Okay.
18      MS. ALAILY:  Thank you, Joyce.
19      MS. ROPER:  Uh-huh.
20      Q.  Just before the governor proposed the
21  regulations to the Board of Pharmacy, didn't you assist
22  Elaine Rose with drafting some additional language to the
23  rule that would address Plan B as an over-the-counter
24  product?
25      A.  I don't recall that at all.  May have.  I don't

## Page 216

1   remember that.
2       Q.  Do you recall Plan B becoming an
3   over-the-counter product on August 24th of 2006?
4       A.  Yeah.  Yes.
5       Q.  And do you recall going back to the rules as
6   they had been proposed and coming up with language that
7   would address this new status, the dual status?
8       A.  Yes, I do.  I didn't remember it was with
9   Elaine, but we did have that discussion.
10      Q.  And the language that was included in the rule
11  was included specifically to address the new status of Plan
12  B, right?
13      A.  As I recall, it was.
14      Q.  Did you have any discussions with Senator
15  Parlette during the rule-making process or after?
16      A.  Yes.
17      Q.  And what were those discussions?
18      A.  We had lots of discussions over numerous years.
19  Those discussions were basically surrounding her support of
20  pharmacy and that she felt similarly to me that we were
21  being wrongly pointed at, being demonized in the media, and
22  she wanted to do something to correct that.
23      Q.  And she also concurred with you that access to
24  Plan B or other time-sensitive drugs was not an issue in
25  Washington state?

## Page 217

1       A.  I don't remember having that specific
2   conversation.
3       Q.  Based on her discussions with you, did she
4   concur that Plan B was widely available in Washington
5   state?
6       A.  Yes.
7       Q.  And you would agree with that statement?
8       A.  I would.
9       Q.  Did you have any discussions with Senator
10  Parlette about legislation that she might propose in the
11  2008 legislative session?
12      A.  No, I don't recall having that discussion with
13  her.
14      Q.  Were you aware that she intended to propose
15  legislation in the 2008 session?
16      A.  I was aware that she routinely submitted
17  legislation, but I don't recall any specific legislation
18  she intended to introduce.
19      Q.  Were you aware that in 2006, during the
20  rule-making process, the governor asked NARAL, Northwest
21  Women's Law center, and Planned Parenthood to interview
22  prospective Board of Pharmacy members?
23      A.  No.
24      Q.  Would you rely on those groups as being
25  authorities or persons that would speak knowledgeably to

55 (Pages 214 to 217)



CHRISTINE O. GREGOIRE
Governor

**STATE OF WASHINGTON**
## OFFICE OF THE GOVERNOR
*P.O. Box 40002 • Olympia, Washington 98504-0002 • (360) 753-6780 • www.governor.wa.gov*

August 28, 2006

Dr. Asaad Awan, Chair
Board of Pharmacy
Box 359885
Seattle, WA 98104

Dear Dr. Awan:

Enclosed with this letter is an alternative pharmacist responsibility rule that I, alongside numerous organizations including the Washington State Pharmacy Association and Planned Parenthood of Washington, have agreed to. I recommend that the Board of Pharmacy adopt this version in place of its draft rule initiated on June 1, 2006.

This alternative represents many hours of negotiation to delicately balance our respect for patients, pharmacists, and pharmacies. I held several multi-hour negotiation sessions with key stakeholders at the table, including Donna Dockter from the Board of Pharmacy, Don Downing from the University of Washington School of Pharmacy, and representatives from Planned Parenthood, the Washington State Pharmacy Association, the Northwest Women's Law Center, the Department of Health, the Board of Pharmacy's legal team, and others. I also met individually with Donna Dockter and Don Downing, and my office has had numerous one-on-one conversations with other parties to understand their perspectives.

I present this alternative rule as the most reasonable compromise. It clearly states that pharmacies have a duty to dispense lawfully prescribed drugs and recognizes the role of pharmacists in using their professional expertise to determine reasonable exceptions to that duty and maintain patient safety. While I was not able to reach full accord with Donna Dockter, we did reach an accord with organizations such as the Washington State Pharmacy Association and Planned Parenthood through a process of consensus and compromise. I am very pleased with the team's work and commend their efforts to negotiate in good faith on this issue.

I strongly recommend that the Board of Pharmacy adopt this finely negotiated version, without amendment, at your August 31st meeting. Please feel free to contact Marty Brown, my Legislative Director, at (360) 902-0390, or Christina Hulet, my Health Policy Advisor, at (360) 902-0660, if you have additional questions.

Sincerely,

Christine O. Gregoire
Governor

**BOP(PR)003690**



cc:     Members of the Board of Pharmacy (BOP)
        Mary Selecky, Secretary, Department of Health
        Steve Saxe, Executive Director, Board of Pharmacy
        Marty Brown, Governor's Office
        Christina Hulet, Governor's Office

BOP(PR)003691

**PROPOSED ALTERNATIVE**
**August 28, 2006**

**WAC 246-863-095 Pharmacist's professional responsibilities.**

(1) A pharmacist's primary responsibility is to ensure patients receive safe and appropriate medication therapy. Pharmacies have a duty to dispense lawfully prescribed legend drugs or devices, and to distribute drugs and devices approved by the U.S. food and drug administration for restricted distribution by pharmacies, or provide a therapeutically equivalent drug or device in a timely manner consistent with reasonable expectations for filling the prescription, except for the following or substantially similar circumstances:

    (a) Potential drug therapy contraindications;

    (b) National or state emergencies or guidelines affecting availability or supplies of drugs or devices;

    (c) Lack of specialized equipment or expertise needed to safely produce, store, or dispense drugs or devices, such as certain drug compounding or storage for nuclear medicine;

    (d) Potentially fraudulent prescriptions;

    (e) Unavailability of drug or device despite good faith compliance with WAC 246-869-150;

(2) Nothing in this rule requires pharmacists to dispense a drug or device without payment of their usual and customary or contracted charge.

97

BOP(PR)003692

(3) If despite good faith compliance with WAC 246-869-150, the lawfully prescribed drug or device is not in stock, the pharmacy shall provide the patient or agent a timely alternative for appropriate therapy which, consistent with customary pharmacy practice, may include obtaining the drug or device.  These alternatives include but are not limited to:

    (a) Contact the prescriber for authorization to substitute a "therapeutically equivalent" product pursuant to Chapter 246-899 WAC;

    (b) If requested by the patient or their agent, return unfilled lawful prescriptions to the patient or agent; or

    (c) If requested by the patient or their agent, communicate or transmit, as permitted by law, the original prescription information to a pharmacy of the patient's choice that will fill the prescription in a timely manner.

(4) A pharmacist shall not delegate the following professional responsibilities:

    (a) Receipt of a verbal prescription other than refill authorization from a prescriber.

    (b) Consultation with the patient regarding the prescription, both prior to and after the prescription filling and/or regarding any information contained in a patient medication record system provided that this shall not prohibit pharmacy ancillary personnel from providing to the patient or the patient's health care giver certain information where no professional judgment is required such as dates of refills or prescription price information.

    (c) Consultation with the prescriber regarding the patient and the patient's prescription.

    (d) Extemporaneous compounding of the prescription, however bulk compounding from a formula and IV admixture products prepared in accordance with chapter 246-871 WAC may be performed by a pharmacy technician when supervised by a pharmacist.

    (e) Interpretation of data in a patient medication record system.

BOP(PR)003693

(f) Ultimate responsibility for all aspects of the completed prescription and assumption of the responsibility for the filled prescription, such as: Accuracy of drug, strength, labeling, proper container and other requirements.

(g) Dispense prescriptions to patient with proper patient information as required by WAC 246-869-220.

(h) Signing of the poison register and the Schedule V controlled substance registry book at the time of sale in accordance with RCW 69.38.030 and WAC 246-887-030 and any other item required by law or rule to be signed or initialed by a pharmacist.

(i) Professional communications with physicians, dentists, nurses and other health care practitioners.

(j) Decision to not dispense prescriptions for any reason.

(5) Utilizing personnel to assist the pharmacist.

(a) The responsible pharmacist manager shall retain all professional and personal responsibility, as shall the pharmacy employing these personnel. The responsible pharmacist manager shall determine the extent to which personnel may be utilized to assist the pharmacist and shall assure that the pharmacist is fulfilling his or her supervisory and professional responsibilities.

(b) This does not prohibit delegation to an intern or extern.

(6) It is considered unprofessional conduct for a pharmacist to engage in any of the following:

(a) Destroy unfilled lawful prescription;

(b) Refuse to return unfilled lawful prescriptions;

(c) Violate a patient's privacy;

BOP(PR)003694

(d) Discriminate against patients or their agent in a manner prohibited by state or federal

   law;

(e) Intimidate or harass a patient.

BOP(PR)003695

**100**

**Roper, Joyce (ATG)**

| | |
|---|---|
| **From:** | Saxe, Steven (DOH) |
| **Sent:** | Friday, August 25, 2006 9:33 PM |
| **To:** | Selecky, Mary (DOH); Jinkins, Laurie (DOH); Peyton, Brian (DOH); Roper, Joyce (ATG); Lovinger, Pamela G (DOH); King, Bonnie (DOH); Salmi, Lisa (DOH); Beebe, Doreen (DOH) |
| **Subject:** | Re: Pharmacy rule |

I tracked Asaad (Chair) down tonight and got him connected to Christina. She told me the Gov and Asaad did talk. She mentioned in her email - "And yes, the Gov and Asaad talked tonight. Looks like we're in good shape.."

Christina is planning to call the other Brd members next week. At least that was the plan this evening before the Gov talked to Asaad.

Let you know more as I hear
Steve

------------------------

Sent from my BlackBerry Wireless Handheld

-----Original Message-----
From: Hulet, Christina (GOV)
To: Selecky, Mary (DOH); Saxe, Steven (DOH); Jinkins, Laurie (DOH); Peyton, Brian (DOH)
Sent: Fri Aug 25 19:48:41 2006
Subject: FW: Pharmacy rule

I sent the following email to the Board of Pharmacy members this evening.

Thanks,
Christina

------

From: Hulet, Christina (GOV)
Sent: Fri 8/25/2006 6:27 PM
To: 'awan@u.washington.edu'
Cc: 'susanboyer@goodsamhealth.org'; "
            'harris.g@ghc.org'; '                              Brown, Marty (GOV);
Fitzsimmons, Tom (GOV)
Subject: Pharmacy rule


Dr. Awan,
The Governor asked that I forward the attached letter & proposed rule to you and the other board members.  If anyone has questions regarding the process or content of these documents, please don't hesitate to contact me at 360-902-0660.

Thank you.

091555          1

BOP(PR) 016079

EXHIBIT CC

Christina Hulet
360-902-0660

<<BOP letter from Governor - Aug 28.pdf>> <<BOP Final Draft - Aug 28.doc>>

091556

2

BOP(PR) 016080



STATE OF WASHINGTON
DEPARTMENT OF HEALTH
*Olympia, Washington 98504*

**WASHINGTON STATE BOARD OF PHARMACY**
MEETING AGENDA
**April 12, 2007**
Department of Health
Point Plaza East – Rooms 152-153
310 Israel Road
Tumwater WA 98501

**CONVENE**

Chair Rebecca Hille convened the meeting at 9:00 a.m. on April 12, 2007

Board Members present:
> Gary Harris, RPh – Vice Chair
> George Roe, RPh
> Rebecca Hille, Chair
> Rosemarie Duffy, RN
> Susan Teil-Boyer, RPh
> Vandana Slatter, PharmD
> Dan Connolly, RPh

Staff Members present:
> Lisa Salmi, Acting Executive Director
> Tim Fuller, Pharmacy Consultant
> Andy Mecca, Pharmacy Consultant
> Grace Cheung, Chief Investigator
> Jim Doll, Pharmacist Investigator
> Joyce Roper, Assistant Attorney General
> Doreen Beebe, Program Manager
> Cheryl Christensen, Office Assistant 3

Guest present:
> Andrew Bennett, WSU Pharmacist Extern
> Andy Fernando, DOH Regulatory Affairs Manager
> Karl Hohen, HPQA Legal Services Manager
> Laurie Jinkins, Assistant Secretary
> Bonnie King, HPQA Director

NWWLC 0000337

EXHIBIT DD

## RULES HEARING DELIBERATIONS

The Board continued its deliberation regarding the proposed rules for Pharmacist's Professional Responsibilities **WAC 246-863-095** and Pharmacies' Responsibilities' **WAC 246-869-010**. The Board did not take public comments or answer questions from the audience during this agenda item.

Lisa Salmi provided background on the Board's activity to date regarding the proposed rules. She stated that the Board heard testimony from 91 stakeholders and the public at the rules hearing on March 29, 2007. Of the testimony, 46 supported the rules as written and 45 opposed. The intent of the proposed rules is to promote patient safety and access to health care by emphasizing pharmacist and pharmacies responsibilities. On March 30, the Board met and discussed the testimony and supporting documents. The Board directed staff to make changes to the Small Business Economic Impact Statement (SBEIS) and Significant Analysis (SA). Rebecca Hille read the vision and mission statements of the Board. The Board confirmed receipt and review of the revised SBEIS and SA. The Board confirmed receipt and review of all materials from the rules hearings. Board members Gary Harris and Vandana Slatter, who were not present during the hearing or deliberation on March 30, confirmed that they have reviewed all materials and have no questions at this time.

Tim Fuller summarized the changes made to the SBEIS, a directed by the Board. Mr. Fuller's presentation was followed by Andy Fernando's summary of changes to the Significant Analysis. Changes requested by the Board consisted of clarifying the explanation of potential costs and benefits in both documents.

Gary Harris confirmed, as stated in the SA, that "the rules are needed to minimize barriers to health care and to reduce risks for a patient's health when there may be an emergent need for a prescribed drug or device or a timely preventative use is essential to drug efficacy."

Madame Chair Hille asked if there is a consensus among the Board that the changes and information contained in the SBEIS and SA meet the direction of the Board. All agreed.

Following the approval of the SBEIS and the SA the Board was asked to discuss the proposed rule language.

Dan Connolly expressed the challenges and thoughtful work that went into crafting these rules, and acknowledges that it is difficult to craft rules that would satisfy all parties. He went on to state that the Board represents the people of the state of Washington and is charged with protecting their health and safety and ensure access to health care. The proposed rules will meet this requirement. George Roe concurred.

Vandana Slatter stated that this is a very complex issue and wished to acknowledge the compassion and commitment of the citizens of Washington in their active participation/interest in their health care.

NWWLC 0000338

Susan Teil Boyer acknowledges that it has been a difficult process, but also felt the proposed rules were well crafted and protecting patients is what the Board does. Ms. Teil-Boyer stated that the first line of WAC 246-869-095 is the key statement "a pharmacist's primary responsibility is to ensure patients receive safe and appropriate medication therapy." She stated that pharmacists will need to adjust to this rule.

Gary Harris stated that the Board members have read a tremendous amount of information and stakeholder input over the past sixteen months related to these rules. Mr. Harris declared that the Board has made a good effort to draft the best rule it can.

Mr. Harris also stated that it is not the intent of the Board or the rule to expect every pharmacy to stock every drug
, in every strength, for every medical condition. There are many options available in this new rule that would allow a pharmacist to provide service to patients.

Rosemarie Duffy also acknowledged how challenging this process was and commended the Board for its professionalism and staff for their work.

**ACTION:** Gary Harris moved that the Board accept **WAC 246-863-095** Pharmacist's Professional Responsibilities as it is currently amended. George Roe second. **MOTION CARRIED 6-0.**

**ACTION:** George Roe moved that the Board accept **WAC 246-869-010** Pharmacies Responsibilities. Vandana Slatter second. **MOTION CARRIED 6-0.**

The adopted rules will become effective 31 days after filing with the Code Reviser's office. The anticipated effective date is mid-June and all interested parties will be notified.

## CONSENT AGENDA

1.2     Pharmacy & Other Firm Application Approval
- Pharmaceutical Firms – New and Closed 2/11/07-3/13/07

1.4     Pharmacy Tech Training Program Approval
- Lake Chelan Community Hospital
- Coulee Community Hospital
- TLC Integrative Pharmacy
- Republic Drug Store
- Shiraz Specialty Pharmacy
- Toledo Pharmacy
- University of Medicine of Pharmacy Bucuresti Romania – Ionela Todoran
- Apollo College - Bosie ID – Jennifer Benger
- Western Career College – Emeryville CA – Maninder Kaur
- Allied College – St Louis MO – Melissa Fagan
- University of Montana-Missoula – Shannon Beadle
- San Antonio College of Medical & Dental Assistants – San Antonia TX –Rebecca Ortiz
- San Joaquin Valley College – Visalia CA – Ronald K. Johnson

NWWLC 0000339

**105**

- United Education Institute – San Diego CA –  Joseph G. Quintella
- Pines City Colleges – Baguio City Philippines - Vanelli G. Ignacio

1.5    Collaborative Drug Therapy Agreement Acceptance
- Inpatient Medication – Virginia Mason – Various
- Anticoagulation – Cascade Valley Hospital/Clinics - Various
- Refills/Initiating or Continuing Drug Therapy – Community Health Centers Snohomish County – Various

1.8    Board Minute Approval – March 1, 2007

Items 1.1 – Pharmacist License Application Approval; 1.3 – Pharmacy Technician Application Approval; 1.6 – Automated Drug Dispensing Device Acceptance; and 1.7 – Sample Distribution Requests were deleted from the consent agenda. **ACTION:** George Roe moved that the Board approve 1.2, 1.4, 1.5, and 1.8 of the consent agenda. Susan Teil-Boyer second. **MOTION CARRIED 6-0.**


**REPORTS**

Acting Executive Director
    *Lisa Salmi reported:*
- Performance Auditors continue to meet with credentialing and investigative staff and we expect they will be in the building through April. The final report to the legislature is due in July.
- Staff continues to serve on committees to plan for the conversion to the new licensing program, eLicense. Doreen Beebe and Janelle Teachman participated in intensive training on the system in March. The will serve as trainers for staff members. The implementation date of the new licensing program is February 2008.
- Grace Cheung and Ms. Salmi are participating in the HSQA Organization Review workgroups -Inspection and Compliance Workgroup and Customer Service Workgroup, respectively. Judy Haenke, Program Manager for the Veterinary and Optometry Boards, is on the Health Professions and Facilities Workgroup.
- The Food and Drug Administration recently visited several compounding pharmacies in the state to request voluntary samples of compounded products. The products will be tested for sterility and to analyze the contents. We have heard that Senator Kennedy is working on a bill to bring compounded products under stronger regulation by the FDA and add limits to their distribution. State pharmacy boards currently regulate compounding pharmacies at the state level. Under Senator Kennedy's proposal, primary oversight for compounded products would shift to the FDA.
- Quarterly Investigator meeting was held on March 7-8. Susan Teil-Boyer represented the Board at these meetings.
- The waiver request to DEA asking permission for the PH:ARM pilot project to collect controlled substances was sent in March. The waiver request received support from numerous state and private agencies including the Governor, Attorney General, Mary Selecky and the Department of Ecology. To date, there have been 2 incinerations.
- The Department has granted the Board authorization to purchase new computers for field investigators.

NWWLC 0000340

- Met with representatives of the DOH Trauma Program to prepare for a briefing to Mary Selecky on strategies to reduce poisoning deaths in Washington State. Washington State is seeing an epidemic of poisoning deaths from unintentional drug overdoses. The high risk groups include males 35-45 years of age. Washington State data and national data suggest the increase is due to intentional abuse of prescription drugs, especially pain medications.
- Tim Fuller and Ms. Salmi will meet with representatives of Facilities Services and Licensing and the Executive Director of the program that administers the Health Care Assistance Program to discuss issues concerning the scope of practice of Health Care Assistants. Currently, HCA are only allowed to administer injectable drugs (e.g., vaccines and numerous other injectable meds); but not the oral ancillary medications ordered by the provider (e.g., the Tylenol that goes with the vaccination). A Seattle hospital has asked the Department to grant an exemption to allow Health Care Assistants to administer oral meds as well.
- Stakeholder work will begin soon on establishing rules for pharmaceutical services in correctional facilities.
- Currently recruiting for four positions; credentialing manager, support staff for discipline, pharmacy investigator, and the Executive Director. The application deadline for the Executive Director position is April 30th.
- The NABP Annual Meeting will be held May 19-22 in Portland, Oregon. Susan Teil-Boyer, Gary Harris, Rebecca Hille and George Roe will represent the Board. Doreen Beebe, the investigative staff and Ms. Salmi will also attend.
- Tim Fuller, Jim Doll and Ms. Salmi will be participating in this year's Strategic National Stockpile Reception Storage and Staging annual full-scale exercise (WASABE 9 – 2007) on October 30th in Spokane.
- Upcoming meetings: HPQA Annual Leadership Conference - May 14, Radisson Hotel in Seattle; HPQA Annual Board/Commission and Committee Conference – September 27-28, Renton Holiday Inn in Renton; Citizen Advocacy Center Meeting – October 31-November 2, Edgewater Hotel in Seattle.

Board Member Reports:

*George Roe* accompanied Jim Doll on an inspection of the Yakima Valley Farm Workers Clinic – Call center. (Representatives of YVFWC were unable to attend. – this agenda report has been deferred to a future meeting.)

Commented on the Washington State Pharmacy Association's webpage encouraging patients to take an active role in their health care by helping their physicians and pharmacists to prevent medication errors by carrying a list of their medications and to question anything if it doesn't appear right.

*Susan Teil-Boyer* spoke briefly about medication reconciliations – a new requirement by the Joint Commission on Accreditation of Health Care Organizations and Hospitals.

Ms. Teil-Boyer attended the quarterly Investigators' Meeting held in March. She congratulated the Investigators and the Chief Investigator for their great work!

NWWLC 0000341

*Gary Harris* commented on the March 1 stakeholder meeting regarding SOMA and his role as Board sponsor.

Assistant Attorney General

*Joyce Roper* updated the status of the Ongom Case regarding the standard of evidence in health practitioners' disciplinary cases. A petition for review of the Washington's court ruling has been filed with the US Supreme Court. The Association of Nursing Boards and a patient advocacy group have signed on to the petition as amicus curiae (friends of the court) which may increase the chances the court will review the lower court's ruling. The Federation of State Medical Boards and CLEAR may sign onto the petition as well. Deadline for amicus curiae petitions is April 18th.

Consultant/Investigator Pharmacists

*Andy Mecca* reported:

- Activities of Washington State University Pharmacy Extern Andrew Bennett. Mr. Bennett is in his third week and has been in the field conducting inspections, case management team meetings and various other functions.
- Mr. Mecca will be holding an electronic stakeholder comment period regarding the petition for rulemaking requesting the placement of carisoprodol in schedule IV of the Uniformed Controlled Substance Act. He will update the Board on the comments received at the May meeting.
- Attended the Washington State Patient Safety Coalition Conference held at SeaTac on March 22nd. The keynote speaker was Don Berwick, the co-founder and CEO of the Institute for Healthcare Improvement, which has the "5 Million Lives" campaign. Topics included patient's perspective of medication errors, systems approach to medication error, etc. On April 5th attended a meeting regarding the Opioid Guidelines for chronic and ongoing pain management. Guidelines are written and they are starting an educational pilot program to get information out.

*Tim Fuller reported:*

- He confirmed with Buck Stevens of PDX-Rx systems that faxing a copy of the original prescription will meet the Board's intent that the central fill final check pharmacist has the ability to view an image of the prescription.
- Mr. Fuller indicated that the Emergency Response Strategic National Stockpile is planning its first full scale exercise to be held in Eastern Washington in Spokane. He acknowledged that there will be challenges in terms of logistics and recruiting volunteers.
- Mr. Fuller shared that he recently visited the Bellegrove/Stilliguamish tribe telepharmacy operation. He indicated that the video transmission satellite systems they were using is inadequate and will provide follow-up to the Board at a future meeting.

Chief Investigator

*Grace Cheung* distributed copies of the Chief Investigator's report which highlighted investigations and inspections for the month of February. Ms. Cheung also briefed the Board on the failed recruitment efforts for the Central Washington Investigator. Staff has broadened the recruitment efforts by posted notices in the Spokesman Review. The Board asked if part-time or job sharing should be considered.

NWWLC 0000342

- Tim Fuller, Andy Mecca, Dick Morrison and Kelly McLean assisted with the Pharm 440 class at the University of Washington. Pharm 440 focuses on how communication influences the pharmacist's activities in designing, delivering, and managing patient-focused pharmaceutical care e.g. smoking cessation programs.
- On March 10th, Stan Jeppesen and Andy Mecca will help out with the UW Law Class. Staff is conducting a law book index review for the development of an electronic law book (CD).
- Investigator's Meetings
    June 6/7 – Dan Connolly
    September 12/13 – George Roe
    December 5/6 – Vandana Slatter
- Due to workload challenges Board Investigators will decline doing the Consumer Safety Product inspections.
- Ms. Cheung acknowledged Lisa Salmi for negotiating funds for new equipment for the investigators and approval to attend the NABP annual conference.

Program Manager
*Doreen Beebe reported:*
- Attended "Train the Trainer" training the 3rd week of March for eLicensing. The implementation is planned for early 2008 and will show multiple credentials on one screen. It should be helpful with our restructure.
- The Office Assistant 3 position has been filled by Cheryl Christensen, who transferred from the Department of Social and Health Services.

## EXECUTIVE SESSION

The Board adjourned at 12:00 p.m. for the Executive Session to discuss personnel issues and pending litigation.

The Board reconvened at 1:05 p.m. for Presentations and Discussions.

## PRESENTATIONS

Presentation of the Secretary of Health's Sanction Guidelines. PowerPoint and handouts facilitated by Karl Hoehn, Health Prof Sec 2, HSQA. Mr. Hoehn indicated that the Secretary adopted the guidelines on May 31, 2006 for use in the professions she regulates. Mr. Hoehn stated public protection is paramount consideration for the guidelines which provide framework for discipline with consistency and ensures connection between the conduct and sanction. The guidelines involve 5 steps which include 7 categories of conduct. If more that one conduct is under review, they are prioritized with the additional charges as aggravating. We are largely compliant with the guidelines already. **ACTION:** Vandana Slatter moved that the Board adopt the guidelines with the understanding that it is still in the development process. Dan Connolly second. **MOTION CARRIED 6-0.**

NWWLC 0000343

**Board Goals – 2007/2009.** Tim Fuller provided an overview of the Current Rules Workload.

- **Complete Rule Process for the Top Five Rule Priorities**
- Correctional Facilities – stakeholder meetings should begin to occur within the next 6 weeks
- Pharmacy Technician National Standardized Examination – will need to revamp the technician education.  Susan Teil-Boyer and Rosemarie Duffy volunteered themselves as sponsors.
- Precursor Suspicious Transaction – has been pushed back to July 2007.
- Add SOMA to CSA – the next step is electronic stakeholder meetings and will report back at next Board meeting.
- Update Wholesaler Rules – the regulations need to be looked at and may require legislation.   Per Andy Mecca, with SOMA and Correctional Facilities, probably fall at the earliest (or early next year).  Pedigree – need AAG opinion on whether we have authority to require electronic pedigree -- (federal – authorized distributor of record – other areas in our regulations that needs to be further flushed out – security, storage etc).
- Update Animal Control Agency and Humane Society Rules – Doreen Beebe stated the guidelines have been drafted but have not been distributed to stakeholders yet.  There will be a review in July 2007.
- **Increase Communication & Awareness to the Profession and Public**
- Acknowledge Board's Accomplishments
- Communicate Board's Mission & Vision
- "Frequently Asked Questions"
- For Public Safety Retaining Pharmacist Investigators
- **Establish Continuing Education Credit for Attending Board Meetings**
- **Communicate Information via Email to Washington Pharmacists**

**Reorganization/Restructure.** Laurie Jinkins, Assistant Secretary of Health Systems Quality Assurance, distributed a current organizational chart which includes the following offices:

- Facilities and Services Licensing – over 7,000 facilities
- Emergency Medical Services & Trauma System – Access to Trauma care – system throughout the state of Washington and injury prevention
- Community and Rural Health – recruit Healthcare practitioners in rural areas – hospitals
- Health Professions Quality Assurance – Health Professions  57 professions – regulated by DOH or in combination with Boards and Commissions – 2007 Legislation will create 3 new professions

Ms. Jinkins continued to explain that in December 2005 the division undertook a Strategic Plan to address concerns by the public and legislators on how responsive we are and if we are structured in a way best to ensure safe and appropriate healthcare; and improving public confidence. The plan's priorities are:

- The development of a single complaint process
- Establishing common business practices throughout the department

110

NWWLC 0000344

- Enhancing data management
- Utilizing technology and enhancing/updating our data and systems
- Improving workforce diversity, competency and satisfaction

Under the Office of the Assistant Secretary, five new functional offices have been proposed:

- Inspection and Compliance – to include investigators and inspectors for more consistency and a systems based approach to workload management
- Legal Services – won't change very much, remain similar to current
- Customer Service – initial point of contact public/credential holder contact.
- Community Health Systems – to include EMS & Trauma and Community and Rural Health - Office designed to link communities with the health care they need, ensuring access.
- Health Professions and Facilities – Support for Boards and Commissions, rules development and education of practitioners – prevention oriented.

The Office of the Assistant Secretary anticipates additions of a Human Resource Workforce Analyst and Communications Consultant. Anticipated implementation in the Fall 2007.

Board members expressed their belief that maintaining expertise in the field investigators is critical in achieving the goals of the Board through inspections, investigations and providing technical assistance to the profession.

Ms. Jinkins indicated that she would not anticipate that non-pharmacists would be doing inspections or pharmacy related investigations unless appropriate. Ms. Jinkins invited Board members to either call or email her if they have any questions. She also mentioned the RIP (Rumors In Progress) page on the DOH website; which is updated weekly in efforts to keep lines of communication open and transparent.

Bonnie King, Director of Health Professions Quality Assurance, provided an update on the recruitment for the Executive Director position for HPS4. The recruitment closes on April 30th and interviews will be conducted mid-May. The Board will be involved in the interview process and must confirm the Secretary's selection. Ms. King complimented Lisa Salmi on her role as Acting Executive Director.

## DISCUSSION

2007 Legislation Update
Lisa Salmi reported:

- *ESSB 6032 Medical use of marijuana* - this bill looks like it will pass. The department will have to adopt the new rules by January 1, 2008. The bill allows patients to have a 60 day supply and helps to ensure that the marijuana is received from a safe, consistent source. However, marijuana obtained under this bill is still federally illegal.
- *SHB1553 - Prescription Monitoring Program* –this bill has died but the PMP program has been added to the Blue Ribbon Commission bill, which is still alive, but has transfers

NWWLC 0000345

the program back and forth from the Washington State Health Care Authority to the Board of Pharmacy.

- *2SHB1103* –contains language transferring the authority to investigate to the Secretary – this bill has died.
- *SHB1300 Agency Request Legislation* – appears to still be alive; 2 other bills have been added.
- *EHB1667 – Health Professions Licensing Fees* – this bill has changed multiple times. It calls for a three tier fee structure based on the type of credential - license/registration/certification.
- HB1331/SB5485/SSB5485 - Vet technician
- New Professions – Animal massage practitioner, Dental Assistants Registration, Athletic Trainers, and Physical Therapy Assistants

Presentation of Agreed Orders

**Business Meeting Adjourned**

There being no further business, the Board adjourned at 4:05 p.m. The Board of Pharmacy will meet again on May 17 – 18 in Vancouver, Washington.

*Respectfully Submitted by:*

_____

*Cheryl Christensen, Board Staff*

*Approved on May 17, 2007*

_____

*Rebecca Hille, Chair*
*Board of Pharmacy*

NWWLC 0000346

REDACTED

**From:** Pam Crone
**Sent:** Tuesday, October 17, 2006 7:49 AM
**To:** 'shana.melanson@gov.wa.gov'
**Subject:** Board of Pharmacy questions

Shana,

Thank you so much for giving the Northwest Women's Law Center an opportunity to comment on the interview and vetting process of applicants for the vacant positions on the Board of Pharmacy. We are eager to continue to partner with Governor Gregoire on Board of Pharmacy related issues and other issues of importance to women and their families of Washington State.

First, both Nancy Sapiro and I would be honored to participate on an interview panel for the two up-coming vacancies. Nancy and I both have extensive interviewing experience and a desire to serve the Governor in this important mission.

Second, we would submit the questions below for your consideration to be asked of potential appointees.

- What do you think your role would be is as a member of this Board?
- To whom do you owe a duty? Describe that duty.
- Describe your membership on other committees. Have you ever chaired a committee? What do you think the role of the chair is?
- What is your knowledge of parliamentary process? Would it be helpful to include training in parliamentary process in an orientation for new and current board members?
- As a member of this board, who and what would help to inform your decision making? Please rank in the order of priority:

  Public
  Public members of the Board
  Pharmacist members of the Board
  Legal advice from the Assistant Attorney General
  Board of Pharmacy Executive Director
  Experts in the field
  Other public officials

- What is the duty of the pharmacist in meeting patient/customer needs?
- What is the pharmacist's role in determining those needs?
- When does a pharmacist fail to meet those needs?

I would be happy to discuss with you further the questions above, why we believe they would yield critical information and how you might value potential appointees' responses.

Thanks again. I look forward to hearing from you. Pam

Pam Crone, Lobbyist
Northwest Women's Law Center
pjcrone@comcast.net
206-650-0020

NWWLC 0000921

## ATG MI MDS Printing

| | |
|---|---|
| **From:** | Melanson, Shana (GOV) |
| **Sent:** | Thursday, November 09, 2006 7:01 PM |
| **To:** | Hulet, Christina (GOV) |
| **Subject:** | FW: Response to Governor's Request Concerning the Board of Pharmacy |

---

**From:** Rose, Elaine [mailto:Elaine.Rose@ppnetworkwa.org]
**Sent:** Tuesday, October 17, 2006 3:45 PM
**To:** Melanson, Shana (GOV)
**Subject:** RE: Response to Governor's Request Concerning the Board of Pharmacy

Thanks Shana.
Elaine

---

**From:** Melanson, Shana (GOV) [mailto:Shana.Melanson@GOV.WA.GOV]
**Sent:** Tuesday, October 17, 2006 3:28 PM
**To:** Rose, Elaine; Hulet, Christina (GOV)
**Cc:** Luftig, Amy; tmconnor
**Subject:** RE: Response to Governor's Request Concerning the Board of Pharmacy

Rose,
Thank you for your prompt response and Planned Parenthood's willingness to be part of this process.  I will be in touch within a couple of weeks with next steps.

Again, thank you,

Shana Melanson

Shana Melanson
Executive Appointments Analyst for Boards & Commissions
Office of Governor Christine O. Gregoire
Phone: 360.902.4111
Fax: 360.753.4110
Boards & Commissions Online:
http://www.governor.wa.gov/actions/appointments/boards/

---

**From:** Rose, Elaine [mailto:Elaine.Rose@ppnetworkwa.org]
**Sent:** Tuesday, October 17, 2006 1:58 PM
**To:** Melanson, Shana (GOV); Hulet, Christina (GOV)
**Cc:** Luftig, Amy; tmconnor
**Subject:** Response to Governor's Request Concerning the Board of Pharmacy

Dear Shana and Christina:

Thank you for the invitation to participate in the Governor's interview process for the two upcoming vacancies on the Washington Board of Pharmacy.  We appreciate the opportunity to work with your office to help ensure that

1

GOV0003378

**114**

the members of the Board are well suited and qualified to "protect and improve the health of people in Washington State."

Amy Luftig (amy.luftig@ppnetworkwa.org) and Theresa Connor (Tmconnor1@comcast.net) have valuable experience working with this board as well as other Washington State Boards and Commissions and will offer valuable perspectives to this process.   I nominate them to serve the Governor as members of the interview panel.

In addition, we suggest the following questions for the interview process.

**More General Questions:**
- What are the paramount duties of a pharmacist and what do you believe is the Board's role with regards to ensuring that those duties are carried out?
- What contribution or change would you like to make to the Washington Board of Pharmacy?
- What do you believe are the paramount duties of a Pharmacy Board member?
- How do you perceive pharmacists' role in the delivery of health care in Washington?
- What would you do as a board member to ensure that complaints against pharmacists are investigated and that there is appropriate follow-up for those who file complaints regarding pharmacist misconduct or ethical violations?
- What type of consensus building experience do you have?  Please provide examples from your personal experience.

**More Specific Questions:**
- Do you believe that pharmacist refusals for moral or personal reasons pose a problem in Washington?
- How would you handle a complaint brought before the board that a patient was refused a service by a pharmacist because of the personal beliefs of that pharmacist?

Thank you for soliciting our input and participation.  We look forward to working with you throughout this process.

Elaine

Elaine Taylor Rose
Executive Director
Planned Parenthood Public Policy Network of WA
206-328-7735

GOV0003379

115

**ATG MI MDS Printing**

| | |
|---|---|
| **From:** | Hulet, Christina (GOV) |
| **Sent:** | Friday, November 10, 2006 8:35 AM |
| **To:** | 'KarenCooper@ProChoiceWashington.org' |
| **Subject:** | FW: Pharmacy Board Interview Panel |

Karen,
I spoke with Shana Melanson yesterday and we decided to have one person per organization on the interview panel (rather than two). So that would be one from NARAL, WSPA, Planned Parenthood, and NW Women's Law Center.  With that, I'm assuming you will represent NARAL, and so will not contact Suone Cotner below.

Thanks,
Christina

---

**From:** Karen S. Cooper [mailto:KarenCooper@ProChoiceWashington.org]
**Sent:** Friday, November 03, 2006 10:40 AM
**To:** Melanson, Shana (GOV)
**Subject:** Pharmacy Board Interview Panel

Thank you for the opportunity to participate this on important panel. The two names I would like to submit are:

Suone Cotner
1419 35th Ave S
Seattle, WA 98117
(h)  206.██████
(w) 206 464-1011
Scotner@wstla.org

Karen Cooper
8601 SE 63rd Street
Mercer Island WA 98040 (other contact info below)

Karen S. Cooper
Executive Director
NARAL Pro-Choice Washington
206-624-1990
karencooper@prochoicewashington.org

GOV0003380

**116**

**ATG MI MDS Printing**

| | |
|---|---|
| **From:** | Pam Crone [crone@pam.mailstreet.com] |
| **Sent:** | Saturday, January 06, 2007 9:11 PM |
| **To:** | Melanson, Shana (GOV) |
| **Cc:** | Hulet, Christina (GOV) |
| **Subject:** | BOP interviews and recommendations |

Shana,

I really appreciated having the opportunity to participate in the important work of interviewing candidates for the two open BOP seats. I have taken some time this weekend to review the materials you provided us on each candidate and reflect on Friday's interviews.

I understand that Governor Gregoire will consider carefully the qualifications of each candidate in making her appointments to the BOP. I hope that she will also consider any recommendations the interviewers may make. I would like to supplement any observations I made on Friday with the following recommendations. Although each of the candidates would bring particular strengths and skills to the BOP, I am particularly impressed with two candidates. I wholeheartedly recommend to the Governor that she appoint Dan Connolly and Vandana Slatter to the two BOP vacancies.

I am happy to discuss further with you the qualifications of the candidates and my recommendations. I hope I have future opportunities to serve Governor Gregoire. Thank you again. Pam

Pam Crone
Legislative Consulting Services
206-650-0020
pjcrone@comcast.net

1

GOV0003499

EXHIBIT FF

REDACTED

REDACTED

REDACTED

REDACTED

**From:** Karen S. Cooper [mailto:KarenCooper@ProChoiceWashington.org]
**Sent:** Tue 8/29/2006 5:46 PM
**To:** 'Hulet, Christina (GOV)'; tmconnor@comcast.net; Nancy Sapiro
**Subject:** Letter from Gov.

Hello
I am curious about several things. Why if we consider this a victory does the Governor call it a compromise?  My members will have total fits if they think we compromised on this.  I have had several calls already today just from Postman's story.  Last night I assured my Board it was a victory.   Other wise they would have never approved it.  The compromise language is a big problem.

Will there be any follow up that this wasn't just a Planned Parenthood gig.  Our members generated over 10,000 emails and petitions to the Pharmacy Board and the Gov. Office.  If the Governor disregarded all of these citizens or if no one even told her of our efforts we have a few problems.

Karen S. Cooper
Executive Director
NARAL Pro-Choice Washington
206-624-1990
karencooper@prochoicewashington.org

1

NWWLC 0000466

118                                    EXHIBIT GG

REDACTED

**From:** Pam Crone
**Sent:** Thursday, April 20, 2006 2:12 PM
**To:** 'ron.judd@gov.wa.gov'
**Cc:** 'Hulet, Christina (GOV)'; 'gayatri.eassey@gov.wa.gov'
**Subject:** Board of Pharmacy Coverage

Dear Ron,

Below are some links to press coverage on the pharmacy issue.  We have had two days of hearings with a great turnout and compelling testimony urging the Board to not promulgate a rule that would allow pharmacists to refuse to fill lawful prescriptions.

The great turnout was no accident. We have spent considerable energy the last couple weeks mobilizing folks to attend the hearings and to email and write letters to the Board of Pharmacy. As you know, over 70 organizations signed our petitions to the Governor and to the Board of Pharmacy. We had testimony from two state commissions, Washington State Human Rights Commission and the Washington State Commission on Hispanic Affairs. These are commissions dedicated to ensuring that all Washingtonians are treated equally and were clearly concerned that rules allowing pharmacists to refuse to fill lawful prescriptions would be discriminatory and unlawful.

We were disappointed that no one from the Governor's office attended either the Yakima or Tumwater hearing. We think this was a missed opportunity for the Governor to demonstrate her interest and commitment on this issue.

Tomorrow the Board is meeting to consider next steps. Although there is no opportunity for public comment, we will be there to watch the deliberations. I hope that someone from the Governor's office might be available to attend this meeting tomorrow and take some time to chat with us about how the Governor might become more involved in this issue.

Pamela Crone, J.D.
Northwest Women's Law Center
206-650-0020
pjcrone@comcast.net

Here are the links:

ttp://www.komotv.com/stories/43023.htm


http://www.theolympian.com/apps/pbcs.dll/article?AID=/20060420/NEWS01/60420008/1006
http://www.thestranger.com/seattle/Content?oid=31806

1

NWWLC 0000390

119                                EXHIBIT HH

http://seattlepi.nwsource.com/opinion/267302_pharmacy20.html
http://www.spokesmanreview.com/opinion/story.asp?ID=126995

NWWLC 0000391

REDACTED

REDACTED

**From:** Luftig, Amy [mailto:Amy.Luftig@ppnetworkwa.org]
**Sent:** Thursday, June 08, 2006 2:10 PM
**To:** Eassey, Gayatri; Judd, Ron (GOV); Hulet, Christina (GOV); Holly.Armstrong@gov.wa.gov
**Subject:** Josh Feit's Article in this Week's Stranger

Hi, Gayatri, Christina and Ron –

You may or may not have seen the article that Josh Feit wrote in the Stranger this week. As I'm sure you know, he has been a vocal critic of the Governor throughout this Pharmacy Board issue.

A few of us interviewed with him over the weekend. During the interview it became clear that he was trying to push us into publicly expressing frustration with the Governor. We would not, preferring to turn his attention to criticizing the Board's *policy*, not the Governor or even the Board itself. After the interview, Nancy and I both expressed concern that he would manipulate our conversation into the story he clearly wanted to tell.

NWWLC 0000413

The majority of the article was fine.  That said, at the end, Josh misquoted and took several quotes out of context in order to portray Nancy and I as publicly critical of the Governor.  I want to assure you that we are continuing to commend the Governor in the media and with our membership, and are standing with her in our mutual goal of having the Board revisit this policy.  The reporter, not Planned Parenthood or the Law Center, has a chip on its shoulder

I wanted to bring this to your attention. Planned Parenthood has responded to Josh's article, and we will also be sending an email to our statewide membership commending the Governor's leadership on this issue.

Let me know if you have any questions.

Thanks,

Amy Luftig
Deputy Director of Public Policy
Planned Parenthood Network of Washington
(360) 561-9144

NWWLC 0000414

REDACTED

---

**From:** Hulet, Christina (GOV) [mailto:Christina.Hulet@OFM.WA.GOV]
**Sent:** Friday, June 30, 2006 3:58 PM
**To:** Luftig, Amy; Judd, Ron (GOV)
**Cc:** nsapiro@nwwlc.org; pjcrone@comcast.net; Rose, Elaine; Riley, Roberta; tmconnor1@comcast.net; Reese, Kelly; Bernick, Susan; blythechandler@prochoicewashington.org; karencooper@prochoicewashington.org; lonniejb@comcast.net
**Subject:** RE: PHARMACY Duty to Dispense

I just spoke with DOH and confirmed that the Board of Pharmacy is not forwarding the CR-102 to DOH by July 5th. Instead, DOH has learned that a number of board members are interested in filing a motion to reconsider at the July 20th meeting. If the motion to reconsider succeeds, the Board can either edit/replace the current draft with a new one that day (which DOH would then file as a CR-102); or they could leave the motion to reconsider open, basically suspending the current draft but not replacing it with another.

I'm going to review both our draft versions (pharmacy and pharmacist this weekend), and recommend Ron that we touch base with the Governor and team early next week in preparation for the 20th.

1

NWWLC 0000417

Christina

-----Original Message-----
**From:** Luftig, Amy [mailto:Amy.Luftig@ppnetworkwa.org]
**Sent:** Thursday, June 29, 2006 7:11 PM
**To:** Hulet, Christina (GOV); Judd, Ron (GOV)
**Cc:** nsapiro@nwwlc.org; pjcrone@comcast.net; Rose, Elaine; Riley, Roberta; tmconnor1@comcast.net; Reese, Kelly; Bernick, Susan; blythechandler@prochoicewashington.org; karencooper@prochoicewashington.org; lonniejb@comcast.net
**Subject:** PHARMACY Duty to Dispense
**Importance:** High

Hi, Christina –

Here is a draft rule that puts the ownership on the <u>pharmacy</u> – rather than the pharmacist – to provide the drug to the patient. We are comfortable with this language.

The legal team who looked over WSPAs comments feel that there <u>is</u> a substantive difference between therapeutic substitution and therapeutic alternatives. They feel that "alternatives" could include a referral. Substitution means replacing one thing with another and alternative means choosing between two things <u>or</u> two different courses of action. So while we want to be sensitive to the terms of art used by the profession, alternative leaves the door open to a referral.

Finally, I recently learned (and perhaps you already know this) that the Board of Pharmacy has until July 5th to get the CR-102 to DOH. DOH then has two weeks to send the approved package to the code reviser by July 19th. . *However* - because DOH can send the package back to the Board of Pharmacy for any number of reasons and any number of times, it is possible that they could not make that deadline. Just FYI.

Finally, I am attaching a list of our coalition partners, FYI.

I'll be on vacation until July 17th, but could be reached by phone in a pinch. After the 17th I'll be in DC but available by phone and email.

Theresa Connor (tmconnor1@comcast.net) and Elaine Rose (Elaine.rose@ppnetworkwa.org) should be your Planned Parenthood points of contact while I am away.

Thanks –
Amy

2

NWWLC 0000418

124

REDACTED

**From:** Hulet, Christina (GOV) [mailto:Christina.Hulet@OFM.WA.GOV]
**Sent:** Thursday, July 06, 2006 3:41 PM
**To:** Nancy Sapiro
**Cc:** pjcrone@comcast.net
**Subject:** RE: Draft rule language for discussion on pharmacist/pharmacy responsibilities

Here's the changes from our conversation -think it captures everything, but if not let me know...thanks!

1

NWWLC 0000421

REDACTED

1

NWWLC 0000448

REDACTED

REDACTED

2

REDACTED

NWWLC 0000450

**From:** Hulet, Christina (GOV) [mailto:Christina.Hulet@gov.wa.gov]
**Sent:** Monday, August 21, 2006 12:04 PM
**To:** Schafer, Rod (DOHi); Don Downing; Saxe, Steven (DOH); Roper, Joyce (ATG); Brown, Marty (GOV); Nancy Sapiro; dmdockter@aol.com; Beyer, Jane; Fredericks, Linda (GOV); Rose, Elaine; Jonnel Anderson (E-mail)
**Subject:** Pharmacy rule - Wednesday meeting

3

Attached is a revised draft of our pharmacy rule based on our meeting two weeks ago.  Joyce provided us a couple of alternatives based on the group's feedback, which we can discuss in detail on Wednesday.

As a reminder, the meeting is this Wednesday, 3-5pm, in the Insurance Building on Capitol Campus, Policy Office conference room 100V.  A conference call has been set up for those unable to make it in person:

Phone number: 360-357-2903
PIN: 17136#

I am emailing the same group we had last time with the addition of Jonnel Anderson, who is joining us at the request of Senator Parlette.  If anyone else is unable to attend but would like to have someone in your place, please let me know.


Thanks,
Christina

<<BOP Draft - Aug 10 2006 jar.doc>>

4

NWWLC 0000451

**129**

REDACTED

REDACTED

**From:** Hulet, Christina (GOV) [mailto:Christina.Hulet@gov.wa.gov]
**Sent:** Wednesday, August 23, 2006 5:50 PM

1

NWWLC 0000460

130

**To:** Schafer, Rod (DOHi); Don Downing; Saxe, Steven (DOH); Roper, Joyce (ATG); Brown, Marty (GOV); Nancy Sapiro; dmdockter@aol.com; Beyer, Jane; KarenCooper@ProChoiceWashington.org; Stacey Baker (E-mail); Jonnel Anderson (E-mail); Rose, Elaine
**Cc:** Hulet, Christina (GOV)
**Subject:** BOP meeting follow-up

Attached is a revised draft based on today's meeting with notes highlighted in green to reflect where we landed on key issues and where additional follow-up is needed.

For those follow-up items, please give me your feedback by Friday.  Marty and I will also follow-up with the Governor.

Thanks again,
Christina

<<BOP Draft - Aug 23.doc>>

2

NWWLC 0000461

131

REDACTED

----- Original Message -----
**From:** Hulet, Christina (GOV)
**To:** Jeanne Koenings
**Cc:** Janet Blanding ; Peyton, Brian (DOH) ; Saxe, Steven (DOH)
**Sent:** Monday, September 18, 2006 12:30 PM
**Subject:** RE: Plan B Complaints to Board of Pharmacy

Jeanne,
Thank you for the follow-up.  I am cc'ing Brian Peyton and Steve Saxe from the Department of Health so that they are also aware of this issue.

Christina

    -----Original Message-----
    **From:** Jeanne Koenings [mailto:jlkoenings@comcast.net]
    **Sent:** Saturday, September 16, 2006 1:47 PM
    **To:** Hulet, Christina (GOV)
    **Cc:** Janet Blanding
    **Subject:** Plan B Complaints to Board of Pharmacy

The women who have been boycotting the Storman's family stores (Ralph's and Bayview in Olympia) would like to keep you informed about our complaints to the State Pharmacy Board.

On July 31, nine women filed 17 complaints with the State Pharmacy Board against the pharmacies at Ralph's Thriftway on 4th Avenue in Olympia, Albertson's on Pacific Avenue in Olympia, and Walgreen's in Lacey.  The complaint forms used were those the Pharmacy Board maintains on its website.

On September 8th, each of these nine women received a large certified package from the Pharmacy Board, stating that the complainants had 10 days to fill out the enclosed forms and get them back to the Pharmacy Board, i.e., these forms had to be filled out and in the offices of the Pharmacy Board within 10 days.  The forms were different from the original complaint forms and the package included more forms requiring signing confidentiality waivers and getting witness statements.  The cover letter gave the name and phone number of a staff person at the Pharmacy Board who could be contacted if the complainants had questions.  Unfortunately, callers to the Pharmacy Board learned that that person is on vacation for 4 of the 10 days!

This situation is a very disturbing development.  It seems to us like a very thinly veiled attempt to get the complainants to drop their complaints.

We wanted to inform you of this tactic on the part of the Pharmacy Board and ask for your assistance in righting this wrong.

If you would like more information, please contact Janet Blanding at jwblanding@earthlink.net.

26

NWWLC 0000467

**132**

Thank you.

NWWLC 0000468

133

REDACTED

REDACTED

NWWLC 0000475

REDACTED

---

From: tmconnor [mailto:tmconnor1@comcast.net]
Sent: Tuesday, October 10, 2006 5:28 PM
To: Marty Brown (marty.brown@gov.wa.gov)
Cc: Hulet, Christina (GOV)
Subject: Proposed compromise BOP language.

Hello Marty,

Thank you for your time on the phone. Attached is the proposed language
developed by Bill Fassett (WSU pharmacy faculty), Don Downing, Planned
Parenthood and the Nancy Sapiro/Pam Crone of the NWWLC. The document
includes citations to relevant statutes and the rationale/support for any
proposed changes.

Bill and Don have discussed the suggested changes with Rod Shaffer. Bill
Fassett will be presenting the language to the WSPA board on Thursday
morning. I will confer wit h Bill and Rod after their call.

While I can guarantee nothing, I am optimistic that we will be able to reach
agreement with the WSPA on language. Those of us involved in shaping this
draft believe that putting the respective duties in the correct sections of
WAC makes the rule more clear and less vulnerable to an APA challenge.

2

NWWLC 0000476

**135**

As I mentioned on the phone, restructuring the rule and even issuing a new CR-101 to cite the correct WAC sections, will not change the timeline for issuing a CR-102 in December and holding a public hearing in January.


Thanks again for your time.  Please don't hesitate to call if you have questions.


Best Regards


Theresa M. Connor

Director of Public Policy

Planned Parenthood Public Policy Network

Planned Parenthood VOTES! Washington

360.705.1965 (office)

360.561.2907 (cell)

tmconnor1@comcast.net


Note:  Confidential Information - This transmission and any files which may accompany the transmission contain information belonging to Planned Parenthood Public Policy Network of Washington or Planned Parenthood VOTES! Washington.  This information is confidential and/or legally privileged, and is intended only for the use of the individual or entity named above.  If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or taking of any action in reliance on the contents of this information is prohibited and illegal.  If you have received this transmission in error, please immediately notify us by telephone at (360) 561-2907 to arrange for the return of the transmission and any accompanying files. Thank you.

NWWLC 0000477

**136**

REDACTED

**From:** Rod D. Shafer [mailto:rshafer@wsparx.org]
**Sent:** Thursday, October 12, 2006 12:20 PM
**To:** marty.brown@gov.wa.gov; Hulet, Christina (GOV)
**Cc:** tmconnor; Bill Fassett
**Subject:** Proposed Language for Patient Access to Medications

Marty,

The WSPA Board of Directors met this morning to review the proposed language that was developed in collaboration with Theresa Connor (Planned Parenthood), Don Downing (UW School of Pharmacy), and Bill Fassett (WSU College of Pharmacy). The WSPA Board supports the concept of splitting the issue of Pharmacist's Responsibility and Pharmacies' Responsibility, and supports the clarifying language that has been developed for each.

It would be our hope that the Governor's office would concur with these changes and offer this option to the Board for their consideration. I would be happy to discuss this with you and Christina at your convenience.

Rod Shafer, R.Ph.
CEO
Washington State Pharmacy Association
1501 Taylor Ave SW   Renton, WA  98055-3139
(425) 228-7171
(425) 277-3897 fax



Fall Clinical Seminar
October 19-21 ■ Spokane, WA

NWWLC 0000501

137

REDACTED

**Attachments:** ATT596647.gif

see below.

-----Original Message-----
From: Hulet, Christina (GOV) [mailto:Christina.Hulet@gov.wa.gov]
Sent: Thu 10/12/2006 5:43 PM
To: tmconnor1@comcast.net; Pam Crone; elaine.rose@ppnetworkwa.org
Cc: Brown, Marty (GOV)
Subject: RE: Proposed Language for Patient Access to Medications

Teresa - Thanks for following up on this - both with WSPA and Naral.
I'm glad we have agreement

One thought - I'm a bit concerned that the number of technical changes
here will open the door to further wordsmithing at the meeting, which in
the past has not been constructive. I agree we need to address the
pharmacy vs.. pharmacist language given the board's word change last
month, and the concern that pharmacies don't technically dispense drugs.
But are all of these changes worth reopening the whole document? Are we
more likely to be successful if we just change the one thing the Board
changed at the last meeting?

Christina

---

From: tmconnor1@comcast.net [mailto:tmconnor1@comcast.net]
Sent: Thursday, October 12, 2006 3:33 PM
To: Hulet, Christina (GOV)
Cc: Brown, Marty (GOV)
Subject: RE: Proposed Language for Patient Access to Medications

-------------- Original message --------------
From: "Hulet, Christina (GOV)" <Christina.Hulet@gov.wa.gov>

Thank you, Rod.

Teresa - when you get a chance, can you send Marty and I the
final language that's been agreed to with these changes?

Thanks,
Christina

---

From: Rod D Shafer [mailto:rshafer@wsparx.org]
Sent: Thursday, October 12, 2006 12:20 PM
To: Brown, Marty (GOV); Hulet, Christina (GOV)
Cc: tmconnor; Bill Fassett

NWWLC 0000919

Subject: Proposed Language for Patient Access to Medications

Marty,

The WSPA Board of Directors met this morning to review the proposed language that was developed in collaboration with Theresa Connor (Planned Parenthood), Don Downing (UW School of Pharmacy), and Bill Fassett (WSU College of Pharmacy). The WSPA Board supports the concept of splitting the issue of Pharmacist's Responsibility and Pharmacies' Responsibility, and supports the clarifying language that has been developed for each.

It would be our hope that the Governor's office would concur with these changes and offer this option to the Board for their consideration. I would be happy to discuss this with you and Christina at your convenience.

Rod Shafer, R.Ph.
CEO
Washington State Pharmacy Association
1501 Taylor Ave SW    Renton, WA 98055-3139
(425) 228-7171
(425) 277-3897 fax

NWWLC 0000920

REDACTED

-----Original Message-----
**From:** Melanson, Shana [mailto:Shana.Melanson@GOV.WA.GOV]
**Sent:** Tuesday, August 09, 2005 1:10 PM
**To:** Reese, Kelly
**Subject:** FW: Board of Pharmacy

Here is the agenda.  I hope this helps.  See you tomorrow.

Shana

If your are traveling on I-5 (from Seattle or Tacoma)
1. From I-5, take Orillia Rd/188th exit (# 152).

1

NWWLC 0000362

**140**

2. From Seattle: At the end of the exit ramp turn left (east) onto Orillia Rd.
3. From Tacoma: At the end of the exit ramp turn right (east) onto Orillia Rd.
4. Follow Orillia Rd. down the hill; it turns into 212th St.
5. At West Valley Hwy (68th Ave. South), turn left.
6. At South 204th St. turn right.
7. Take the second or third right, signed Creekside Entrance.
8. The Department of Health is located on the second floor of the Creekside Three Bldg. (#20435).

Lisa Salmi, Deputy Executive Director
Health Professions Section 4
Department of Health
PO Box 47863
Olympia WA  98504-7863
Voice:  (360) 236-4828  Fax:  (360) 586-4359
Lisa.Salmi@doh.wa.gov

Public Health -- Always Working For a Safe and Healthier Washington

NWWLC 0000363

141

REDACTED

53% of Doctors Favor Nonprescription Sales of Plan B, 68% Support Age Restriction, Survey
Says

 About 53% of physicians support nonprescription sales of the emergency contraceptive Plan B
but 68% support a proposal requiring prescriptions for the drug for patients under age 16,
according to a recent national survey, Reuters/Yahoo! News reports. Marketing and
communications research company HCD Research surveyed 724 doctors about Plan B and found that
53% supported sales of it without a prescription, 39% favored its distribution with a
prescription only and 8% believed it should not be distributed at all. About 32% or
respondents believed there should be no age restriction on nonprescription sales of Plan B.
The survey also found that 68% of doctors surveyed believed sales of Plan B without a
prescription would significantly reduce unplanned pregnancies and that 58% said they
personally would use the drug if necessary (Gale, Reuters/Yahoo! News, 10/3). Plan B can
prevent pregnancy if taken within 72 hours of sexual intercourse. FDA in May 2004 issued a
"not approvable" letter in response to Barr Laboratories' original application to allow Plan
B to be sold without a doctor's prescription and in January delayed a ruling on Barr's
revised application, which would allow the drug to be sold without a doctor's prescription
only to women ages 17 and older. Former FDA Commissioner Lester Crawford in August said the
agency was indefinitely deferring a decision on Barr's application and opening a 60-day
public comment period (Kaiser Daily Women's Health Policy Report, 9/21).


---------------------------
Please come and visit our site for future daily reports, or sign up for our Email-Alert
mailing list to automatically receive future reports at http://www.kaisernetwork.org/email

Daily Health Policy report
http://www.kaisernetwork.org/healthpolicyreport

Daily HIV/AIDS Report
http://www.kaisernetwork.org/HIVAIDSreport

Daily Women's Health Policy Report
http://www.kaisernetwork.org/reproductivehealthreport

-- Kaisernetwork.org, is a free service of the Kaiser Family Foundation
editor@kaisernetwork.org

2

NWWLC 0000364

142

```
---------------------- Yahoo! Groups Sponsor ---------------------~--> AIDS in India: A
"lurking bomb." Click and help stop AIDS now.
http://us.click.yahoo.com/DGdbQD/1zNLAA/xGEGAA/JxSolB/TM
-----------------------------------------------------------------~-->
```

[You requested being added to this private network.  If this is not the case, you can
unsubscribe by sending an email to: ReproductiveFreedomNetwork-unsubscribe@yahoogroups.com]


Yahoo! Groups Links

<*> To visit your group on the web, go to:
    http://groups.yahoo.com/group/ReproductiveFreedomNetwork/

<*> To unsubscribe from this group, send an email to:
    ReproductiveFreedomNetwork-unsubscribe@yahoogroups.com

<*> Your use of Yahoo! Groups is subject to:
    http://docs.yahoo.com/info/terms/

NWWLC 0000365

REDACTED

**From:** Pam Crone
**Sent:** Tuesday, October 17, 2006 7:49 AM
**To:** 'shana.melanson@gov.wa.gov'
**Subject:** Board of Pharmacy questions

Shana,

Thank you so much for giving the Northwest Women's Law Center an opportunity to comment on the interview and vetting process of applicants for the vacant positions on the Board of Pharmacy. We are eager to continue to partner with Governor Gregoire on Board of Pharmacy related issues and other issues of importance to women and their families of Washington State.

First, both Nancy Sapiro and I would be honored to participate on an interview panel for the two up-coming vacancies. Nancy and I both have extensive interviewing experience and a desire to serve the Governor in this important mission.

Second, we would submit the questions below for your consideration to be asked of potential appointees.

- What do you think your role would be is as a member of this Board?
- To whom do you owe a duty? Describe that duty.
- Describe your membership on other committees. Have you ever chaired a committee? What do you think the role of the chair is?
- What is your knowledge of parliamentary process? Would it be helpful to include training in parliamentary process in an orientation for new and current board members?
- As a member of this board, who and what would help to inform your decision making? Please rank in the order of priority:

    Public
    Public members of the Board
    Pharmacist members of the Board
    Legal advice from the Assistant Attorney General
    Board of Pharmacy Executive Director
    Experts in the field
    Other public officials

- What is the duty of the pharmacist in meeting patient/customer needs?
- What is the pharmacist's role in determining those needs?
- When does a pharmacist fail to meet those needs?

I would be happy to discuss with you further the questions above, why we believe they would yield critical information and how you might value potential appointees' responses.

Thanks again. I look forward to hearing from you. Pam

Pam Crone, Lobbyist
Northwest Women's Law Center
pjcrone@comcast.net
206-650-0020

NWWLC 0000921

**144**

REDACTED

**From:** Melanson, Shana (GOV) [mailto:Shana.Melanson@GOV.WA.GOV]
**Sent:** Tuesday, January 02, 2007 4:11 PM
**To:** tmconnor1@comcast.net
**Subject:** FW: Board of Pharmacy

Teresa,
Here is the information regarding Friday's interviews.  Please let me know if you need additional information.  Look forward to seeing you on Friday.

Shana

The rescheduled pharmacy board interviews will be held on January 5th from 9-12pm.  The interviews will be in the small conference room in the Insurance Building.  The Insurance Building is the first main building on Capitol Campus and closest to public parking.  The policy office is located on the first floor.  Below is a link with details regarding where to park.

Attached are the interview questions and an outline of the interview process.  Please feel free to contact me with any questions.  Also, Vandana Slatter was out of town when we originally scheduled interviews and will now be joining us on the 5th.  Her application should have been forwarded previously.  If anyone needs additional information, please do not hesitate to contact me.

Looking forward to seeing you all on January 5th.

Shana Melanson

Parking:
  http://www.ga.wa.gov/visitor/index.html

Shana Melanson
Executive Appointments Analyst for Boards & Commissions
Office of Governor Christine O. Gregoire
Phone: 360.902.4111
Fax:  360.753.4110
Boards & Commissions Online:
http://www.governor.wa.gov/actions/appointments/boards/

NWWLC 0001621

**145**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| STORMANS, INCORPORATED doing business as RALPH'S THRIFTWAY; RHONDA MESLER, MARGO THELEN<br><br>Plaintiffs,<br><br>vs.<br><br>MARY SELECKY, Acting Secretary of the Washington State Department of Health; LAURIE JINKINS, Assistant Secretary of Washington Health Systems Quality Assurance; GEORGE ROE, SUSAN TIEL BOYER, DAN CONNOLLY, GARY HARRIS, VANDANA SLATTER, REBECCA HILLE, ROSEMARIE DUFFY, Members of the Washington Board of Pharmacy; KATHY BAROS FRIEDT, ELLIS CASSON, DEBORAH SIOUS CANO-LEE, JERRY HEBERT, SHAWN MURINKO, Commissioners for the Washington Human Rights Commission; MARC BRENMAN, Executive Director of the Washington Human Rights Commission;<br><br>Defendants. | Civil Action No. C07-5374 |

## ATTACHMENT TO SUBPOENA – LIST OF DOCUMENTS TO BE PRODUCED

Below is a list of documents to be produced in compliance with the subpoena issued to NARAL Pro Choice Washington.

### DEFINITIONS

"Document" means any documents or electronically stored information — including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data

Attachment to Subpoena to
NARAL Pro Choice Washington

ALLIANCE DEFENSE FUND
15192 Rosewood
Leawood, KS 66224
913•685•8000  Fax: 913•685•8001

1

146                                    EXHIBIT II

compilations — stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form.

"Person" means a natural person, firm, business, association, partnership, corporation, trust, or public entity.

"You" or "your" includes anyone acting on behalf of NARAL Pro Choice Washington, including but not limited to related entities and/or affiliates, agents, employees, attorneys, and accountants.

## LIST OF DOCUMENTS TO PRODUCE

**Pursuant to the attached subpoena and the definitions above, please produce the following by the date and time noted on the subpoena:**

1.   Any and all documents from January, 2005, to the present related to communications or meetings, whether formal or informal, between you and the Washington State Board of Pharmacy, its board members, staff, employees, and/or anyone acting on behalf of the Washington State Board of Pharmacy concerning Plan B or any other drug, refusal to dispense or stock Plan B or any other drug, or the rule-making process that resulted in WAC 246-869-010 and amendments to WAC 246-863-095.

2.   Any and all documents from January, 2005, to the present related to communications or meetings, whether formal or informal, between you and the Washington State Human Rights Commission, its board members, staff, employees, and/or anyone acting on behalf of the Washington State Human Rights Commission concerning Plan B or any other drug, refusal to dispense or stock Plan B or any other drug, or the rule-making process that resulted in WAC 246-869-010 and amendments to WAC 246-863-095.

Attachment to Subpoena to
NARAL Pro Choice Washington

ALLIANCE DEFENSE FUND
15192 Rosewood
Leawood, KS 66224
913·685·8000  Fax: 913·685·8001

2

147

3. Any and all documents from January, 2005, to the present related to communications or meetings, whether formal or informal, between you and the Washington State Governor's office, its staff, employees, and/or anyone acting on behalf of the Washington State Governor's office concerning Plan B or any other drug, refusal to dispense or stock Plan B or any other drug, or the rule-making process that resulted in WAC 246-869-010 and amendments to WAC 246-863-095.

4. Any and all documents from January, 2005, to the present to or from NARAL Pro Choice Washington, or any other NARAL affiliated or related entity, board members, staff, employees, volunteers, or agents concerning your involvement and/or your decision to become involved in the rule-making process that resulted in WAC 246-869-010 and amendments to WAC 246-863-095.

5. Any and all documents, presentations, speeches, whether formal or informal, made or given to the general public or to any group or organization concerning Plan B, refusal to dispense or stock Plan B, or the rule-making process that resulted in WAC 246-869-010 and amendments to WAC 246-863-095.

6. Any and all documents disclosing the identity of the Board Members of NARAL Pro Choice Washington and/or any related or affiliated entity, including past Board Members, from 1988 to the present.

7. Any and all documents disclosing the identity of the employees, staff, volunteers, or agents of NARAL Pro Choice Washington and/or any related or affiliated entity from January, 2005, to the present.

8. Any and all surveys, research, studies, investigations, or any other documents related to any pharmacies, pharmacists, or communities (including cities and/or counties) that lack access or have limited access to Plan B or any other drug.

Attachment to Subpoena to
NARAL Pro Choice Washington

ALLIANCE DEFENSE FUND
15192 Rosewood
Leawood, KS 66224
913-685-8000 Fax: 913-685-8001

3

148

9. Any and all documents or communications regarding any objections by pharmacies or pharmacists to stocking or dispensing any drug.

10. Any and all documents or communications regarding a denial by any pharmacist or pharmacy to stock any drug or to dispense any drug to a particular person.

11. Any and all documents related to the "Plan B. Where's Yours?" campaign and the "Thank or 'Spank' Your Pharmacist" campaign.

12. Any and all documents related to any protests, pickets, marches, rallies, or any other public demonstrations or campaigns against any pharmacy or pharmacist for refusal to stock or dispense any drug.

13. Any and all documents, correspondence or any other communications from January, 2005, to the present to or from NARAL Pro Choice, the Planned Parenthood Federation of America, Planned Parenthood of Western Washington, Northwest Women's Law Center, The National Organization for Women, or the American Civil Liberties Union and/or any of those organizations' affiliates or entities (including their agents, employees, staff, board members, or anyone acting on behalf of those organizations) regarding Plan B or any other drug, refusal to dispense or stock Plan B or any other drug, or the rule-making process that resulted in WAC 246-869-010 and amendments to WAC 246-863-095.

14. Any and all documents from January, 2005, to the present related to alternatives or proposed alternatives to the current version of WAC 246-869-010 and WAC 246-863-095.

15. Any and all documents or communications regarding the case of *Stormans, et al. v. Selecky, et al.*, Civil Action No. C07-5374, currently pending in the Federal District Court for the Western District of Washington and the Federal Circuit Court of Appeals for the Ninth Circuit.

Attachment to Subpoena to
NARAL Pro Choice Washington

ALLIANCE DEFENSE FUND
15192 Rosewood
Leawood, KS 66224
913·685·8000  Fax: 913·685·8001

4

149

The Honorable Ronald B. Leighton

IN THE UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| STORMANS, INCORPORATED doing business as RALPH'S THRIFTWAY; RHONDA MESLER; and MARGO THELEN, | Civil Action No. C07-5374 RBL **CERTIFICATE OF SERVICE** |
| Plaintiffs, | |
| v. | |
| MARY SELECKY, ACTING SECRETARY OF THE WASHINGTON STATE DEPARTMENT OF HEALTH, et. al., | |
| Defendants. | |

I hereby certify that on September 8, 2008, I caused true and accurate copies of following documents:

1.   Cover letter directed to NARAL Pro Choice Washingtron;

2.   Subpoena in a Civil Case directed to NARAL Pro Choice Washington; and

3.   Certificate of Service

to be served via U.S. Mail to the following:

CERTIFICATE OF SERVICE – PAGE 1

*106479 (13438.00)

ELLIS, LI & McKINSTRY PLLC
ATTORNEYS AT LAW
601 UNION ST , STE 4900
SEATTLE WA  98101-3906
(206) 682-0565  Fax (206) 625-1052

150

1  Laura F. Einstein
   Planned Parenthood Of Western Washington
2  2001 East Madison Street
   Seattle WA 98122
3         Attorneys for Interveners/Defendants/
4  Appellants Catherine Rosman, Emily Schmidt,
   Jeffrey Schouten, Judith Billings, Molly
5  Harmon, Rhiannon Andreini, and Tami Garrard

Joyce A. Roper
Senior Assistant Attorney General
Alan D. Copsey, Assistant Attorney General
Rene Tomisser, Assistant Attorney General
Attorney General of Washington
Agriculture & Health Division
7141 Cleanwater Drive SW
PO Box 40109
Olympia WA 98504-0109
       Attorney for Defendants/Appellants
Mary Selecky, Dan Connolly, Gary Harris,
George Roe, Laurie Jinkins, Rebecca Hille,
Rosemarie Duffy, Susan Tiel Boyer, and
Vandana Slatter, Members of the Washington
Board of Pharmacy

10

11 Sara Ainsworth
   Northwest Women's Law Center
12 907 Pine St Ste 500
   Seattle WA 98101
13        Attorney for Intervenors/Defendants/
14 Appellants Catherine Rosman, Emily Schmidt,
   Jeffrey Schouten, Judith Billings, Molly
15 Harmon, Rhiannon Andreini, and Tami Garrard

Rima J. Alaily
Molly Terwilliger
Katie A. Foley
Heller Ehrman LLP
701 5th Ave Ste 6100
Seattle WA 98104-7098
       Attorneys for Intervenors/Defendants/
Appellants Catherine Rosman, Emily Schmidt,
Jeffrey Schouten, Judith Billings, Molly
Harmon, Rhiannon Andreini, and Tami Garrard

16
17 Mickey B. Newberry
   Assistant Attorney General
   Attorney General Of Washington
18 Government Compliance and Enforcement
   Division
19 1125 Washington Street SE
20 P.O. Box 40100
   Olympia WA 98504-0100
21        Attorneys for Defendants/Appellants,
   Jerry Herbert, Kathy Baros Friedt, Shawn
22 Murinko, Ellis Casson, Deborah Sious Cano-
   Lee, Yvonne Lopez Morton, Commissioners
23 for the Washington Human Rights
   Commission; and Marc Brenman, Executive
24 Director of the Washington Human Rights
   Commission

25

26

CERTIFICATE OF SERVICE – PAGE 2

*106479 (13438.00)

1      I declare under penalty of perjury that the foregoing is true and correct.  Dated this 8th day

2  of September, 2008.

3

4      _____
       Renee' Hayer
5      Legal Assistant

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

CERTIFICATE OF SERVICE – PAGE 3

*106479 (13438.00)

ELLIS, LI & MCKINSTRY PLLC
ATTORNEYS AT LAW
601 UNION ST, STE 4900
SEATTLE WA 98101-3906
(206) 682-0565  Fax (206) 625-1052

**Renee L. Hayer**

| | |
|---|---|
| **From:** | Kristen K. Waggoner |
| **Sent:** | Wednesday, December 17, 2008 1:54 PM |
| **To:** | Renee L. Hayer |
| **Subject:** | FW: Stormans, Incorporated, et al. v. Selecky, et al. -- request for conference call with the court |


-----Original Message-----
From: Roe, Becky [mailto:roe@sgb-law.com]
Sent: Wednesday, December 17, 2008 1:41 PM
To: Kristen K. Waggoner
Subject: RE: Stormans, Incorporated, et al. v. Selecky, et al. -- request for conference call with the court

Kristen, My client will provide the documents; weather permitting by the end of the week. I was listening in on the conversation so I am aware of the outcome. Thanks, Becky Roe

-----Original Message-----
From: Kristen K. Waggoner [mailto:kwaggoner@elmlaw.com]
Sent: Wednesday, December 17, 2008 12:02 PM
To: Roe, Becky
Subject: RE: Stormans, Incorporated, et al. v. Selecky, et al. -- request for conference call with the court

Becky,

Please let me know whether your client will produce the documents.  I'm happy to discuss the issue again by phone if that would be helpful.  I'm assuming your co-counsel will update you on the hearing today, but I'm happy to do that as well.

Thanks,
Kristen


-----Original Message-----
From: Roe, Becky [mailto:roe@sgb-law.com]
Sent: Wednesday, December 17, 2008 10:09 AM
To: Kristen K. Waggoner
Subject: RE: Stormans, Incorporated, et al. v. Selecky, et al. -- request for conference call with the court

Kristen- what happened to the conference call? Becky

-----Original Message-----
From: Kristen K. Waggoner [mailto:kwaggoner@elmlaw.com]
Sent: Saturday, December 13, 2008 7:00 PM
To: Roe, Becky
Subject: RE: Stormans, Incorporated, et al. v. Selecky, et al. -- request for conference call with the court

Becky,

In follow-up to Friday's call concerning NARAL's production of the survey documents, I reviewed the subpoena again and the briefing submitted to the court on the motion to compel and motion for clarification. I believe documents related to the NARAL survey are discoverable and should be produced in response to our subpoena.  In addition to the subpoena, our position was mentioned in our Response to Non-Parties Motion for Clarification, p. 5, fn. 1.  Please let me know whether your client will produce the documents.

1
EXHIBIT JJ

Thanks for your consideration.

Kind regards,

Kristen

Kristen Waggoner
Ellis, Li & McKinstry PLLC
601 Union Street, Ste. 4900
Seattle,  WA  98101
Phone:  (206) 682-0565
Fax:  (206) 625-1052
www.elmlaw.com

This email may contain confidential and privileged information intended only for the
addressee.  Please do not read, copy, or disseminate it unless you are the addressee.  If
you are not the addressee, please call us immediately at (206) 682-0565, reply to this
email and then delete it.  Thank you.

-----Original Message-----
From: Roe, Becky [mailto:roe@sgb-law.com]
Sent: Friday, December 12, 2008 12:55 PM
To: Gretchen Freeman Cappio; Kristen K. Waggoner; Smith, Scott A.
Cc: Steven T. O'Ban; Troy M. Brinkman; saden@telladf.org; Renee L.
Hayer; Roe@sgb-law.com; Mohr, Hilary B.; mbn@atg.wa.gov; lstone@nwwlc.org;
renet@atg.wa.gov; joycer@atg.wa.gov; alanc@atg.wa.gov; HeatherP1@ATG.WA.GOV; Gretchen
Obrist; prugani@orrick.com; laura.einstein@ppww.org; sains@nwwlc.org;
rima.alaily@gmail.com; Troy M.
Brinkman
Subject: RE: Stormans, Incorporated, et al. v. Selecky, et al. -- request for conference
call with the court

I also need additional information of the disputed areas. Perhaps the phone conference
should be delayed until at least  a rough transcript is
available- usually within a couple days.

-----Original Message-----
From: Gretchen Freeman Cappio <gcappio@KellerRohrback.com>
Sent: Friday, December 12, 2008 12:49 PM
To: Kristen K. Waggoner <kwaggoner@elmlaw.com>; Smith, Scott A.
<ssmith@Riddellwilliams.com>
Cc: Steven T. O'Ban <soban@elmlaw.com>; Troy M. Brinkman <tbrinkman@elmlaw.com>;
saden@telladf.org <saden@telladf.org>; Renee L.
Hayer <rhayer@elmlaw.com>; Roe@sgb-law.com <Roe@sgb-law.com>; Mohr, Hilary B.
<hmohr@Riddellwilliams.com>; mbn@atg.wa.gov <mbn@atg.wa.gov>; lstone@nwwlc.org
<lstone@nwwlc.org>; renet@atg.wa.gov <renet@atg.wa.gov>; joycer@atg.wa.gov
<joycer@atg.wa.gov>; alanc@atg.wa.gov <alanc@atg.wa.gov>; HeatherP1@ATG.WA.GOV <HeatherP1
@ATG.WA.GOV>; Gretchen Obrist <gobrist@KellerRohrback.com>; prugani@orrick.com
<prugani@orrick.com>; laura.einstein@ppww.org <laura.einstein@ppww.org>; sains@nwwlc.org
<sains@nwwlc.org>; rima.alaily@gmail.com <rima.alaily@gmail.com>; Troy M. Brinkman
<tbrinkman@elmlaw.com>
Subject: RE: Stormans, Incorporated, et al. v. Selecky, et al.  -- request for conference
call with the court

Ms. Waggoner:

To prepare for this hearing, and since we don't have the benefit of a deposition
transcript, could you please provide further information about the deposition questions
that you believe require clarification?
Also, could you please inform us if Steve Aden and/or ADF is now taking a different view
of internal documents than Mr. Aden represented to us in conjunction with our negotiation
regarding the protective order (following the court's clarification order), and
specifically surveys, that were used within PPWW?

Best,

2

**154**

Gretchen Freeman Cappio

Gretchen Freeman Cappio
Keller Rohrback L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101

Phone: (206) 623-1900
Fax: (206) 623-3384
E-mail: gcappio@kellerrohrback.com

CONFIDENTIALITY NOTE: This Electronic Message contains information belonging to the law firm of Keller Rohrback, L.L.P., which may be privileged, confidential and protected from disclosure.  The information is intended only for the use of the individual or entity named above.
If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this message is strictly prohibited.

---

From: Kristen K. Waggoner [mailto:kwaggoner@elmlaw.com]
Sent: Friday, December 12, 2008 10:36 AM
To: Smith, Scott A.
Cc: Steven T. O'Ban; Troy M. Brinkman; saden@telladf.org; Renee L. Hayer; Roe@sgb-law.com; Mohr, Hilary B.; mbn@atg.wa.gov; lstone@nwwlc.org; renet@atg.wa.gov; joycer@atg.wa.gov; Gretchen Freeman Cappio; alanc@atg.wa.gov; HeatherP1@ATG.WA.GOV; Gretchen Obrist; prugani@orrick.com; laura.einstein@ppww.org; sains@nwwlc.org; rima.alaily@gmail.com; Troy M. Brinkman
Subject: RE: Stormans, Incorporated, et al. v. Selecky, et al. -- request for conference call with the court

Counsel,

Yesterday, Mr. Smith instructed Ms. Sapiro not to answer questions based on what he referred to as a "First Amendment privilege." During the deposition, we contacted the court to determine if the court could resolve the dispute during the deposition. Unfortunately, Judge Leighton was traveling until Monday. The conference call with Judge Leighton is scheduled for 10:00 a.m. on Monday, December 15.

At the deposition of Ms. Schrammeck, Ms. Powers also asserted the "First Amendment privilege." Ms. Powers has asked us to return a document Cedar River produced in discovery claiming it is subject to the "privilege."
We also have reason to believe that both Planned Parenthood and NARAL have failed to produce responsive documents related to pharmacy refusals, survey and related information based on an overbroad application of this privilege.

In anticipation of Ms. Rose's deposition scheduled for December 19th, we are asking the court to clarify the scope of the First Amendment privilege and its earlier order. We hope this clarification will allow the deposition to proceed more efficiently and with less conflict and also give the parties direction on issues related to document production. As you may remember, the trial court specifically suggested that we set up such a call if we needed further clarification.

To participate in the conference call, please dial 1-800-977-8002 at 9:55 a.m. Your Participant Code number is 22436217#. If you call in after 10:00 a.m., you will be able to be connected but you will have missed what has been discussed prior to your connection.

At 10:00 a.m., I will conference Judge Leighton into the call. When that happens, I will momentarily be unavailable until the judge answers and he and I come back on the line.

Thank you,

**155**

Kristen Waggoner

Ellis, Li & McKinstry PLLC

601 Union Street, Ste. 4900

Seattle, WA 98101

Phone: (206) 682-0565

Fax: (206) 625-1052

www.elmlaw.com <outbind://350/www.elmlaw.com>


This email may contain confidential and privileged information intended only for the
addressee. Please do not read, copy, or disseminate it unless you are the addressee. If
you are not the addressee, please call us immediately at (206) 682-0565, reply to this
email and then delete it. Thank you.

---

From: Smith, Scott A. [mailto:ssmith@Riddellwilliams.com]
Sent: Thursday, December 11, 2008 6:22 PM
To: Kristen K. Waggoner
Cc: Steven T. O'Ban; Troy M. Brinkman; saden@telladf.org; Renee L.
Hayer; Roe@sgb-law.com; Mohr, Hilary B.; mbn@atg.wa.gov; lstone@nwwlc.org;
renet@atg.wa.gov; joycer@atg.wa.gov; gcappio@kellerrohrback.com; alanc@atg.wa.gov;
HeatherP1@ATG.WA.GOV; gobrist@kellerrohrback.com; prugani@orrick.com;
laura.einstein@ppww.org; sains@nwwlc.org; rima.alaily@gmail.com
Subject: RE: Stormans, Incorporated, et al. v. Selecky, et al. -- request for conference
call with the court


Kristen,

Please provide further information as to the issue(s) you are asking the judge to address.
Inasmuch as you have not requested or held a discovery request (at least not with me) nor
filed a written motion, please let us know tomorrow what your concerns are and the request
you'll be making of the judge.  I'm sure other counsel would like a heads up so that they
will know whether they need to participate in or otherwise prepare for the call.

Please also send call-in instructions.

Thanks,
Scott

cc:  Other counsel


Scott A. Smith | Riddell Williams P.S.

1001 Fourth Avenue, Suite 4500 | Seattle, WA 98154-1192

Main: 206-624-3600 | Direct: 206-389-1685  | Fax: 206-389-1708 |
SSmith@RiddellWilliams.com

Web:  www.RiddellWilliams.com <http://www.riddellwilliams.com/>

---

From: Renee L. Hayer [mailto:rhayer@elmlaw.com]

4

Sent: Thursday, December 11, 2008 2:14 PM
To: Roe@sgb-law.com; Smith, Scott A.; Mohr, Hilary B.; mbn@atg.wa.gov;
lstone@nwwlc.org; renet@atg.wa.gov; joycer@atg.wa.gov; gcappio@kellerrohrback.com;
alanc@atg.wa.gov; HeatherP1@ATG.WA.GOV; gobrist@kellerrohrback.com; prugani@orrick.com;
laura.einstein@ppww.org; sains@nwwlc.org; rima.alaily@gmail.com
Cc: Kristen K. Waggoner; Steven T. O'Ban; Troy M. Brinkman; saden@telladf.org
Subject: Stormans, Incorporated, et al. v. Selecky, et al.


Dear Counsel:

As discussed in the deposition today of Nancy Sapiro, a telephone conference has
been set up with Judge Leighton to discuss the scope of the discovery under the Court's
Order on the Motion for Clarification.  Judge Leighton will be available for a conference
call on Monday, December 15, 2008, at 10:00 a.m.  Please confirm that one attorney for each
party will be available if your client would like to participate.  Plaintiffs' counsel
believes this conference will assist all parties in concluding the written discovery and
next week's depositions.  Once we know who intends to participate, we will forward you the
call-in details.

Please e-mail Kristen Waggoner if you have any questions.

Thank you,

Renee' Hayer
Legal Assistant to Kristen K. Waggoner
Ellis, Li & McKinstry PLLC
601 Union Street, Suite 4900
Seattle, WA  98101-3906
Telephone:  206-682-0565, Ext. 6004

CONFIDENTIALITY NOTICE:  This email and any attachments are for the sole use of the
intended recipient(s) and contain information that may be confidential and/or legally
privileged.  If you have received this email in error, please notify the sender by reply
email and delete the message.  Any disclosure, copying, distribution or use of this
communication by someone other than the intended recipient is prohibited.


CONFIDENTIALITY AND CIRCULAR 230 NOTICE:  This communication is intended for the sole use
of the individual and entity to whom it is addressed, and may contain information that is
privileged, confidential and exempt from disclosure under applicable law.  You are hereby
notified that any dissemination, distribution or duplication of this communication by
someone other than the intended addressee or its designated agent is strictly prohibited.
As required by the Internal Revenue Service, anything contained in this communication
pertaining to any U.S. federal tax matter is not to be used for the purpose of avoiding
federal tax penalties under the Internal Revenue Code or for promoting, marketing or
recommending to any third party the tax implications of any partnership or other entity,
investment plan or arrangement discussed in this communication.  If you have received this
communication in error, please notify this firm immediately by collect call
(206)-624-3600, or by reply to this communication.



# SCHROETER
# GOLDMARK
# *&* BENDER

Email: roe@sgb-law.com

January 6, 2009

500 Central Building
810 Third Avenue
Seattle, WA 98104

Phone (206) 622-8000
Toll free (800) 809-2234
Fax (206) 682-2305

Attorneys
Adam J. Berger
Martin S. Garfinkel
Kathy Goater
M. Lorena González
James D. Hailey
Lindsay Halm
Kristin Houser
Anne Kysar
Amanda E. Lee
Janet L. Rice
Jeffery P. Robinson
Rebecca J. Roe
William Rutzick
Colette Tvedt
Sandra E. Widlan
Corrie J. Yackulic

Of Counsel
Croil Anderson
Mark A. Burke

*Since 1969*

Kristin Waggoner
Steven O'Ban
ELLIS LI & MCKINSTRY
601 Union St., Suite 4900
Seattle, WA 98101



Re:      Stormans, Inc. v. NARAL, et al.

Dear Ms. Waggoner:

Enclosed please find a copy of an email dated November 6, 2008 from Steve Aden to Scott Smith, which limits your client's disclosure requests to January 1, 2005 to July 30, 2007. Also enclosed is a hard copy of your brief likewise limiting the time period to those documents generated before July 31, 2007.

The NARAL survey which took place in September 2007 is not within the request and is not being provided absent a modification of the court order. We will oppose any motion to modify the court's order because a post-rule making survey is obviously irrelevant to reasons for the rule.

Sincerely,

*Becky Roe*

REBECCA J. ROE

Enclosure
RJR:dm

**158**

EXHIBIT KK

Nancy L. Sapiro                                    December 11, 2008

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT TACOMA

--------------------------------------------------------

STORMANS, INCORPORATED doing        )

business as RALPH'S THRIFTWAY;      )

RHONDA MESLER, MARGO THELEN,        )

              Plaintiffs,           )

        vs.                         ) No. C07-5374-RBL

MARY SELECKY, Acting Secretary      )

of the Washington State             )

Department of Health, et al.,       )

              Defendants.           )

--------------------------------------------------------

Deposition Upon Oral Examination Of

NANCY L. SAPIRO

--------------------------------------------------------

9:42 a.m.

Thursday, December 11, 2008

601 Union Street, Suite 4900

Seattle, Washington

REPORTED BY:  Keri A. Aspelund, RPR, CCR No. 2661

Nancy L. Sapiro

December 11, 2008

## Page 10

09:46 1 employment?

09:46 2 A. It did not.

09:46 3 Q. Are you currently practicing law?

09:46 4 A. I am not.

09:46 5 Q. Tell me about your education; where did you get

09:47 6 your bachelor's degree?

09:47 7 A. I received my bachelor's degree at the

09:47 8 University of Wisconsin, Madison.

09:47 9 Q. And do you have any graduate degrees besides

09:47 10 your law degree?

09:47 11 A. No.

09:47 12 Q. Where is your law degree from?

09:47 13 A. I also received my law degree from the

09:47 14 University of Wisconsin, Madison.

09:47 15 Q. Where were you employed before you were employed

09:47 16 with Northwest Women's Law Center?

09:47 17 A. Prior to the Northwest Women's Law Center, I

09:47 18 worked at the Public Defender Association.

09:47 19 Q. How long did you have that position?

09:47 20 A. Approximately eight years.

09:48 21 Q. Before you held that position, what position did

09:48 22 you hold?

09:48 23 A. I worked at a law firm in Madison, Wisconsin.

09:48 24 Q. When did you come to the center?

09:48 25 A. I originally came to the law center in 1996.

## Page 11

09:48 1 Q. What was your first position at the center?

09:48 2 A. Temporary staff attorney.

09:48 3 Q. How long did you hold that position?

09:48 4 A. Approximately six months.

09:49 5 Q. What position did you then take?

09:49 6 A. Then take, can you --

09:49 7 Q. Did you move into another position with the

09:49 8 center?

09:49 9 A. At that time, no, I did not.

09:49 10 Q. Okay, where did you go at that time?

09:49 11 A. I did not work.

09:49 12 Q. For how long?

09:49 13 A. Approximately six months.

09:49 14 Q. At some point did you become employed with the

09:49 15 center full time?

09:49 16 A. I did not become employed with them full time,

09:50 17 no.

09:50 18 Q. You have not been employed full time at the

09:50 19 center at any time?

09:50 20 A. Correct.

09:50 21 Q. Okay. What positions have you held at the

09:50 22 center since 1996, since that temporary staff attorney

09:50 23 position?

09:50 24 A. I was -- two other occasions where I filled in

09:50 25 as a temporary staff attorney at the Northwest Women's Law

## Page 12

09:50 1 Center, and then I became a permanent employee in 1999, I

09:50 2 believe.

09:50 3 Q. In '99?

09:50 4 A. (Nods head.)

09:50 5 Q. A permanent part-time employee?

09:50 6 A. Correct.

09:50 7 Q. Okay. What was your title when you took that

09:51 8 permanent part-time position in 1999?

09:51 9 A. Staff attorney.

09:51 10 Q. How long did you hold that position?

09:51 11 A. The title changed, but I held the position until

09:51 12 I departed in June of 2008.

09:51 13 Q. I take it that you mean by that that your

09:51 14 responsibilities did not change although your title did, is

09:51 15 that right? Help me out.

09:51 16 A. My title changed, responsibilities evolved and

09:51 17 grew as I became more experienced.

09:51 18 Q. What titles have you held?

09:51 19 A. I then became senior legal and legislative

09:51 20 counsel.

09:51 21 Q. When did you become senior legal and legislative

09:51 22 counsel?

09:51 23 A. I do not recall.

09:51 24 Q. Approximation would be fine, if you can recall.

09:52 25 A. 2002, 2003, 2004?

## Page 13

09:52 1 Q. Okay. And that was a position you held on a

09:52 2 part-time basis until your departure in June of 2008?

09:52 3 A. Correct.

09:52 4 Q. What were your responsibilities as senior legal

09:52 5 and legislative counsel?

09:52 6 A. Do you want to give me a time frame or --

09:52 7 MR. ADEN: Can we go off the record.

09:52 8 (Discussion off the record.)

09:52 9 MR. ADEN: Back on the record. I'll withdraw

09:52 10 the question and ask it after you're read your statement.

09:52 11 MR. SMITH: Thank you for your patience.

09:53 12 As a preliminary matter, I want to note that we

09:53 13 object to the taking of this deposition on several grounds.

09:53 14 First, the information sought is not relevant or reasonably

09:53 15 calculated to lead to the discovery of admissible evidence,

09:53 16 let alone of such importance that it could be said to go to

09:53 17 the heart of the matters at issue in this lawsuit. The

09:53 18 issue before the court is whether pharmacy board regulation

09:53 19 is constitutional. The communications of a private citizen

09:53 20 or a citizens organization with the government in the

09:53 21 exercise of their First Amendment rights has no bearing on

09:53 22 the constitutionality of the regulation at issue.

09:53 23 Certainly the private thoughts and the nonpublic

09:53 24 communications of such individuals and organizations has no

09:53 25 possible relevance to the constitutionality of a

4 (Pages 10 to 13)

Nancy L. Sapiro                                    December 11, 2008

## Page 14

| | | |
|---|---|---|
| 09:53 | 1 | regulation. |
| 09:53 | 2 | Second, we object to the taking of this |
| 09:53 | 3 | deposition because it violates the First Amendment rights |
| 09:53 | 4 | of Ms. Sapiro and the Northwest Women's Law Center to free |
| 09:54 | 5 | speech, assembly, association, and to petition the |
| 09:54 | 6 | government.  If it was permissible to force every person or |
| 09:54 | 7 | organization that provides input in a rule-making or |
| 09:54 | 8 | legislative process to respond to the sort of discovery |
| 09:54 | 9 | propounded by the plaintiffs in this case, then the |
| 09:54 | 10 | Alliance Defense Fund and Ellis, Li & McKinstry would |
| 09:54 | 11 | establish a precedent that they and other public policy |
| 09:54 | 12 | organizations and law firms would find most unwelcome |
| 09:54 | 13 | because then they, too, would be subject to interrogation |
| 09:54 | 14 | about their participation in the rule-making or legislative |
| 09:54 | 15 | process for the primary, if not exclusive, purpose of |
| 09:54 | 16 | discouraging such participation in the future. |
| 09:54 | 17 | Third, the absence of a legitimate basis for |
| 09:54 | 18 | taking Ms. Sapiro's deposition. We object that the |
| 09:54 | 19 | deposition is for purposes of annoying and oppressing her |
| 09:54 | 20 | because she and the law center provided input in a public |
| 09:54 | 21 | process that the plaintiffs and their law firms did not |
| 09:55 | 22 | agree with.  Plaintiffs' insistence that they need to take |
| 09:55 | 23 | depositions such as this one to obtain a complete picture |
| 09:55 | 24 | of the rule-making process is mere pretext to harass |
| 09:55 | 25 | citizens and to chill their First Amendment rights. |

## Page 15

| | | |
|---|---|---|
| 09:55 | 1 | The court has permitted limited discovery with |
| 09:55 | 2 | respect to communications that private individuals and |
| 09:55 | 3 | organizations had with public or state actors, and I'm |
| 09:55 | 4 | using the term "state actors" to encompass state official |
| 09:55 | 5 | staff and employees as defined in the first three |
| 09:55 | 6 | categories in your documents subpoena to the law center. |
| 09:55 | 7 | In denying ADF's motion to compel, the trial |
| 09:55 | 8 | court did not authorize inquiry into Ms. Sapiro's private |
| 09:55 | 9 | opinions, the law center's internal communications, or |
| 09:55 | 10 | their communications with nonpublic actors, such as other |
| 09:55 | 11 | individuals and organizations who also participated in the |
| 09:55 | 12 | rule-making process.  Accordingly, Ms. Sapiro will not be |
| 09:56 | 13 | answering questions about such matters. |
| 09:56 | 14 | This completes my preliminary statement. |
| 09:56 | 15 | Subject to these general objections, I'm not waiving them, |
| 09:56 | 16 | you may proceed.  Thank you. |
| 09:56 | 17 | MR. ADEN:  Thank you, Mr. Smith. |
| 09:56 | 18 | It is the plaintiffs' position that by failing |
| 09:56 | 19 | to bring a motion to quash the subpoena and the motion for |
| 09:56 | 20 | protective order, the deponent has waived these objections. |
| 09:56 | 21 | Also, we do not recognize a distinction in the |
| 09:56 | 22 | court's order on motion for clarification between |
| 09:56 | 23 | communications respecting internal deliberations and the |
| 09:56 | 24 | documents related to them.  What I mean is that I have a |
| 09:56 | 25 | number of documents that are either in the public record or |

## Page 16

| | | |
|---|---|---|
| 09:56 | 1 | that were provided to us by Northwest Women's Law Center, |
| 09:56 | 2 | and I intend to ask the witness about those.  My questions |
| 09:56 | 3 | may include questions relating to communications by and |
| 09:56 | 4 | between staff of the Northwest Women's Law Center and |
| 09:57 | 5 | other, as we have called them, third-party organizations, |
| 09:57 | 6 | and I expect the deponent to answer those.  And so what I |
| 09:57 | 7 | will do is ask if your statement is intended to convey that |
| 09:57 | 8 | you will direct the deponent not to answer questions of |
| 09:57 | 9 | that sort? |
| 09:57 | 10 | MR. SMITH:  Most likely, but when you ask a |
| 09:57 | 11 | specific question, then we'll decide whether to object and |
| 09:57 | 12 | instruct her not to answer. |
| 09:57 | 13 | MR. ADEN:  Okay. |
| 09:57 | 14 | MR. SMITH:  I didn't actually anticipate you |
| 09:57 | 15 | were going to agree with our position or have the same |
| 09:57 | 16 | interpretation of the court's order, but that's our |
| 09:57 | 17 | statement.  I would suggest you proceed with your |
| 09:57 | 18 | deposition questions, and we'll continue to assert |
| 09:57 | 19 | objections as necessary. |
| 09:57 | 20 | MR. ADEN:  Thank you, I'll do that. |
| 09:57 | 21 | Q.  (BY MR. ADEN)  Ms. Sapiro, I asked what your |
| 09:57 | 22 | responsibilities were in your position as senior legal and |
| 09:57 | 23 | legislative counsel, and I think you were indicating that |
| 09:58 | 24 | those evolved as well when you had that title, is that |
| 09:58 | 25 | right? |

## Page 17

| | | |
|---|---|---|
| 09:58 | 1 | A.  Correct. |
| 09:58 | 2 | Q.  What were they when you began holding that |
| 09:58 | 3 | title, I'll call it, in the 2002 to 2004 time frame? |
| 09:58 | 4 | A.  As senior legal and legislative counsel, I was |
| 09:58 | 5 | responsible for particular subject matter, subject areas, |
| 09:58 | 6 | so I oversaw legislative work, litigation, advocacy within |
| 09:58 | 7 | those subject matters. |
| 09:58 | 8 | Q.  In 2005, how would you characterize your |
| 09:59 | 9 | responsibilities? |
| 09:59 | 10 | A.  I was engaged in advocacy legislative work, |
| 09:59 | 11 | litigation within particular subject areas of women's |
| 09:59 | 12 | health, family law, and LGBT rights, and some criminal work |
| 09:59 | 13 | as well. |
| 09:59 | 14 | Q.  In 2005, were you no longer responsible for -- |
| 09:59 | 15 | strike that. |
| 09:59 | 16 | I understood your answer to my previous question |
| 09:59 | 17 | to suggest that you were in charge of legislative work, |
| 09:59 | 18 | litigation, and advocacy during your initial employment as |
| 10:00 | 19 | senior legal and legislative counsel, is that right? |
| 10:00 | 20 | A.  Can you repeat the question? |
| 10:00 | 21 | Q.  When you first took the title of senior legal |
| 10:00 | 22 | and legislative counsel, were you the most senior attorney |
| 10:00 | 23 | responsible for legislative work, litigation, and advocacy? |
| 10:00 | 24 | A.  I would not say I was the most senior person. |
| 10:00 | 25 | Doing legislative and advocacy work was part of my job |

5  (Pages 14 to 17)

Nancy L. Sapiro                                        December 11, 2008

## Page 138

14:55  1   characterization of the Oregon position statement.
14:56  2        MR. ADEN:  Trying to be as expeditious as
14:57  3   possible here.
14:57  4        (Exhibit-264 marked.)
14:57  5   Q.  264, Ms. Sapiro, appears to be an e-mail from
14:57  6   Amy Luftig to Ms. Hulet with a cc to you, among others; do
14:57  7   you recall this e-mail?
14:57  8   A.  Yes.
14:58  9   Q.  Okay.  This draft, according to Ms. Luftig, the
14:58 10   draft rule puts the ownership on the pharmacy rather than
14:58 11   the pharmacist to provide the drug to the patient, and then
14:58 12   says, "We are comfortable with this language." Whose
14:58 13   concept of putting the ownership, the responsibility on the
14:58 14   pharmacy was that?  Do you recall where that came from,
14:58 15   whose idea that was to put it on the pharmacy rather than
14:58 16   the pharmacist?
14:58 17   A.  I believe that initially came from the Northwest
14:59 18   Women's Law Center and Planned Parenthood.
14:59 19   Q.  And from whom within the law center
14:59 20   specifically?
14:59 21        MR. SMITH:  I'm going to object to the extent
14:59 22   you're asking for internal information as opposed to the
14:59 23   specific communications relating to the state actors.
14:59 24   Q.  You can answer unless Mr. Smith directs you not
14:59 25   to.

## Page 139

14:59  1        MR. SMITH:  I will instruct her not to answer
14:59  2   that.
14:59  3   Q.  Why was the law center comfortable with the
14:59  4   notion of putting the ownership on the pharmacy rather than
14:59  5   the pharmacist?
14:59  6   A.  I believe in our articulations to Ms. Hulet and
14:59  7   to others, we felt that access could be ensured to patients
14:59  8   who needed their medications, and that by placing the
15:00  9   responsibility on the pharmacy as opposed to the
15:00 10   pharmacist, there was the potential for a broader
15:00 11   accommodation for an individual objecting pharmacist.
15:00 12   Q.  And how would that potential arise, the
15:00 13   potential of the right of accommodation arise if the
15:00 14   obligation was put on the pharmacy rather than the
15:00 15   pharmacist?
15:00 16   A.  That if there were an objecting pharmacist, that
15:00 17   it might be possible for the pharmacy to accommodate that
15:00 18   objecting pharmacist and find another mechanism which would
15:00 19   enable the patient to get their medication.
15:00 20   Q.  The second paragraph of this e-mail states that
15:01 21   the legal team who looked over the pharmacy association's
15:01 22   comments felt that there is a substantive difference
15:01 23   between therapeutic substitution and therapeutic
15:01 24   alternatives, and that alternatives could include a
15:01 25   referral; do you recall that that was a problem for the

## Page 140

15:01  1   center because it could include a referral?
15:01  2   A.  Yes, I believe so.
15:01  3   Q.  Any kind of referral was objectionable to the
15:01  4   law center at this time?
15:01  5   A.  There was attention in drafting -- in coming up
15:01  6   with draft language to be sensitive to the professional
15:02  7   terms of art that pharmacists and pharmacies use, and so
15:02  8   during the course of some of our conversations, we would
15:02  9   throw out language and they would say that's really not the
15:02 10   term that is used, this is the term.  And so there was this
15:02 11   kind of dialogue going back and forth trying to use the
15:02 12   proper terms of art while at the same time, as lawyers,
15:02 13   wanting to make sure that the terms meant what we wanted
15:02 14   them to mean, so that it sort of was an ongoing dialogue,
15:02 15   and I think this would be an example of that.
15:02 16   Q.  But the center would not want any of the terms
15:02 17   that were used to imply a right of referral, right?
15:02 18   A.  The law center's concern was that using the term
15:02 19   "therapeutic alternative" could include the possibility of
15:02 20   referral, and that substitution did not necessarily include
15:02 21   that.
15:03 22        MR. ADEN:  It's a little after 3:00, maybe we
15:03 23   should take a brief last break for five minutes.
15:03 24        MR. SMITH:  Sure.
15:03 25        MR. ADEN:  I will try to cut through some of

## Page 141

15:03  1   this.
15:03  2        (Recess from 3:03 p.m. to 3:11 p.m.)
15:10  3   Q.  Back on the record.
15:11  4   A few minutes ago, Ms. Sapiro, you stated that
15:11  5   the concept of putting the obligation on the pharmacy came
15:11  6   from the center and Planned Parenthood, and I believe you
15:11  7   said that one of the reasons was, at least, the desire to
15:11  8   provide for accommodation of the pharmacist, is that right?
15:11  9   A.  Yes.
15:11 10   Q.  What potential accommodations were discussed
15:11 11   between you, the law center, and Planned Parenthood?  What
15:11 12   was your understanding about accommodations that could be
15:11 13   available under your proposal?
15:11 14        MR. SMITH:  I'm going to object to the extent
15:11 15   you're asking about internal communications or
15:12 16   communications with other organizations, but will allow her
15:12 17   to testify about her communications with state actors.
15:12 18   A.  To the extent we communicated with Ms. Hulet or
15:12 19   others regarding the change of language from pharmacist to
15:12 20   pharmacy, we articulated that change of language could
15:12 21   allow for accommodation, that they were -- that sort of the
15:12 22   accommodation that can be made, could be made, would really
15:12 23   have to be determined on a case-by-case basis at the
15:12 24   particular pharmacy, but that there was room to allow for
15:12 25   various types of accommodation.

36  (Pages 138 to 141)



# Northwest Women's Law Center

*Advancing legal rights for women*



December 15, 2008

Kristen Waggoner
Ellis Li & McKinstry
601 Union Street, Suite 4900
Seattle, WA 98101

Re:   *Stormans et al. v. Selecky et al.,* Subpoena to Third Party Northwest Women's Law
Center

Dear Ms. Waggoner:

Please find enclosed our third and final set of documents responsive to the September 9, 2008
subpoena as modified by the court's order of October 29, 2008.

I am preparing a declaration attesting to the authenticity of the documents produced.  Please
contact me if you have any questions.

Sincerely,

Sara Ainsworth

c:   Scott Smith
     Hilary Mohr

EXHIBIT MM

Pine St., Ste. 500, Seattle, Washington 98101-1818 ◆ T: 206.682.9552 ◆ F: 206.682.9556 ◆ E: nwwlc@nwwlc.org ◆ www.nwwlc.org

 **Northwest Women's Law Center**

*Advancing legal rights for women*

November 12, 2008

Kristen Waggoner
Ellis Li McKinstry
Two Union Square
601 Union Street, Suite 4900
Seattle, WA 98101

Re:   *Stormans et al v. Selecky et al,*
      Third-Party Subpoena to Northwest Women's Law Center

Dear Ms. Waggoner:

Please find enclosed documents in possession of the Northwest Women's Law Center responsive to the September 9, 2008 subpoena as modified by the court's order of October 29, 2008.

We are continuing to search for and review potentially responsive documents. We will provide additional responsive documents, if any, as soon as possible.

Sincerely,

Sara Ainsworth

c:   Steven Aden, Erik Stanley, Alliance Defense Fund (via e-mail)
     Scott Smith, Hilary Mohr, Riddell Williams (via e-mail)
     Rima Alaily, Orrick, Herrington & Sutcliffe (via e-mail)
     Laura Einstein, Planned Parenthood of Western Washington (via e-mail)

enclosures

EXHIBIT NN

9074 Pine St., Ste. 500, Seattle, Washington 98101-1818  ◆  T: 206.682.9552  ◆  F: 206.682.9556  ◆  E: nwwlc@nwwlc.org  ◆  www.nwwlc.org



# Northwest Women's Law Center

*Advancing legal rights for women*



November 21, 2008

Kristen Waggoner
Ellis Li & McKinstry
601 Union Street, Suite 4900
Seattle, WA 98101

Re:   *Stormans et al. v. Selecky et al.,* Subpoena to Third Party Northwest Women's Law
Center

Dear Ms. Waggoner:

Please find enclosed our second set of documents responsive to the September 9, 2008 subpoena
as modified by the court's order of October 29, 2008.

We are continuing to search for documents responsive to the subpoena and if we possess
additional responsive documents, we will produce them as soon as possible.

Please contact me if you have any questions.

Sincerely,

Sara Ainsworth



# RIDDELL WILLIAMS P.S.

1001 FOURTH AVENUE, SUITE 4500 | SEATTLE, WASHINGTON 98154-1192
206.624.3600 TELEPHONE | 206.389.1708 FACSIMILE
WWW.RIDDELLWILLIAMS.COM

SCOTT A. SMITH
206.389.1685
SSMITH@RIDDELLWILLIAMS.COM

January 13, 2009

**RECEIVED**

JAN 1 4 2009

Ellis Li & McKinstry, PLLC

Steven T. O'Ban
Ellis, Li & McKinstry PLLC
601 Union Street, Suite 4900
Seattle, WA  98101

Re:  *Stormans, Inc., v. Selecky*
     Cause No. C07-5374 RBL

Dear Mr. O'Ban:

I write in response to your December 30 letter.  While I do not represent Planned Parenthood of Western Washington or NARAL, they have reviewed and approved this joint letter.

We reject your continued request for internal documents regarding the non-party organizations' communications with government officials and employees.  So has the Court, repeatedly.  Your continued abuse of the discovery process will result in a renewal of our request for fees and costs, particularly if you continue to waste the Court's time and our time in an effort to obtain information which the Court has ruled is not discoverable.

Moreover, your request for additional documents and depositions is improper given that the discovery deadline, December 15, 2008, has passed.  With minor exceptions,[1] discovery is over.

Your effort to renote the depositions of Ms. Sapiro and Ms. Schrammeck is also improper.[2]  Ms. Sapiro appeared for her deposition on December 11.  Plaintiffs initially sought to depose Ms. Sapiro and Kelly Reese of Planned Parenthood on the same day, but when Ms. Reese was not available, Plaintiffs decided instead to use most of an entire day for Ms. Sapiro's deposition.  In light of the fact that much of Ms. Sapiro's first

---

[1] By agreement of the parties and Court approval of the Stipulation and Order Extending Deadline for Specified Depositions (Doc. No. 296), the Court has authorized certain specific additional depositions to take place after the discovery cutoff.  In addition, the Law Center is still preparing its privilege log.

[2] Ms. Power addressed more fully your intention to renote the deposition of Ms. Schrammeck in her January 6 letter.

EXHIBIT OO

Steven T. O'Ban
January 13, 2009
Page 2

deposition was abusive and a waste of time, there is no legitimate basis for conducting a second deposition. For example:

- The first 80 minutes were spent asking Ms. Sapiro about a 2005 letter that she did not author. The witness was asked to read parts of it aloud. The examining attorney also wasted time reading parts of it aloud. There were numerous argumentative questions in an effort to get the witness to admit that certain words and phrases were or were not in the text of the letter. To what end? Anyone could have read the letter to determine whether those words or phrases were or were not in the letter.

- There were many argumentative questions on such irrelevancies as the witness's understanding of the holding of a 1989 Washington Supreme Court case and the actions of the Wisconsin Board of Pharmacy.

- Instead of using the time available to ask the witness questions based on her personal knowledge, time was wasted on the record discussing scheduling issues with other counsel.

- Several of the questions were offensive and personally intrusive. For example, Ms. Sapiro was asked if she knew what Viagra was.

- The witness was asked how she felt about Ms. Duffy's appointment to the Board of Pharmacy.

- The witness was asked whether certain organizations were pro-choice or anti-choice.

The deposition of Ms. Schrammeck also contained many improper questions such as:

- Asking her why she thought certain religions objected to birth control.

- Asking whether she has read certain books.

- Asking whether it is routine for a woman to have a vaginal infection check after having an abortion.

- Asking her to speculate on the viewpoints and political strategies of Bush administration appointees.

- Asking her about the clinic's community education program for teenagers about such matters as the prevention of sexually transmitted diseases and the prevention of violence under the pretext that such questions were relevant to "her credibility as a witness, Cedar River's operations, and their role in the rule-making process."

I suspect that I would find other irrelevant and offensive questions in the deposition transcripts of other non-party witnesses who were targeted for discovery simply because they participated in the rule-making process and took a position adverse to your clients and their law firms.

4824-3502-6435.01
011209/1758/45848.00003

Steven T. O'Ban
January 13, 2009
Page 3

Early in Ms. Sapiro's deposition, when the wasteful and inappropriate tenor of the questioning was clear, Mr. Aden was warned that he was wasting time and that the witness was not going to return for a second deposition.

With respect to Plaintiffs' subpoena for access-related information, the Law Center has completed its production of documents.  Ms. Roe has separately written regarding NARAL's few access-related documents.  Planned Parenthood of Western Washington has also completed its document production.

Sincerely,

*Scott A. Smith*

Scott A. Smith
of
RIDDELL WILLIAMS P.S.

SAS/lrw

cc:   Northwest Women's Law Center
      Gretchen Cappio, PPWW
      Rebecca Roe, NARAL
      Vanessa Soriano Power, Cedar River Clinic