1
2
3
4
5
6
7                                                    The Honorable Ronald B. Leighton

8                   UNITED STATES DISTRICT COURT
                 WESTERN DISTRICT OF WASHINGTON
9                            AT TACOMA

10   STORMANS, INCORPORATED, doing          NO.  C07-5374 RBL
     business as Ralph's Thriftway, et al.,
11                                           STATE DEFENDANTS'
                          Plaintiffs,        TRIAL BRIEF
12
            v.
13
     MARY SELECKY, Secretary of the
14   Washington State Department of Health,
     et al.,
15
                          Defendants;
16
     and
17
     JUDITH BILLINGS, et al.,
18
                          Defendant-Intervenors.

19                     **I.    INTRODUCTION**

20          On April 12, 2007, the Board of Pharmacy (Board) voted to adopt Wash. Admin. Code

21   §§ 246-869-010 and 246-863-095 ("rules").   The rules are neutral and generally applicable

22   regulations of conduct rationally relating to the legitimate interest of the State in promoting

23   timely delivery of lawful medication.  After considering the plaintiffs' free exercise challenge

24   the Ninth Circuit agreed with the State that the rules are neutral and generally applicable, and

25   are to be subjected to a rational basis level of scrutiny.  *Stormans, Inc. v. Selecky,* 586 F.3d

26   1109 (9th Cir. 2009).

STATE DEFENDANTS' TRIAL BRIEF              1         ATTORNEY GENERAL OF WASHINGTON
NO.  C07-5374 RBL                                           Agriculture & Health Division
                                                             7141 Cleanwater Drive SW
                                                                  PO Box 40109
                                                              Olympia, WA 98504-009
                                                                 (360) 586-6500

The plain language of the rules applies to all time sensitive medications. The Board rules do not suffer from the gerrymandering that doomed the rules in *Lukumi.*[1] Rather, this case is analytically similar to *Smith* and *Reynolds* in which neutral and general rules were upheld regardless that application of the rules would be uniquely offensive to some particular religious beliefs.[2]

## II.    PRIOR PROCEEDINGS

On November 8, 2007, this Court entered a preliminary injunction enjoining the Board from enforcing the rules against any pharmacy or pharmacist who refused to dispense Plan B but who instead referred the patient to a nearby source of Plan B. (Dkt. No. 95). In this Court's Free Exercise analysis, the rules were not neutral and of general application. (Dkt. No. 95, pp. 16: 24-26, 17:8-10). Accordingly, this Court applied a heightened standard of scrutiny to the rules. (Dkt. No. 95, pp. 21: 11-27, 22:1-27). Under a heightened scrutiny, this Court found a likelihood of success on the merits and granted the Plaintiffs' motion for a preliminary injunction. (Dkt. No. 95, p. 23: 1-4).

On appeal, the Ninth Circuit found an abuse of discretion in granting the preliminary injunction. *Stormans,* at 1127. Reviewing a long line of First Amendment cases, the Ninth Circuit noted:

> The right to freely exercise one's religion, however, "does not relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).'" *Employment Div., Dep't of Human Res. of Or. v. Smith,* 494 U.S. 872, 879, 110 S. Ct. 1595, 108 L. Ed. 2d 876 (1990) (*quoting United States v. Lee,* 455 U.S. 252, 263 n. 3, 102 S. Ct. 1051, 71 L. Ed. 2d 127 (1982) (Stevens, J., concurring in judgment)). Under the governing standard, "a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,* 508 U.S. 520, 531, 113 S. Ct. 2217, 124 L. Ed. 2d 472 (1993).

---

[1] *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,* 508 U.S. 520, 113 S. Ct. 2217, 124 L. Ed. 2d 472 (1993).

[2] *Reynolds v. United States,* 98 U.S. 145, 25 L. Ed. 244 (1878); *Employment Div. Dep't of Human Resources of Oregon v. Smith,* 494 U.S. 252, 110 S. Ct. 1595, 108 L. Ed. 2d 876 (1990).

STATE DEFENDANTS' TRIAL BRIEF                2
NO.  C07-5374 RBL

ATTORNEY GENERAL OF WASHINGTON
Agriculture & Health Division
7141 Cleanwater Drive SW
PO Box 40109
Olympia, WA 98504-009
(360) 586-6500

*Stormans,* 586 F.3d at 1127. Further, the Ninth Circuit ruled that the neutrality of the rules was not destroyed by the fact that pharmacists with religious objections to Plan B may disproportionately require accommodation. *Stormans,* 586 F.3d at 1131.

In vacating the preliminary injunction, the Ninth Circuit affirmatively found the rules are neutral and generally applicable and therefore must be reviewed under the deferential rational basis test:

> Because the rules are neutral and generally applicable, the district court should have subjected the rules to the rational basis standard of review.

*Stormans,* 586 F.3d at 1137.

On June 15, 2010, this court denied the State's motion for summary judgment without identifying a disputed issue of material fact or ruling on whether a rational basis supported the rules. On, May 26, 2011, the court allowed an amendment to the Complaint to add *ella* to the prayer for injunctive relief. (Dkt. No. 470). The e*lla* brand is another Emergency Contraceptive (EC).

The case has been set for an 8 – 10 day trial beginning November 28, 2011.

### III. ADOPTION AND OPERATION OF THE RULES

**A.    Adoption of the Applicable Rules**

The Pharmacy Board regulates the practice of pharmacy under authority of Wash. Rev. Code 18.64. The Board's responsibilities include promulgating "rules for the dispensing, distribution, wholesaling, and manufacture of drugs and devices and the practice of pharmacy for the protection and promotion of the public health, safety and welfare." Wash. Rev. Code § 18.64.005.

There are three Board rules to be considered in resolving this case: 1) the stocking rule, 2) the pharmacy responsibility rule, and 3) the pharmacist responsibility rule. The stocking rule was adopted on August 15, 1967. Wash. Admin. Code § 246-869-150. The

ATTORNEY GENERAL OF WASHINGTON
Agriculture & Health Division
7141 Cleanwater Drive SW
PO Box 40109
Olympia, WA 98504-009
(360) 586-6500

1  pharmacist/pharmacy responsibility rules were adopted on April 12, 2007.  The plaintiffs have

2  not challenged the stocking rule.

3  The application of all three rules is described below along with how the interplay

4  among the rules actually operates in the field.  The significant disconnect between plaintiffs'

5  claims and the actual operation of the rules will be discussed, including the barrier to relief

6  caused by the decision of the plaintiffs not to challenge the stocking rule.

7  **1.       The Stocking Rule**

8  The stocking rule was enacted in 1967 and has been subject to only minor revisions

9  over the years.  The current version of the stocking rule, Wash. Admin. Code § 246-869-150,

10  was applicable throughout 2007 and provides:

(1) The pharmacy must maintain at all times a representative assortment of
drugs in order to meet the pharmaceutical needs of its patients.

(2) Dated items – All merchandise which has exceeded its expiration date must
be removed from stock.

(3) All stock and materials on shelves or display for sale must be free from
contamination, deterioration and adulteration.

(4) All stock and materials must be properly labeled according to federal and
state statutes, rules and regulations.

(5) Devices that are not fit or approved by the FDA for use by the ultimate
consumer shall not be offered for sale and must be removed from stock.

(6) All drugs shall be stored in accordance with USP standards and shall be
protected from excessive heat or freezing except as those drugs that must be
frozen in accordance with the requirements of the label.  If drugs are exposed to
excessive heat or frozen when not allowed by the requirements of the label, they
must be destroyed.

It is Wash. Admin. Code § 246-869-150(1) that controls the assortment of medications

that any particular pharmacy "must maintain".  As noted above, this rule has not been

challenged by the plaintiffs.  The neutral and general nature of the language is not disputed, nor

is there any evidence the Board has selectively applied the rule to target

ATTORNEY GENERAL OF WASHINGTON
Agriculture & Health Division
7141 Cleanwater Drive SW
PO Box 40109
Olympia, WA 98504-009
(360) 586-6500

1  pharmacies/pharmacists with religious objections to Plan B. *ella*, or any other FDA approved

2  drug.

3  The plain language of the stocking rule controls the assortment of medications that a

4  pharmacy must maintain – a representative assortment for its patients. The rule makes no

5  distinctions among FDA approved drugs. If the "patient" of the pharmacy needs a drug, then

6  the stocking rule requires the pharmacy to maintain a representative assortment of that drug to

7  meet the needs of its patients. Conversely, if the patient population of a particular pharmacy

8  does not need a drug, then the pharmacy would be under no obligation to stock the drug.

9  Accordingly, the stocking rule does not require a pharmacy to maintain a representative

10  assortment of every drug that has been approved by the FDA, but only those drugs needed by

11  its particular patient population. There is obviously no requirement to deliver or dispense a

12  drug that a pharmacy would not be required to maintain under the stocking rule. The pharmacy

13  rule mandating a duty to deliver time sensitive medications on-site expressly conditions that

14  duty on "good faith compliance" with the stocking rule. *See* Wash. Admin. Code § 246-869-

15  010(1)(e).[3]

16  The term "patient" is not defined, but is commonly understood as being a person who

17  has established a relationship with a particular pharmacy. For example, a person walking into

18  a pharmacy for the first time and requesting a drug would not be a patient and the pharmacy

19  would have no obligation under the stocking rule to have a drug in stock for that person.

20  Similarly, an established patient with a new prescription would not implicate the stocking rule

21  if that drug had not previously been among the needs of that pharmacy's patients. However,

22  the stocking rule would be implicated on a going forward basis if the new customer established

23  a relationship with the pharmacy or the existing patient presented with a prescription that

24  would require refills.

25
26  _____

[3] This case does not present an issue of whether Stormans is in good faith compliance with the stocking rule. Rather, if the stocking rule requires Stormans to stock ECs, then this is a case of whether Stormans is to be allowed to operate in outright defiance of the stocking rule regardless of the needs of its patient population.

STATE DEFENDANTS' TRIAL BRIEF          5          ATTORNEY GENERAL OF WASHINGTON
NO. C07-5374 RBL                                                  Agriculture & Health Division
                                                                        7141 Cleanwater Drive SW
                                                                             PO Box 40109
                                                                        Olympia, WA 98504-009
                                                                            (360) 586-6500

It is unknown whether the patient population of Stormans' pharmacy has a need for either Plan B or *ella* and therefore it is unknown whether Stormans has any obligation to stock any form of EC. There are two outstanding complaints against Stormans for violation of the stocking rule, but any further investigation or disposition by the Board has been stayed by this court. Accordingly, it is unknown whether the complainants are "patients", whether Stormans patient population had established a need for stocking EC, or to what extent, if any, the Board would impose discipline.

## 2. The Pharmacy and Pharmacist Responsibility Rules

On April 12, 2007, the Board adopted two rules governing the duty of pharmacies and pharmacists to deliver and dispense medications and the rules became effective on July 26, 2007. *See* Wash. Admin. Code § 246-869-010 (pharmacies) and Wash. Admin. Code § 246-863-095 (pharmacists). The membership of the Board when the rules were adopted was: Gary Harris, Rebecca Hille, George Roe, Susan Boyer, Dan Connelly, Rosemarie Duffy, and Assad Awan. Mr. Harris and Ms. Hille are the only current Board members who were on the Board when the challenged rules were adopted. Ms. Hille will term-off the Board in January 2012.

The text of Wash. Admin. Code § 246-869-010, the pharmacy rule, provides:

(1) Pharmacies have a duty to deliver lawfully prescribed drugs or devices to patients and to distribute drugs and devices approved by the U.S. Food and Drug Administration for restricted distribution by pharmacies, or provide a therapeutically equivalent drug or device in a timely manner consistent with reasonable expectations for filling the prescription, except for the following or substantially similar circumstances:

(a) Prescriptions containing an obvious or known error, inadequacies in the instructions, known contraindications, or incompatible prescriptions, or prescriptions requiring action in accordance with WAC 246-875-040.

(b) National or state emergencies or guidelines affecting availability, usage or supplies of drugs or devices;

(c) Lack of specialized equipment or expertise needed to safely produce, store, or dispense drugs or devices, such as certain drug compounding or storage for nuclear medicine;

ATTORNEY GENERAL OF WASHINGTON
Agriculture & Health Division
7141 Cleanwater Drive SW
PO Box 40109
Olympia, WA 98504-009
(360) 586-6500

(d) Potentially fraudulent prescriptions; or

(e) Unavailability of drug or device despite good faith compliance with WAC 246-869-150.

(2) Nothing in this section requires pharmacies to deliver a drug or device without payment of their usual and customary or contracted charge.

The text of Wash. Admin. Code § 246-863-095, the pharmacists rule, with the amendatory language italicized, provides:

(1) *A pharmacist's primary responsibility is to ensure patients receive safe and appropriate medication therapy.*

(2) A pharmacist shall not delegate the following professional responsibilities:

(a) Receipt of a verbal prescription other than refill authorization from a prescriber.

(b) Consultation with the patient regarding the prescription, both prior to and after the prescription filling and/or regarding any information contained in a patient medication record system provided that this shall not *prohibit* pharmacy *ancillary personnel* from providing to the patient or the patient's health care giver certain information where no professional judgment is required such as dates of refills or prescription price information.

(c) Consultation with the prescriber regarding the patient and the patient's prescription.

(d) Extemporaneous compounding of the prescription, *however,* bulk compounding from a formula and IV admixture products prepared in accordance with chapter 246-871 WAC may be performed by a pharmacy *technician* when supervised by a pharmacist.

(e) Interpretation of data in a patient medication record system.

(f) Ultimate responsibility for all aspects of the completed prescription and assumption of the responsibility for the filled prescription, such as: Accuracy of drug, strength, labeling, proper container and other requirements.

(g) Dispense prescriptions to patient with proper patient information as required by WAC 246-869-220.

ATTORNEY GENERAL OF WASHINGTON
Agriculture & Health Division
7141 Cleanwater Drive SW
PO Box 40109
Olympia, WA 98504-009
(360) 586-6500

(h) Signing of the poison register and the Schedule V controlled substance registry book at the time of sale in accordance with RCW 69-38-030 and WAC 246-887-030 and any other item required by law, rule or regulation to be signed or initialed by a pharmacist.

(i) Professional communications with physicians, dentists, nurses and other health care practitioners.

*(j) Decision to not dispense lawfully prescribed drugs or devices or to not distribute drugs and devices approved by the U.S. Food and Drug Administration for restricted distribution by pharmacies.*

*(3)* Utilizing personnel to assist the pharmacist.

(a) The responsible pharmacist manager shall retain all professional and personal responsibility for any assisted tasks performed by personnel under his or her responsibility, as shall the pharmacy employing such personnel. The responsible pharmacist manager shall determine the extent to which personnel may be utilized to assist the pharmacist and shall assure that the pharmacist is fulfilling his or her supervisory and professional responsibilities.

(b) This does not preclude delegation to an intern or extern.

*(4) It is considered unprofessional conduct for any person authorized to practice or assist in the practice of pharmacy to engage in any of the following:*

*(a) Destroy unfilled lawful prescription;*

*(b) Refuse to return unfilled lawful prescriptions;*

*(c) Violate a patient's privacy;*

*(d) Discriminate against patients or their agent in a manner prohibited by state or federal laws; and*

*(e) Intimidate or harass a patient.*

**a.**     **Application and operation of the rules**

Some individual Board members who were on the Board when the rules were adopted have opined that under these rules a pharmacy would be required to "deliver" time sensitive medications on-site unless one of the exceptions in Wash. Admin. Code § 246-869-010(1)(a) –

ATTORNEY GENERAL OF WASHINGTON
Agriculture & Health Division
7141 Cleanwater Drive SW
PO Box 40109
Olympia, WA 98504-009
(360) 586-6500

1 (e) applied. Similarly, those former members have opined that while a pharmacist cannot

2 destroy or withhold a valid prescription the rule does not require them to dispense medication.

3 The pharmacist is not required to give a reason for declining and may decline to dispense for

4 any reason, including religious objections or personal animus against the patient.

5 In the circumstance of a pharmacist declining to dispense a medication, the pharmacy

6 has the obligation of finding a way to deliver the medication to the patient if the medication or

7 the individualized circumstances for the patient make the delivery time sensitive. As noted

8 above, the duty of the pharmacy to deliver a medication would only arise for medications it

9 was required to have in stock <u>and that are actually sitting on the shelf when the patient requests</u>

10 <u>the medication.</u> There is no duty to deliver a medication that is not mandated by the stocking

11 rule, nor is there a duty to deliver a medication that a pharmacy normally maintains, but is

12 temporarily out-of-stock despite good faith compliance with the stocking rule. Wash. Admin.

13 Code §§ 246-869-010(1)(e) and Wash. Admin. Code § 246-869-150(1).

14 The Board did not mandate how a pharmacy should accommodate an objecting

15 pharmacist or how the pharmacy is to get the medication from its shelf into the hands of its

16 patient, if the pharmacist on duty refuses to dispense, regardless of whether the reason for the

17 refusal is religious, political, or due to personal animus against the patient.[4]

18 The composition of the Board membership has almost completely changed since the

19 2007 rules were adopted.[5] The actual application of Board rules only occurs through decisions

20 on complaints of misconduct that come to the attention of the Board. The complaints and

21 potential discipline are determined by members of the Board. Neither DOH nor the

22

23
24
25
[4] As applied in this case, accommodating Ms. Meler and Ms. Thelen is not particularly challenging since Plan B and *ella* are pre-packaged and do not require any counting, sorting, or handling of the pills. Both plaintiffs have testified that they are willing to hand the product over the counter and ring up the sale. Their only objection is with having to provide consultation on the drugs. A consultation can be done by telephone with any pharmacist licensed in Washington.

26
[5] The current Board membership consists of Rebecca Hille, Gary Harris, Al Linggi, Chris Barry, Elizabeth Jensen, Donna Feild, and one vacant position.

ATTORNEY GENERAL OF WASHINGTON
Agriculture & Health Division
7141 Cleanwater Drive SW
PO Box 40109
Olympia, WA 98504-009
(360) 586-6500

1  Governor's Office casts a vote in the application of the rules in cases involving potential

2  discipline against a licensee.

3  **B.      Operation of the Board's Rules**

4         In *Lukumi,* the Supreme Court noted that a facially neutral rule could be subjected to

5  heightened scrutiny if the actual application of the language of a rule revealed an over or under

6  inclusive effect supporting a conclusion that the rule was targeted against a particular religious

7  practice. *Lukumi,* 508 U.S. at 535.  In short, religious gerrymandering could subject a rule to

8  heightened scrutiny.  In *Lukumi,* the Court found the numerous exceptions to the City of

9  Hialeah's animal sacrifice ordinance to have been carefully crafted to only apply to

10  practitioners of the Santeria religion and not to other animal killings. *Lukumi,* 508 U.S. at 535.

11        Unlike the gerrymandering that doomed the rules in *Lukumi,* there is nothing in the

12  Board's stocking rule or in the 2007 rules that has a gerrymandering effect of targeting

13  pharmacists/pharmacies with religious objections to Plan B or *ella.*  As noted by the Ninth

14  Circuit in this case, the fact that a neutral rule may be offensive to a particular religious

15  practice does not relieve citizens from complying. *Stormans,* 586 F.3d at 1131.  The fact that

16  Kevin Stormans has a religious objection to stocking Plan B and *ella* does not exempt his

17  pharmacy from having to comply with that rule.

18        **1.      Legislative history**

19        As noted by the Ninth Circuit, the will of the Board can only be known through its

20  collective actions. *Stormans,* 586 F.3d at 1133.  Attempting to divine the collective motive of

21  the Board by examining the motives of individual members is more likely to be misleading

22  than probative.  The language of the rules as written by previous Boards in 1967 and 2007 is

23  what current Board members have to apply.  Where previous Boards have not gerrymandered

24  the rules to bind future Boards into an agenda of religious bigotry, then the motives of previous

25  Boards are wholly immaterial.

26

STATE DEFENDANTS' TRIAL BRIEF                    10               ATTORNEY GENERAL OF WASHINGTON
NO.  C07-5374 RBL                                                          Agriculture & Health Division
                                                                          7141 Cleanwater Drive SW
                                                                          PO Box 40109
                                                                          Olympia, WA 98504-009
                                                                          (360) 586-6500

It could be possible to identify institutional religious animus on the part of the Board if there was evidence of selective enforcement against pharmacists/pharmacies with religious objections to Board rules. The stocking rule has never been used to discipline any licensee, nor have the 2007 rules been used to discipline a pharmacist with religious objections. There simply is no evidence that the Board has an institutional pattern of treating pharmacies/pharmacists with religious beliefs differently than non-objecting licensees.[6]

## IV.   CONTROLLING LAW

### A.   The Rational Basis Test

When laws are found to be neutral and generally applicable, the rational basis test is applied. The Ninth Circuit fully explained the application of the neutral and general analysis of the rules at issue and that discussion need not be repeated here. *Stormans,* 586 F.3d at 1130 – 1138. The Free Exercise and Equal Protection claims are identical to the extent that Plaintiffs have the burden to negate every conceivable basis which might support the rules. *Heller v. Doe,* 509 U.S. 312, 319-20, 113 S. Ct. 2637, 125 L. Ed. 2d 257 (1993). *In accord*, *Gamble v. City of Escondido,* 104 F.3d 300, 307 (9th Cir. 1997).

An enactment must be upheld under the rational basis test where there is any conceivable set of facts which might support the enactment regardless of whether the rule-making body actually articulated such a basis. *F.C.C. v. Beach Communications, Inc.*, 508 U.S. 307, 315, 113 S. Ct. 2096, 124 L. Ed. 2d 211 (1993). A rule shall not be stricken under the rational basis test because the court believes the rule to be unwise, unlikely to achieve its goal, or that the rule provides only a partial solution to a problem. *F.C.C. v. Beach Communications, Inc.*, 508 U.S. at 315.

In the context of applying the rational basis test to health care licensing, the Ninth Circuit has held:

---

[6] *See Rosenbaum v. City and County of San Francisco,* 484 F.3d 1142, 1152–53 (9th Cir. 2007) (selective enforcement requires proof of discriminatory effect, purpose, and allowed as part of a disparate policy, plan or pervasive pattern).

ATTORNEY GENERAL OF WASHINGTON
Agriculture & Health Division
7141 Cleanwater Drive SW
PO Box 40109
Olympia, WA 98504-009
(360) 586-6500

> [W]e do not require that the government's action actually advance its stated purposes, but merely look to see whether the government *could* have had a legitimate reason for acting as it did. *Dittman v. California,* 191 F.3d 1020, 1031 (9th Cir. 1999) (quoting *Halverson v. Skagit County,* 42 F.3d 1257, 1262 (9th Cir. 1994) (citation and internal quotation marks omitted)), *cert. denied,* 530 U.S. 1261, 120 S. Ct. 2717, 147 L. Ed. 2d 982 (2000). We need only determine whether the licensing scheme has a "conceivable basis" on which it might survive rational basis scrutiny. *Id.* (quoting *Lupert v. California State Bar,* 761 F.2d 1325, 1328 (9th Cir. 1985)).

*National Assoc. for Advancement of Psychoanalysis v. California Board of Psychology,* 228 F.3d 1043, 1050 (9th Cir. 2000).

The mere ability to hypothesize reasons that are arguable or plausible brings judicial inquiry to an end and warrants upholding the enactment. *Brandwein v. California Bd. Of Osteopathic Examiners,* 708 F.2d 1466, 1471 (9th Cir. 1983). As explained by the Supreme Court:

> Moreover, because we never require a legislature to articulate its reasons for enacting a statute, it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature. Thus, the absence of 'legislative facts' explaining the distinction "[o]n the record" has no significance in rational-basis analysis. In other words, *a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data.*

*F.C.C. v. Beach Communications, Inc.,* 508 U.S. at 315 (internal citations omitted, emphasis added).

The essence of the plaintiffs' case cannot be squared with the important separation of powers admonition in *Beach Communications.* The primary evidentiary effort of the plaintiffs is aimed at establishing that the "true motive" for the 2007 rules was antireligious animus for licensees with religious objections to Plan B. However, when *Beach Communications* and *Lukumi* are read together it is clear that attempting to divine the "true motive" of the Board is immaterial unless the text of the rules (or a gerrymandered effect of the rules) reveals an intent to target religious beliefs.

The plaintiffs' arguments that there are other ways, or even better ways, to promote the State's interest in accessing medications without delay is immaterial to the rational basis test.

ATTORNEY GENERAL OF WASHINGTON
Agriculture & Health Division
7141 Cleanwater Drive SW
PO Box 40109
Olympia, WA 98504-009
(360) 586-6500

*National Assoc. for Advancement of Psychoanalysis,* 228 F.3d at 1050. Similarly, it is immaterial whether the enacted rules will actually achieve their purpose or that the rules may create some economic hardships. *F.C.C. v. Beach Communications, Inc.*, 508 U.S. at 315. The judiciary judges neither the wisdom nor the fairness of the rules, but only whether a rational basis exists for the adopted rules. *National Assoc. for Advancement of Psychoanalysis,* 228 F.3d at 1051.

This case falls under the line of cases holding rules are not unconstitutional under a rational basis test even where an effect of the rule is to burden a religious practice. *See Lukumi,* 508 U.S. at 531 (citing cases). Because the rules have a rational relationship to the State's legitimate interest in ensuring timely access to lawful medications, the plaintiffs cannot carry their burden to negate every conceivable basis supporting the rules. Therefore, the plaintiffs' Free Exercise claim must be dismissed.

**B.    Plaintiffs Cannot Demonstrate A Violation Of The Equal Protection Clause Of The Fourteenth Amendment To The United States Constitution**

    **1.    The Equal Protection Clause is not implicated where the enactment does not create classifications**

The Equal Protection Clause forbids the State from treating similarly situated persons differently. *Jackson Water Works, Inc. v. Public Utilities Commission of California,* 793 F.3d 1090, 1092 (9th Cir. 1986) A threshold issue is whether an enactment creates classifications among similarly situated persons or groups. The Plaintiffs' Equal Protection claim fails this initial inquiry because neither Wash. Admin. Code §§ 246-869-010 nor 246-863-095 creates classifications among pharmacists or pharmacies.

As determined by the Ninth Circuit in its analysis of 'general applicability,' the rules treat all pharmacists and pharmacies alike and do not distinguish those licensees who object to Plan B for religious purposes from those who do not object:

> Under the rules, all pharmacies have a "duty to deliver" all medications "in a timely manner." Neither regulation challenged in this case applies to refusals only for religious reasons. The new rules apply to all lawful medications, not

ATTORNEY GENERAL OF WASHINGTON
Agriculture & Health Division
7141 Cleanwater Drive SW
PO Box 40109
Olympia, WA 98504-009
(360) 586-6500

just those that pharmacies or pharmacists may oppose for religious reasons. Pharmacies and pharmacists who do not have a religious objection to Plan B must comply with the rules to the same extent-no more and no less-than pharmacies and pharmacists who may have a religious objection to Plan B.

*Stormans,* 586 F.3d at 1134.

The Plaintiffs' Equal Protection claim fails because the challenged rules do not create classifications among similarly situated persons or groups. *See Stormans*, 586 F.3d at 1131 (rules are neutral and do not target any religious group or religious belief).

The Plaintiffs allege the rules "treat pharmacists unequally based on the decisions of others." (Dkt. No. 8, ¶ 59.) According to Plaintiffs:

> The new Rules protect a pharmacist with a religious objection to dispensing Plan B from violating her conscience when another pharmacist is on duty and can dispense the drug. But a pharmacist who works in a pharmacy that does not have a second pharmacist on duty must violate her conscience and dispense the drug or expose her license and the license of her employer to disciplinary action, including revocation of that license.

> By protecting a right of conscience for pharmacists who work in stores where a second pharmacist is on duty who will dispense Plan B, but denying that right to pharmacists who work alone, the Rules treat Plaintiffs differently from other similarly-situated pharmacists on the basis of their religious belief and in violation of the Equal Protection Clause of the United States Constitution.

(Dkt. No. 8, ¶¶ 60-61.)

The distinction between pharmacies with an objecting pharmacist and pharmacies with non-objecting pharmacists available to dispense is not a distinction or classification created by the rules. Contrary to Plaintiffs' allegations, the rules do not mandate the hiring of a second pharmacist, nor do the rules distinguish among pharmacies on the basis of having a second pharmacist. The rules do not specify how pharmacies are to fulfill their responsibility to assure the timely delivery of lawful medications to their patients. The Board chose to not mandate particular business practices, leaving it to the discretion of the pharmacy owners to decide the method that best works for their particular circumstances.

STATE DEFENDANTS' TRIAL BRIEF                    14                    ATTORNEY GENERAL OF WASHINGTON
NO.  C07-5374 RBL                                                          Agriculture & Health Division
                                                                            7141 Cleanwater Drive SW
                                                                                 PO Box 40109
                                                                          Olympia, WA 98504-009
                                                                               (360) 586-6500

1      Even if the rule has a different effect upon some pharmacies as opposed to others, this

2 difference is not of constitutional magnitude under the Equal Protection Clause.  As stated in

3 *Personnel Adm'r of Massachusetts v. Feeney,* 442 U.S. 256, 271-72 (1979):

4        Most laws classify, and many affect certain groups unevenly, even though the
       law itself treats them no differently from all other members of the class

5        described by the law.  When the basic classification is rationally based*, uneven*
       *effects upon particular groups within a class are ordinarily of no constitutional*

6        *concern.*

7 *Feeney,* 442 U.S. at 271-72.

8      Equal Protection under the Fourteenth Amendment "guarantees equal laws, not equal

9 results." *Feeney,* 442 U.S. at 273.  Plaintiffs cannot assert that the rules on their face classify

10 pharmacies based on the number of pharmacists they employ.  Plaintiffs can only offer a

11 speculative claim that the rules may have a different *result* depending on the business decisions

12 of the pharmacies.  Any difference in *result* is the same regardless of whether the failure to

13 provide timely access to medications is "motivated by religion, morals, conscience, ethics,

14 discriminatory prejudices, or personal distaste for the patient." *Stormans,* 586 F.3d at 1131.

15 The distinction emphasized by Plaintiffs relates to how easy or difficult it may be for a

16 pharmacy to accommodate an objecting pharmacist, but it is not a distinction that implicates

17 the Equal Protection Clause.  A pharmacy is required to timely deliver all lawful medications

18 regardless of why a pharmacist refuses to dispense. *See Stormans*, 586 F.3d at 1132-33.

19      Rules that affect conduct in a neutral and general manner are qualitatively different

20 than rules that set up classifications for different treatment; that some persons may feel the

21 effect of a rule more than others does not convert a neutral and generally applicable rule into

22 one that erects classifications along similarly situated persons. *See Stormans,* 586 F.3d at

23 1127-29.  The Ninth Circuit considered and rejected the Plaintiffs' claim that religious

24 objection to Plan B was targeted by the Board in enacting the rule. *Stormans*, 586 F.3d at

25 1132-33.  The holding that the rules are neutral and have general application requires the

26

ATTORNEY GENERAL OF WASHINGTON
Agriculture & Health Division
7141 Cleanwater Drive SW
PO Box 40109
Olympia, WA 98504-009
(360) 586-6500

rejection of the Plaintiffs' claim that differences in the effect of the rules on different pharmacies requires heightened scrutiny under the Equal Protection Clause.

There is nothing in the text or application of the rules that treat pharmacists or pharmacies with religious objections to Plan B differently than those without such beliefs. The regulations do not treat Plaintiffs differently than any other pharmacists or pharmacies that choose not to dispense or timely deliver lawfully prescribed drugs for any reason. The rules simply do not create classifications, and there is no basis for any further Equal Protection analysis.

### 2. The rules do not impose an unconstitutional disparate impact

Implicit in the Plaintiffs' Equal Protection claim is a contention of disparate impact based on whether a licensee has a religious objection to dispensing Plan B. (Dkt. No. 8, ¶ 61). Under the Equal Protection Clause, a disparate impact claim is subject to dismissal when the challenged rule does not single out a particular group based on membership in that group. *PMG Intern. Div. L.L.C. v. Rumsfeld*, 303 F.3d 1163, 1172 (9th Cir. 2002). A disparate impact theory in this case is foreclosed by the Ninth Circuit's decision that the rules adopted by the Board are neutral and generally applicable. *Stormans*, 586 F.3d at 1137.

Even if the rules had a classifying effect, an equal protection claim based on disparate impact requires a showing of discriminatory intent or a "stark pattern" of disparate enforcement. *PMG*, 303 F.3d at 1172-73; *North Pacifica LLC v. City of Pacifica,* 526 F.3d 478, 486 (9th Cir. 2008). In order to establish a claim for a violation of equal protection, the court in *Pacifica* held the Plaintiff must show the Defendant:

> *[I]ntentionally and without rational basis*, treated the Plaintiff differently from others similarly situated.

*Pacifica,* 526 F.3d at 486 (emphasis added). There is no evidence in this case that the Board intentionally targeted pharmacists with religious objections to Plan B. *Stormans*, 586 F.3d at 1134. In addition, the rules have the rational basis of promoting timely access to medications.

ATTORNEY GENERAL OF WASHINGTON
Agriculture & Health Division
7141 Cleanwater Drive SW
PO Box 40109
Olympia, WA 98504-009
(360) 586-6500

Cases addressing discriminatory intent also hold discriminatory inferences cannot be drawn merely from the composition of the membership of a rule-making body. *PMG*, 303 F.3d at 1173. Further, even where a rule was written and advocated by a lobbyist or other motivated group, that fact does not undermine the validity of an adopted rule. *Single Moms, Inc. v. Montana Power Co.*, 331 F.3d 743, 747 (9th Cir. 2003). Recently, the U.S. District Court for the Western District of Washington (Tacoma, J. Bryan), rejected an equal protection claim as a matter of law where Plaintiff argued that a land use moratorium was granted as mere pretext for caving in to a lobbying organization. *Samson v. City of Bainbridge Island,* 683 F. Supp. 2d 1164, W.D. Wash., J. Bryan (2010). As stated by Judge Bryan:

> Plaintiffs assert that the real reason for the passing of the moratoria was that a neighborhood association lobbied or "pressured" the City to institute a moratorium. Plaintiffs have not cited case law and the Court has not found case law that supports the proposition that lobbying by a neighborhood association can not provide a rational basis for passing an ordinance. Apparently, Plaintiffs lost, or did not enter, the lobbying contest.

*Samson,* at p. 11.

The Ninth Circuit in this case, as in *PMG*, stated it is error to impute to the entire Board any motivation to burden religious objectors to Plan B:

> The collective will of the Board cannot be known, except as it is expressed in the text and associated notes and comments of the final rules. To the extent the record indicates anything about the Board's motivation in adopting the final rules, it shows the Board was motivated by concerns about the potential deleterious effect on public health that would result from allowing pharmacists to refuse to dispense lawfully prescribed medications based on personal, moral objections (of which religious objections are a subset). It would, therefore, be incorrect to impute-as the district court did-to the entire Board a motivation to "impose burdens only on conduct motivated by religious belief." *Lukumi*, 508 U.S. at 543, 113 S. Ct. 2217.

*Stormans*, 586 F.3d at 1133.

**3.      The rules treat pharmacists and pharmacies the same as other individual health care providers and health care facilities under Washington's conscience statutes**

The Plaintiffs also allege an Equal Protection violation based on the claims that their right of conscience is denied as compared to other health care providers. (Dkt. No 8, ¶¶ 62-

STATE DEFENDANTS' TRIAL BRIEF
NO.  C07-5374 RBL

17

ATTORNEY GENERAL OF WASHINGTON
Agriculture & Health Division
7141 Cleanwater Drive SW
PO Box 40109
Olympia, WA 98504-009
(360) 586-6500

66).  The Plaintiffs' argument is foreclosed by the ruling of the Ninth Circuit that the rules do not target religious beliefs and the State may adopt rules regulating conduct as long as the rules have a rational basis.  *Stormans,* 586 F.3d at 1134.

Nonetheless, Plaintiffs' equal protection claim based on this allegation fails when the statutes are examined in their entirety.  Their claim fails to acknowledge the distinction between the rules' treatment of pharmacists and pharmacies, which is similar to the treatment of *individual* health care providers and non-religiously sponsored health carriers and facilities in Wash. Rev. Code §§ 48.43.065 and 70.47.160.  As noted by the Ninth Circuit, this Court's acceptance of Plaintiffs' claim "failed to give proper weight to the rules' distinction between pharmacies and pharmacists."  *Stormans*, 586 F.3d at 1137.  The rule governing *pharmacists'* responsibilities, Wash. Admin. Code § 246-863-095, is consistent with Wash. Rev. Code §§ 48.43.065 and 70.45.160 because pharmacists, like other individual health care providers, can decline to provide services for reasons of conscience.

Wash. Admin. Code § 246-869-010 treats non-religiously sponsored pharmacies the same as non-religiously sponsored health carriers and facilities in Wash. Rev. Code §§ 48.43.065 and 70.47.160.  Pharmacies such as Stormans, like non-religiously sponsored health carriers and facilities, must assure that the patients receive the care, when an individual health care provider declines to provide the care by exercising the provider's conscience.  Wash. Admin. Code § 246-869-010; Wash. Rev. Code § 48.43.065; Wash. Rev. Code § 70.47.160.  Under Wash. Rev. Code §§ 48.43.065(2)(b), (c) and 70.47.160(2)(b), (c), non-religiously sponsored health carriers and facilities are required to patient assure access to health care services, even if *individual* health care providers decline to provide those services.

Similarly, under Wash. Rev. Code §§ 48.43.065(3)(a) and 70.47.160(3)(a), while "no individual or organization with a religious or moral tenet opposed to specific services may be required to purchase insurance coverage for that services or services if they object to doing so for reason of conscience or religion," Wash. Rev. Code §§ 48.43.085(3)(b) and

STATE DEFENDANTS' TRIAL BRIEF
NO.  C07-5374 RBL

18

ATTORNEY GENERAL OF WASHINGTON
Agriculture & Health Division
7141 Cleanwater Drive SW
PO Box 40109
Olympia, WA 98504-009
(360) 586-6500

70.45.160(3)(b) state that these provisions "shall not result in an enrollee being denied coverage of, and *timely access to,* any service or services excluded from their benefits package as a result of their employer's or another individual's exercise of the conscience clause in (a)." (Emphasis added). Wash. Rev. Code §§ 48.43.065(3)(c) and 70.47.160(3)(c), similarly to Wash. Rev. Code §§ 48.43.065(2)(c) and 70.45.160(2)(c), then direct the Insurance Commissioner and the Health Care Authority's Administrator, respectively, to adopt rules describing the process by which enrollees access the care.

Contrary to Plaintiffs' claim, the rules, Wash. Admin. Code §§ 246-863-095 and 246-869-010, treat pharmacists (*individual* health care providers) and pharmacies (health care facilities) the same as Wash. Rev. Code §§ 43.48.065 and 70.47.160 when those statutes are examined in their entirety, rather than isolating specific provisions as Plaintiffs have asked this Court to do. By enacting Wash. Admin. Code § 246-869-010, the Pharmacy Board adopted rules to *assure timely access* to lawful medications, regardless of the reason or motivation for the denial of the service. In doing so, Wash. Admin. Code § 246-869-010 treats pharmacies' patients in a manner similar to health care facilities' patients whose access to health care should not be limited by an individual health care provider's decision to not provide health care.

In *Williamson v. Lee Optical,* 348 U.S. 483, 489 (1955), the court, addressing an equal protection challenge to legislation restricting the practice of opticians, stated "[t]he prohibition of the Equal Protection Clause goes no further than the invidious discrimination." Classifying pharmacies, an entity from which patients receive medically necessary medications, as similar to other non-religiously sponsored facilities upon which patients rely for health care access is not invidious, but is instead rationally related to the Board's objective of protecting the public health, safety and welfare by assuring timely access to lawful medications.

STATE DEFENDANTS' TRIAL BRIEF
NO. C07-5374 RBL

19

ATTORNEY GENERAL OF WASHINGTON
Agriculture & Health Division
7141 Cleanwater Drive SW
PO Box 40109
Olympia, WA 98504-009
(360) 586-6500

The Plaintiffs' Equal Protection claims should be dismissed.[7]

**C.  The Board's Adoption Of The Rules Complied With The Requirements Of Procedural Due Process**

The adoption of a rule complies with procedural due process when there has been public notice of the rule-making and open hearings. *Texaco, Inc. v. Short*, 454 U.S. 516, 536 (1982); *Halverson v. Skagit County,* 42 F.3d 1257 (9th Cir. 1994).

It is undisputed that the Board provided public notice of the rule-making in this case and convened open public hearings. Ninety-one individuals offered statements during the public meetings. In addition, approximately 21,000 written comments were received by the Board. The adoption of the rules complied with the requirements of procedural due process.

**D.  The Challenged Rules Do Not Conflict with Title VII, 42 U.S.C. § 2000e-7 Or Violate The Supremacy Clause**

The Defendants also move for dismissal of the Plaintiffs' Title VII claim and the Supremacy Clause claim embedded therein.

**1.  The Board was shielded by legislative immunity when it enacted the challenged rules**

The Supreme Court has recognized that state and local legislators are entitled to the same legislative immunity for enacting laws and regulations as has been traditionally accorded to Congress. *Bogan v. Scott-Harris,* 523 U.S. 44, 118 S. Ct. 966, 140 L. Ed. 2d 79 (1998). In *Bechard,* the Ninth Circuit held:

> In *San Pedro Hotel Co. v. City of Los Angeles,* 159 F.3d 470 (9th Cir. 1998), we stated our rule governing legislative immunity, which bars suits against legislators when they have act[ed] in their legislative capacities, not in their administrative or executive capacities. In this circuit, we determine whether an act is legislative by considering two questions: (1) whether the act involves ad hoc decisionmaking, or the formulation of policy; and (2) whether the act applies to a few individuals, or to the public at large.

*Bechard v. Rappold,* 287 F.3d 827, 829 (9th Cir. 2002), quoting *San Pedro,* 159 F.3d at 476.

---

[7] The remainder of Plaintiffs' Equal Protection claims were selective enforcement allegations against HRC. (Dkt. No. 8, ¶¶ 67-69). Those claims are moot in light of the stipulated dismissal of HRC.

STATE DEFENDANTS' TRIAL BRIEF
NO. C07-5374 RBL                                    20                    ATTORNEY GENERAL OF WASHINGTON
                                                                              Agriculture & Health Division
                                                                              7141 Cleanwater Drive SW
                                                                              PO Box 40109
                                                                              Olympia, WA 98504-009
                                                                              (360) 586-6500

The challenged rules meet the requirements for legislative immunity. The process of rule-making by the Board was completed pursuant to Washington's Administrative Procedures Act. Although the subject matter became contentious, it was clearly within the realm of formulating policy. The rules are applicable to the practice of pharmacy for all pharmacy and pharmacist licensees and was not limited in its application to a few individuals.

The Board is not being sued under Title VII in this case in its capacity as an employer, but solely in its capacity as a rule-making body. Under *Bogan* and *San Pedro Hotel,* the Plaintiffs' Title VII action is barred by legislative immunity.

### 2. The challenged rules neither permit nor require an unlawful employment practice to occur

The challenged rules are neither preempted by nor inconsistent with Title VII. Congress has limited the preemptive effect of Title VII to cases in which there is a conflict between federal and state law. *California Federal Savings & Loan Assoc. v. Guerra,* 479 U.S. 272, 281 (1987). As acknowledged in *Coalition for Economic Equity v. Wilson,* 122 F.3d 692, 710 (9th Cir. 1997), § 709 of Title VII is the only preemption provision in Title VII and reads:

> Nothing in this subchapter shall be deemed to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of the any State or political subdivision of a State, *other than any such law which purports to require or permit the doing of any act which would be an unlawful employment practice under this subchapter.*

42 U.S.C. § 2000e-7 (emphasis added).

Plaintiffs must overcome "the presumption that state or local regulation of matters related to health and safety is not invalidated under the Supremacy Clause." *Hillsborough Cy., Fla. v. Automated Medical Labs., Inc.,* 471 U.S. 707, 715 (1985). The rules challenged by the Plaintiffs do not "purport to require or permit the doing of any act which would be an unlawful employment practice" under Title VII. The Board's rules do not direct the pharmacy employers to take any action with respect to pharmacists who refuse to dispense any lawful prescription for any reason, secular or religious. Neither do the Board's rules purport to permit

STATE DEFENDANTS' TRIAL BRIEF
NO. C07-5374 RBL

21

ATTORNEY GENERAL OF WASHINGTON
Agriculture & Health Division
7141 Cleanwater Drive SW
PO Box 40109
Olympia, WA 98504-009
(360) 586-6500

any employment action that would be unlawful under Title VII. Pharmacy employers are left with discretion to take any employment action they deem appropriate and lawful under Title VII (and other applicable laws) where an employee pharmacist refuses to dispense. The rules do not purport to exclude any pharmacy or any person from compliance with Title VII.[8]

The Board's rules do not permit or require employers to engage in unlawful employment practices; therefore, the rules do not conflict with Title VII and are not preempted by the Supremacy Clause.

### 3. The Plaintiffs have not met the jurisdictional requirements for commencing a Title VII action

A federal court does not have subject matter jurisdiction over a Title VII action until a claimant has exhausted its administrative remedies. *Kirk v. Rockwell Int'l Corp.* 578 F.2d 814, 817 (9th Cir. 1978); *Sosa v. Hiraoka,* 920 F.2d 1451, 1456 (9th Cir. 1990). Under Title VII, a claimant's action is precluded by failure to file a charge of employment discrimination with the EEOC within 180 days of the unlawful act, and then the claimant must commence its action within 90 days of receiving the EEOC right-to-sue letter. *Kirk,* 578 F.2d at 817.

None of the conditions precedent to a Title VII action occurred in this case. The absence of any attempt to comply with the requirements of Title VII emphasizes that no unlawful discrimination has actually occurred to any of the Plaintiffs. The Title VII claim should be dismissed.

## V. CONCLUSION

The Ninth Circuit has decided the rules adopted by the Board are neutral and generally applicable. *Stormans,* 586 F.3d at 1137. The instruction on remand is to determine whether there is a rational basis supporting the rules. *Stormans,* 586 F.3d at 1137. There is a rational relationship between the rules adopted by the Board and the State's legitimate interest in

---

[8] In particular, nothing in the rules purports to excuse any pharmacy from the requirements of § 703(a)(1) of Title VII, which makes it an "unlawful employment practice" for an employer not to make "reasonable accommodations, short of undue hardship, for the religious practices of his employees and prospective employees." *Trans World Airlines, Inc. v. Hardison,* 432 U.S. 63, 74 (1977).

STATE DEFENDANTS' TRIAL BRIEF          22
NO. C07-5374 RBL

ATTORNEY GENERAL OF WASHINGTON
Agriculture & Health Division
7141 Cleanwater Drive SW
PO Box 40109
Olympia, WA 98504-009
(360) 586-6500

1 promoting timely access to lawful medications. Therefore, the Plaintiffs' Free Exercise claim

2 should be dismissed.

3 The Plaintiffs' Equal Protection claim should be dismissed because the rules do not

4 create classifications between similarly situated persons or groups. To the extent any

5 procedural process claim remains in the case against the Board, the claim should be dismissed

6 because the rules were adopted after providing public notice of rule-making and holding open

7 public meetings. The Title VII claim is barred by legislative immunity and also fails due to

8 noncompliance with condition precedent EEOC filing requirements.

9 DATED this 10st day of November, 2011.

10                                ROBERT M. MCKENNA
                                 Attorney General
11

12

13                                /s/Rene D. Tomisser
                                 RENE D. TOMISSER, WSBA #17509
14                                Senior Counsel
                                 JOYCE A. ROPER, WSBA #11322
15                                Senior Assistant Attorney General
                                 Attorneys for Defendants Department of
16                                Health and Board of Pharmacy
                                 Attorney General's Office
17                                P.O. Box 40109
                                 Olympia, WA 98504-0109
18                                360-586-6500

19

20

21

22

23

24

25

26

STATE DEFENDANTS' TRIAL BRIEF          23          ATTORNEY GENERAL OF WASHINGTON
NO.  C07-5374 RBL                                              Agriculture & Health Division
                                                             7141 Cleanwater Drive SW
                                                                  PO Box 40109
                                                             Olympia, WA 98504-009
                                                                (360) 586-6500

**CERTIFICATE OF SERVICE**

I hereby certify that on November 10, 2011, I caused to be electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Kristen K. Waggoner  kwaggoner@elmlaw.com
Luke W. Goodrich  lgoodrich@becketfund.org
Steven H. Aden  saden@telladf.org
Benjamin W. Bull  bbull@telladf.org
Steven Thomas O'Ban  soban@elmlaw.com
Joyce Roper  joycer@atg.wa.gov
Alan Copsey  alanc@atg.wa.gov
Laura F. Einstein  laura.einstein@ppww.org
Lisa M. Stone  lstone@legalvoice.org
Molly A. Terwilliger  mollyt@summitlaw.com
Rima J. Alaily  rima.alaily@gmail.com
Sara Ainsworth  sainsworth@legalvoice.org
Thomas L. Boeder  tboeder@perkinscoie.com
Gretchen Freeman Cappio  gcappio@kellerrohrback.com
Rebecca Jane Roe  roe@sgb-law.com
Andrew L. Greene  agreene@perkinscoie.com
Hilary Bramwell Mohr  hmohr@riddellwilliams.com
Scott A. Smith  ssmith@riddellwilliams.com
Andrew L. Greene  agreene@perkinscoie.com
Scott A. Smith  ssmith@riddellwilliams.com
Vanessa Soriano Power  vspower@stoel.com
Jessica M. Andrade  andrade.jessica@dorsey.com

/s/Rene D. Tomisser
RENE D. TOMISSER, WSBA #17509
Senior Counsel
Attorney for Defendants Department of Health and Board of Pharmacy
Attorney General's Office
P.O. Box 40109
Olympia, WA  98504-0109
360-586-6500

STATE DEFENDANTS' TRIAL BRIEF
NO.  C07-5374 RBL

24

ATTORNEY GENERAL OF WASHINGTON
Agriculture & Health Division
7141 Cleanwater Drive SW
PO Box 40109
Olympia, WA 98504-009
(360) 586-6500