# EXHIBIT H

No. 07-36039, 07-36040

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

STORMANS, INC., d/b/a Ralph's Thriftway; et al.,
Plaintiffs/Appellees

v.

MARY SELECKY, Secretary of the Washington State
Department of Health; et al.,
Defendants/Appellants

And

JUDITH BILLINGS, et al.,

Defendants-Intervenors/Appellants

APPEAL FROM THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
No. CV-07-05374-RBL

AMICUS CURIAE BRIEF OF THE WASHINGTON STATE CATHOLIC
CONFERENCE OF BISHOPS IN SUPPORT OF PLAINTIFFS-APPELLEES

Patrick Crowley
CROWLEY LAW OFFICES, P.S.
1411 Fourth Avenue, Suite 1520
Seattle, WA 98101
Telephone: (206) 224-7069
Fax: (206) 624-8785
Attorney for Amicus

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

*Amicus* is a 501(c)(3) nonprofit corporation. It has no corporate parent, and no publicly held corporations own any part of the *amicus*.

# TABLE OF CONTENTS

Page

I.     IDENTITY AND INTEREST OF AMICUS.................................... 1

II.    INTRODUCTION................................................................. 3

III.   ARGUMENT..................................................................... 4

     A.    Conscience is a Religious Concern........................................ 4

     B.    Conscience is an Essential Part of Federal Law.......................... 7

     C.    The Right of Conscience is Secured by the State Constitution......... 8

     D.    The Right of Conscience is Affirmed in Statute Law.................... 9

     E.    The Washington State Pharmacy Board Affirmed the
        Right of Conscience......................................................... 11

     F.    The Rights of All People Involved Should Be Protected .............. 12

IV.   CONCLUSION ............................................................... 13

# TABLE OF AUTHORITIES

## CASES

*Braunfeld v. Brown,*
366 U.S. 599 (1961) ............................................................ 6, 7

*Employment Division v. Smith,*
494 U.S. 872 (1990) ............................................................ 8

*Everson v. Board of Education,*
330 U.S. 1 (1947) ............................................................ 8

*Gallagher v. Crown Kosher Supermarket of Mass.,*
366 U.S. 617 (1961) ............................................................ 6, 7

*McGowan v. Maryland,*
366 U.S. 420 (1961) ............................................................ 6, 7

*Sherbert v. Verner,*
374 U.S. 398. 402 (1963) ............................................................ 8

*Torcaso v. Watkins,*
367 U.S. 488 (1961) ............................................................ 8

*Two Guys from Harrison-Allentown v. McGinley,*
366 U.S. 582 (1961) ............................................................ 6

## STATUTES

Wash. Rev. Code § 48.43.065 ............................................................ 9, 10

Wash. Rev. Code § 70.47.160 ............................................................ 9, 10

## CONSTITUTIONAL PROVISIONS

U.S. Const. Amend. I ............................................................ 7

Wash. Const. Art. I, § 11 ............................................................ *passim*

# TABLE OF AUTHORITIES
## (Continued)

## SESSION LAWS

Wash. Sess. Laws 492 (1993) ............................................................ 3

Wash. Sess. Laws 265 (1995) ............................................................ 3

Wash. Sess. Laws 266 (1995) ............................................................ 3

## MISCELLANEOUS

Alex J. Brunett, *'Adult Faith' Needed to Confront Dictatorship of Relativism*, *available at* http://www.seattlearch.org/FormationAndEducation/Progress/ 052007/FromArchbishop5-3-07.htm (last visited Apr. 17, 2008) .................. 4, 5

James Madison, *Memorial and Remonstrance Against Religious Assessments* Para. 15 (1785) ............................................................................ 7

Libreria Editrice Vaticana, *Catechism of the Catholic Church* (1994) .............. 4

Michael W. McConnell, *The Origins and Historical Understanding of Free Exercise of Religion,* 103 Harv. L. Rev. 1409 (1990) .................................. 7

Pope Benedict XVI, Speech to Members of the International Congress of Catholic Pharmacists at Consistory Hall (Oct. 29, 2007) ......................................... 5

Thomas Jefferson, Reply to New London Methodists (1809) ......................... 7

# I. IDENTITY AND INTEREST OF AMICUS

This Amicus Curiae brief is presented by the Washington State Catholic Conference of Bishops which represents the Catholic Bishops of the State of Washington. The Catholic Bishops of Washington State are Alex J. Brunett of the Archdiocese of Seattle, Bishop William S. Skylstad of the Diocese of Spokane, Bishop Carlos A. Sevilla, S.J. of the Diocese of Yakima, Bishop Joseph J. Tyson and Bishop Eusebio Elizondo, M.Sp.S. Auxiliary Bishops of the Archdiocese of Seattle.

The Archdiocese of Seattle covers 19 counties west of the Cascade Mountains of the State of Washington, serving a total Catholic population of 577,400 people. The Diocese of Yakima covers seven counties in Central Washington, serving a total Catholic population of 77,149 people. The Diocese of Spokane covers 13 counties in Eastern Washington serving a Catholic population of 97,655 people.

The Washington State Catholic Conference of Bishops submits this brief because it has an interest in ensuring that the Free Exercise Clause of the United States Constitution is properly interpreted. Moreover, the Conference holds a sincere religious belief that life begins at conception and that Plan B prevents implantation and can destroy innocent human life. Finally, members of the Catholic Church have historically played an instrumental role in providing

excellent health care services throughout the United States and the world, and this role stems from Catholic tenets, which urge members to engage in these types of activities. Catholics will be prevented from following these tenets and continuing to serve in these capacities if they are forced to participate in the destruction of life.

All parties have consented to the filing of this brief.

## II. INTRODUCTION

This brief is submitted to speak to the right of pharmacists and pharmacy owners to follow their consciences when asked to dispense Plan B drugs, the so-called "morning after" pills, which can be contraceptives, but in some cases may induce abortion by preventing implantation. The Washington State Catholic Conference of Bishops submits this brief in response to the Brief of Amici Curiae Philip Talmadge, et al. in Support of Defendants-Appellants and also to respond to certain arguments advanced by the Brief of Amici Curiae Religious Coalition for Equality, et al. in Support of Defendants-Appellants.

When the Washington State legislature enacted the Washington Health Services Act contained in 1993 Wash. Sess. Laws 492, § 456,[1] the law represented significant health insurance reform intended to guarantee universal access to health care for all Washington residents. It provided for defined health insurance benefits, caps on insurance premiums, and employer and individual requirements. This Health Services Act later was repealed for the most part. But it is noteworthy that the section granting the right to exercise conscience was explicitly retained.[2] That part of the Health Services Act remains to this day in what Amicus Phillip

---

[1] 1995 Wash. Sess. Laws 265 (passed Senate April 14, passed House April 17, 1995, signed by Governor May 8, 1995); 1995 Wash. Sess. Laws 266 (passed House April 18, passed Senate April 21, 1995, signed by Governor May 8, 1995).
[2] *See* Amici Br. of Philip Talmadge, et al., at 12.

Talmadge refers to as "the insurance statutes."[3]  This overlooks the fact that the provision originally enacted to protect constitutional rights to conscience in the area of health care was never repealed.

## III. ARGUMENT

### A.  Conscience is a Religious Concern.

A person's right to his or her conscience is both a religious and legal concern.  Everyone has a right and obligation to form his or her conscience and to follow it.  Simply put, conscience is the faculty by which an individual discerns what is right and what is wrong.  This is a firmly held belief of the Roman Catholic Church but is commonly accepted by all religions.[4]

Archbishop Alex J. Brunett, the Archbishop of Seattle, in an article in the Catholic Northwest Progress in its May 3, 2007 issue described the position of the Washington State bishops as follows:

> Because these contraceptive drugs may in certain cases cause abortion, some pharmacists sought relief from a proposal being pushed by the pro-choice lobby that requires them to dispense these prescriptions.  I say 'for many' because the drugs themselves, while morally objectionable, were not the principal reason the Catholic bishops of Washington State decided to take a position on the issue. Our teaching on the dignity of life and opposition to abortion is well known.  But while proponents of the rule and the media reduced this

---

[3] *Id.*

[4] *See* Libreria Editrice Vaticana, *Catechism of the Catholic Church* (1994).

debate to 'pro-life v. pro-choice,' it was our support for an individual's right of conscience that was of primary concern.[5]

This is a position that is strongly held by the Catholic Church.

In his address to Members of the International Congress of Catholic Pharmacists at Consistory Hall on October 29, 2007, Pope Benedict XVI stated:

> In the moral domain, your Federation is invited to address the issue of conscientious objection, which is a right your profession must recognize, permitting you not to collaborate either directly or indirectly by supplying products for the purpose of decisions that are clearly immoral such as, for example, abortion or euthanasia.[6]

Conscience impels a person to act in a particular way. Failure to follow conscience induces guilt, remorse and shame. It is not merely a petulant or self-important "refusal" to dispense a certain drug.

The Amici Brief of Religious Coalition For Equality, et al. suggests that many Catholics do not follow Church teaching on the issue of contraception.[7] This argument suggests that by some sort of "majority rule" principle that those Catholics who conscientiously accept their Church's position have diminished constitutional protection. The argument that some Catholics do not comply with Church rules regarding contraception is irrelevant and demeaning. Also, the fact

---

[5] Alex J. Brunett, *'Adult Faith' Needed to Confront Dictatorship of Relativism*, available at http://www.seattlearch.org/FormationAndEducation/Progress/052007/ FromArchbishop5-3-07.htm (last visited Apr. 17, 2008).

[6] Pope Benedict XVI, Speech to Members of the International Congress of Catholic Pharmacists at Consistory Hall (Oct. 29, 2007).

[7] *See* Amici Br. of Religious Coalition For Equality, et al., at 15-16.

that many religions do not agree with the Catholic Church is no cause to deny all Catholics the right to their conscience.

The Religious Coalition For Equality also relies upon *Braunfeld v. Brown*, 366 U.S. 599 (1961), arguing for a "balance that appropriately accommodates our society's diverse religious and personal needs and beliefs."[8] They point out that in *Braunfeld* the state was permitted to force an Orthodox Jewish business owner to close on Sunday pursuant to a so called "Sunday closing law" implying that this is an example of such balance. Here the state would attempt to force individuals and pharmacies to perform an act that violates their religion and their consciences by selling Plan B drugs. *Braunfeld* is not supportive of the argument of Religious Coalition For Equality.

In none of the "Sunday closing law" cases, including *McGowan v. Maryland*, 366 U.S. 420 (1961); *Two Guys from Harrison-Allentown v. McGinley*, 366 U.S. 582 (1961); *Gallagher v. Crown Kosher Supermarket of Mass.*, 366 U.S. 617 (1961) and *Braunfeld*, was a litigant being affirmatively forced by the government to take actions that violated their own religious principles. In *McGowan*, the Supreme Court rejected a Free Exercise challenge to the law in question because claimants alleged only an economic injury from having to close on Sundays, and made no claims that compliance with the law would force them to

---

[8] *See* Amici Br. of Religious Coalition For Equality, et al., at 19.

violate their own religious beliefs or their consciences. *McGowan*, 366 U. S. at 429; *See also Gallagher*, 366 U.S. at 622-627; *Braunfeld*, 366 U.S. at 602-605. Thus, *Braunfeld* and its kindred cases are simply inapposite here. In none of these cases was a litigant subjected to adverse government treatment because of religious belief, nor was anyone forced to do anything that violated their conscience.

**B.      Conscience is an Essential Part of Federal Law.**

The First Amendment of the U.S. Constitution promises that Congress shall make no law prohibiting the free exercise of religion.[9] This Constitutional provision is a guarantee that the government cannot force a person to commit an act in violation of his or her religion.[10] In the words of Thomas Jefferson, "[n]o provision in our Constitution ought to be dearer to man that that which protects the rights of conscience against the enterprises of civil authority."[11] Likewise, James Madison stated, "[t]he religion then of every man must be left to the conviction and conscience of every man; and it is the right of every man to exercise it as these may dictate.... It is the duty of every man to render to the Creator such homage, and such only, as he believe to be acceptable to him."[12]

---

[9] U.S. Const. amend. I.

[10] *See generally* Michael W. McConnell, *The Origins and Historical Understanding of Free Exercise of Religion*, 103 Harv. L. Rev. 1409 (1990).

[11] Thomas Jefferson, Reply to New London Methodists (1809).

[12] James Madison, *Memorial and Remonstrance Against Religious Assessments*, Para. 15 (1785) (*reprinted in Everson v. Board of Education*, 330 U.S. 1, 64 (1947)).

The right of conscience is also a legal right recognized by the civil laws of the United States. "The freedom of conscience is the basis of the free exercise clause of the United States Constitution." *Sherbert v. Verner*, 374 U.S. 398, 402 (1963); *See also Torcaso v. Watkins*, 367 U.S. 488 (1961).

The Religious Coalition For Equality advert to the Supreme Court's decision in *Employment Division v. Smith*, 494 U.S. 872 (1990), apparently to support their view that Plaintiffs-Appellees may constitutionally be forced by the government to fill prescriptions where to do so would violate their religious principles and their consciences.[13] *Smith* stands for no such proposition. In *Smith*, the Supreme Court spoke narrowly to the question of whether the Free Exercise Clause was violated where a litigant was denied a government benefit as a result of having been convicted for an act (peyote use) which he contended was motivated by his religious beliefs. The Court did not say in *Smith* that the government could legitimately have forced the litigant to do affirmative acts that violated his religious principles or the demands of his conscience.

C.     **The Right of Conscience is Secured by the State Constitution.**

Article I, Section 11 to the Washington State Constitution secures "absolute freedom of conscience." It states:

> Absolute freedom of conscience in all matters of religious sentiment, belief and worship, shall be guaranteed to every individual, and no

---

[13] *See* Amici Br. of Religious Coalition For Equality, et al., at 6, 18-19.

one shall be molested or disturbed in person or property on account of religion, but the liberty of conscience hereby secured shall not be so construed as to excuse acts of licentiousness or justify practices inconsistent with the peace and safety of the State.[14]

This provision of our Washington State Constitution does not require recognition, acknowledgement or implementation by the legislature. The legislature may neither expand nor contract the right, but only follow its mandate which is to assure no person is "disturbed in person or property on account of religion."[15] This case is important for both the personal rights and the property rights of pharmacists.

**D.** **The Right of Conscience is Affirmed in Statutory Law.**

The basic human right of conscience has been affirmed in two separate statutes relating to health care which the Amici Brief of Phillip Talmadge refers to as "the insurance statutes:"[16] Wash. Rev. Code § 48.43.065 and Wash. Rev. Code § 70.47.160. They are identically worded and provide in pertinent part:

> (1) The legislature recognizes that every individual possesses a fundamental right to exercise their religious beliefs and conscience. The legislature further recognizes that in developing public policy, conflicting religious and moral beliefs must be respected. Therefore, while recognizing the right of conscientious objection to participating in specific health services, the state shall also recognize the right of individuals enrolled with plans containing the basic health services to receive the full range of services covered under the plan.

---

[14] Wash. Const. art. I, § 11.
[15] *Id.*
[16] *See* Amici Br. of Philip Talmadge, et al., at 12.

9

(2)(a) No individual health care provider, religiously sponsored health carrier, or health care facility may be required by law of contract in any circumstances to participate in the provision of or payment for a specific service if they object to so doing for reason of conscience or religion. No person may be discriminated against in employment or professional privileges because of such objection.

(b) The provisions of this section are not intended to result in an enrollee being denied timely access to any service included the basic health plan services....

Although the language follows historic American concepts of conscience protected by the Free Exercise Clause of the U.S. Constitution, it is almost verbatim from Article I, Section 11 of the Washington State Constitution. Opponents argue that these statutory provisions mean nothing outside the realm of health care insurance. They also argue that the assurance of "timely access" renders the right of conscience a nullity. However, it is clear that these two statutes are merely reiterating what would be the case even without the specific statutory affirmation of conscience.

It is not difficult to strike a balance between the fundamental right to exercise religious beliefs and conscience with the right of individuals to access legal prescription drugs. It is argued that access to drugs, particularly the Plan B "morning-after-pills," is inhibited by a rule that allows pharmacists to decline to dispense when the pharmacist finds that it would violate his or her religious beliefs and conscience. The Washington State Pharmacy Board did attempt to strike that balance before being forced to disregard conscience objections.

**E.    The Washington State Pharmacy Board Affirmed the Right of Conscience.**

The Washington State Board of Pharmacy on June 1, 2006, unanimously approved a proposal that gave pharmacists in the State of Washington alternatives that would allow them to follow their consciences.   While this proposal did not explicitly mention the words "conscience" or "Plan B" drugs, its provisions included options for pharmacists and pharmacies asked to stock and dispense a medication or device they find objectionable for religious or moral reasons.   The proposed rule stated that when a pharmacist cannot dispense a lawfully prescribed drug or device, they must provide timely alternatives for patients to receive treatment.   The following options were included:

(1)  Referring patients to another on-site pharmacist;
(2)  Transferring the prescription to another pharmacy of the patient's choice;
(3)  Providing the medication consistent with the normal time frame for the prescription;
(4)  Consulting with the prescribing physician to provide an alterative medication;
(5)  Returning unfilled lawful prescriptions to the patient; or
(6)  Providing patients a timely alternative for appropriate therapy.[17]

The Governor that day threatened to remove the entire Pharmacy Board if they did not reverse themselves.   Under pressure, Board members, at their meeting on July 20, 2006, agreed to review, and revise, their proposal.   On August 28, 2006, the Governor submitted and the Board passed the rule here in question.   This revised

---

[17] ER 500.

rule required pharmacies to dispense all prescribed drugs and prevented pharmacists from declining to dispense a medicine or medical device for religious or moral reasons. It nevertheless remains a fact that the Pharmacy Board did in fact acknowledge and gave evidence that it understood the right of conscience. It was prevented from implementing a balanced approach by the Governor.

**F.   The Rights of All People Involved Should Be Protected.**

With respect to "timely access," it is clear that there are a great number of legal prescription drugs that are not accessible to all pharmacies across the State. To require all pharmacies to carry all legal prescription drugs, or even a subset, may result in a requirement that each pharmacy have in stock all legal drugs at all times. Small pharmacies would not be able to sustain that type of inventory. The closure of small pharmacies would further reduce access to legal prescriptions and could result in the lack of access sought by the Defendants-Appellants. Timely access should not be interpreted to mean that every store must carry every drug. If one can obtain the medication at another convenient pharmacy or overnight by mail order, most reasonable people would maintain that this is timely access.

The Pharmacy Board recognized the constitutional protections in both the U.S. and the Washington State Constitutions, and balanced it with the issues of access, when it adopted its original rule. The Board identified multiple alternative

routes in the original rule that not only provided accessibility to the "Plan B morning-after" drugs, but also provided that accessibility in a timely fashion.

Here the State, without seeking actual evidence that women are being deprived of access to the drugs, deprives objecting pharmacists of their right to exercise their conscience.   The Pharmacy Board should have been allowed to step back and narrow its function to permit the exercise of moral conviction, one of the most basic constitutional rights.

## IV.  CONCLUSION

For the foregoing reasons as well as those asserted by Plaintiffs-Appellees, the Court should affirm the district court's Order Granting Preliminary Injunction.


RESPECTFULLY SUBMITTED this 21/22 day of April, 2008.


CROWLEY LAW OFFICES


By _____
   Patrick W. Crowley  WSBA #355

Attorney for Amicus Washington
State Catholic Conference of Bishops

# CERTIFICATE OF COMPLIANCE PURSUANT TO FED. R. APP. P. 32(a)(7)(C) and CIRCUIT RULE 32-1 FOR CASE NUMBER 07-36039, 07-36040 (consol.)

I certify that:

____1.  Pursuant to Fed. R. App. P. 32(a)(7)(C) and the Ninth Circuit Rule 32-1, the attached opening/answering/reply/cross-appeal brief is

____  Proportionately spaced, has a typeface of 14 points or more and contains _____ words (opening, answering, and the second and third briefs filed in cross-appeals must not exceed 14,000 words; reply briefs must not exceed 7,000 words),

**or is**

____  Monospaced, has a 10.5 or fewer characters per inch and contains ___ words or ___ lines of text (opening, answering, and the second and third briefs filed in cross-appeals must not exceed 14,000 words or 1,300 lines of text; reply briefs must not exceed 7,000 words or 650 lines of text).

____2.  The attached brief is **not** subject to the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because

____  This brief complies with Fed. R. App. P. 32(a)(1)-(7) and is a principal brief of no more than 30 pages or a reply brief of no more than 15 pages;

____  This brief complies with a page or size-volume limitation established by separate court order dated _____ and is
____  Proportionately spaced, has a typeface of 14 points or more and contains _____ words,

**or is**

____  Monospaced, has 10.5 or fewer characters per inch and contains _____ pages or _____ words or _____ lines of text.

____3.  Briefs in Capital Cases.

____  This brief is being filed in a capital case pursuant to the type-volume limitations set for the at Circuit Rule 32-4 **and is**

_____ Proportionately spaced, has a typeface of 14 points or more and contains _____ words (opening, answering, and the second and third briefs filed in cross-appeals must not exceed 21,000 words; reply briefs must not exceed 9,800 words),

**or is**

_____ Monospaced, has 10.5 or fewer characters per inch and contains _____ words or _____ lines of text (opening, answering, and the second and third briefs filed in cross-appeals must not exceed 75 pages or 1,950 lines of text; reply briefs must not exceed 35 pages or 910 lines of text).

  X  4.   Amicus Briefs.

  X   Pursuant to Fed. R. App. P. 29(d) and 9th Cir. R. 32-1, the attached amicus brief is proportionally spaced, has a typeface of 14 points or more and contains 7,000 words or less (specifically, 2,849 words),

**or is**

_____ Monospaced, has 10.5 or fewer characters per inch and contains not more than either 7,000 words or 650 lines of text,

**or is**

_____ **Not** subject to the type-volume limitations because it is an amicus brief of no more than 15 pages and complies with Fed. R. App. P. 32(a)(1)(5).

CROWLEY LAW OFFICES

4-21-08                    By _____
Date                            Patrick W. Crowley WSBA #355

Attorneys for Amicus Washington State
Catholic Conference of Bishops

## CERTIFICATION OF FILING AND SERVICE

The undersigned declares that on April 21, 2008, the original and fifteen copies of **Amicus Curiae Brief of the Washington State Catholic Conference of Bishops in Support of Plaintiffs/Appellees**, to which this certification is affixed, were sent via Federal Express to the Ninth Circuit at the following address:

> Ms. Molly Dwyer
> Acting Clerk of the Court
> U. S. Court of Appeals for the Ninth Circuit
> 95 Seventh Street
> San Francisco, CA 94103-1526
>
> Telephone: 415/355-8000 (Clerk)

and that true and accurate copies were sent via First Class Mail to the following:

| | |
|---|---|
| Kristen K. Waggoner<br>Steven T. O'Ban<br>Ellis Li & McKinstry, PLLC<br>601 Union St. Suite 4900<br>Seattle, WA 98101<br>kwaggoner@elmlaw.com<br>soban@elmlaw.com<br><br>Attorneys for Plaintiffs/Appellees<br>Stormans, Inc., Margo Thelen, and<br>Rhonda Mesler | Erik W. Stanley*<br>Alliance Defense Fund<br>15192 Rosewood St<br>Leawood, KS 66224-8502<br>estanley@telladf.org<br><br>Benjamin W. Bull*<br>Amy Smith*<br>Alliance Defense Fund<br>15100 N 90th St<br>Scottsdale, AZ 85260-2769<br>bbull@telladf.org<br>asmith@telladf.org<br><br>Attorneys for Plaintiffs/Appellees<br>Stormans, Inc., Margo Thelen, and<br>Rhonda Mesler<br>*Admitted pro hac vice* |

1

| | |
|---|---|
| Rima J. Alaily<br>Molly A. Terwilliger<br>Katie A. Foley<br>Heller Ehrman LLP<br>701- 5th Ave., Suite 6100<br>Seattle, WA 98104-7098<br>ralaily@hewm.com<br>molly.terwilliger@hellerehrman.com<br>Katie.foley@hellerehrman.com<br>Joshua.selig@hellerehrman.com<br><br>Attorneys for<br>Intervenors/Defendants/Appellants<br>Catherine Rosman, Emily Schmidt,<br>Jeffrey Schouten, Judith Billings,<br>Molly Harmon, Rhiannon Andreini,<br>and Tami Garrardl | Kelly Susan Reese<br>Planned Parenthood of Western<br>Washington<br>2001 East Madison Street<br>Seattle, WA 98122<br>Kelly.reese@ppww.org<br><br><br>Attorney for<br>Intervenors/Defendants/Appellants<br>Catherine Rosman, Emily Schmidt,<br>Jeffrey Schouten, Judith Billings,<br>Molly Harmon, Rhiannon Andreini,<br>and Tami Garrard |
| Traci J. Friedl<br>Assistant Attorney General<br>Attorney General of Washington<br>Government Compliance &<br>Enforcement Division<br>1125 Washington Street SE<br>P.O. Box 40100<br>Olympia, WA 98504-0100<br>TraciF@atg.wa.gov<br><br>Attorney for Defendants/Appellants<br>Yvonne Lopez Morton, Ellis Casson,<br>Deborah Sious Cano-Lee, Jerry<br>Hebert, and Shawn Murinko,<br>Commissioners for the Washington<br>Human Rights Commission; and<br>Marc Brenman, Executive Director of<br>the Washington Human Rights Com. | Joyce A. Roper, Sr. Assist. Atty Gen.<br>Alan D. Copsey, Assist. Atty Gen.<br>Attorney General of Washington<br>Agriculture & Health Division<br>7141 Cleanwater Drive SW<br>P.O. Box 40109<br>Olympia, WA 98504-0109<br>joycer@atg.wa.gov<br>alanc@atg.wa.gov<br><br>Attorneys for Defendants/Appellants<br>Mary Selecky; Laurie Jinkins; George<br>Roe, Susan Tiel Boyer, Dan Connolly,<br>Gary Harris, Vandana Slatter, Rebecca<br>Hille and Rosemarie Duffy, Members<br>of the Washington Board of Pharmacy |

| | |
|---|---|
| Nancy Sapiro<br>Lisa M. Stone<br>Northwest Women's Law Center<br>907 Pine Street, Suite 500<br>Seattle, WA 98101<br>nsapiro@nwwlc.org<br>lstone@nwwlc.org<br><br>Attorneys for<br>Intervenors/Defendants/Appellants<br>Catherine Rosman, Emily Schmidt,<br>Jeffrey Schouten, Judith Billings,<br>Molly Harmon, Rhiannon Andreini,<br>and Tami Garrard | |

DATED this **21**ST day of April, 2008, at Seattle, Washington.

Maria Bocanegra
Maria Bocanegra

CROWLEY LAW OFFICES, P.S.
1411 Fourth Avenue, Suite 1520
Seattle, WA 98101
Telephone: (206) 224-7069
Fax: (206) 624-8785