1
2
3
4
5
6
7
8
9
10
11
12

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| STORMANS, Inc., d/b/a RALPH'S THRIFTWAY; RHONDA MESLER; MARGO THELEN,<br><br>              Plaintiffs,<br><br>   v.<br><br>MARY SELECKY, Secretary of Washington State Department of Health, et al.,<br><br>              Defendants. | No. C07-5374-RBL<br><br>DEFENDANT–INTERVENORS' POST TRIAL BRIEF |

DEFENDANT-INTERVENORS' POST TRIAL
BRIEF (No. C07-5374-RBL) – 1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................1

II.   ARGUMENT ...............................................................................................................1

    A.    Plaintiffs' expansive reading of the Free Exercise Clause is not the law ..............1

         1.    Categorical exemptions for nonreligious conduct do not undermine the neutrality or general applicability of the rules ......................................2

         2.    The pharmacy rule does not create a scheme of "individualized exemptions." ...............................................................................................5

         3.    The Board of Pharmacy has not selectively enforced the rules against Plaintiffs ...........................................................................................7

    B.    Washington's Death with Dignity Act exemption does not undermine the neutrality and general applicability of the pharmacy rules ....................................8

    C.    The Ninth Circuit's ruling is binding precedent ...................................................11

         1.    The Ninth Circuit's prior rulings are the "law of the case." ....................12

         2.    The categories of relevant evidence presented now are the same categories of evidence before the Ninth Circuit .......................................13

         3.    Plaintiffs have not met their burden to negate every conceivable basis supporting the rules ........................................................................15

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

LEGAL22465867.1

**CASES**

*Am. Friends Serv. Comm. Corp. v. Thornburgh*,
   951 F.2d 957 (9th Cir. 1991), *amended by* 961 F.2d 1405 (9th Cir. 1991) ......................... 4, 5

*Axson-Flynn v. Johnson*,
   356 F.3d 1277 (10th Cir. 2004) ................................................................................ 6

*Bank of N.Y. v. Fremont Gen. Corp.*,
   523 F.3d 902 (9th Cir. 2008) .................................................................................. 12

*Blackhawk v. Pennsylvania*,
   381 F.3d 202 (3rd Cir. 2004) ................................................................................... 7

*Bowsher v. Synar*,
   478 U.S. 714 (1986) ............................................................................................ 15

*Casciani v. Nesbitt*,
   659 F. Supp. 2d 427 (W.D.N.Y. 2009), *aff'd*, 392 F. App'x 887 (2d Cir. 2010) ..................... 8

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*,
   508 U.S. 520 (1993) .............................................................................................. 2

*Davidson v. City of Culver City*,
   No. CV04-2220GAF(CWX), 2004 WL 5361378 (C.D. Cal. July 28, 2004), *aff'd*, 159
   F. App'x 756 (9th Cir. 2005) .................................................................................. 8

*Ecology Ctr. v. Castaneda*,
   426 F.3d 1144 (9th Cir. 2005) ............................................................................... 15

*Emp. Div., Dep't of Human Res. of Or. v. Smith*,
   494 U.S. 872 (1990) ......................................................................................passim

*Esmail v. Macrane*,
   53 F.3d 176 (7th Cir. 1995) .................................................................................... 8

*F.C.C. v. Beach Communications, Inc.*,
   508 U.S. 307 ...................................................................................................... 15

*Farrakhan v. Gregoire*,
   590 F.3d 989 (9th Cir. 2010) ................................................................................. 14

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

*Foti v. City of Menlo Park,*
   146 F.3d 629 (9th Cir. 1998) ................................................................. 7

*Fraternal Order of Police Newark Lodge No. 12 v. City of Newark,*
   170 F.3d 359 (3rd Cir. 1999) ............................................................. 3, 4

*Gillette v. United States,*
   401 U.S. 437 (1971) ............................................................................... 3

*Golden State Transit Corp. v. City of Los Angeles,*
   754 F.2d 830 (9th Cir. 1985) .............................................................. 14

*Hamilton v. Regents of Univ. of Cal.,*
   293 U.S. 245 (1934) ............................................................................... 3

*Heathcoat v. Potts,*
   905 F.2d 367 (11th Cir. 1990) ............................................................ 12

*Hoye v. City of Oakland,*
   653 F.3d 835 (9th Cir. 2011) ................................................................. 7

*Humanitarian Law Project v. U.S. Dep't of Justice,*
   352 F.3d 382 (9th Cir. 2003), *vacated on other grounds*, 393 F.3d 902 (9th Cir. 2004) ........ 14

*Manufactured Home Cmtys, Inc. v. Cnty. of San Diego,*
   655 F.3d 1171 (9th Cir. 2011) ....................................................... 12, 13

*Marable v. Nitchman,*
   511 F.3d 924 (9th Cir. 2007) .............................................................. 14

*Mistretta v. United States,*
   488 U.S. 361 (1989) ............................................................................. 15

*Moon v. Freeman,*
   379 F.2d 382 (9th Cir. 1967) .............................................................. 15

*Rosenbaum v. City & Cnty. of San Francisco,*
   484 F.3d 1142 (9th Cir. 2007) ........................................................... 7, 8

*Ross-Whitney Corporation v. Smith Kline & French Laboratories,*
   207 F.2d 190 (9th Cir. 1953) .............................................................. 14

DEFENDANT-INTERVENORS' POST TRIAL
BRIEF (No. C07-5374-RBL) – iii

LEGAL22465867.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

# TABLE OF AUTHORITIES
### (continued)

*Sherbert v. Verner,*
  374 U.S. 398 (1963) ..................................................................................5, 6, 7

*Stormans, Inc. v. Selecky,*
  586 F.3d 1109 (9th Cir. 2009) .....................................................................passim

*This That & The Other Gift & Tobacco, Inc. v. Cobb Cnty., Ga.,*
  439 F.3d 1275 (11th Cir. 2006) ..................................................................12, 14

*Thomas v. Bible,*
  983 F.2d 152 (9th Cir. 1993) .............................................................................13

*United States v. Alexander,*
  106 F.3d 874 (9th Cir. 1997) .............................................................................13

*United States v. Estrada-Lucas,*
  651 F.2d 1261 (9th Cir. 1980) ...........................................................................12

*United States v. Hugs,*
  109 F.3d 1375 (9th Cir. 1997) ...........................................................................14

*United States v. Lummi Indian Tribe,*
  235 F.3d 443 (9th Cir. 2000) .............................................................................12

*Vlasak v. Superior Court of Cal. ex rel. Cnty. of Los Angeles,*
  329 F.3d 683 (9th Cir. 2003) ...............................................................................7

*Washington Capitols Basketball Club, Inc. v. Barry,*
  419 F.2d 472 (9th Cir. 1969) .............................................................................14

*Wayte v. United States,*
  470 U.S. 598 (1985) .............................................................................................7

*Williams v. City of Little Rock,*
  45 F.3d 434, 1994 WL 718504 (8th Cir. Dec. 30, 1994) .......................................8

**STATUTES**

Death with Dignity Act, Ch. 70.245 RCW.................................................................8

RCW 9.02.150 ........................................................................................................11

RCW 70.41.350 ......................................................................................................11

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

# TABLE OF AUTHORITIES
(continued)

RCW 70.245.020 ................................................................................................... 10

RCW 70.245.050 ................................................................................................... 10

RCW 70.245.060 ................................................................................................... 10

RCW 70.245.090 ................................................................................................... 10

RCW 70.245.190(1)(d) ............................................................................................. 8

## REGULATIONS

WAC 246-869-010 .................................................................................................. 5

WAC 246-869-010(1)(a)-(d) ..................................................................................... 7

WAC 246-869-010(1)(c) .......................................................................................... 6

WAC 246-869-010(1)(e) .......................................................................................... 6

WAC 284-43-822 .................................................................................................. 11

## OTHER AUTHORITIES

*2010 Death with Dignity Act Report*, *available at* http://www.doh.wa.gov/dwda/ ...................... 10

Disability Rights Educ. & Defense Fund, *Assisted Suicide*,
  http://www.dredf.org/assisted_suicide/ index.shtml .............................................. 9

Frederick Mark Gedicks, *The Normalized Free Exercise Clause: Three Abnormalities*, 75
  Ind. L.J. 77, 114 (2000) ................................................................................. 2, 4

Heather Boonstra, *Emergency Contraception: Steps Being Taken to Improve Access* ................ 10

Or. Pub. Health Div., *Oregon's Death with Dignity Act - 2010* (Jan. 2011), available at
  http://public.health.oregon.gov/ProviderPartnerResources/Evaluation
  Research/DeathwithDignityAct/Documents/year13.pdf ........................................... 10

Penney Lewis, *Rights Discourse and Assisted Suicide*, 27 Am. J. L. & Med. 45, 65-66
  (2001) .................................................................................................... 9

Wash. State Catholic Conference, *Assisted Suicide*, http://www.thewscc.org/index. ................. 9

DEFENDANT-INTERVENORS' POST TRIAL
BRIEF (No. C07-5374-RBL) – v

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

LEGAL22465867.1

# I.    INTRODUCTION

At the close of testimony, the Court invited the parties to provide additional supplemental briefing and updated proposed findings of fact and conclusions of law.  Defendant-Intervenors have thoroughly briefed the arguments supporting the neutrality and general applicability of the Washington Board of Pharmacy ("Board") rules at issue in this case, and have articulated, in briefs and through testimony, numerous rational (and indeed, compelling) reasons supporting the adoption of the rules, most importantly, to advance the health of Washington State patients by ensuring their timely access to safe, lawfully-prescribed medication.  No evidence has been presented at trial that changes these conclusions.

However, both Plaintiffs' trial brief and the Court's questions during trial merit additional briefing on three distinct issues.  This brief will: (1) address why Plaintiffs' mischaracterization of Free Exercise jurisprudence and constitutional doctrines such as "selective enforcement" and "individualized exemptions" must fail; (2) explain why the citizen-enacted Death with Dignity Act's "opt-in" provision for health care providers does not undermine the neutrality and general applicability of the rules; and (3) reiterate that the narrow question posed for this Court by the Ninth Circuit on remand is whether Plaintiffs can refute every conceivable rationale for the Board rules at issue.  Because the State's interest in access to medication is a legitimate—and even compelling—interest that is not undermined by either the rules' exemptions or the Death with Dignity Act, the constitutionality of the rules must be upheld.

# II.    ARGUMENT

## A.    Plaintiffs' expansive reading of the Free Exercise Clause is not the law.

Plaintiffs have argued that the rules violate the Free Exercise clause because they are gerrymandered to burden only religious practice and because the State intended to discriminate against religion when it promulgated the rules.  Defendant-Intervenors have already extensively briefed these questions.  *See* Dkt. No. 506 (Defendant-Intervenors' Trial Brief).  Most

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

importantly, the Ninth Circuit has expressly rejected these arguments by Plaintiffs. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1133-34 (9th Cir. 2009). There is no new evidence from the trial that changes the Ninth Circuit's conclusions.

This brief addresses three additional arguments emphasized by Plaintiffs throughout trial. Specifically, Plaintiffs argue that they may prove that the pharmacy rules violate the Free Exercise Clause: (1) by showing that the pharmacy rules contains categorical exemptions for secular conduct, but not "conscientious objection"; (2) by establishing that the rules create a scheme of individualized exemptions; or (3) by proving that the Board has selectively enforced the regulations against them. *See* Dkt. No. 510 (Plaintiffs' Trial Brief 40-41). With each argument, Plaintiffs ask this Court to rule outside the mainstream of Free Exercise jurisprudence generally and Ninth Circuit precedent specifically. This Court should decline that invitation.

1. **Categorical exemptions for nonreligious conduct do not undermine the neutrality or general applicability of the rules.**

As the Supreme Court has explained, "inequality results when a legislature decides that the governmental interests it seeks to advance are worthy of being pursued only against conduct with a religious motivation." *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 542-43 (1993). Accordingly, a law must be generally applicable, as well as neutral, to avoid strict scrutiny under the Free Exercise clause. *Id.* at 542. To determine whether exemptions in a law undermine its general applicability, the courts look to whether the exemptions are substantially underinclusive as a means to advance the government's ends. *Id.* at 543; *Stormans*, 586 F.3d at 1134; *see also* Frederick Mark Gedicks, *The Normalized Free Exercise Clause: Three Abnormalities*, 75 Ind. L.J. 77, 114 (2000) (while arguing that the free exercise doctrine articulated in *Emp. Div., Dep't of Human Res. of Or. v. Smith*, 494 U.S. 872 (1990) is a constitutional anomaly, and explaining that, under that doctrine, "a religiously neutral law does not fail the test of general applicability merely by being modestly or even substantially underinclusive; rather, the law must be so dramatically underinclusive that religious conduct is

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

virtually the only conduct to which the law applies"). Applying the "substantial underinclusivity" test, the Ninth Circuit unequivocally determined in this case that the rules' exemptions do not undermine their general applicability. *Stormans*, 586 F.3d at 1134-35. Thus, there remains no valid argument that the rules' categorical exemptions render the rules constitutionally suspect.

Yet Plaintiffs ignore the Ninth Circuit's holding, arguing that regulations that "provide categorical exemptions for secular refusals to stock or dispense a drug, but not for conscientious objections" are *automatically* subject to strict scrutiny. Dkt. No. 510 (Plaintiffs' Trial Brief 40:18-23). This contention by Plaintiffs mischaracterizes constitutional law in two ways. First, it suggests that "conscientious objection"—not just the exercise of religion – is protected by the Free Exercise clause. But the clause does not protect all conscientious objectors. *Gillette v. United States*, 401 U.S. 437, 461 n.23 (1971) (citing *Hamilton v. Regents of Univ. of Cal.*, 293 U.S. 245, 264 (1934)). Plaintiffs conflate the two because they understand, as did the Ninth Circuit, that *personal objections of all kinds* are prohibited by the rules. *Stormans*, 586 F.3d at 1131 ("[A]side from the exemptions, *any* refusal to dispense a medication violates the rules, and this is so regardless of whether the refusal is motivated by religion, morals, conscience, ethics, discriminatory prejudices, or personal distaste for a patient.") (emphasis added). Thus, it cannot be true that the rules prohibit only religious conduct, while allowing secular conduct of a similar nature.

Second, even if religious conduct were the only conduct prohibited, the presence of categorical exemptions for secular reasons does not automatically give rise to strict scrutiny. Plaintiffs' contrary argument misstates the law, and is unsupported even by the only case that Plaintiffs cite for this proposition: *Fraternal Order of Police Newark Lodge No. 12 v. City of Newark*, 170 F.3d 359 (3rd Cir. 1999). In that case, the Third Circuit held unconstitutional a police department policy against uniformed officers wearing beards as applied to officers who wore beards for religious reasons. *Id*. at 360. As then-Judge Alito reasoned, the presence of a

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

categorical exemption for nonreligious conduct, without an exception for religious conduct, is *only* problematic if the categorical exemptions undermine a law's purpose in the same way a religious exemption would. *Id*. at 366; *see also Am. Friends Serv. Comm. Corp. v. Thornburgh*, 951 F.2d 957, 961 (9th Cir. 1991) (the existence of specifically defined objective exemptions does not affect general applicability under the Free Exercise Clause), *amended by* 961 F.2d 1405 (9th Cir. 1991). Thus, the police department's exemption for men who wore beards for medical reasons triggered heightened scrutiny because, in the Third Circuit's view, that exemption bore the same relationship to the purpose of the challenged policy as an exemption for religious observers, in that each would undermine the law's purpose in promoting a visibly uniform police force. *Fraternal Order of Police*, 170 F.3d at 366.

However, the exemption that allowed undercover officers to wear beards did not undermine the law's purpose, and thus was not constitutionally suspect because the Free Exercise Clause "does not require the government to apply its laws to activities that it does not have an interest in preventing." *Id*. As Professor Gedicks has explained, even while criticizing *Smith* and urging heightened constitutional protections for religious conduct using a fundamental rights/equal protection analysis, "[r]eligion is treated unequally *only if* nonexempted religious conduct *is in the same relationship* to the purpose of a law as exempted secular conduct." Gedicks, 75 Ind. L.J. at 119 (emphases added).

To hold that the presence of categorical exemptions alone is an independent basis for strict scrutiny defies both precedent and common sense. Virtually every statute and regulation in the country includes exceptions. Even Plaintiffs concede, in the text of their brief, that whether "religious conduct is in the same relationship to the purpose of the law as exempted secular conduct" is the key inquiry. *See* Dkt. No. 510 (Plaintiffs' Trial Brief 42:16). Here, the Ninth Circuit already has determined that the categorical exemptions present in the law do not undermine its neutrality, because "the exemptions actually increase access to medications by making it possible for pharmacies to comply with the rules, further patient safety, and maintain

DEFENDANT-INTERVENORS' POST TRIAL
BRIEF (No. C07-5374-RBL) – 4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

their business." *Stormans*, 586 F.3d at 1135. The Ninth Circuit went on to emphasize that the fact "[t]hat the pharmacy regulations recognize some exceptions cannot mean that the Board has to grant all other requests for exemption to preserve the 'general applicability' of the regulations." *Id*. In short, the exemptions in the rules further their purpose, but refusals to dispense medication for personal, religious, or conscientious reasons do not.[1] The presence of categorical exemptions does not undermine the rules' neutrality nor does it "independently" require this Court to apply strict scrutiny to the rules.

### 2. The pharmacy rule does not create a scheme of "individualized exemptions."

Plaintiffs contend that strict scrutiny is also required when a law establishes a system of individualized exemptions, i.e., that the rules allow the government case-by-case discretion. Whether or not this is actually what the majority intended when it attempted to distinguish *Sherbert v. Verner*, 374 U.S. 398 (1963), from its holding in *Smith*, the pharmacy rules are not a system of "individualized exemptions." *See Smith*, 494 U.S. at 884; *see also Thornburgh,* 961 F.2d at 1408 (distinguishing individualized exemptions in unemployment compensation statutes from the challenged immigration statute, holding that the immigration law's exceptions were categorical, and did not create a scheme of discretionary, case-by-case exemptions). Rather, as in *Thornburgh*, the exemptions are categorical. They allow exemptions for specific, identifiable conduct that furthers the purpose of the pharmacy rules. *Stormans*, 586 F.3d at 1135-36.

Plaintiffs insist that the rules create a scheme of individualized exemptions by focusing on language within the delivery rule, WAC 246-869-010, that they assert allows the Board to decide, on a case-by-case basis, whether a pharmacy may refuse to dispense medication. Plaintiffs misconstrue the exemptions entirely. There is no provision in the rules that allows a pharmacy to decide that it will *never* carry a particular medication that its patients need and have requested, unless the pharmacy cannot safely meet that medication need because it lacks

---

[1] The exemption in the Death with Dignity Act, and its bearing on this question, is discussed in section B below.

DEFENDANT-INTERVENORS' POST TRIAL
BRIEF (No. C07-5374-RBL) – 5

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

specialized training and equipment.  WAC 246-869-010(1)(c).  All the other exemptions are,

essentially, temporary responses to a particular problem—such as a national emergency or a

fraudulent prescription—not a broad exemption from the rest of the rule.  And, as the Tenth

Circuit explained in a case cited by Plaintiffs, "of course it takes some degree of individualized

inquiry to determine whether a person is eligible for even a strictly defined exemption, [but] that

kind of limited yes-or-no inquiry is qualitatively different from the kind of case-by-case system

envisioned by the *Smith* Court in its discussion of *Sherbert* and related cases." *Axson-Flynn v.

Johnson*, 356 F.3d 1277, 1298 (10th Cir. 2004).

The exemption that allows the Board to consider whether there has been "good faith

compliance" with the stocking rule is illustrative.  *See* WAC 246-869-010(1)(e) and (3).

Excusing a pharmacy that complied in "good faith" with the stocking rule from sanctions for

failing to dispense a medication is a temporary reprieve from the general dispensing requirement

because of circumstances out of a pharmacy's control, not an "exemption for secular conduct."

It does not permanently excuse a pharmacy from compliance.  As the Board explained in its

presentation at the December 16, 2010 meeting, and Board member Gary Harris testified about at

length, once a patient needs a medication, the pharmacy has an obligation under the stocking rule

to maintain that medication for the patient, consistent with the other health and safety exceptions

in the rule.  That obligation remains, even if a pharmacy is excused in a particular instance.

In contrast, Plaintiffs seek permanent relief from the general requirement that pharmacies

dispense medications.[2]  No other pharmacy—religious or otherwise—has a permanent

---

[2] Moreover, unlike unemployment compensation claimants, or applicants for wildlife possession permits, or drama students, Plaintiffs are holders of professional licenses to practice a health care profession and to provide an essential health care service.  To equate the regulations governing these professions with rules that allow a state broad discretion to decide who gets to keep wild animals and who gets a pass from reciting her lines in a play minimizes the significance of the pharmacist and pharmacy upon whom patients must depend to meet their critical medication needs.  Plaintiffs' objection is not exercised in a vacuum.  Dr. Kate McLean's miscarrying patient was harmed when pharmacy staff informed her, in front of a line of other patients, that the pharmacist on duty objected to abortions and therefore would not provide her with the prescribed misoprostol, causing her to leave the store crying without the medication, and leading to the need for emergency surgery.  This kind of behavior – even if Plaintiffs themselves would not engage in it – is exactly what is promoted by the dogged (and incorrect) insistence

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

exemption from complying with the rule. All pharmacies, including Plaintiffs, are excused from the delivery rule for emergency situations, when a prescription is fraudulent or erroneous, or when the pharmacy lacks specialized training. WAC 246-869-010(1)(a)-(d). This is not at all like the unemployment compensation scheme at issue in *Sherbert*, or the animal welfare laws reviewed in *Blackhawk v. Pennsylvania*, 381 F.3d 202 (3rd Cir. 2004). In those cases, the state could select which claimants were wholly exempted from the rules' application. *See Smith*, 494 U.S. at 884; *Blackhawk*, 381 F.3d at 210. That is not the case here. Certain conduct is exempted, for everyone. Certain conduct is prohibited, for everyone. The pharmacy rules' exemptions are categorical, not individualized, exemptions that further the purpose of the rules.

### 3. The Board of Pharmacy has not selectively enforced the rules against Plaintiffs.

Plaintiffs' selective enforcement claim is fundamentally flawed. To establish such a claim, Plaintiffs must prove that, compared with others similarly situated, they were selectively treated *and* that such selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations.[3] *Hoye v. City of Oakland*, 653 F.3d 835, 855 (9th Cir. 2011) (citing *Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998)); *Rosenbaum v. City & Cnty. of San Francisco*, 484 F.3d 1142, 1153 (9th Cir. 2007) (citing *Wayte v. United States*, 470 U.S. 598, 608 (1985)). But in this case, the rules were never actually *enforced* against Plaintiffs at all, much less *selectively* enforced. Plaintiffs presented no evidence at trial that the Board took any enforcement action against Ms. Mesler or Ms. Thelen. The evidence demonstrated only that the Board had received complaints against Ralph's Thriftway that alleged the pharmacy had refused to dispense Plan B. Board staffer Lisa Hodgson (Salmi) testified that the Board treated those complaints the same way as it had treated complaints against other

---

that the Constitution protects conscience without consequence to the objector. Plaintiffs minimize these and other patient experiences as if the Free Exercise Clause trumps all other interests. It does not.

[3] Because it requires evidence of unequal application of the law, a selective enforcement claim is distinct from an as-applied challenge. *Hoye*, 653 F.3d at 855; *Vlasak v. Superior Court of Cal. ex rel. Cnty. of Los Angeles*, 329 F.3d 683, 690 (9th Cir. 2003) (a claim of selective enforcement is distinct from an as-applied challenge).

DEFENDANT-INTERVENORS' POST TRIAL
BRIEF (No. C07-5374-RBL) – 7

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

LEGAL22465867.1

pharmacies for their refusal to dispense Plan B or other drugs.  The Board investigated the complaints and resolved them without enforcement action.[4]  *See* Tr. Exh. A-13.  In the absence of any evidence that the Board has enforced the rules against Plaintiffs in a selective manner based on religion, Plaintiffs' claim must be dismissed.  *See Rosenbaum*, 484 F.3d at 1153-54 (plaintiff evangelists cited for violating a noise ordinance failed to prove a selective enforcement claim under the Equal Protection clause because they could not show a similarly-situated "control group" against which the ordinance was not enforced or a discriminatory purpose on the part of law enforcement); *Casciani v. Nesbitt*, 659 F. Supp. 2d 427, 445 (W.D.N.Y. 2009) (dismissing selective enforcement claim where challenged ordinance had not been enforced against plaintiff), *aff'd*, 392 F. App'x 887 (2d Cir. 2010); *Davidson v. City of Culver City*, No. CV04-2220GAF(CWX), 2004 WL 5361378 at *13-14 (C.D. Cal. July 28, 2004) (same), *aff'd*, 159 F. App'x 756 (9th Cir. 2005); *Williams v. City of Little Rock*, 45 F.3d 434, 1994 WL 718504 at*1-2 (8th Cir. Dec. 30, 1994) (unpublished) (same).

### B. Washington's Death with Dignity Act exemption does not undermine the neutrality and general applicability of the pharmacy rules.

The requirement that only "willing providers"[5] participate in the provision of medication to a qualified patient under the Death with Dignity Act, Ch. 70.245 RCW, has no bearing on the

---

[4] That enforcement of the pharmacy rules is complaint-driven does not support Plaintiffs' selective enforcement argument.  As the Seventh Circuit has explained, "[selective prosecution] has two meanings in law. The first is simply failing to prosecute all known lawbreakers, whether because of ineptitude or (more commonly) because of lack of adequate resources. The resulting pattern of nonenforcement may be random, or an effort may be made to get the most bang for the prosecutorial buck by concentrating on the most newsworthy lawbreakers, but in either case the result is that people who are equally guilty of crimes or other violations receive unequal treatment, with some being punished and others getting off scot-free. That form of selective prosecution, although it involves dramatically unequal legal treatment, has no standing in equal protection law." *Esmail v. Macrane*, 53 F.3d 176, 178-79 (7th Cir. 1995).  Moreover, the fact that women opposed to Ralph's Thriftway's policy against stocking Plan B filed complaints does not establish that the state allowed a "heckler's veto" by investigating Ralph's in response to those complaints.  Objection to Ralph's policy is not religious animus in the first instance; even if it were, as the Ninth Circuit explained when rejecting a similar theory in *Rosenbaum*, "[a]bsent some genuine nexus between a complainant's subject-matter disagreement and the basis for the investigation of the complaint by authorities, appellants cannot prevail on a 'heckler's veto' claim of viewpoint discrimination." *Rosenbaum*, 484 F.3d at 1159.

[5] The Death with Dignity Act limits participation, whether as prescriber or dispenser of the medication used by a competent, terminally ill adult patient to end his or her life, to willing providers.  RCW 70.245.190(1)(d). Unwilling providers, regardless of the basis of their conscientious objection, are not required to participate.

DEFENDANT-INTERVENORS' POST TRIAL
BRIEF (No. C07-5374-RBL) – 8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

constitutionality of the pharmacy rules at issue in this case. It does not undermine the purpose of the law nor does it produce "differential treatment of two religions." *See* Dkt. No. 510 (Plaintiffs' Trial Brief 42 n.61). First, the law does not produce differential treatment because it is wrong to ascribe a particular religious belief to opposition to the Death with Dignity law. Plaintiffs themselves, who are evangelical Christians, object to it; thus, their own opposition to dispensing medication pursuant to this law is accommodated. Other faiths, too, may oppose such laws. For example, the official Catholic position is to oppose both suicide and the participation by health care providers in assisting a terminally ill person to end his or her life (although, as in the case of contraception, one should not assume monolithic agreement with this view among American Catholics). *See, e.g.*, Wash. State Catholic Conference, *Assisted Suicide*, http://www.thewscc.org/index. php?option=com_content&view= article&id=31&Itemid=14 (last visited Jan. 8, 2012).

But people also strongly oppose the Death with Dignity law for nonreligious reasons. For example, some people with disabilities and advocacy groups representing people with disabilities oppose this practice, not because of religious belief, but because they fear that such laws put people with disabilities at risk and, more generally, promote value judgments about quality of life that could undermine their rights and dignity. *See, e.g.*, Penney Lewis, *Rights Discourse and Assisted Suicide*, 27 Am. J. L. & Med. 45, 65-66 (2001) (describing rights-framed arguments for and against physician-assisted suicide, and noting the argument that "if the choice to continue living is illusory due to lack of care, financial constraints or gross societal indifference, then an autonomy-based right to assisted suicide may itself be transformed, in effect, into a duty"); *see also* Disability Rights Educ. & Defense Fund, *Assisted Suicide*, http://www.dredf.org/assisted_suicide/ index.shtml (last visited Jan. 8, 2012). Health care providers who share these views would object to participating as a matter of conscientious—but secular, not religious—belief. It is simply inaccurate to claim that the exemption in the Death with Dignity Act and the rules at issue in this case interact to prefer one religion over another.

DEFENDANT-INTERVENORS' POST TRIAL
BRIEF (No. C07-5374-RBL) – 9

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

The Act does, however, treat similar *conduct* (regardless of its motivation) differently than it is treated under the pharmacy rules, but that is because the state interest behind the Death with Dignity Act is utterly different than "access to safe and timely medications." The Act carefully balances the wishes of a terminally ill, competent adult to die with dignity, with the protection of vulnerable people from misapplication of the law. To achieve this end, the law narrowly circumscribes the circumstances under which a health care provider can prescribe the medications that a patient may self-administer to end his or her life. Just some of the examples include: a requirement that the competent, terminally ill patient make a written request for medication to end his or her life in the presence of two qualified witnesses (RCW 70.245.020); a requirement that a consulting physician confirm that the patient meets the Act's eligibility requirements and has made an informed decision (RCW 70.245.050); a mandate that a patient make additional oral as well as written requests within a specific time frame (RCW 70.245.090); and a restriction on the eligibility of people diagnosed with depression or psychiatric disorders (RCW 70.245.060). By its terms, the Act's use is limited to a very small population of eligible adults. Limiting prescribing and dispensing to willing health care providers does nothing to undermine the Act's purpose; in fact, it is just another way that the law's scope is narrowly circumscribed.

Unlike a rule promoting access to all medications, the Death with Dignity Act is specifically designed to ensure that its use is rare, limited, and carefully monitored.[6] To ascribe

---

[6] The use of such drugs is indeed very rare. In Oregon, where a similar law was enacted in 1994, fewer than 100 prescriptions per year have been written annually, and a much smaller number of people actually use the prescriptions: as of 2010, only 525 people – an average of fewer than 33 people per year—died from ingesting the medications prescribed to end their lives. Or. Pub. Health Div., *Oregon's Death with Dignity Act - 2010* (Jan. 2011), available at http://public.health.oregon.gov/ProviderPartnerResources/Evaluation Research/DeathwithDignityAct/Documents/year13.pdf. While Washington's law has been in effect only since 2009, the data is strikingly similar. Only 65 people used the law during the 10 months it was in effect in 2009, and only 85 prescriptions were written pursuant to the law in 2010. Wash. State Dep't of Health, *2010 Death with Dignity Act Report*, *available at* http://www.doh.wa.gov/dwda/. In contrast, contraception is routine health care for women. This includes emergency contraception: in the first five years that collaborative protocols permitted Washington State pharmacists to write emergency contraception prescriptions, pharmacists in this state provided more than 35,600 such prescriptions. Heather Boonstra, *Emergency Contraception: Steps Being Taken to Improve Access*, The Guttmacher Report on Public Policy, p. 11 (Dec. 2002).

DEFENDANT-INTERVENORS' POST TRIAL
BRIEF (No. C07-5374-RBL) – 10

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

to this unique law, enacted after the pharmacy rules were passed, the requirement that it serve the purpose of the pharmacy rules or risk those rules' constitutionality is essentially an argument that any religious exemption in any similar statute dictates an across-the-board religious exception in every context. But religious exemptions are not constitutionally required: they are a matter of legislative grace. *Smith*, 494 U.S. at 878. Washington State may decide that all health care providers can opt out of abortion (*see* RCW 9.02.150), but remains constitutionally free to decide that employers must, despite their religious objection, cover contraceptives for their employees when they cover other prescription drugs (*see* WAC 284-43-822) or that no hospitals with emergency rooms may be exempt from providing emergency contraceptives to sexual assault victims (*see* RCW 70.41.350).

In short, the Death with Dignity Act's exemption has no bearing on the constitutionality of the pharmacy rules.

## C.    The Ninth Circuit's ruling is binding precedent.

While Defendant-Intervenors provide the analysis above to further bolster support for the conclusions that the rules are neutral and generally applicable, this question in fact has already been resolved by the Ninth Circuit in *Stormans*. Among other things, the Ninth Circuit has held in this case that, because the rules are neutral and generally applicable, they are subject to rational basis review. *Stormans*, 586 F.3d at 1137-38. The Ninth Circuit also signaled clearly that the rules are rationally related to the State's interest in "ensuring that its citizen-patients receive lawfully prescribed medications without delay." *Id.* at 1137. These conclusions, and other aspects of the Ninth Circuit's prior ruling, are the "law of the case" and should be viewed as such by this Court.[7] Yet Plaintiffs continue to proceed as though the Ninth Circuit's pronouncements in this case can simply be ignored.

---

[7] Plaintiffs have argued that the Ninth Circuit's decision was "preliminary" and based on a scant evidentiary record. But this argument ignores the nature of Plaintiffs' claims. Plaintiffs assert constitutional violations, which raise questions of law and depend minimally on disputed facts. In addition, the Ninth Circuit's decision was made with the benefit of an evidentiary record. After conducting extensive discovery and concluding testimony in an eleven-day trial, Plaintiffs have not identified any relevant new *categories* of facts or evidence not

DEFENDANT-INTERVENORS' POST TRIAL
BRIEF (No. C07-5374-RBL) – 11

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

**1.     The Ninth Circuit's prior rulings are the "law of the case."**

The doctrine of the "law of the case" is well established.  To ensure consistency, prior rulings on issues of law in a case become the "law of the case" for future proceedings. *Manufactured Home Cmtys, Inc. v. Cnty. of San Diego*, 655 F.3d 1171, 1181 (9th Cir. 2011) ("The law of the case doctrine precludes a court 'from reconsidering an issue previously decided by the same court, or a higher court in the identical case.'") (quoting *United States v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000)); *United States v. Estrada-Lucas*, 651 F.2d 1261, 1263 (9th Cir. 1980) (finding that the trial court erred by deviating from prior appellate decisions in the same case).  In fact, the Ninth Circuit has held that prior findings of fact and conclusions of law can both constitute the "law of the case."  *Bank of N.Y. v. Fremont Gen. Corp.*, 523 F.3d 902, 912 n.6 (9th Cir. 2008) (finding it "pointless" to remand to the trial court to enter findings of fact and conclusions of law, as the trial court would be "effectively precluded from reconsidering" them under the law of the case doctrine); *see also This That & The Other Gift & Tobacco, Inc. v. Cobb Cnty., Ga.*, 439 F.3d 1275, 1283-84 (11th Cir. 2006) ("'Under the law of the case doctrine, the findings of fact and conclusions of law by an appellate court are generally binding in all subsequent proceedings in the same case in the trial court or on a later appeal.'") (quoting *Heathcoat v. Potts*, 905 F.2d 367, 370 (11th Cir. 1990)).

In this litigation, the Ninth Circuit has made multiple determinations of dispositive legal issues, all of which constitute the law of the case that should not be revisited.  In particular, the Ninth Circuit has held:

- The rules are facially neutral;

- The rules are neutral in their effect;

- The rules are generally applicable, and their general applicability is not impaired by any of the exemptions;

---

already considered by the Ninth Circuit that would fundamentally change the appellate court's articulation of controlling principles of constitutional law.

DEFENDANT-INTERVENORS' POST TRIAL
BRIEF (No. C07-5374-RBL) – 12

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

- The rules are subject to rational basis review; and

- The rules appear rationally related to the State's interest in improving access and ensuring that residents receive lawfully prescribed medications without delay.

*Stormans*, 586 F.3d at 1130-34, 1187.

Because the Ninth Circuit reached each of these conclusions in this litigation, the holdings are the law of the case and cannot be ignored by Plaintiffs in these subsequent proceedings.

### 2. The categories of relevant evidence presented now are the same categories of evidence before the Ninth Circuit.

"A court may have discretion to depart from the law of the case where:  1) the first decision was clearly erroneous; 2) an intervening change in the law has occurred; 3) the evidence on remand is substantially different; 4) other changed circumstances exist; or 5) a manifest injustice would otherwise result.  Failure to apply the doctrine of the law of the case absent one of the requisite conditions constitutes an abuse of discretion."  *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997) (citing *Thomas v. Bible*, 983 F.2d 152, 155 (9th Cir. 1993)).  Plaintiffs cannot establish that any of these exceptions apply here.

Only if the material facts change significantly such that the evidence is "substantially different" from the evidence available at the time of the prior decision will the prior decision not be binding in the future.  For example, in *Manufactured Home Communities*, an earlier decision denying fees was no longer the "law of the case" because the party seeking fees was subsequently deemed the prevailing party.  655 F.3d at 1181.  In this case, however, the relevant material facts and evidence have not changed since the Ninth Circuit's ruling.  Thus, there is nothing to warrant deviating from or re-examining the Ninth Circuit's rulings.

Plaintiffs contend that because the Ninth Circuit's decision was based on an appeal of the Court's preliminary injunction, it necessarily was based on limited facts that this Court should reconsider.  Dkt. No. 401 (Consolidated Resp. to State Defendants' and Defendant-Intervenors'

DEFENDANT-INTERVENORS' POST TRIAL
BRIEF (No. C07-5374-RBL) – 13

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Mot. for Summ. Judg. 20). But Plaintiffs miss the point. In this case, it is irrelevant that the Ninth Circuit's decision was made following a preliminary injunction appeal; the Ninth Circuit ruled on matters of law—based on the text of the rules and their application to the underlying legal principles—and repeatedly emphasized that the rational basis test must apply. *See Stormans*, 586 F.3d at 1137 (explaining that the Court had to "make the appropriate factual findings" under the correct legal standard as determined by the Ninth Circuit). This case is a perfect example of when "[a] fully considered appellate ruling on an issue of law made on a preliminary injunction appeal . . . become[s] the law of the case for further proceedings in the trial court." *Humanitarian Law Project v. U.S. Dep't of Justice*, 352 F.3d 382, 393 (9th Cir. 2003), *vacated on other grounds*, 393 F.3d 902 (9th Cir. 2004).[8]

Plaintiffs' arguments also ignore the essential nature of their own claims. Courts repeatedly have found that constitutional challenges to state regulations are legal issues, not issues of fact. *Marable v. Nitchman*, 511 F.3d 924, 930 (9th Cir. 2007) (stating that the analysis of protected speech is an issue of law, not of fact); *United States v. Hugs*, 109 F.3d 1375, 1379 (9th Cir. 1997); *see also This That & The Other Gift & Tobacco, Inc.*, 439 F.3d at 1284-85

---

[8] The cases Plaintiffs have cited in opposition do not contradict this general rule. In addition to *Farrakhan v. Gregoire*, 590 F.3d 989, 999-1000 (9th Cir. 2010) (finding that a prior decision is binding under the law of the case doctrine), Plaintiffs have cited *Golden State Transit Corp. v. City of Los Angeles*, 754 F.2d 830, 832 n.3 (9th Cir. 1985). *Golden State* dealt with claims regarding a taxi cab franchise renewal that were preempted by the National Labor Relations Act, and addressed whether a franchise renewal was a constitutionally protectable property interest. *Id.* at 831-32. Plaintiffs cite to a footnote in the case that notes that a prior decision was not the "law of the case" and the court therefore had discretion to hear the issue. *Id.* This footnote is not persuasive or applicable to this case.

Plaintiffs also cited two cases that do not address the concept of "law of the case" at all. First, they refer to *Ross-Whitney Corporation v. Smith Kline & French Laboratories*, 207 F.2d 190, 194 (9th Cir. 1953). *Ross-Whitney* was a trademark infringement and unfair competition case where the Ninth Circuit affirmed a preliminary injunction. *Id.* at 192-93, 99. *Ross-Whitney* is irrelevant to the law of the case doctrine. Plaintiffs also cited to *Washington Capitols Basketball Club, Inc. v. Barry*, 419 F.2d 472 (9th Cir. 1969), in which the Ninth Circuit affirmed a preliminary injunction that prevented a basketball player from contracting with two NBA teams. *Id.* at 479. The court addressed the principles behind preliminary injunctions, the legality of the contracts, and the doctrine of unclean hands. Like *Ross-Whitney*, *Barry* does not even remotely address the "law of the case" doctrine. These cases are not relevant.

DEFENDANT-INTERVENORS' POST TRIAL
BRIEF (No. C07-5374-RBL) – 14

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

(holding in a First Amendment challenge to a state statute that "this Court's prior legal conclusion was binding on the district court, just as it is now binding on us").

The Ninth Circuit's decision is binding on Plaintiffs and in subsequent proceedings in this Court. Plaintiffs have not presented contrary, relevant evidence or any other change that warrants deviating from the law of the case. The Ninth Circuit's legal determinations that the challenged rules are neutral, generally applicable, and rationally related to the State's interest are therefore binding.

### 3. Plaintiffs have not met their burden to negate every conceivable basis supporting the rules.

The law presumes that the rules are constitutional and the burden is on Plaintiffs here "to negative every conceivable basis which might support [the rules]." *Stormans*, 586 F.3d at 1137. To invalidate them, Plaintiffs must prove "'the most compelling constitutional reasons.'" *Mistretta v. United States*, 488 U.S. 361, 384 (1989) (quoting *Bowsher v. Synar*, 478 U.S. 714, 736 (1986)); *Ecology Ctr. v. Castaneda*, 426 F.3d 1144, 1148 (9th Cir. 2005); *Moon v. Freeman*, 379 F.2d 382, 391 (9th Cir. 1967) (burden of proof lies on party who denies constitutionality of statute). They have not satisfied this high standard. Every Board member who testified at trial noted that the rules were intended to and do apply to all medications, not just Plan B; that all those involved in the rulemaking process, including the advocacy groups promoting the rules, focused on the concerns of their constituencies, not animus toward religion; and former Board member Susan Teil Boyer testified that the rules would also prohibit decisions not to stock or dispense other drugs and are in no way limited to pharmacists and pharmacies who refuse to dispense Plan B for religious reasons.

Plaintiffs further contend that actual proof of refusals to fill lawful prescriptions, established under the strictest interpretation of the Federal Rules of Evidence, are required in order to justify the rules. Yet the Supreme Court has made clear that in a case such as this, even "rational speculation" by a legislative body is enough to satisfy the rational basis test. *F.C.C. v.*

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

*Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993).  In sum, this Court should not accept

Plaintiffs' invitation to misapply Free Exercise jurisprudence, nor to reopen issues that were

conclusively decided by the Ninth Circuit on appeal of the preliminary injunction.  The

voluminous evidence in this case supports the Defendant-Intervenors' Proposed Findings of Fact

and Conclusions of Law, and requires a ruling that the rules are neutral, generally applicable, and

rationally related to the state's interest in ensuring timely access to medications.

     RESPECTFULLY SUBMITTED this 11th day of January, 2012.

**LEGAL VOICE**

Sara L. Ainsworth, WSBA No. 26656
Lisa M. Stone, WSBA No. 15421
Rima J. Alaily, WSBA No. 29225
Molly A. Terwilliger, WSBA No. 28449
**Legal Voice**
907 Pine Street, Suite 500
Seattle, WA 98101-1818
Telephone: 206.682.9552
Facsimile: 206.682.9556
E-mail: sainsworth@LegalVoice.org
     lstone@LegalVoice.org
     rima.alaily@gmail.com
     mollyt@SummitLaw.com

Attorneys for Defendant-Intervenors

**PLANNED PARENTHOOD OF THE
GREAT NORTHWEST**

Laura Einstein, WSBA No. 39829
**Planned Parenthood of the Great
Northwest**
2001 East Madison Street
Seattle, WA 98122-2959
Telephone:  206.328.7734
Facsimile:  206.720.4657
E-mail: laura.einstein@ppgnw.org

Attorneys for Defendant-Intervenors

**PERKINS COIE LLP**

/s/ *Thomas L. Boeder*
Thomas L. Boeder, WSBA No. 408
Andrew L. Greene, WSBA No. 35548
Katherine DeWeese Bennett, WSBA
No. 41763
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Telephone:  206.359.8000
Facsimile:  206.359.9000
E-mail: TBoeder@perkinscoie.com
     AGreene@perkinscoie.com
     KBennett@perkinscoie.com

Attorneys for Defendant-Intervenors

DEFENDANT-INTERVENORS' POST TRIAL
BRIEF (No. C07-5374-RBL) – 16

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

LEGAL22465867.1

# CERTIFICATE OF SERVICE

I certify that on January 11, 2012, I electronically filed the foregoing **Defendant-Intervenors' Post Trial Brief** with the Clerk of the Court using the CM/ECF system, which will send notification to all counsel of record.

I certify under penalty of perjury that the foregoing is true and correct.

DATED:  January 11, 2012.

/s/ Thomas L. Boeder
Thomas L. Boeder, WSBA No. 408
Andrew L. Greene, WSBA No. 35548
Katherine DeWeese Bennett, WSBA No. 41763
**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Telephone:  206.359.8000
Facsimile:  206.359.9000
E-mail: TBoeder@perkinscoie.com
        AGreene@perkinscoie.com
        KBennett@perkinscoie.com

Attorneys for Defendant-Intervenors

DEFENDANT-INTERVENORS' POST TRIAL
BRIEF (No. C07-5374-RBL) – 17

LEGAL22465867.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000