The Honorable Ronald B. Leighton

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

| | |
|---|---|
| STORMANS, INCORPORATED, doing business as Ralph's Thriftway, et al., | NO. C07-5374 RBL |
| Plaintiffs, | |
| v. | STATE DEFENDANTS' SUPPLEMENTAL TRIAL BRIEF |
| MARY SELECKY, Secretary of the Washington State Department of Health, et al., | |
| Defendants, | |
| and | |
| JUDITH BILLINGS, et al., | |
| Defendant-Intervenors. | |

## I. INTRODUCTION

The State Defendants submit this Supplemental Trial Brief addressing three areas: (a) the elements of a selective enforcement claim and the lack of evidence to support such a claim in this case; (b) whether the term "patients" in the stocking rule, Wash. Admin. Code § 246-869-150, is unconstitutionally void for vagueness; and (c) a discussion of the process afforded

STATE DEFENDANTS'
SUPPLEMENTAL TRIAL BRIEF
NO. C07-5374 RBL

1

ATTORNEY GENERAL OF WASHINGTON
Agriculture & Health Division
7141 Cleanwater Drive SW
PO Box 40109
Olympia, WA 98504-0109
(360) 586-6500

a licensee when the Board of Pharmacy ("Board") investigates or initiates enforcement against a licensee.

## II. ARGUMENT

### A. The Plaintiffs Have Not Established The Elements Necessary For Relief Under A Selective Enforcement Theory

Under the equal protection clause of the Fourteenth Amendment a neutral and general rule can be enjoined on an as-applied basis when it is proven that the rule is being selectively enforced and that the selectivity in enforcement is based upon impermissible grounds, such as religious bias. *Rosenbaum v. City and County of San Francisco,* 484 F.3d 1142, 1152-54 (9th Cir. 2007). A selective enforcement claim must be dismissed when a plaintiff fails to establish either of the two required elements: 1) discriminatory effect (treating similarly situated individuals differently), and 2) that the disparate treatment was motivated by discriminatory purpose (religious animus). *Rosenbaum,* 484 F.3d at 1153, citing, *United States v. Armstrong*, 517 U.S. 456 (1996).

Discriminatory purpose is proven by showing that the disciplining authority selected a course of action "because of, not merely in spite of, its adverse effects upon an identifiable group". *Rosenbaum,* 484 F.3d at 1153. When a rule is facially neutral a plaintiff is required to demonstrate discriminatory intent in enforcement decisions. *Wayte v. United States,* 470 U.S. 598, 610 (1985). As stated by the Ninth Circuit:

> The conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation. *Freeman v. City of Santa Ana,* 68 F.3d 1180, 1188 (9th Cir.1995); *Bordenkircher v. Hayes,* 434 U.S. 357, 364, 98 S. Ct. 663, 54 L. Ed. 2d 604 (1978). To establish impermissible selective enforcement, Plaintiffs must show (1) that Defendants did not take action against others similarly situated to Plaintiffs, and (2) that the selective action against Plaintiffs

STATE DEFENDANTS'
SUPPLEMENTAL TRIAL BRIEF
NO. C07-5374 RBL

2

ATTORNEY GENERAL OF WASHINGTON
Agriculture & Health Division
7141 Cleanwater Drive SW
PO Box 40109
Olympia, WA 98504-0109
(360) 586-6500

"was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification."

*Bloodworth v. City of Phoenix,* 26 F.Appx. 679, 682 (9th Cir. 2002), quoting *Hayes,* 434 U.S. at 364.

In *Rosenbaum,* religious evangelicals claimed unlawful selective enforcement by the City of San Francisco in its permitting and enforcement of an anti-noise ordinance. *Rosenbaum*, 484 F.3d at 1147. The plaintiffs in *Rosenbaum* used amplified sound to spread their message in San Francisco. The ordinance placed limits on the volume of amplified sound, but also contained a provision for obtaining a permit to exceed the volume limitations. The *Rosenbaum* plaintiffs alleged the City was treating them differently than other applicants for permits to exceed the volume limitations because of opposition to their religious message and also that they were being disproportionately targeted for enforcement because of animus to their religious message. *Rosenbaum*, 484 F.3d at 1153.

In affirming the dismissal of the Rosenbaum's numerous selective enforcement claims, the Ninth Circuit noted at the outset that plaintiffs failed to identify and produce evidence regarding the correct control group for making their discriminatory effect claim. *Rosenbaum*, 484 F.3d at 1153. The plaintiffs presented an undifferentiated argument that conflated permitting and enforcement actions, and that used large rock concerts and major parades as comparators. The court rejected such comparators as not being similarly situated and ruled that the failure to identify and produce evidence regarding disparate effect on a proper control group required dismissal of the claim. *Rosenbaum*, 484 F.3d at 1153.

Similarly in this case, the plaintiffs have neither identified a relevant control group nor produced evidence that they were treated differently because of religious animus. The

STATE DEFENDANTS'
SUPPLEMENTAL TRIAL BRIEF
NO. C07-5374 RBL

3

ATTORNEY GENERAL OF WASHINGTON
Agriculture & Health Division
7141 Cleanwater Drive SW
PO Box 40109
Olympia, WA 98504-0109
(360) 586-6500

examinations and arguments of the plaintiffs in this case have simply amplified their previous assertions that if any "secular" exceptions are allowed in the relevant pharmacy rules, then the failure to also allow a religious carve-out must be due to religious animus. The Ninth Circuit has already considered and rejected plaintiffs' argument that if any exceptions are allowed that the Board must allow all others. *Stormans v. Selecky,* 586 F.3d 1109, 1135 (9th Cir. 2009).

In *Wayte,* the Supreme Court held that a passive enforcement policy was not a violation of the First or Fifth Amendments. *Wayte,* 470 U.S. at 612-614. The situation in *Wayte* involved individuals who refused to register with the Selective Service and the Government's passive enforcement policy in which only individuals who affirmatively notified the Service of their non-compliance were prosecuted. *Wayte,* 470 U.S. at 601. The enforcement policy was applied to individuals who self-notified the Service of their refusal <u>or were reported by others of the refusal.</u> *Wayte,* 470 U.S. at 610.

In July 1980, the President issued a directive requiring certain U.S. citizens and residents born during 1960 to register with the Selective Service. *Wayte,* 470 U.S. at 601. The plaintiff did not register and wrote several letters to the Selective Service informing the Service that he had not registered and had no intention of complying with the registration requirement. *Wayte,* 470 U.S. at 601. Similar to the plaintiffs in this case, Mr. Wayte informed the Selective Service:

> "I decided to obey my conscience rather than your law. I did not register for your draft. I will never register for your draft. Nor will I ever cooperate with yours or any other military system, despite the laws I might break or the consequences which may befall me."

*Wayte,* 470 U.S. at 601.

STATE DEFENDANTS'
SUPPLEMENTAL TRIAL BRIEF
NO. C07-5374 RBL

4

ATTORNEY GENERAL OF WASHINGTON
Agriculture & Health Division
7141 Cleanwater Drive SW
PO Box 40109
Olympia, WA 98504-0109
(360) 586-6500

Mr. Wayte's letter was added to a file of other men whose refusal to comply with the registration had actually been reported to the Selective Service. The Selective Service consciously adopted a policy of passive enforcement in which it would investigate and prosecute only those individuals in that file as opposed to all non-registrants. *Wayte,* 470 U.S. at 601. In adopting a passive enforcement policy the Selective Service and the Department of Justice recognized that those who ended up being prosecuted would likely "be vocal proponents of nonregistration or persons with religious or moral objections." *Wayte,* 470 U.S. at 603 (quoting DOJ enforcement policy memorandum).

Eventually Mr. Wayte was indicted for failing to register. He moved to dismiss the indictment on the basis of selective enforcement under the First Amendment arguing that only "vocal" opponents to registration were being targeted for prosecution and not all non-registrants.[1] The District Court dismissed the indictments on the basis that the Government could have located non-vocal non-registrants, but chose not to do so. *Wayte,* 470 U.S. at 606. The District Court noted that the passive enforcement policy was "inherently suspect" because it was focused on those who were actively and vocally expressing their opposition to the registration requirements. Further, the District Court found that the Government's awareness that its passive enforcement policy would result in a disproportionate number of vocal non-registrants being prosecuted to be persuasive evidence of selective enforcement. *Wayte,* 470 U.S. at 606.

---

[1] The Selective Service estimated that 9,039,000 men were subject to registration, but only 8,365,00 had complied by the established deadline resulting in an estimated non-compliance rate of 7.5%. *Wayte,* 470 U.S. at 604, fn. 4. The Selective Service had referred 286 non-compliant individuals from its file to the DOJ, but the DOJ only indicted 13.

STATE DEFENDANTS'
SUPPLEMENTAL TRIAL BRIEF
NO. C07-5374 RBL

5

ATTORNEY GENERAL OF WASHINGTON
Agriculture & Health Division
7141 Cleanwater Drive SW
PO Box 40109
Olympia, WA 98504-0109
(360) 586-6500

The reasoning of the District Court was rejected by the Supreme Court. *Wayte,* 470 U.S. at 610-613. The Supreme Court began its reversal of the District Court by noting the broad discretion which must be given to prosecutorial authorities in deciding which cases to pursue. *Wayte,* 470 U.S. at 607. The Supreme Court disagreed that a passive enforcement policy was "inherently suspect" and, to the contrary, articulated several grounds supporting the reasonableness of such a policy, including prosecutorial efficiency and the deterrent value of pursuing those who were publically trumpeting their non-compliance. *Wayte,* 470 U.S. at 612. Most importantly, the Court recognized the critical distinction between Government awareness that a passive enforcement policy would have the effect of punishing only a particular subset of non-compliant individuals and selection of an enforcement policy *because* it would punish only a select subset in furtherance of illegitimate discriminatory animus. Mr. Wayte's selective enforcement claim failed because he could not prove that the prosecution was "*because of* his protest activities". *Wayte,* 470 U.S. at 610 (emphasis in original).

The plaintiffs in this case have not produced evidence on either of the required elements of a selective enforcement claim – largely because no enforcement actions have been taken. Because no enforcement actions have been taken against any licensee under the 2007 rules, it is not possible for the plaintiffs to demonstrate that licensees with religious objections to compliance are being treated differently than non-compliant licensees who do not have religious objections. The same is true for the stocking rule. Accordingly, there is no evidence to support the "discriminatory effect" element of a selective enforcement case.

As to the second element, there is no evidence that the Board is making investigation or enforcement decisions *because of* religious animus. The undisputed fact that the Board has

STATE DEFENDANTS'
SUPPLEMENTAL TRIAL BRIEF
NO. C07-5374 RBL

6

ATTORNEY GENERAL OF WASHINGTON
Agriculture & Health Division
7141 Cleanwater Drive SW
PO Box 40109
Olympia, WA 98504-0109
(360) 586-6500

dismissed every compliant that it has been allowed to adjudicate, regardless of any knowledge that the Stormans non-compliance was religiously based, undermines any basis to conclude that the Board has adopted a prosecution policy of targeting religiously based non-compliance.[2] Accordingly, the plaintiffs selective enforcement claims do not come close to having sufficient evidence to support an injunction of the rules.

The Stormans' argument regarding the disproportionate number of complaints against Ralph's Thriftway due to the "pill patrol" are unavailing. Citizens have the right to organize and publically picket or boycott a business. Moreover, citizens have the right to petition the government for redress of grievances including submitting multiple complaints to a government regulator about what a licensee is doing. The plaintiffs suggest that a politically motivated complaint filed by a citizen is per se illegitimate and that the mere investigation of the merits of such a complaint by the regulator conflates the suspected motives of the complainant with the motive of the Board in even investigating such a complaint.

It is not surprising that no case authority exists for the tenet implicit in plaintiffs' argument given the poor public policy and chilling effect that would arise if regulatory authorities had to determine the motives of a complainant as a precondition for deciding whether compliance with the law would even be investigated.

The State presented the exhaustive research in this case of every complaint filed with Board having anything to do with a person being refused medication at a pharmacy. Ex. A-13.

---

[2] The Stormans also point to the action of the Board in converting several complaints that initially came in against Ralph's responsible pharmacist Stanley Berdinka into complaints against the Stormans' pharmacy license. There were 6 complaints initially assigned to Stanley Berdinka. Ex. A-13. Those complaints were all closed when the Board learned that Mr. Berdinka was prevented from compliance by the policy of his employer and holder of the pharmacy license for Ralph's Thriftway. Based on the 6 complaints and Kevin Storman's admission that he did not stock Plan B, one complaint was then opened by the Board against Stormans. However, that complaint was also closed on 9/6/07 with no action taken. Ex. A-13

STATE DEFENDANTS'
SUPPLEMENTAL TRIAL BRIEF
NO. C07-5374 RBL

7

ATTORNEY GENERAL OF WASHINGTON
Agriculture & Health Division
7141 Cleanwater Drive SW
PO Box 40109
Olympia, WA 98504-0109
(360) 586-6500

This testimony was summarized in the charts presented and discussed in detail by Ms. Salmi. Exs. A-38- A-41. There is no evidentiary basis to support a claim of a discriminatory effect in the investigations or disciplinary decisions of the Board, nor that investigations and discipline are being determined *because of* religious animus. The selective enforcement claims in this case should be dismissed. *See, Rosenbaum,* 484 F.3d at 1152-54.

Although the history of what the Board has done in terms of discipline is undisputed and patently insufficient to establish a selective enforcement claim, there are three complaints against Stormans that have been stayed by this court. On the current record there is no evidentiary basis to make a finding as to what the Board will do with the pending complaints, other than a conclusion that the Board will dismiss them just as it has dismissed every other complaint involving a refusal to deliver medication to a patient, regardless of whether the respondent was non-compliant for religious reasons. It would be the definition of speculation for this court to anticipate what the Board would do with those complaints, let alone make a finding that discipline will be taken *because of* religious animus.

On a related point, this court frequently questioned witnesses about the application of the rules to Catholic out-patient pharmacies even going so far as to request additional briefing to be submitted on that issue.[3] The court raised two questions regarding Catholic out-patient pharmacies. First, whether the rules are applicable to those pharmacies. Second, whether the

---

[3] The Intervenors produced evidence that several Catholic out-patient pharmacies were stocking Plan B and *ella*. Dkt. No. 523. Those pharmacies were subsequently questioned by plaintiffs counsel following clarification from the court about what additional information the court sought. Following plaintiffs interview the Catholic pharmacies which had previously been stocking Emergency Contraceptives stated they would discontinue that practice. Dkt. No. 531 Ex. D. The declarations secured by plaintiffs were silent on whether those pharmacies had current demand for EC's.
If those pharmacies have current demand for EC's, an unintended consequence of the research project has been the actual reduction of access to medication in those communities.

STATE DEFENDANTS'
SUPPLEMENTAL TRIAL BRIEF
NO. C07-5374 RBL

8

ATTORNEY GENERAL OF WASHINGTON
Agriculture & Health Division
7141 Cleanwater Drive SW
PO Box 40109
Olympia, WA 98504-0109
(360) 586-6500

rules would in fact be enforced against those pharmacies. As to the first question, it is undisputed that the stocking rule and the 2007 rules apply to those pharmacies. There is no evidence that to support a finding the rules are not generally applicable due to a carve-out having been granted to Catholic out-patient pharmacies.

Despite this court's skepticism that the rules will be enforced against Catholic out-patient pharmacies, the evidence before this court provides no basis for making such a finding. In fact, Ms. Boyer, Mr. Harris, and Mr. Doll all testified to their expectation that Catholic out-patient pharmacies would be treated just like any other licensees. The undisputed fact that the panel considering a complaint would not even know the respondent was a Catholic affiliated pharmacy is also significant in undercutting any assertion that the Board would give Catholic pharmacies a pass.

The dearth of evidence to support this court's theory of religious favoritism can be summarized as follows: 1) the record contains no evidence of any particular Catholic outpatient pharmacy with patient demand for Plan B or *ella* sufficient to invoke the stocking rule, 2) there is no history of complaints arising from Catholic out-patient pharmacies and therefore no evidentiary basis for being able to determine that Catholic outpatient pharmacies were given preferential treatment because of some kind of religious filter.

A contention that the Board could find out the actual status of whether the Catholic out-patient pharmacies have patient demand for emergency contraceptives and do not stock those medicines by actively investigating the situation lacks legal traction in light of the Supreme Court's decision in *Wayte*. The Court in *Wayte* rejected the argument that a selective enforcement case could be premised on a policy that passively enforced only against those

STATE DEFENDANTS'
SUPPLEMENTAL TRIAL BRIEF
NO. C07-5374 RBL

9

ATTORNEY GENERAL OF WASHINGTON
Agriculture & Health Division
7141 Cleanwater Drive SW
PO Box 40109
Olympia, WA 98504-0109
(360) 586-6500

individuals who filed their refusal to comply and declined to pursue other resistors even though the Service could have located others if it had chosen to actively go out and look for them. *Wayte,* 470 U.S. at 606. The passive enforcement policy approved in *Wayte* is similar to the Board's complaint driven policy.

**B. The Term "Patients" In Wash. Admin. Code § 246-869-150 Is Not Unconstitutionally Vague**

Wash. Admin. Code § 246-869-150 reads, in pertinent part, as follows:

> (1) The pharmacy must maintain at all times a representative assortment of drugs in order to meet the pharmaceutical needs of its **patients**.

(emphasis added). Although the Plaintiffs have not moved for an injunction of the stocking rule, they posed many hypothetical questions raising a myriad of strained circumstances in an attempt to suggest that the word "patients" is vague to such a degree that the requirements of the rule cannot be established, thereby, making it susceptible to a void for vagueness challenge.[4]

While it is a basic principle of due process that a rule should give sufficient notice of what is required to a person of ordinary intelligence, there is no expectation of "mathematical certainty from our language." *Grayned v. City of Rockford,* 408 U.S. 104, 110 (1972). As stated in *American Communications Ass'n, C.I.O. v. Douds, United Steel Workers of America,* 339 U.S. 382, 412 (1950):

> There is little doubt that imagination can conjure hypothetical cases in which the meaning of these terms will be in nice question. The applicable standard, however, is not one of wholly consistent academic definition of abstract terms.

---

[4] Despite the clear prominence of the stocking rule being at the very heart of the Stormans' complaint, the plaintiffs chose not to amend their complaint to include a request for an injunction against application of the stocking rule. Even at the conclusion of the trial the plaintiffs filed no motion requesting such an amendment to conform to the evidence. The failure to seek such an amendment must be deemed a concession regarding the neutral and general nature of the stocking rule.

STATE DEFENDANTS'
SUPPLEMENTAL TRIAL BRIEF
NO. C07-5374 RBL

10

ATTORNEY GENERAL OF WASHINGTON
Agriculture & Health Division
7141 Cleanwater Drive SW
PO Box 40109
Olympia, WA 98504-0109
(360) 586-6500

It is, rather, the practical criterion of fair notice to whom the statute is directed. *The particular context is all important.*

(emphasis added).

The laws regulating the practice of pharmacists and pharmacies include references to "patients" in a number of provisions. Wash. Admin Code § 246-869-220(1) and (3), requiring pharmacists to counsel *patients or the patient's agent* on the use of medications; Wash. Admin. Code § 246-875-001, *et seq.*, requiring pharmacies and pharmacists to maintain *patient* medical record systems to "insure the health and welfare of the patients served," including collection and retention of certain *patient* information; Wash. Admin. Code § 246-869-090, specifying the requirements when transferring *patients*' prescriptions to another pharmacy.

In addition, Wash. Rev. Code § 18.130.180, the statute which identifies unprofessional conduct for all licensed health professions, including those regulated by the Board, refers to "patients" in declaring the following conduct grounds for disciplinary action:

> (4) Incompetence, negligence, or malpractice which results in injury to a *patient* or which creates an unreasonable risk that a *patient* may be harmed. The use of a nontraditional treatment by itself shall not constitute unprofessional conduct, provided that it does not result in injury to a *patient* or create an unreasonable risk that a *patient* may be harmed;
> . . .
> (22) Interference with an investigation or disciplinary proceeding by willful misrepresentation of facts before the disciplining authority or its authorized representative, or by the use of threats or harassment against any *patient* or witness to prevent them from providing evidence in a disciplinary proceeding or any other legal action, or by the use of financial inducements to any *patient* or witness to prevent or attempt to prevent him or her from providing evidence in a disciplinary proceeding;
> . . .
> (24) Abuse of a client or *patient* or sexual contact with a client or *patient*;

STATE DEFENDANTS'  
SUPPLEMENTAL TRIAL BRIEF  
NO. C07-5374 RBL

11

ATTORNEY GENERAL OF WASHINGTON  
Agriculture & Health Division  
7141 Cleanwater Drive SW  
PO Box 40109  
Olympia, WA 98504-0109  
(360) 586-6500

In implementing Wash. Rev. Code § 18.130.180(24), which makes the abuse of, or sexual contact, with a patient unprofessional conduct, the Board adopted rules defining "patient" in Wash. Admin. Code § 246-860-020(5), which defines "patient" as "an individual who receives health care from a health care provider."

Thus, the term "patients" in Wash. Admin. Code § 246-869-150(1), in the context of the regulatory scheme for licensees regulated by the Board, is a commonly used term. The Board is comprised of five pharmacists and two consumer representatives. The inclusion of experienced practitioners on the Board allows these practitioners to apply their knowledge and experience of the commonly used terms in their profession to the specific circumstances in the cases before them.[5] As held in *Haley v. Medical Disciplinary Board,* 117 Wn.2d 720, 743, 818 P.2d 1062 (1991), in reviewing whether the term "moral turpitude" in Wash. Rev. Code § 18.130.180(1) was void for vagueness in a physician discipline case, "the common knowledge and understanding of members of the particular profession to which a statute applies may also provide the needed specificity to withstand a vagueness challenge." *See also, Heinmiller v. Department of Health,* 127 Wn.2d 595, 605, 903 P.2d 433 (1996) (vagueness challenge to the term "moral turpitude"); *Faghigh v. Washington State Dep't of Health, Dental Quality Assurance Commission,* 148 Wn. App. 836, 849, 202 P.3d 962 (2009) (vagueness challenge rejected for the requirement for dentists to maintain "complete" records).

---

[5] This is similar to the regulatory scheme used for licensed attorneys in the state of Washington in deciding whether an attorney-client relationship exists. *See* Rules of Professional Conduct, Preamble and Scope, Comment 17 ("Whether a client-lawyer relationship exists for any specific purpose can depend on the circumstances and is a question of fact.").

STATE DEFENDANTS'
SUPPLEMENTAL TRIAL BRIEF
NO. C07-5374 RBL

12

ATTORNEY GENERAL OF WASHINGTON
Agriculture & Health Division
7141 Cleanwater Drive SW
PO Box 40109
Olympia, WA 98504-0109
(360) 586-6500

Certainly, whether individuals are "patients" in the context of Wash. Admin. Code §246-869-150 is no more vague than the term "moral turpitude" in Wash. Rev. Code §18.130.180(1), both of which are applied by the Board in its role as regulators of the practice of pharmacy. While Plaintiffs posed multiple hypothetical questions in an attempt to make the meaning of the term "patients" an academic exercise in imprecision, pharmacies and pharmacists are, in practicing their profession and operating their business, identifying on a daily basis who are their patients in their delivery of pharmaceutical care.

The plaintiffs made much of the fact that prior to the Board's trial brief in this case there was no written definition of patient. However, no witness disagreed with the definition or even offered an alternative. Further, not a single one of the licensed pharmacist who testified (including the plaintiffs) claimed that they did not know how to recognize who was or was not a patient. None of the plaintiffs have been disciplined under circumstances where there was a dispute as to whether an individual was a "patient".[6] The Board members, as licensed practitioners in the field, are much better suited than the court for making determinations on who is a patient.

Plaintiffs have not established that the term "patient" in the pharmacy rules WAC is impermissibly vague and therefore unenforceable.

---

[6] In fact, the Board's policy of dismissing complaints filed by non-waiving complainants gives licensees such as Stormans the benefit of the doubt regarding the status of the individual.

STATE DEFENDANTS'
SUPPLEMENTAL TRIAL BRIEF
NO. C07-5374 RBL

13

ATTORNEY GENERAL OF WASHINGTON
Agriculture & Health Division
7141 Cleanwater Drive SW
PO Box 40109
Olympia, WA 98504-0109
(360) 586-6500

## C. The Board's Investigative and Disciplinary Processes Provide Extensive Due Process, Including State Superior Court Review Of Constitutional Claims

Upon receipt of a complaint, under Wash. Rev. Code § 18.130.080(2), the Board makes the determination of whether the complaint merits investigation.[7] Then, under Wash. Rev. Code § 18.130.095(1)(a), the Board must notify the licensee who is the subject of the complaint, unless the notification would impede an effective investigation, and the licensee is provided the opportunity to submit a written statement about the complaint at the "earliest point of time." One member of the Board acts as the reviewing Board member, reviewing the investigation and making a recommendation to a panel of the Board on whether the investigation should be closed or if a statement of charges or statement of allegations should be issued. The Panel does not know the identity of the respondent licensee. The reviewing Board member does not participate in any hearing if the matter should proceed to a hearing. Wash. Rev. Code § 18.130.050(11).

After the investigation, the Board could decide to take no action, closing the complaint and the investigation. If, instead, the Board decides that "that there is reason to believe a violation of Wash. Rev. Code § 18.130.180 has occurred," a statement of charges is prepared and served on the licensee, accompanied with a notice of the opportunity for a hearing to contest the charges. Wash. Rev. Code § 18.130.090. If a hearing is requested, the

---

[7] The Board's authority to proceed under this statute was discussed in the State Defendants' Bench Brief Regarding Board of Pharmacy Complaint Process for Disciplinary Proceedings (Dkt. No. 522), addressing the two State Court of Appeals' decisions which limited the Board's authority to act without specific complaints.

STATE DEFENDANTS' SUPPLEMENTAL TRIAL BRIEF NO. C07-5374 RBL

14

ATTORNEY GENERAL OF WASHINGTON
Agriculture & Health Division
7141 Cleanwater Drive SW
PO Box 40109
Olympia, WA 98504-0109
(360) 586-6500

hearing is conducted under the Washington Administrative Procedure Act (APA), Wash. Rev. Code § 34.05. Wash. Rev. Code § 18.130.100.[8]

Wash. Rev. Code §§ 34.05.410-.479 of the APA describes the process for the adjudicative proceedings conducted by the Board. The administrative hearing process is similar in many ways to trial processes in courts. Under Wash. Rev. Code § 18.130.050(10), the Board uses a presiding officer, denominated a health law judge, to assist with evidentiary and other legal rulings; however, the Board makes the final decision on whether the allegations in the charges have been proved and what sanction should be ordered. The burden of proving the charges by clear and convincing evidence, not a mere preponderance, is on the State. *Ongom v. Dep't of Health,* 124 Wn. App. 935, 104 P.3d. 29 (2005); *Nguyen v. Dep't of Health Medical Quality Assurance Commission,* 144 Wn.2d 516, 29 P.3d. 689 (2001).

Within thirty days of service of the findings, conclusions and order, the licensee may seek judicial review of the Board's order under Wash. Rev. Code § 34.05.570(3). The superior court may reverse the Board's order on the following bases:

> (a) ***The order, or the statute or rule on which the order is based, is in violation of constitutional provisions on its face or as applied***;
> (b) The order is outside the statutory authority or jurisdiction of the agency conferred by any provision of law;
> (c) The agency has engaged in unlawful procedure or decision-making process, or has failed to follow a prescribed procedure;
> (d) The agency has erroneously interpreted or applied the law;
> (e) The order is not supported by evidence that is substantial when viewed in light of the whole record before the court, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this chapter;

---

[8] Wash. Rev. Code §18.130.172 also authorizes an informal process to resolve discipline prior to issuing statements of charges. This process involves the use of statements of allegations and resolution by a Stipulation to Informal Discipline. Wash. Rev. Code §18.130.98 addresses settlement processes via a settlement conference.

STATE DEFENDANTS'
SUPPLEMENTAL TRIAL BRIEF
NO. C07-5374 RBL

15

ATTORNEY GENERAL OF WASHINGTON
Agriculture & Health Division
7141 Cleanwater Drive SW
PO Box 40109
Olympia, WA 98504-0109
(360) 586-6500

(f) The agency has not decided all issues requiring resolution by the agency;
(g) A motion for disqualification under RCW 34.05.425 or 34.12.050 was made and was improperly denied or, if no motion was made, facts are shown to support the grant of such a motion that were not known and were not reasonably discoverable by the challenging party at the appropriate time for making such a motion;
(h) The order is inconsistent with a rule of the agency unless the agency explains the inconsistency by stating facts and reasons to demonstrate a rational basis for inconsistency; or
(i) The order is arbitrary or capricious.

The laws under which the Board must operate fully comport with due process, including the ability to raise constitutional defenses. None of the plaintiffs have been subjected to any disciplinary action, nor have the plaintiffs presented sufficient evidence to enjoin the two pending complaints on grounds of selective enforcement.

### III. CONCLUSION

Despite nearly eleven days of trial, plaintiffs did not negative every conceivable rational basis supporting the rules, nor have the plaintiffs established a basis for an injunction under a selective enforcement theory. The Board's rules do not target plaintiffs' religious beliefs *because of* religious animus.

This court allowed the plaintiffs extreme latitude in presenting their case. However, they did not produce evidence that would alter the analysis by the Ninth Circuit that the Board's rules are neutral and generally applicable. *Stormans,* 586 F.3d at 1137. Therefore, this court should find that the rational basis standard applies and render a verdict in favor of the defendants.

STATE DEFENDANTS'
SUPPLEMENTAL TRIAL BRIEF
NO. C07-5374 RBL

16

ATTORNEY GENERAL OF WASHINGTON
Agriculture & Health Division
7141 Cleanwater Drive SW
PO Box 40109
Olympia, WA 98504-0109
(360) 586-6500

| | |
|---|---|
| 1 | RESPECTFULLY SUBMITTED this 11th day of January, 2012. |
| 2 | ROBERT M. MCKENNA<br>Attorney General |
| 3 | |
| 4 | /s/ Rene Tomisser |
| 5 | RENE TOMISSER, WSBA #17509<br>Senior Assistant Attorney General |
| 6 | JOYCE A. ROPER, WSBA #11322<br>Attorney for Defendants Department of Health |
| 7 | and Board of Pharmacy<br>Attorney General's Office |
| 8 | P.O. Box 40109<br>Olympia, WA 98504-0109 |
| 9 | 360-586-6500 |

STATE DEFENDANTS'
SUPPLEMENTAL TRIAL BRIEF
NO. C07-5374 RBL

17

ATTORNEY GENERAL OF WASHINGTON
Agriculture & Health Division
7141 Cleanwater Drive SW
PO Box 40109
Olympia, WA 98504-0109
(360) 586-6500

# CERTIFICATE OF SERVICE

I hereby certify that on January 11, 2012, I caused to be electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Kristen K. Waggoner  kwaggoner@elmlaw.com
Luke W. Goodrich  lgoodrich@becketfund.org
Steven H. Aden  saden@telladf.org
Benjamin W. Bull  bbull@telladf.org
Steven Thomas O'Ban  soban@elmlaw.com
Joyce Roper  joycer@atg.wa.gov
Alan Copsey  alanc@atg.wa.gov
Laura F. Einstein  laura.einstein@ppww.org
Lisa M. Stone  lstone@legalvoice.org
Molly A. Terwilliger  mollyt@summitlaw.com
Rima J. Alaily  rima.alaily@gmail.com
Sara Ainsworth  sainsworth@legalvoice.org
Thomas L. Boeder  tboeder@perkinscoie.com
Gretchen Freeman Cappio  gcappio@kellerrohrback.com
Rebecca Jane Roe  roe@sgb-law.com
Andrew L. Greene  agreene@perkinscoie.com
Hilary Bramwell Mohr  hmohr@riddellwilliams.com
Scott A. Smith  ssmith@riddellwilliams.com
Andrew L. Greene  agreene@perkinscoie.com
Hilary Bramwell Mohr  hmohr@riddellwilliams.com
Scott A. Smith  ssmith@riddellwilliams.com
Vanessa Soriano Power  vspower@stoel.com
Jessica M. Andrade  andrade.jessica@dorsey.com

/s/Rene D. Tomisser
RENE D. TOMISSER, WSBA #17509
Senior Counsel
Attorney for Defendants Department of Health and Board of Pharmacy
Attorney General's Office
P.O. Box 40109
Olympia, WA  98504-0109
360-586-6500

STATE DEFENDANTS' SUPPLEMENTAL TRIAL BRIEF
NO.  C07-5374 RBL

18

ATTORNEY GENERAL OF WASHINGTON
Agriculture & Health Division
7141 Cleanwater Drive SW
PO Box 40109
Olympia, WA 98504-0109
(360) 586-6500