HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| STORMANS INCORPORATED, et al., | CASE NO. C07-5374 RBL |
| Plaintiffs, | ORDER |
| v. | |
| MARY SELECKY, Secretary of the Washington State Department of Health, et al., | |
| Defendants, | |
| and | |
| JUDITH BILLINGS, et al., | [DKTS. # 570; 578] |
| Intervenors. | |

THIS MATTER is before the Court on Plaintiffs' Motions for Bill of Costs and Attorneys' Fees and Expenses (Dkts. # 570, 578). Plaintiffs, two individual pharmacists and a corporate pharmacy, challenged Washington State Board of Pharmacy regulations which compelled pharmacies and pharmacists to dispense lawfully prescribed emergency contraceptives over sincere religious beliefs against the practice. The contraceptives are known as Plan B and *ella*, and act as an emergency contraceptive taken after unprotected sex. The regulations at issue were two 2007 Board of Pharmacy rules known as the "delivery rule" and the

"stocking rule." The State of Washington represented the Defendants, individuals sued in their official capacities, charged with the promulgation, interpretation and enforcement of the Board of Pharmacy regulations. Defendant Intervenors were individuals personally concerned about access to lawful medications in Washington. The remaining Intervenors were women of child-bearing age interested in access to Plan B.

Plaintiffs challenged the regulations as violating their right to substantive due process; their right to free exercise of religion; and their right to equal protection. After five years of litigation, on February 22, 2012, this Court held that the regulations, while facially acceptable, were applied to Plaintiffs in an unconstitutional manner. Defendants were permanently enjoined from enforcing the regulations against Plaintiffs. Defendants have appealed the permanent injunction. Plaintiffs now seek attorneys' fees and costs only related to trial.

## I. BACKGROUND

**A. Procedural History.**

This case encompassed novel issues of law and spanned over five years with an interlocutory appeal and two stipulated stays. Plaintiffs commenced this litigation on July 25, 2007, the day before the challenged Board of Pharmacy rules became effective. Over the Plaintiff's objection, the Intervenors were added on September 27, 2007. On November 8, 2007, this Court enjoined Defendants from enforcing the challenged regulations, and refused to stay the injunction while the Defendants and the Intervenors appealed. While the Ninth Circuit decision was pending, the parties agreed to stay the litigation and of the enforcement of the rules against Plaintiffs. On October 28, 2009, the Ninth Circuit reversed this Court's injunction.

The litigation resumed, and in 2010, Plaintiffs and Defendants (over the Intervenors' objections) agreed to stay the litigation pending a new Board rulemaking process. The effort was aimed at alleviating the concerns of Plaintiffs regarding the stocking and delivery rules, which

would have made the litigation moot. Pls.' Reply at 6 (Dkt. # 630). Plaintiffs actively participated in this process. Ultimately, the Board did not change the challenged rules.

Throughout this case, media coverage closely followed the proceedings. *Id.* Plaintiffs engaged in media and lobbying activities during the rulemaking process, and in response to boycotts of Plaintiff Stormans' pharmacy. *Id.*

During the course of this case, twenty-five depositions were taken, and over 50,000 pages of documents were produced. Pls.' Mot. for Fees at 14 (Dkt. # 578). The litigation included public records requests, discovery requests to parties and third-parties, and multiple discovery disputes brought before the Court. A twelve day trial began on November 28, 2011. On February 22, 2012, the Court issued a permanent injunction. Defendants concede that Plaintiffs are the prevailing parties.

**B. Plaintiffs' Attorneys.**

Plaintiffs were represented by the Seattle law firm Ellis, Li and McKinstry (ELM) from the litigation's inception. ELM has gained notoriety for its representation of clients with constitutional rights cases, specifically with first amendment issues. Decl. of O'Ban at 9 (Dkt. # 579). Five ELM attorneys worked closely on this case: Kristen Waggoner, Steve O'Ban, Troy Brinkman, Geoff Enns, and Katherine Anderson. Due to financial constraints on the plaintiffs, their counsel sought assistance from public interest law firms Alliance Defense Fund (ADF) and The Becket Fund for Religious Liberty (Becket) to "share the litigation burden." *Id*. at 6.

ADF assisted ELM from early in the case, and after the Ninth Circuit appeal, Becket joined the litigation team. ADF and Becket attorneys assisted in strategy, research and drafting of the major briefs. Decl. of O'Ban at 7. ADF is a constitutional liberties organization and, like the other members of Plaintiffs' legal team, the ADF attorneys involved in this case work on complex constitutional cases involving First Amendment issues. Decl. of Aden at 4 (Dkt. #

1    585). Four ADF attorneys, based in Kansas, Arizona, and Washington D.C., worked on this
2    case: Steven Aden, Amy Hilton, Gary McCaleb, and Eric Stanley. ADF seeks fees for all four
3    attorneys.
4         Becket is a non-profit, public interest law firm that focuses on religious liberty law. Decl.
5    of Goodrich at 2 (Dkt. # 590). Six Becket attorneys from Washington D.C. were involved in this
6    litigation. Plaintiffs only seek fees for three of them; Luke Goodrich, Eric Kniffin, and Eric
7    Rassbach. *Id*. at 4.
8         While ADF and Becket attorneys were hired to assist on this case, ELM attorneys Kristen
9    Waggoner and Steve O'Ban were lead counsel. Ms. Waggoner has practiced with ELM since
10   1998 and has focused on constitutional, employment, and education law, and the representation
11   of religious nonprofit organizations. Decl. of Waggoner at 2 (Dkt. # 580). Ms. Waggoner
12   frequently teaches and speaks on these subjects. *Id*. Ms. Waggoner played an instrumental role
13   in the prosecution of this case.
14        Mr. O'Ban has practiced law for nearly twenty-five years. Decl. of O'Ban at 7. In
15   addition to teaching on constitutional law and issues facing churches and religious organizations,
16   Mr. O'Ban frequently speaks on the subject at continuing legal education seminars. *Id*. at 8. Mr.
17   O'Ban has successfully represented several religious organizations to protect religious liberty,
18   free speech, and freedom of association interests. *Id*.
19       **C. Plaintiffs' Motion for Attorneys' Fees, Expenses and Statutory Costs.**
20        Plaintiffs seek fees and costs only from the State, and not from the Intervenors. Plaintiffs
21   request $2,605,888.75 in total attorneys' fees for ELM, ADF and Becket attorneys. Decl. of

Enns, Ex. B (Dkt. # 631). Of the total petition, ELM requests $2,015,822.50, ADF requests $131,950.00, and Becket requests $454,511.25.[1] *Id.*

ELM requests fees for 7,225.50 hours, but Defendants calculate the number of hours, based upon ELM's records, as 6,143.80. Defs.' Resp. at 9 (Dkt. #622). ADF's petition reflects 413.30 hours worked, and Becket's requests 894.750 hours worked.[2] Decl. of Enns. Each firm representing Plaintiffs has substantially reduced their request from the hours worked. For example, through the course of litigation, Ms. Waggoner wrote off hours monthly to reflect billing judgment and to accommodate Plaintiffs—a total of 1,144.60 hours worked by ELM attorneys and staff were deducted. Decl. of Waggoner. These write offs reflect hours for the following types of work: (1) all paralegal and clerical time; (2) time by attorneys who spent less than 25 hours on the case; (3) recorded time ELM considered a vague billing entry; and (4) time spent talking with the media or in related activities. *Id*. In addition to regular billing adjustments, ELM wrote off 664.60 hours for purposes of the fee request. *Id*.

Defendants argue that the fee petition includes five categories of non-recoverable fees: 1) fees incurred in litigating the Intervenors' claims, 2) fees incurred in third-party discovery disputes; 3) fees expended on media activities and lobbying; 4) fees associated with the fee petition that are excessive and include non-recoverable costs; and 5) fees inflated by Becket's billing practice. Defendants suggest awarding $1,767,787.30 in total for the fees of ELM, ADF, and Becket.

---

[1] ELM's requested fee is calculated by: $2,032,215.50 - $ 16,393.00 = $ 2,015,822.50 to reflect the concessions made in the reply brief. Similarly, ADF's requested fee is calculated by: $136,450.00 - $ 4,500.00 = $ 131,950.00 to reflect concessions made in the reply brief.
[2] In preparation of the fee request, Becket reduced their fees by $89,927.50 to reflect billing judgment. Becket requests and addition $3,605.00 for seven hours Luke Goodrich spent preparing the fee petition. Decl. of Enns, Ex. B. ADF reduced their fee request by 61.9 hours to 413.3 hours. ADF requests 5.8 hours for the work of Steven Aden to prepare the fee petition. *Id*.

ORDER - 5

In addition to fees, Plaintiffs request $119,298.71 in expenses and statutory costs. Pls. Mot. for Fees at 20; Decl. of Waggoner, Exs. E, F. Of this amount, $39,538.85 is sought under 28 U.S.C. § 1920. *Id.*; Pls. Mot. for Costs. Defendants object to three categories of these statutory costs: (1) those related to HRC; (2) costs for deposition witnesses and transcripts which were not offered at trial; and (3) scanning costs that were voluntarily incurred. Defs.' Resp. to Pls.' Mot. for Costs at 2 (Dkt. # 597). The remaining $79,759.86 requested reflects expenses which would normally be passed onto a fee paying client in a 42 U.S.C. § 1988 action. Pls. Mot. for Fees at 20. Defendants object to recovery of expert fees and suggest reducing the expenses requested by $29,885.00.

## II.  DISCUSSION

The Court may award a reasonable attorney's fee, including litigation expenses and costs, to a "prevailing party" of a civil rights claim brought under 42 U.S.C. § 1983. 42 U.S.C. § 1988(b); *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). In fact, a plaintiff who prevails under this section "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Id*. A party "prevails for purposes of § 1988 if he "succeed(s) on any significant issue in litigation which achieves some benefit the parties sought in bringing suit." *Id*. To qualify as a prevailing party, a civil rights plaintiff must obtain actual relief on the merits of his claim which "materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Ficher v. SJB – P.D. Inc.*, 214 F.3d 1115, 1118 (9th Cir. 2000) (internal quotation omitted). Here, it is undisputed that Plaintiffs prevailed.

The party seeking attorneys' fees bears the burden of proving reasonableness of the award, by establishing their entitlement to an award and the amount to which they are entitled. *Hensley*, 461 U.S. at 437. The starting point for fee calculations is the number of hours

1   reasonably expended on the litigation multiplied by a reasonable hourly rate. *Id*. at 433. This

2   figure, known as the lodestar, is presumed a reasonable fee when the number of hours and the

3   claimed rate are proved reasonable. *City of Burlington v. Dague*, 505 U.S. 557, 560 (1992);

4   *Blum v. Stevenson*, 465 U.S. 886, 897 (1984).

5   After the court calculates the lodestar figure, the court should then decide whether to

6   adjust the lodestar figure up or down based upon any *Kerr* factor which has not already been

7   subsumed in the lodestar calculation.[3] *Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th Cir.

8   2006).

9   **A. Reasonable Number of Hours.**

10  In determining the reasonable number of hours, the court may exclude those hours that

11  are excessive, redundant, or otherwise unnecessary. *Hensley*, 461 U.S. at 434; *Welch v.*

12  *Metropolitan Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007). The fee applicant bears the initial

13  burden of documenting the appropriate hours expended, but the burden then shifts to the party

14  opposing the fee petition to submit evidence challenging the accuracy and the reasonableness of

15  the hours charged. *Hensley*, 461 U.S. at 437; *Gates*, 987 F.2d at 1397-98. Similar to

16  determining a reasonable hourly rate, "the trial judge should weigh the hours claimed against his

17  own knowledge, experience, and expertise of the time required to complete similar activities."

18  *Agster*, 486 F. Supp. 2d at 1012 (citing *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d

---

[3] The twelve *Kerr factors* are: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir. 1975). These considerations are consistent with the Washington Rule of Professional Conduct 1.5.

ORDER - 7

714, 717 (5th Cir.1974), *abrogated on other grounds by Blanchard v. Bergeron,* 489 U.S. 87, 90, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989)).

The Court will first address the State's challenges to ELM's hours before turning to the challenges to the fee requests of Becket and ADF. Defendants generally accept most of the hours contained in ELM's fee petition, but argue that ELM's lodestar figure should be reduced in four categories of time: hours related to Intervenors; hours related to third-parties; hours related to media and lobbying; and hours excessively spent preparing the fee petition. Defendants also challenge the expert fees accrued in conjunction with preparation of the fee petition.

While counsel reduced the number of hours worked to arrive at the number of hours requested, the Court remains unconvinced the petition reflects a request of reasonable hours. The Court appreciates that some duplicative efforts naturally arose from the procedural posture of the case—that some of the work done before the appeal, and prior to the stay, became stale. Yet, this is not a fifteen attorney case. Plaintiffs were free to employ attorneys they deem necessary to provide expertise, national clout, and even media attention, but the entire cost of this coalition cannot be reasonably passed onto Defendants—particularly when experienced local counsel was not only available, but they led on the case.

The ELM attorneys demonstrably possessed sufficient qualifications and expertise to successfully litigate this case. Additional attorneys from national organizations provided little by way of advancing the litigation. This type of duplicative activity is not reasonably expended and not appropriately passed to the Defendants. The Court's lodestar figure not only considers the charges argued by Defendants as impermissible, but is reduced to account for such duplicative activity, where the billing entry is vague, or where the billing entry is unreasonable.

**1. Challenges to Hours ELM Spent on Media and Lobbying.**

The Ninth Circuit permits a prevailing party to be compensated for media and public relation activities where such activities, "directly and intimately [relate] to the successful representation of a client." *Davis*, 976 F.2d at 1545 (9th Cir. 1992) *opinion vacated in part on denial of reh'g*, 984 F.2d 345 (9th Cir. 1993).

Defendants suggest reducing the Plaintiffs' request by 90.1 hours, or $28,686.50 to reflect the time ELM spent on media or lobbying related activities. Decl. of Kross at Ex. C (Dkt. #624). Plaintiffs contend that the fee petition has already been reduced by unrecoverable time spent on media activities, and the hours remaining in the request are activities directly and intimately related to representation. Pls.' Reply at 6. Plaintiffs argue that the contested hours were necessarily expended when the Board of Pharmacy underwent the rulemaking process again in 2010 because that process was the basis for the stipulated stay, and a satisfactory result from that process could have rendered further litigation moot Pls.' Reply at 6. Plaintiffs contest that this is the exact type of lobbying activities that are directly and intimately related to representation. *Id*. Plaintiffs further assert that some hours expended responded to the boycotts of Plaintiffs' pharmacies and these are also directly related to the litigation. Pls.' Reply at 14. The Court generally agrees. Participating in the lobbying efforts to affect a rulemaking process may not always directly relate to litigation, but it is here, where the stipulated stay was made on the basis of that process. Of the contended "media and lobbying" hours, the Court only finds 21.3 hours unrecoverable. The remaining hours are directly and intimately related to the representation. The fee request will be reduced by $6,797.00.

**2. Challenges to Hours Related to Third Parties.**

The Court, in its discretion, may award to the prevailing party fees incurred as related to third-party discovery. *See generally*, *Special Happy, Ltd. v. Lincoln Imports, Ltd., Inc.*, SACV

09-00074-MLG, 2011 WL 2650184 (C.D. Cal. July 6, 2011). Defendants contend that roughly 200 hours, or $53,857.00 of ELM's fee request should be excluded for fees related to third-party discovery disputes. Decl. of Kross, Ex. B. Plaintiffs concede that 11.3 hours (or $3,842.00) should be excluded. Plaintiffs, however, insist that the remaining challenged hours are chargeable to Defendants because the discovery was related to issues common with the Defendants, Defendants joined in opposition to Plaintiffs' requests, or the time entry might only be tangentially related to a third-party discovery issue. Pls.' Reply at 5.

Plaintiffs may not pass onto Defendants costs incurred in litigating third-party discovery issues with little relation to Defendants' actions. The third-party discovery disputes are not chargeable to Defendants. After reviewing the billing entries, the Court reduces ELM's request by 73.6 hours, or $14,450.00 for these third-party discovery issues.

### 3. Challenges to Hours ELM Spent on Intervenors' Claims.

Attorneys' fees are recoverable against a losing intervenor "where the intervenors' action was frivolous, unreasonable, or without foundation." *Independent Federation of Flight Attendants v. Zipes*, 491 U.S. 754 (1989) (attorneys' fees in a Title VII case). *See Democratic Party of Wash St. v. Reed*, 388 F.3d 1281, 1288 (9th Cir. 2004 ) (applying *Zipes* to a claim for attorneys' fees under 42 U.S.C. § 1988). However, Plaintiffs are not attempting to recover fees from the Intervenors, and thus it is unnecessary to determine whether the Intervenors' action was frivolous, unreasonable, or without foundation.

Instead, Plaintiffs attempt to shift the cost of litigating with the Intervenors onto the State. This is a permissible shift in two circumstances: when the plaintiff charges fees for opposing intervention to the government when the government joins an intervenor's motion, and when the government's opposition to plaintiffs' claims necessitated intervention. "A plaintiff can be awarded fees incurred opposing intervention if the defendant either joined the intervenor's

motion or if the intervenor's acts were 'made necessary by [the defendant's] opposition to legitimate claims of the party seeking the award'." *Watson v. County of Riverside*, 300 F.3d 1092 (2002) (citing *Love v. Reilly*, 924 F.2d 1492, 1495 (9th Cir. 1991)). In *Love*, plaintiffs filed a claim under the Equal Access to Justice Act (EAJA) and obtained a preliminary injunction against the Environmental Protection Agency (EPA). *Love*, 924 F.2d at 1493. The government did not join the intervenors' motion and took no position on the intervenors' motion to stay. *Id*. The plaintiffs failed to show that the fees incurred were attributable to opposing the government resistance, and thus, the district court erred when it allowed fees for plaintiffs' opposition to the stay. *Id*. Here, the Court reviewed Plaintiffs' explanations of the hours Defendants contend are properly identified as related to litigation with the Intervenors, and the Court agrees that some of these hours are non-recoverable.

Plaintiffs' interpretation of fee shifting related to the Intervenors onto the State is misguided. Although a party may recover the fees incurred opposing intervenors under § 1988, the opposition to the intervenors must be made necessary by the state. Merely intervening because government action has made a person interested in the outcome and able to intervene is not enough under *Love* to shift the costs associated with that person to the state. Fees related to intervenors are chargeable to the state when government action necessitated the intervenor's presence. That is to say, when intervenors are present to oppose the government action, but are also not aligned with the prevailing plaintiffs. Comparatively, here, the Intervenors were more similar to aggressive amici, than necessarily present by the State's opposition to the Plaintiffs. The focus is not on whether the State joined in motions with the Intervenors, opposed the Plaintiffs, or shared arguments with the Intervenors. Rather, it is on whether the State's opposition to the Plaintiffs necessitated the Intervenors presence to protect their own interests. In this case, the State's opposition did not necessitate the Intervenors. Hoisting the cost of active

amici-type litigants onto the State, when the State's action did not necessitate their presence, is an impermissible fee-shifting measure under § 1988.

The State contends that 149 hours ($38,416.50) should be excluded from the fee petition for ELM's work related to the Intervenors. Plaintiffs concede that 52.80 hours ($12,551.00) should be excluded from ELM's request. After reviewing the billing entries, the Court will reduce the fee award by time spent related directly to the Intervenors, including, for example, preparing discovery requests to Intervenors. The fee award is reduced by 109.7 hours, or $28,079.26.

### 4. Challenges to ELM's Hours to Prepare the Fee Petition and Expert Fees.

The prevailing party may recover for time spent by counsel to establish entitlement to an amount of fees awardable under § 1988. *Clark v. City of Los Angeles*, 803 F.2d 987, 992 (9th Cir. 1986); *Davis*, 976 F.2d at 1544. So long as time billed is not duplicative, counsel may retain special fee counsel in preparation of a fee petition. *Davis*, 976 F.2d at 1544; *see Bernardi v. Yeutter*, 951 F.2d 971, 976 (9th Cir. 1991) (affirming fees awarded to special counsel for a fee petition). Defendants contest the hours ELM spent preparing the fee petition as duplicative and excessive.

ELM requests recovery for 153.30 hours for preparation of this fee petition ($40,630.00).[4] Undoubtedly, ELM had more records to comb through to prepare this petition than the other Plaintiffs' attorneys, however, 153.3 hours is excessive. This request includes the hours of three ELM attorneys, O'Ban, Waggoner, and Enns, and is not well supported by the documentation. Although the attorneys divided the work, contacting fee experts and compiling

---

[4] Conversely, Becket and ADF request recovery for 7 and 5.8 hours respectively for their own fee petition preparation, or $2,900.00 and $3,605.00, this amount is reasonable and will be awarded.

1 the billing information, the work is duplicative. Pls. Reply at 7. Plaintiffs should not be able to
2 charge the time spent seeking out and working with fee experts, and then seek those expert fees
3 as well. These hours are not reasonably shifted to Defendants. The Court will reduce the hours
4 awarded to $36,567.00, to reflect reasonable hours expended and documented, and to avoid
5 duplicative recovery.

6 Additionally, Plaintiffs request $22,781.25 for expert fees related to the fee motion.
7 Plaintiffs invite this Court to join the Middle District of Florida and award costs for a "fee
8 expert" who opines on the reasonableness of the hours worked to litigate a successful § 1983
9 action.[5] Pls.' Reply at 7 n. 14. These expert fees were expended to provide opinions on the
10 reasonableness of the Plaintiffs' fee request. Plaintiffs have not indicated that these attorneys
11 were retained to prepare the fee request, but are simply opining on the reasonableness of the
12 request prepared by ELM attorneys. This expert fee is not recoverable under § 1988. *See Agster*
13 *v. Maricopa County*, 486 F. Supp. 2d 1005, 1013-14 (D. Ariz. 2007).

14 Furthermore, any characterization of these fees as necessary to prepare the fee petition is
15 duplicative in light of ELM's 153.30 hours spent on the same petition. These costs cannot be
16 disguised as attorney fees for preparing the fee request, because unlike in *Bernardi*, where the
17 litigation counsel employed additional counsel for the fee petition, the litigation counsel here
18 prepared the fee requests and hired experts only to offer opinions. This difference makes the
19 amount sought for the work of Mr. Nelson and Mr. Smith amounts for expert fees, rather than
20 recovery of fees for a fee petition. As such, $22,781.25 for these expenses will not be awarded.

21

22

---

[5] Plaintiffs cite two cases from the Middle District of Florida for the proposition that the costs of
23 fee experts are recoverable. *American Charities v. Penellas County*, 278 F. Supp. 2d 1301, 1329
(M.D. Flo. 2003); *American Atheists, Inc. v. City of Starke*, 509 F. Supp. 2d 1221, 1229 (M.D.
24 Flo. 2007). The Court does not find this authority persuasive in face of the Ninth Circuit
authority denying expert fees as costs under § 1988.

**5. Challenges to Becket and ADF's Fee Request.**

Defendants challenge ADF and Becket's fee requests on similar specific challenges as those to ELM's hours, but also contests: (1) the hourly rates of Becket and ADF attorneys; and (2) the quarter-hour billing technique employed by Becket.  While Becket's quarter-hour billing increments are reasonable, the hourly rates of the Becket and ADF attorneys are not reasonable in light of their supportive role.  As discussed below, the Court will award ADF and Becket attorneys' fees at a reduced rate to reflect the prevailing market rate in the Seattle area.

The Court has examined ADF and Becket's fee request in the same manner it examined ELM's request, above.  It will not award fees for hours expended on third-party discovery disputes, work related to the Intervenors, and hours spent on unrecoverable media and lobbying activities.  Additionally, the Court has reduced the number of hours awarded to remove vague, duplicative, or unreasonable time spent in consideration of the firms' secondary role in the litigation.  Overall, the Court will cut ADF's fee award by 158.2 hours and Becket's fee award by 358.75 hours.

**B. Reasonable Hourly Rate.**

A reasonable hourly rate derives from the "prevailing market rates in the relevant community." *Bell v. Clackamas* County, 341 F.3d 858, 868 (9th Cir. 2003).  The moving party must prove the prevailing market rate. *Sorenson v. Mink*, 239 F.3d 1140, 1145 (9th Cir. 2001) (quoting *Blum*, 465 U.S. at 895 n. 11).  Rates of comparable attorneys in the forum district are usually used. *See Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992).  This rate factors the experience, skill, and reputation of the attorneys requesting fees. *Schwartz v. Sec'y of Health and Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995).  In addition to considering affidavits and evidence submitted by the parties, the court may "rely on its own familiarity with the legal market." *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).

The reasonable hourly rate is "calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel." *Agster*, 486 F. Supp. 2d at 1013-14 (internal citations omitted).  The forum where the district court sits typically defines the relevant community.  *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997).  Attorneys practicing from outside the forum district may be awarded the outside-forum hourly rates if local counsel was unavailable.  *Id*.  Unavailability may be due to a lack of local counsel willing or able to litigate the case due to a lack of experience, expertise, or specialization.  *Gates*, 987 F.2d at 1405.

ELM attorneys request fees at historical rates rather than the current market rates.[6]  Becket and ADF attorneys did not request fees at historical rates, but instead requested current hourly rates for the market in which they practice, not Seattle.  Defendants assert that Becket and ADF's hourly billing rates should be reduced to reflect the market rate of Seattle. Defs.' Resp. at 17.  The following table reflects the hourly rates sought by each attorney:

| Attorney | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 |
|---|---|---|---|---|---|---|
| **ELM Attorneys:** | | | | | | |
| Steven O'Ban | $280 | $330 | $340 | $340 | $340 | $360 |
| Kristen Waggoner | $225 | $260 | $320 | $320 | $320 | $320 |
| Geoffrey Enns | $145 | $175 | $200 | $210 | $210 | $220 |
| Katherine Anderson | | $175 | $175 | $180 | $180 | $190 |
| Troy Brinkman | $160 | $180 | | | | |
| **Becket Attorneys:** | | | | | | |
| Luke Goodrich | | | $515 | $515 | $515 | $515 |

---

[6] Although ELM requests fees at the market rate usually charged to clients corresponding to each year of litigation, ELM billing statements reflect a reduced rate charged to Plaintiffs as an additional accommodation of their financial constraints.  *See* Decl. of Waggoner.

ORDER - 15

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Eric Kniffen | | | $445 | $445 | $445 | $445 | |
| Eric Rassbach | | | $575 | $575 | $575 | $575 | |
| **ADF Attorneys:** | | | | | | | |
| Steven Aden | | $500 | $500 | $500 | $500 | $500 | |
| Gary McCaleb | $300 | | $300 | | | | |
| Erick Stanley | $300 | $300 | | | | | |
| Amy Smith-Hilton | $150 | $150 | | | | | |

Defendants have not challenged ELM's attorneys' hourly rates. The Court finds these rates reasonable in light of the prevailing market rates for the relevant community. ELM attorneys are awarded fees at the hourly rates requested.[7] However, Defendants challenge the hourly rates requested for ADF and Becket attorneys.

Plaintiffs have not demonstrated that ADF and Becket's rates, based on the Washington D.C. market, are appropriate for purposes of this award. Plaintiffs have not carried their burden to show that local counsel was unwilling or unable to pursue this case. To the contrary, Plaintiffs employed local attorneys, ELM, who are not only competent, but who litigated this case successfully. Additionally, the ELM attorneys acted as lead counsel, whereas ADF and Becket played supportive roles. An out-of-forum attorney, who played a supportive role, should not receive a significantly higher rate than lead counsel, particularly when the local counsel prosecuting the case provided the necessary expertise and experience. While the Washington D.C. rates may be reasonable in that community, the requested rates are more than the Court finds reasonable in Seattle for support counsel.

---

[7] The rates of each ELM attorney reflect their experience and expertise, and comport with rates of other Seattle attorneys.

ORDER - 16

1      The attorneys from Becket and ADF have comparable experience and expertise to
2 Waggoner and O'Ban.  The attorneys from Becket and ADF charging Washington D.C. rates
3 will be assigned the hourly rates of $320 per hour, the hourly rate of Ms. Waggoner for the
4 majority of the litigation.[8]  This rate will be applied to the fees requested by the following
5 attorneys: Goodrich, Kniffen, Rassbach, and Aden.  The remaining ADF attorneys, Hilton,
6 McCaleb, and Stanley, will be awarded fees at their requested rates, which are lower than those
7 of Ms. Waggoner's.  The adjusted rate is reasonable considering that these attorneys have similar
8 or less experience than Ms. Waggoner, the Court finds that local counsel was experienced and
9 able to represent the Plaintiffs, this rate is reasonable in the relevant market, and these attorneys
10 played a supportive and at times superfluous role.  Adjusted to reflect the hourly rate awarded by
11 the Court, the ADF and Becket's fee awards will be reduced by $77,502 and $284,356.25,
12 respectively.

**C. Litigation Expenses.**

14      An award for attorneys' fees under 42 U.S.C. § 1988 includes "reasonable out-of-pocket
15 litigation expenses that would normally be charged to a fee paying client, even if the court
16 cannot tax these expenses as 'costs' under 28 U.S.C. § 1920."  *Trustees of Const. Indus. &*
17 *Laborers Health & Welfare Trust v. Redland Ins. Co.,* 460 F.3d 1253, 1257 (9th Cir. 2006).
18 Plaintiffs seek a total of $79,759.86 in litigation expenses.[9]  Decl. of Enns.
19      Defendants specifically challenge the $ 29,885 of expert witness fees included as an
20 expense.  Defs.' Resp. at 19.  While Defendants do not challenge other categories of expenses,
21 Plaintiffs' request includes several categories of unreasonable or impermissible expenses.

---

[8] Gary McCaleb, Erick Stanley, and Amy Smith-Hilton will receive the requested hourly rates.
[9] This request does not include the $39,538.85 requested in Plaintiffs' Motion for Bill of Costs. Decl. of Waggoner, Ex. F.  In total, Plaintiffs request $119,298.71 in litigation expenses and costs.

ORDER - 17

Courts in the Ninth Circuit have held that expert fees are not a recoverable cost under § 1988 for actions pursued under § 1983:

> In *West Virginia Univ. Hosp. Inc. v. Casey,* 499 U.S. 83, 102, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991), the Supreme Court concluded that 42 U.S.C. § 1988 conveys no authority to shift expert fees in civil rights cases to the losing party. . . . After *Casey,* Congress amended § 1988 to specifically provide for the recovery of expert fees in cases brought to enforce a provision of 42 U.S.C. § 1981 or 1981a. Congress could have amended § 1988 to allow for expert fees in all cases covered by § 1988(b), but did not. The *Casey* decision therefore stands with regard to § 1983 cases. . . . Because Plaintiffs pursued § 1983 claims, they cannot shift the burden of their experts' fees to Defendants.

*Agster*, 486 F. Supp. 2d at 1019 (internal citations omitted); *see also Ruff v. County of Kings*, 700 F. Supp. 2d 1225, 1243 (E.D. Cal. 2010). The Court joins the other courts and will not award expert fees. The expenses awarded are reduced by $29,885.00.

Additionally, Plaintiffs' expenses will be reduced by excessive expenditures not properly shifted to the Defendants. For example, Plaintiffs have failed to demonstrate why the State should pay for travel expenses to Tacoma for Becket attorneys, when these attorneys did not partake in court proceedings. Fee paying clients would not normally be charged expenses for attorneys to travel across the country to observe, but not engage in trial.[10] Because a party prevails, it does not mean that every expense and hour expended to prepare the case may be passed onto the losing party.[11] The Court awards $68,463.26 as a reasonable amount of expenses incurred, after excluding unreasonable expenditures.

**D. Plaintiffs' Bill of Costs.**

Plaintiffs request $39,538.85 for costs taxable under 28 U.S.C. § 1920 including: "(1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts; (3) Fees

---

[10] For example, Plaintiffs request airfare and hotel charges for Becket attorneys to travel from Washington during trial. Decl. of Waggoner, Ex. E at 11.

[11] Plaintiffs list $14,819.95 for "trial preparation (graphics and presentation)." Decl. of Waggoner, Ex. E at 9. It is unreasonable to shift excessive costs of illustrative exhibits onto the Defendants.

and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of making copies where the copies are necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; and (6) Compensation for court appointed experts, compensation of interpreters…" As the prevailing party, Plaintiffs may seek recovery of these costs. Local Rules W.D. Wash 54(d).

Defendants contend that the Court should deny Plaintiffs' request for "(1) costs associated with Plaintiffs' failed claims against the Human Rights Commission (HRC) and its members [the parties were dismissed early in the litigation]' (2) costs associated with deposition witnesses and transcripts which were not offered at trial; and (3) scanning costs that were voluntarily incurred as a shared expense among the parties for the convenient presentation of records to the court." Defs.' Resp. to Pls.' Mot. for Costs at 2. Defendants oppose the scanning costs voluntarily incurred because these were incurred for use on briefing issues for the preliminary injunction, not trial. *Id*. at 8.

Plaintiffs did not prevail against HRC. HRC and its members were dismissed early in this litigation. As such, Plaintiffs cannot recover costs related to HRC.

Additionally, the costs associated with depositions not used at trial shall be excluded from Plaintiffs' award. Although, as Plaintiffs argue, the depositions may have been reasonable at the time it was taken, and the depositions may have been necessary for cross-examination, not all of these costs are taxable to the State. Plaintiffs seek to recover costs associated with the depositions of witnesses who never appeared on a witness list for trial, or for witnesses associated with HRC. Moreover, Plaintiffs also seek to recover expenses related to depositions in their request for expenses contained in the Motion for Attorneys' Fees. Decl. of Waggoner at Ex. E. Although these transcripts may have prepared Plaintiffs for cross-examination of witnesses who did testify, these witnesses did not testify, and the costs are not recoverable.

1  Additionally, these requests are duplicative.  Plaintiff cannot seek in one motion costs for a
2  deposition transcript, which was not used at trial, and expenses for the electronic version of the
3  same deposition transcript in another.  The statutory costs awarded to Plaintiffs are reduced by
4  the deposition costs related to transcripts not used at trial, or $14,689.53.

5  Defendants' last contention relates to copying costs in preparation for the preliminary
6  injunction.  While these documents were initially sought to obtain a preliminary injunction, they
7  were necessary for preparing for depositions, and creating the record for trial.  Plaintiffs may
8  recover these costs.  Plaintiffs are awarded $23,539.77 in costs.

## III.   CONCLUSION

The Court awards Plaintiffs $2,158,137.24 in fees, $68,463.26 in expenses, and $23,539.77 in costs for a total of $ 2,250,140.27.

IT IS SO ORDERED

Dated this 5th day of November, 2012.

Ronald B. Leighton
United States District Judge