HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| STORMANS INC, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>MARY SELECKY, et al.,<br><br>　　　　　Defendants. | CASE NO. C07-5374 RBL<br><br>ORDER AWARDING COSTS OF PRODUCTION AND APPELLATE ATTORNEYS' FEES TO NON-PARTY LEGAL VOICE |

THIS MATTER is before the Court on remand from the Ninth Circuit Court of Appeals. The Plaintiffs, two individual pharmacists and a corporate pharmacy, challenged Washington's State Board of Pharmacy regulations that compelled pharmacies and pharmacists to dispense lawfully prescribed emergency contraceptives over sincere religious objections. Legal Voice, formerly known as The Northwest Women's Law Center, is an advocacy organization that employs attorneys and, in some situations, acts as a law firm. It is not a named defendant in the case, but it does represent a number of intervenors and has been directly involved in the litigation. Its involvement in this matter, however, started well before this case was filed. Legal Voice was one of the entities that lobbied the Board to enact the rules. Then, when the Board was considering the rules, Legal Voice directly participated in the rule-making process as a

ORDER - 1

member of a task force that held a series of meetings and ultimately drafted the text of the rules that the Board approved and enacted.

During discovery in this lawsuit, the Plaintiffs subpoenaed fourteen classes of documents from Legal Voice. Legal Voice objected to the subpoena, so the Plaintiffs moved to compel. Legal Voice was ordered to produce some, but not all, of the documents. During the fight over production, both sides asked for attorneys' fees and costs, and both requests were denied. After the merits of the case were decided, Legal Voice appealed the denial of its attorneys' fees and production costs. Based on the incomplete record before it, the Ninth Circuit found that Legal Voice's costs of complying with the subpoena were "significant." The Ninth Circuit reversed the Court's denial of expenses under Fed. R. Civ. P. 45(d)(2)(B)(ii) and held that Legal Voice should have been awarded at least a portion of the costs that it incurred complying with the subpoena. The Ninth Circuit affirmed the Court's denial of sanctions under Fed. R. Civ. P. 45(d)(1).

This Court has been instructed to determine what expenses Legal Voice actually incurred complying with the subpoena and to award at least a portion of those expenses to Legal Voice so that the remainder is "non-significant." This Court has also been instructed to award Legal Voice reasonable attorneys' fees for its successful appeal. Legal Voice asks for an award totaling nearly $260,000. The Plaintiffs argue that Legal Voice "overreaches" and that it should only receive about $20,000.

## I.    BACKGROUND

The fight over the subpoena was contentious and hard fought. It took three rounds of briefing and over 50 briefs and supporting documents to conclusively establish what Legal Voice had to produce. Add three more rounds of briefing on appeal and one more in this Court on

remand, and the Plaintiffs and Legal Voice have managed to turn a $10,000 to $20,000 dispute into a fight over more than a quarter of a million dollars.

### A.      Rounds 1–3:  The Motions to Compel

The Plaintiffs' initial motion to compel sought production of fourteen categories of documents.  The Plaintiffs also asked for their attorneys' fees for being forced to file the motion.  In response, Legal Voice argued that the subpoenaed documents were privileged, were protected by the First Amendment, were not likely to lead to admissible evidence, and that the Plaintiffs' requests were unduly burdensome, overly broad, and vague.  Legal Voice estimated that it would incur over $100,000 in costs just to search for, review, and print the requested documents.  It asked the Court to quash the subpoena and for its attorneys' fees as sanctions against the Plaintiffs under Rule 45(d)(1)[1] for failing to take reasonable steps to avoid imposing an undue burden on Legal Voice.  Legal Voice's only citation to Rule 45(d)(2)(B) in its initial brief was as a side note.  After arguing for sanctions at length, Legal Voice cited Rule 45 subsection (d)(2)(B) and wrote, "[a]lternatively, to extent [sic] the Law Center is ordered to produce any documents, Plaintiffs *should* be required to compensate the Law Center for its expenses." (emphasis added).

The motion to compel was granted in part and denied in part.  Legal Voice was ordered to produce six of the fourteen classes of documents that the Plaintiffs requested.  Regarding attorneys' fees and costs, the Court ordered that, "[e]ach party will bear its own costs incurred in connection with these motions."

Unfortunately, the initial Order did not end the Plaintiffs and Legal Voice's quarrel.  Legal Voice and the Plaintiffs disputed the scope of the Court's Order, so Legal Voice filed a motion for clarification.  Legal Voice and the Plaintiffs again fought over what had to be

---

[1] At the time, Rule 45(d)(1) was Rule 45(c)(1).  To avoid confusion, this Order uses the current citations to the relevant Rules, not the citations as they were at the time of the dispute.

produced, and in that round of briefing, Legal Voice shifted its request for attorneys' fees to a request for its production costs. Recognizing a distinction between the costs "in connection with the motions," and the costs of production, Legal Voice asked the Court to order the Plaintiffs to pay for the costs that it would incur complying with the subpoena. This time around, Legal Voice argued (for the first time) that fee and cost-shifting is mandatory under Rule 45(d)(2)(B)(ii) when a non-party incurs significant expenses complying with an order to produce documents.

The Court granted the motion for clarification and further explained the scope and intent of its prior order. The Court denied Legal Voice's request for its production costs because it believed that the scope of production had been sufficiently narrowed such that it would not be overly burdensome for Legal Voice to incur the costs of production.

The Court's attempt to clarify its order and end this dispute was in vain. Two months after the clarification order, the Plaintiffs filed a second motion to compel. The Plaintiffs again sought production of documents that Legal Voice refused to produce, and Legal Voice again asked for its costs of production under Rule 45(d)(2)(B)(ii). The Court again clarified which documents had to be produced and denied Legal Voice's request for its production costs. Although that order finally put an end to the dispute over the scope of production, the fight over Legal Voice's production expenses was just beginning.

B.  **Rounds 4–6:  The Appeal**

After the Court entered final judgment in the Plaintiffs' favor, Legal Voice appealed both the denial of sanctions under Rule 45(d)(1) and the denial of its production costs under Rule 45(d)(2)(B)(ii). Even before the initial briefing, the Plaintiffs filed a preliminary motion to dismiss the appeal, claiming that it was untimely. Both sides briefed the issue, and the appeals court commissioner denied the motion. Following briefing and oral argument, the Ninth Circuit

held that the appeal was timely, that this Court did not err by denying Legal Voice sanctions under Rule 45(d)(1), but that Legal Voice should have been awarded some or all of its production costs under Rule 45(d)(2)(B)(ii).

True to their form, both sides filed motions for clarification and/or revision, and both were denied. Legal Voice then moved for an award of attorneys' fees on appeal, which, of course, required more briefing. The Ninth Circuit granted Legal Voice's request but remanded the matter to this Court to determine the amount of fees to be awarded. Finally, Legal Voice petitioned the Ninth Circuit to publish its order awarding fees, which it agreed to do.

### C. Round 7: Motion for Reimbursement of Expenses on Remand

This petition is (hopefully) the end of this long, drawn-out dispute. Legal Voice seeks over $230,000 in attorneys' fees and over $20,000 for internal expenses that it incurred complying with the Plaintiffs' subpoena. The Plaintiffs take issue with nearly all of Legal Voice's claimed expenses and assert every conceivable objection to Legal Voice's calculation of its attorneys' fees. After applying reduction after reduction, the Plaintiffs conclude that Legal Voice should receive no more than $20,490 *combined* for its costs of compliance and attorneys' fees. It's safe to say that the actual award should (and will) be somewhere between the two extremes.

## II.   DISCUSSION

The Federal Rules of Civil Procedure were enacted to "secure the just, speedy, and *inexpensive* determination of every action and proceeding." 8 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2001 (3d ed. 1998) (emphasis added). One of the Rules' most important developments was the expansion of the discovery process. *Id.* Before the Federal Rules, the discovery process in federal courts was cumbersome and restricted. 8 Wright and Miller, *Federal Practice and Procedure* § 2002. Facts were revealed primarily by the

pleadings. 8 Wright and Miller, *Federal Practice and Procedure* § 2001; *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385 (1947). The Federal Rules expanded the scope of discovery considerably and limited the pleadings' purpose to general notice-giving. The Rules give parties a number of discovery tools that enable them to reveal all of the relevant facts and narrow the issues before trial. 8 Wright and Miller, *Federal Practice and Procedure* § 2001. The open discovery makes trials less a game of wits, and more a search for the truth. 8 Wright and Miller, *Federal Practice and Procedure* § 2001.

One of the tools that parties now have to discover information is the ability to subpoena documents from anyone who has them in their control. *See* Fed. R. Civ. P. 45. The parties' ability to subpoena documents from anyone, including non-parties, means that, occasionally, someone who has no interest in the underlying litigation may be forced to produce documents that he or she only serendipitously happens to possess. In 1991, Rule 45 was amended to add protection for non-parties that have to produce documents for litigation that they have no interest in and no ability to control. Rule 45(d)(2)(B)(ii) provides that an "order [compelling production] must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." It is that Rule that this Court has been instructed to apply.

### A.     Legal Voice's Compliance Expenses

This Court's first task is to shift enough of Legal Voice's expenses "resulting from compliance" to the Plaintiffs under Rule 45(d)(2)(B)(ii) so that the remainder is non-significant. To do that, the Court must first determine what costs qualify as "expense[s] resulting from compliance." The Court can then establish what Legal Voice's compliance costs actually were and what amount should be shifted to the Plaintiffs to comply with Rule 45(d)(2)(B)(ii) and the Ninth Circuit's mandate.

### 1.     Attorneys' Fees as Expenses Resulting from Compliance.

Rule 45(d)(2)(B)(ii) requires cost shifting if a non-party will incur a "significant expense" complying with a court order to produce subpoenaed documents.  Although this rule has been in place since 1991, there is surprisingly little precedent guiding district courts' interpretation of what is "an expense resulting from compliance," and what is "significant."

Legal Voice argues that all of its attorneys' fees at the district court are part of its Rule 45(d)(2)(B)(ii) expenses.  Moreover, it contends that the Ninth Circuit has already made that determination.  In addition to attorneys' fees for production-related tasks, Legal Voice's fee request includes the outside attorneys' fees that it incurred litigating the subpoena and the hours that its in-house attorneys worked on the motions to compel.

This Court finds nothing in the Ninth Circuit's opinions directing it to award Legal Voice all of its district court attorneys' fees as costs of compliance.  The mandate to this Court is to award Legal Voice some or all of its "expenses resulting from compliance" under Rule 45(d)(2)(B)(ii).  In a follow-up order, the Ninth Circuit directed the Court to additionally award Legal Voice its attorneys' fees on appeal.  In that order, the Ninth Circuit stated that "under Federal Rule of Civil Procedure 45(d)(2)(B)(ii), the Law Center is entitled to at least a portion of the expenses it incurred in the district court, including attorneys' fees, in complying with the subpoena duces tecum served on it by the Plaintiffs."  But, in fact, the original opinion is silent as to attorneys' fees.

In its motion for attorneys' fees on appeal, Legal Voice acknowledged that the original opinion does not address attorneys' fees.  It also acknowledged that its post-appeal motion for clarification asked the Ninth Circuit to "clarify" that the Law Center's outside attorneys' fees are an element that should be included in its Rule 45(d)(2)(B)(ii) compliance expenses.  The Ninth Circuit (properly) declined to answer that question because the issue was not raised or argued in

the briefs and because it is a question that this Court should have an opportunity to answer, first. The Ninth Circuit made it clear in its order denying clarification that it was remanding on an open record and that it is within this Court's discretion to determine the amount of Legal Voice's Rule 45 expenses.

This Court does not believe that the Ninth Circuit intended to change that clear direction. Rather, this Court interprets the Ninth Circuit's language as merely recognizing that, after proper consideration, Legal Voice will likely be awarded *some*, but not necessarily all, of its attorneys' fees at the district court. All that the Ninth Circuit's order awarding attorneys' fees on appeal establishes is that Legal Voice is entitled to its attorneys' fees *on appeal*; it does not establish that *all* of its attorneys fees at the district court are Rule 45(d)(2)(B)(ii) expenses resulting from compliance.

There is no doubt that Rule 45 expenses resulting from compliance may include some attorneys' fees. Complying with a subpoena will almost always require some production-related legal tasks like document review, creating a privilege log, and drafting protective orders. Attorneys' fees for those production-related legal tasks are "expenses resulting from compliance," whether they are completed by in-house counsel or outside attorneys. *See U.S. v. Columbia Pictures Indus.*, 666 F.2d 364, 366 (9th Cir. 1982).

Attorneys' fees incurred litigating a subpoena are a different matter. In fact, Legal Voice was first to recognize (and rely on) this distinction. In its motion for clarification in this Court following the order on the Plaintiffs' first motion to compel, Legal Voice astutely pointed out that the Court ordered each party to bear its own costs in connection with the motions (i.e., attorneys' fees), but did not address the actual costs of compliance. But now that the Ninth

Circuit has held that Legal Voice should have been awarded a portion of its costs of compliance but affirmed the denial of sanctions, Legal Voice tries to ignore that distinction.

The plain language of Rule 45 provides that non-parties must be protected from significant expenses resulting from *compliance* [with a court order or subpoena]. It is a tenuous proposition, at best, that attorneys' fees incurred *resisting* a subpoena are expenses resulting from compliance. Rather, this Court interprets Rule 45(d)(2)(B)(ii) compliance expenses as including attorneys' fees for production-related legal tasks, but not attorneys' fees for litigating a subpoena. Not only does this interpretation fit within the plain language of the rule, it makes sense when Rule 45(d) is considered in its entirety. In certain situations, when a party abuses its subpoena power or files frivolous or vexatious motions to compel, a non-party could contend that attorneys' fees for litigating a subpoena are expenses resulting from compliance. But that situation is exactly what Rule 45(d)(1) is meant to address.

Rule 45(d)(1) requires a subpoenaing party to take reasonable steps to avoid imposing an undue burden or expense on the person subject to the subpoena. District courts enforce that duty through sanctions if a party fails to comply. Unlike subsection (d)(2)(B)(ii), subsection (d)(1) explicitly provides that appropriate sanctions may include reasonable attorneys' fees. This Court already determined that sanctions were not warranted under Rule 45(d)(1), and the Ninth Circuit affirmed that ruling. This Court will not revisit that decision.

Thus, in addition to the expenses that Legal Voice incurred searching for and copying the subpoenaed documents, it will also be awarded its attorneys' fees for production-related legal tasks. It will not, however, be awarded any attorneys' fees for litigating the subpoena in this Court.

### 2. Legal Voice's Actual Rule 45(d)(2)(B)(ii) Compliance Expenses

Legal Voice's petition claims that it incurred $108,714.53 in expenses before the appeal, including:

- $822.34 for direct expenses including printing costs and technology consulting fees;
- $5,943 for Legal Voice's Director of Administration Kelli Maguire's 160 hours spent locating all of the subpoenaed documents;
- $88,389.50 for outside counsel Scott Smith and Hilary Mohr's attorneys' fees for 308.9 hours dedicated to this matter before the appeal;
- $7,895 for in-house attorney Sara Ainsworth's 181.5 hours dedicated to this matter before the appeal;
- $3,709 for in-house attorney Lisa Sone's 58.7 hours dedicated to this matter before the appeal; and
- $1,955.69[2] for a paralegal to assist with production.

After the attorneys' hours spent on the motions to compel are removed, it appears that in-house attorneys (mostly Ms. Ainsworth) spent about 120 hours on production-related tasks, and outside attorneys spent only about 11 hours on non-redundant production-related legal tasks. Additionally, although the Court is convinced that locating the documents was a tedious task, Ms. Maguire's 160 claimed hours are excessive. Her hours will be reduced by 20%.

Accordingly, the Court finds that Legal Voice's Rule 45(d)(2)(B)(ii) expenses resulting from compliance were $9,365.51 in attorneys' fees for production-related legal tasks, $4,754.40 for the time Ms. Maguire spent locating the documents, $1,955.69 for the paralegal hired to assist with production, and $822.34 for direct expenses. In sum, Legal Voice's expenses resulting from compliance totaled $16,897.94.

---

[2] Legal Voice's brief claims that it paid $2,588 to a paralegal to assist producing the documents, but the submitted pay stubs show that she was actually paid only $1,955.69.

### 3. Rule 45(d)(2)(B)(ii) Award

As the Ninth Circuit found, Legal Voice's expenses resulting from compliance were significant. But that does not mean that the Plaintiffs must bear that entire amount. A non-party may be required to absorb a non-significant portion of its expenses resulting from compliance. *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1185 (9th Cir. 2013); *see also Linder v. Calero-Portocarrero*, 251 F.3d 178, 182 (D.C.Cir. 2001); *In re Exxon Valdez*, 142 F.R.D. 380 (D.D.C. 1992). What is "significant" (or non-significant) depends on the circumstances of the case. The most important considerations when determining what amount is significant are (1) whether the non-party actually has an interest in the outcome of the case; (2) whether the non-party can bear the costs; and (3) whether the underlying litigation is of public importance. *In re Exxon Valdez*, 142 F.R.D. at 383; *Linder*, 180 F.R.D. at 177; *Wells Fargo Bank, N.A. v. Konover*, 259 F.R.D. 206, 207 (D.Conn. 2009).

All three factors suggest that Legal Voice should be required to pay a portion of its production expenses. Although Legal Voice was not a named party, it had (and has) a considerable interest in the outcome of the underlying case. Not only did it lobby the Pharmacy Board to adopt the challenged rules and help draft the language that was ultimately adopted, it injected itself into this litigation by representing the intervenors. To say that Legal Voice is not a disinterested bystander is an understatement. Next, Legal Voice is capable of bearing some of its own costs of production. In 2012, it received over $700,000 in contributions and does not really dispute that it is capable of paying some portion of its expenses. Lastly, there is no doubt that the underlying lawsuit is of great public importance.

Based on those considerations, the Court finds that, in this case, $5,000, or roughly 30% of the expenses resulting from compliance, is a non-significant amount that Legal Voice can

reasonably be expected to bear.  Accordingly, Legal Voice will be awarded **$11,897.94 under Rule 45(d)(2)(B)(ii) for its expenses resulting from compliance**.

### B. Attorneys' Fees on Appeal

This Court's next task is to award Legal Voice its reasonable attorneys' fees for its successful appeal.

#### 1. Determination of a reasonable fee.

The initial step in determining a reasonable fee is to calculate the lodestar figure by taking the number of hours reasonably expended on the litigation and multiplying it by the appropriate hourly rate.  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  Overstaffed, redundant, or unnecessary time should be excluded.  *Id.* at 434.  The court must also consider the extent of plaintiffs' success, as that is a "crucial factor" in determining an appropriate award.  *Id.* at 440.

After determining the lodestar figure, the court should then determine whether to adjust the lodestar figure up or down, based on factors not subsumed in the lodestar calculation.  The Ninth Circuit adopted these factors[3] in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir. 1975) *cert. denied*, 425 U.S. 951 (1976). The applicability of the sixth (whether the fee is fixed or contingent) and tenth (the "undesirability " of the case) *Kerr* factors is doubtful after *City of Burlington v. Dague*, 505 U.S. 557 (1992); *see also Davis v. City & County of San Francisco*, 976 F.2d 1536, 1549 (9th Cir. 1992), *vacated in part on other grounds*, 984 F.2d 345

---

[3] The *Kerr* factors are: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir. 1975), *cert. denied*, 425 U.S. 951 (1976).

(9th Cir. 1993)(fixed vs. contingent nature of fee is not to be considered).  Additionally, numerous courts have subsequently held that the bulk of these factors are subsumed in the lodestar calculation.  *See, for example, Blum v. Stenson*, 465 U.S. 886, 898-900 (1984).

The lodestar calculation is similarly the starting point for determining a reasonable fee under Washington law.  *Scott Fetzer v. Weeks*, 114 Wn.2d 109, 786 P.2d 265 (1990); *Absher Constr. v. Kent Sch. Dist. No. 415*, 79 Wash. App. 841, 847, 917 P.2d 1086 (1995).  Washington's RPC 1.5 lists factors to be considered in evaluating the reasonableness of an attorney's fee:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client; and
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services.

RPC 1.5(a) (1)-(7).  These factors are consistent with current *Kerr* factors.

### a. Reasonable Hourly Rate.

In determining hourly rates, the court must look to the "prevailing market rates in the relevant community."  *Bell v. Clackamas County*, 341 F.3d 858, 868 (9th Cir. 2003).  The rates of comparable attorneys in the forum district are usually used.  *See Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992).  In making its calculation, the court should also consider the experience, skill, and reputation of the attorney requesting fees.  *Schwarz v. Sec'y of Health &*

*Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995). The court may rely on its own knowledge and familiarity with the legal market in setting a reasonable hourly rate. *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).

Legal Voice had four attorneys from Riddell Williams, P.S. work on its appeal. The following table reflects the hourly rates sought by each attorney:

| ATTORNEY | 2012 | 2013 | 2014 |
| --- | --- | --- | --- |
| Greg Euteneier | $250 | | |
| Daniel Gunter | $335 | | $375 |
| Hilary Mohr | | | $285 |
| Scott Smith | $440 | $450 | $465 |

The Plaintiffs contend that these rates are excessive because they exceed their own attorneys' rates for the same time periods and this Court previously found the Plaintiffs' attorneys' rates to be reasonable. But an attorney's rate is not necessarily unreasonable just because some lower amount may also be reasonable. Based on the affidavits supporting Legal Voice's fee request, the Court is convinced that the claimed rates are reasonable in the prevailing market in light of the attorneys' skill and experience.

### b. Reasonable Number of Hours.

Legal Voice's four attorneys worked a total of 352.8 hours on the appeal and this petition. It also asks for over $7,000 for its legal expert. The Plaintiffs assert that Legal Voice's attorneys claim an excessive number of hours. They contend that Legal Voice spent too much time on their appellate briefs, failed to remove duplicative hours, had partners conduct work that should have been done by associates, and impermissibly block-billed longer than three-hour

periods. They also argue that Legal Voice should not be able to claim time for its motion for clarification at the Ninth Circuit, time discussing media strategy, and fees for its legal expert to support this petition.

By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). With that in mind, however, in determining the reasonable number of hours, the Court must exclude those hours that are excessive, redundant, or otherwise unnecessary. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007).

Although this Court will not comb through Legal Voice's fee request and identify what specific tasks it believes to be excessive, redundant, or unnecessary, it does appear from reviewing the affidavits that some of the claimed hours are unreasonable. The Court will reduce each of Legal Voice's attorneys' claimed hours by 10% to account for excessive, redundant, or unnecessary work. That reduces Legal Voice's number of hours to a total of 317.5. Additionally, Legal Voice will not be awarded its legal expert's fees, as the Plaintiffs were denied identical expert fees when they were awarded their attorneys' fees in the underlying case.

When each attorney's adjusted hours are multiplied by his or her respective rate, the lodestar figure comes to $122,197.50. The Court will apply a 15% reduction to the lodestar amount consistent with *Kerr*. Although the reduction is based on all of the relevant *Kerr* factors, the most compelling considerations are the extent of Legal Voice's success given the amount involved and the novelty and difficulty of the issues presented. While Legal Voice's appeal was successful, this was (or should have been) a relatively minor discovery dispute. As discussed

above, Legal Voice's total expenses resulting from compliance were less than $17,000.  While this case did present some issues that have not been addressed by the Ninth Circuit, there is a reason that there is so little precedent discussing a rule that has been in place for nearly a quarter of a century.  Discovery disputes such as these are usually resolved amicably and inexpensively.  They are rarely the subject of such contentious litigation.  Indeed, it was not the legal issues that spurred on this dispute, it was the litigants.  Neither the Plaintiffs nor Legal Voice showed any interest in resolving this dispute quickly and reasonably.  Instead, they decided to fight at every turn and drive up the cost of litigation.  For what it's worth, this Court regrets that its order(s) contributed to the proliferation of fees.

After the 15% *Kerr* reduction, Legal Voice's reasonable attorneys' fees award for its successful appeal comes to $**103,867.88**.

### III.   CONCLUSION

This Court was instructed to determine Legal Voice's Rule 45(d)(2)(B)(ii) expenses resulting from complying with the Plaintiffs' subpoena.  Those expenses were determined to be $16,897.94.  Based on the circumstances of this case and the litigants involved, $5,000 is a non-significant amount of those costs that Legal Voice can reasonably be expected to bear.  Legal Voice is thus awarded **$11,897.94** under Rule 45(d)(2)(B)(ii) as its expenses resulting from compliance.

//

//

//

//

//

The Ninth Circuit also instructed this Court to award Legal Voice its reasonable attorneys' fees for its successful appeal. In accordance with that mandate, Legal Voice is awarded **$103,867.88**. Legal Voice's total award for its expenses resulting from compliance and attorneys' fees on appeal amounts to **$115,765.82**.

IT IS SO ORDERED.

Dated this 15th day of January, 2015.

_____
RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE